**THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| MUNA AL-SUYID, ET AL., | ) | |
| | ) | **Civ. No. 1:20-cv-00170-LMB-JFA** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| KHALIFA HIFTER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GENERAL KHALIFA
HIFTER, KHALID HIFTER, AND SADDAM HIFTER'S MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Duncan P. Levin, Esq.
Tucker Levin, PLLC
230 Park Avenue, Suite 440
New York, New York 10169
212-330-7626
dlevin@tuckerlevin.com
www.tuckerlevin.com

Edward J. Ungvarsky
VSB 83014
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**STATEMENT OF UNDISPUTED FACTS**..................................................2

**BACKGROUND** ................................................................................................2

**STANDARDS OF REVIEW** ..........................................................................4

**ARGUMENT** .....................................................................................................6

I.   PLAINTIFFS' ALLEGATIONS PRESENT A NON-JUSTICIABLE POLITICAL
     QUESTION...........................................................................................................6

II.  THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE
     GENERAL HIFTER IS ENTITLED TO HEAD OF STATE IMMUNITY. ....................8

III. PLAINTIFFS' ALLEGATIONS DO NOT SHOW A CAUSE OF ACTION UNDER
     THE TVPA. .....................................................................................................10

     A.   PLAINTIFFS HAVE NOT EXHAUSTED ALL OF THEIR ADEQUATE AND
          AVAILABLE REMEDIES IN LIBYA. .............................................................10

     B.   GENERAL HIFTER DID NOT KNOW OR HAVE REASON TO KNOW THAT
          THE ALLEGED CONDUCT WOULD OCCUR. ................................................11

     C.   THE KILLINGS ALLEGED BY PLAINTIFFS WERE NEITHER
          EXTRAJUDICIAL NOR DELIBERATE. ..........................................................15

IV.  PLAINTIFFS' REMAINING VIRGINIA STATE TORT LAW CLAIMS ARE BARRED
     BY THE STATUTE OF LIMITATIONS.....................................................................17

V.   THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR INSUFFICIENT
     SERVICE OF PROCESS......................................................................................18

     A.   PLAINTIFFS' PURPORTED SERVICE OF PROCESS IS INVALID. .............18

     B.   PLAINTIFFS SHOULD NOT BE GIVEN EXTENDED TIME TO CURE ANY
          PROCEDURAL DEFICIENCIES. ....................................................................21

**CONCLUSION** ..............................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Bain*,
    697 F.2d 1213 (4th Cir. 1982) ..........................................................................4

*Aldana v. Del Monte Fresh Produce,* N.A.,
    416 F.3d 1242 (11th Cir. 2005) ..................................................... 11

*Amazon Web Servs. v. Global Equity Mgmt., S.A.*,
    2017 U.S. Dist. LEXIS 148477 (E.D. Va. 2017)............................ 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................5, 8, 13, 14

*Aziz v. Alcolac, Inc.*,
    658 F.3d 388 (4th Cir. 2011) ......................................................... 12

*Baker v. Carr*,
    369 U.S. 186 (1962).........................................................................6

*Bell Atl. Corp. v. Twombly*,
    50 U.S. 544 (2007)..........................................................................5

*Boykin v. Va. Dep't of Juvenile Justice*,
    No. 3:14-CV-811-HEH (E.D. Va. Aug. 20, 2015) ........................4, 5

*Burnett v. N.Y. Cent. R.R. Co.*,
    380 U.S. 424 (1965)....................................................................... 17

*Chavez v. Carranza*,
    559 F.3d 486 (6th Cir. 2009) ......................................................... 12

*Chowdhury v. WorldTel Bangladesh Holding, Ltd.*,
    746 F.3d 42 (2d Cir. 2014)............................................................ 11

*Corrie v. Caterpillar, Inc.*,
    403 F. Supp. 2d 1019 (W.D. Wash. 2005)......................................7

*Doe v. Drummond Co.*,
    782 F.3d 576 (11th Cir. 2015) ................................................ 11, 12

*Earle v. McVeigh*,
    91 U.S. 503 (1875)........................................................................ 18

*Federal Deposit Ins. Corp. v. Schaffer*,
  731 F.2d 1134 (4th Cir. 1984) ..................................................................... 19

*First Am. Nat'l Bank v. Straight Creek Processing Co.*,
  756 F. Supp. 945 (E.D. Va. 1991) ..................................................................4

*Jean v. Dorélien*,
  431 F.3d 776 (11th Cir. 2005) ..................................................................... 10

*Joe Hand Promotions, Inc. v. Citibars, Inc.*,
  2012 U.S. Dist. LEXIS 18500 (E.D. Va. 2012)................................................. 19

*Jordan v. Shands*,
  255 Va. 492 (Va. 1998)................................................................................ 17

*Lafontant v. Aristide*,
  844 F. Supp. 128 (E.D.N.Y. 1994) ..................................................................9

*Luddeke v. Amana Refrigeration*,
  239 Va. 203 (Va. 1990)................................................................................ 17

*Malibu Media, LLC v. Bondoc*,
  No. 1:18-cv-052 (TSE/IDD) (E.D. Va. Nov. 14, 2018)............................... 18, 19

*Mamani v. Berzain*,
  654 F.3d 1148 (11th Cir. 2011) ........................................................... 14, 15, 16

*Md. State Fireman's Ass'n v. Chaves*,
  166 F.R.D. 353 (D. Md. 1996)...................................................................... 19

*Mullane v. Cent Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..................................................................................... 20

*Murphy Brothers, Inc. v. Michetti Pipe Stringing*,
  526 U.S. 344 (1999)..................................................................................... 18

*Omni Capital Int'l, Ltd. v. Rudolf Wolff Co.*,
  484 U.S. 97 (1987)....................................................................................... 18

*Painter v. Blue Ridge Reg'l Jail Auth.*,
  No. 6:17-cv-00034 (W.D. Va. Jan. 23, 2019).................................... 18, 19, 21

*Reed v. Weeks Marine, Inc.*,
  166 F. Supp. 2d 1052 (E.D. Pa. 2001) ..............................................................6

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ......................................................................5

*Richmond, Fredericksburg Potomac R.R. Co. v. United States*,
    945 F.2d 765 (4th Cir. 1991) ......................................................................4

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ...............................................................8, 11

*Scott v. Md. St. Dep't of Labor*,
    673 F. App'x 299 (4th Cir. 2016) ............................................................. 21

*Underhill v. Hernandez*,
    168 U.S. 250 (1897)....................................................................................6

*U.S. v. Noriega*,
    117 F.3d 1206 (11th Cir. 1997) ................................................................. 9

*United States v. Sea Bay Development Corp*,
    Civil Action No. 2:06-cv-624 (E.D. Va. May 8, 2007) ...........................5, 6

*Warfaa v. Ali*,
    33 F. Supp. 3d 653 (E.D. Va. 2014) ................................................... 12, 13

*Xuncax v. Gramajo*,
    886 F. Supp. 162 (D. Mass. 1995) ..................................................... 10, 13

*Yousuf v. Samantar*,
    552 F.3d 371 (4th Cir. 2009) ....................................................... 8, 9, 16, 18

*Yousuf v. Samantar*,
    1:04-CV-1360 (LMB/JFA) (E.D. Va. Aug. 28, 2012)........................ 12, 14, 17

## FEDERAL STATUTES

28 U.S.C. § 1350 note ......................................................................3, 12, 15

## FEDERAL RULES

Fed. R. Civ. P. 4 ..................................................................................... 18

Fed. R. Civ. P. 12 .................................................................................5, 21

Fed. R. Civ. P. 56 ......................................................................................5

**STATE STATUTES**

Va. Code § 8.01-243 ........................................................................................... 17

Va. Code § 8.01-244 ........................................................................................... 17

Va. Code § 8.01-248 ........................................................................................... 17

Va. Code Ann.§ 8.0l-296(2)(b) (2018) ............................................................. 18

**OTHER MATERIALS**

H.R. Rep. No. 102-367, pt. 1 (1991)...................................................................3

S. Rep. No. 102-249 (1991) ...........................................................................3, 15

Al Arabiya, *Libyan National Army's Haftar claims 'mandate from the people,'* May 20, 2020,
    *available at* https://english.alarabiya.net/en/News/north-africa/2020/04/28/Libyan-
    National-Army-s-Haftar-claims-mandate-from-the-people-. ........................... 10

Al Jazeera, *Trump praises Haftar in apparent reversal of US policy on Libya*,
    Apr. 20, 2019, *available at* https://www.aljazeera.com/news/2019/04/trump-calls-haftar-
    praises-significant-role-terrorism-fight-190419182035115.html ......................9

Ayman al-Warfali, *Libya's eastern leader Haftar says army to take formal control*,
    Apr. 27, 2020, *available at*
    https://www.reuters.com/article/us-libya-security-idUSKCN2292RQ ........................... 10

Jon Anderson, *The Unravelling*, The New Yorker, Feb. 16, 2015, *available at*
    https://www.newyorker.com/magazine/2015/02/23/unravelling. ................................... 20

Samer Al-Atrush, *Trump Backed Libyan Strongman's Attack on Tripoli, U.S. Officials Say*,
    April 24, 2019, *available at*https://www.bloomberg.com/news/articles/2019-04-
    24/trump-libya-haftar-tripoli .............................................................................7

Steve Holland, *White House says Trump spoke to Libyan commander Haftar on Monday*,
    Apr. 19, 2019, *available at* https://www.reuters.com/article/us-libya-security-
    trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-monday-
    idUSKCN1RV0WW...........................................................................................8

United Nations, *Attacks on civilians, arbitrary arrests, top list of abuses in Libya: ICC
    prosecutor*, May 5, 2020, *available at*
    https://news.un.org/en/story/2020/05/1063282............................................... 11

U.S. Dep't of State, *U.S. Delegation Meets with General Khalifa Haftar*,
    Nov. 25, 2019, *available at*
        https://www.state.gov/u-s-delegation-meets-with-general-khalifa-haftar/ ........................7

## <u>INTRODUCTION</u>

The State of Libya remains in the throes of an internationalized civil conflict, with Defendant General Khalifa Hifter leading the Libyan National Army ("LNA") at the appointment of the House of Representatives, the unicameral parliament of Libya. This lawsuit describes horrific tragedies, including accusations of torture, that are alleged to have occurred during the course of this civil war, and seeks to attribute responsibility for these incidents directly to Gen. Hifter. While recognizing the disturbing nature of the allegations in the Complaint, Gen. Hifter moves this Court to dismiss the claims, as he neither directed those actions, nor knew or should have known that they would occur.

As a threshold matter, this case presents the Court with a non-justiciable political question, as the Plaintiffs seek to hold liable Defendants with whom the United States has engaged in seeking to bring peace to Libya. Further, the incidents alleged in the Complaint occurred during a legitimate military mission in the course of Libya's civil war. In addition, the Executive must be afforded due deference to recognize the leader of Libya, including to suggest immunity for heads of state.

Substantively, Plaintiffs' Complaint fails to allege facts that support a cause of action under the Torture Victims Protection Act ("TVPA"). The TVPA provides relief in the United States to victims of extrajudicial killings and to victims of torture worldwide. Before such a claim can be raised before U.S. Courts, however, the claimants must first exhaust their legal remedies in the country in which the alleged offense occurred. Plaintiffs also do not allege facts showing that Gen. Hifter is liable for their alleged claims of extrajudicial killings nor their alleged claims of torture.

The Plaintiffs' theory is that the individuals responsible for the alleged offenses served under the command of Gen. Hifter and, therefore, Gen. Hifter knew or should have known of the

alleged offenses. Plaintiffs, however, have not alleged any facts showing that the perpetrators of the alleged offenses were part of the LNA and under the control of Gen. Hifter, that Gen. Hifter knew of the commission of the alleged offenses, or that Gen. Hifter failed to address such offenses. Additionally, the killings that Plaintiffs alleged occurred were not deliberate as required by the TVPA. Accordingly, Plaintiffs do not sufficiently allege facts supporting any cause of action under the TVPA. Plaintiffs' remaining Commonwealth of Virginia tort law claims should be dismissed for falling outside the statute of limitations. And the Plaintiffs' Virginia tort claims should also be dismissed as they do not implicate Virginia, and there are no valid federal claims in this matter.

Finally, it is a fundamental tenant of U.S. jurisprudence that a court have personal jurisdiction over the case in order to hear it. To have personal jurisdiction over Defendants, the Plaintiffs must have properly served the Defendants. They did not. The Plaintiffs purportedly served Defendants at a Virginia address, ignoring the fact known to them that Defendants left the United States for Libya years ago with no intention of returning. As a result of Plaintiffs' improper service, this matter should be dismissed.

**STATEMENT OF UNDISPUTED FACTS**

Gen. Hifter is a dual citizen of the United States and Libya. Gen. Hifter previously resided in Virginia, but he returned to Libya years ago and has resided there since. There currently is an ongoing civil war in Libya in which one of the factions, the LNA, is commanded by Gen. Hifter. Complaint, ECF No. 1.

**BACKGROUND**

Gen. Hifter is a dual United States and Libyan citizen and is the commander of the LNA. The elected Libyan House of Representatives appointed him to this position on March 2, 2015. Libya is currently in a state of civil war with two major factions running the country: the Libyan

2

House of Representatives and LNA, and the Government of National Accord ("GNA"). The LNA is based in Tobruk, and the GNA is based in Tripoli.

In 2011, Gen. Hifter returned to Libya from the United States to support the Libyan Revolution. In February of 2014, Libya broke out into a second civil war in which Gen. Hifter led what is known as Operation Dignity. Currently, Libya remains embroiled in a civil war with the future outcome uncertain. Plaintiffs' allegations are raised in this context and pursuant to the Torture Victims Protection Act ("TVPA").

The TVPA establishes a cause of action for torture and extrajudicial killing when such acts are committed by an individual acting under actual or apparent authority or color of law of any foreign nation. 28 U.S.C. § 1350 note. The statute was enacted in 1991, and as its legislative history illustrates, the TVPA was intended to carry out obligations of the United States under the United Nations Charter and other international agreements pertaining to the protection of human rights, such as the Geneva Conventions of 1949. *See* H.R. REP. NO. 102-367, pt. 1, at 4–5 (1991). Consistent with the Geneva Conventions, only killings that violated international law were to be considered "actionable under the TVPA." S. REP. NO. 102-249, at 5 (1991). Accordingly, the definition of "extrajudicial killing" excludes "killings that are lawful under international law— such as killings by armed forces during declared wars which do not violate the Geneva Convention and killings necessary to effect a lawful arrest or prevent the escape of a person lawfully detained." *Id*.

Under the TVPA, an extrajudicial killing is a "deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized people." 28 U.S.C. § 1350 note. Significantly,

the term "does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." *Id*.

Additionally, torture is defined as "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind." *Id*. Before filing a claim under the TVPA, the individual must exhaust all adequate and available remedies in the place in which the conduct occurred. *Id*.

## STANDARDS OF REVIEW

### I. RULE 12(b)(1).

It is well established that a federal district court must have subject matter jurisdiction over a case to hear it and award relief. *First Am. Nat'l Bank v. Straight Creek Processing Co*., 756 F. Supp. 945, 946 (E.D. Va. 1991). On a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, if a defendant challenges the basis for jurisdiction, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Furthermore, if a "defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint are presumed true." *Boykin v. Va. Dep't of Juvenile Justice*, No. 3:14CV811-HEH, *6 (E.D. Va. Aug. 20, 2015) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

## II.    RULE 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Boykin v. Va. Dep't of Juvenile Justice*, at *7 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal citations omitted). A plaintiff's factual allegations must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "that offers labels and conclusions" and "naked assertions devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (internal citations omitted). Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).

Rule 12(d) authorizes the court to treat a Rule 12(b)(6) motion as a motion for summary judgment under Rule 56 where the defendants rely on matters outside the pleadings, provided that all parties have a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d). Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    RULE 12(b)(5).

Finally, a motion to dismiss under Rule 12(b)(5) provides for "the dismissal of an action for insufficient service of process." *United States v. Sea Bay Development Corp*, Civil Action No.

2:06-cv-624, *3 (E.D. Va. May 8, 2007). Moreover, "[i]n resolving a motion under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity when an objection to service is made." *Id*. at 7 (citing *Reed v. Weeks Marine, Inc*., 166 F. Supp. 2d 1052, 1054 (E.D. Pa. 2001)).

## ARGUMENT

## I.   PLAINTIFFS' ALLEGATIONS PRESENT A NON-JUSTICIABLE POLITICAL QUESTION.

For over a century, the Supreme Court has recognized that legitimate acts of civil war are outside the purview of the courts. "Where a civil war prevails . . . generally speaking foreign nations do not assume to judge of the merits of the quarrel." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). Furthermore, "If the political revolt fails of success, still if actual war has been waged, acts of legitimate warfare cannot be made the basis of individual liability." *Id*.

The Supreme Court in *Baker v. Carr* explained six factors that must be considered when determining whether a civil action presents a non-justiciable political question: "[1] textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment of multifarious pronouncements by various departments on one question." *Schneider v. Kissinger*, 412 F.3d 190, 193 (D.C. Cir. 2005) (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962)). Only one of these factors must be present to prevent a court from exercising jurisdiction over the case. *Schneider v. Kissinger*, 412 F.3d at 193.

Here, the allegations of Plaintiffs' Complaint with respect to Gen. Hifter present the Court with a non-justiciable political question. Political questions, including those presented in this case, are barred from adjudication when they "challenge[] the official acts of an existing government in a region where diplomacy is delicate and U.S. interests are great." *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1032 (W.D. Wash. 2005). Moving forward with this case will inherently impede the respect due to the political branches of government in the conduct of foreign affairs, because Plaintiffs intend to hold liable a party with whom the United States has engaged in seeking to bring peace to Libya. Further, the incidents for which Plaintiffs seek to hold Defendants liable occurred during a legitimate military mission in the course of Libya's civil war. Plaintiffs essentially are asking the Court to judge the conduct of the LNA in carrying out military operations in an ongoing civil war. Moreover, this lawsuit inherently jeopardizes the ability of the Executive branch to engage in good faith negotiations with the leaders of Libya and other countries across the world with respect to the conflict.

Although not every politically charged matter presents a political question, the circumstances surrounding this case are fully within the Executive's domain. The Administration has been actively engaged with respect to the current situation in Libya, and has even shown certain support for Gen. Hifter. *See e.g.*, U.S. Dep't of State, *U.S. Delegation Meets with General Khalifa Haftar*, Nov. 25, 2019, *available at* https://www.state.gov/u-s-delegation-meets-with-general-khalifa-haftar/ (explaining that senior U.S. officials met with General Hifter to discuss bringing an end to the Libyan conflict); Samer Al-Atrush, *Trump Backed Libyan Strongman's Attack on Tripoli, U.S. Officials Say*, April 24, 2019, *available at* https://www.bloomberg.com/news/articles/2019-04-24/trump-libya-haftar-tripoli (reporting that President Trump supported Gen. Hifter's offensive into the capital of Libya, Tripoli). Although

the United States' foreign policy and national security objectives are dynamic, what is clear is that Executive branch discussions with world leaders concerning Libya's civil war should not be affected or constrained by matters before the courts.

Allowing this case to proceed could seriously jeopardize any negotiations the Administration is currently engaged in with Gen. Hifter and the Libyan Government to achieve the United States' foreign policy goals. *See e.g.*, Steve Holland, *White House says Trump spoke to Libyan commander Haftar on Monday*, Apr. 19, 2019, *available at* https://www.reuters.com/article/us-libya-security-trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-monday-idUSKCN1RV0WW (noting that the United States needs Gen. Hifter's "support in building democratic stability there in the region"). Regardless of the substance of those foreign policy goals, it is the political branches' domain whether to support or not Gen. Hifter's actions in Libya. *Schneider v. Kissinger*, 412 F.3d at 197 (explaining that "whether drastic measures should be taken in matters of foreign policy and national security is not the stuff of adjudication, but of policymaking"). Plaintiffs' allegations of extrajudicial killings and torture under the TVPA essentially require a U.S. court to adjudicate the conduct of the armed forces of a foreign government that is actively working with the United States to try to bring peace to the region. Accordingly, allowing this case to proceed could complicate and jeopardize U.S. foreign policy and relations with Libya, regardless of Gen. Hifter's role in the country, as well as constrain the actions of the U.S. administration that holds office next January.

## II.     THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT BECAUSE GENERAL HIFTER IS ENTITLED TO HEAD OF STATE IMMUNITY.

While this Circuit does not apply the Foreign Sovereign Immunities Act with respect to individual actors, *Yousuf v. Samantar*, 552 F.3d 371, 381 (4th Cir. 2009), courts generally seek the guidance of the Executive branch in cases such as this one that involve significant political

officials. *See e.g.*, *U.S. v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997) (explaining that "where the Executive Brach either expressly grants or denies a request to suggest immunity, courts must follow that direction"). Furthermore, because "determination[s] of who qualifies as a head-of-state is made by the Executive Branch, it is not a factual issue to be determined by the courts. No judicial hearing or factual determination aside from receipt of the State Department's communication is warranted." *Lafontant v. Aristide*, 844 F. Supp. 128, 132 (E.D.N.Y. 1994). Common law head-of-state immunity is like the foreign state sovereign immunity, and applies to leaders of foreign countries to preclude a court from exercising personal jurisdiction over foreign states' rulers. *Id*. In *Lafontant*, the court explained that "head-of-state immunity is required to safeguard mutual respect among nations." *Id*.

"The Constitution assigns the power to 'receive Ambassadors and other public Ministers' to the Executive Branch, U.S. Const. art. II, § 3, which includes, by implication, the power to accredit diplomats and recognize foreign heads of state." *Yousuf v. Samantar*, 699 F.3d 763, 772 (4th Cir. 2012). Further, the "Courts have generally treated executive "suggestions of immunity" for heads of state as a function of the Executive's constitutional power and, therefore, as controlling on the judiciary." *Id*. Here, during the course of the Libyan conflict, President Trump has recognized Gen. Hifter's legitimate role on behalf of the State of Libya. In a phone call to Gen. Hifter, President Trump reportedly "recognised Field Marshal Haftar's significant role in fighting terrorism and securing Libya's oil resources, and the two discussed a shared vision for Libya's transition to a stable, democratic political system." Al Jazeera, *Trump praises Haftar in apparent reversal of US policy on Libya*, Apr. 20, 2019, *available at* https://www.aljazeera.com/news/2019/04/trump-calls-haftar-praises-significant-role-terrorism-fight-190419182035115.html. In light of the deference that must be afforded to the President to

recognize the leader of Libya, the Court should dismiss this action because it cannot exercise personal jurisdiction over Gen. Hifter to the extent he holds head-of-state immunity. *See e.g.*, Ayman al-Warfali, *Libya's eastern leader Haftar says army to take formal control*, Apr. 27, 2020, *available at* https://www.reuters.com/article/us-libya-security-idUSKCN2292RQ (reporting on Gen. Hifter's acceptance of a popular mandate to rule Libya); Al Arabiya, *Libyan National Army's Haftar claims 'mandate from the people,'* May 20, 2020, *available at* https://english.alarabiya.net/en/News/north-africa/2020/04/28/Libyan-National-Army-s-Haftar-claims-mandate-from-the-people- (same).

## III.   PLAINTIFFS' ALLEGATIONS DO NOT SHOW A CAUSE OF ACTION UNDER THE TVPA.

### A.   PLAINITFFS HAVE NOT EXHAUSTED ALL OF THEIR ADEQUATE AND AVAILABLE REMEDIES IN LIBYA.

Before a claim is filed under the TVPA, potential claimants must exhaust all of their adequate and available remedies in the place in which the conduct occurred.  28 U.S.C. 1350 note. The TVPA's exhaustion requirement is an affirmative defense for which the defendant initially bears the burden of proof.  *Jean v. Dorélien*, 431 F.3d 776, 781 (11th Cir. 2005) (citations omitted). However, "[o]nce the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id*. at 782.

Courts have found that a plaintiff has exhausted adequate and available remedies when he or she has sought relief by initiating a judicial proceeding in the country in which the conduct occurred. *See e.g.*, *Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995).  In *Xuncax*, the court found that the plaintiff did exhaust those remedies because she stated in an affidavit that she returned to the country in which the conduct occurred, to provide testimony before the courts of

that country. *Xuncax v. Gramajo*, 886 F. Supp. at 178. Furthermore, and notwithstanding that testimony, the case had not made progress for many years; and, "under Guatemalan law, a civil action cannot be brought until final judgment has been rendered in the criminal proceedings." *Id.* In consideration of those actions, the *Xuncax* court was satisfied that the plaintiff had exhausted all of her adequate and available remedies.

Here, Plaintiffs have not alleged any facts showing that they have exhausted their available remedies. Although Plaintiffs contend that they cannot obtain relief in Libya due to a dysfunctional judicial system, Plaintiffs have not demonstrated that they have attempted in any way to seek relief before the Libyan courts before reaching that conclusion. Rather, Plaintiffs are attempting to use the context of the Libyan conflict as a vehicle to get directly in U.S. courts. Because alternative avenues for relief have been left unaddressed and unattempted by Plaintiffs, they have failed to show that they have exhausted all of their available remedies as required under the TVPA.

Furthermore, the International Criminal Court ("ICC") is currently engaged in an ongoing investigation regarding the circumstances of the war in Libya. United Nations, *Attacks on civilians, arbitrary arrests, top list of abuses in Libya: ICC prosecutor*, May 5, 2020, *available at* https://news.un.org/en/story/2020/05/1063282. This investigation under the auspices of the United Nations and the ICC covers alleged incidents such as those raised in the instant matter, and is best situated to pursue relevant fact-finding and assess any allegations concerning the conduct of the Libyan conflict.

## B. GENERAL HIFTER DID NOT KNOW OR HAVE REASON TO KNOW THAT THE ALLEGED CONDUCT WOULD OCCUR.

Individuals who do not personally engage in torture or extrajudicial killing can nonetheless be liable under the TVPA. *Doe v. Drummond Co.*, 782 F.3d 576, 607 (11th Cir. 2015); *see also Aldana v. Del Monte Fresh Produce,* N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) ("[T]he [TVPA]

reaches those who ordered, abetted, or assisted in the wrongful act."); *Chowdhury v. WorldTel Bangladesh Holding, Ltd.*, 746 F.3d 42, 52 (2d Cir. 2014) (noting that agency law "can provide a theory of tort liability if a defendant did not personally torture the victim"). However, three elements must be met to establish liability through the Command Responsibility Doctrine: "(1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes." *Drummond*, 782 F.3d at 609; *see also Yousuf v. Samantar*, 1:04-CV-1360 (LMB/JFA), at *26 (E.D. Va. Aug. 28, 2012) (quoting *Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009)).

In both *Yousuf v. Samantar* and *Warfaa v. Ali*, the Court found the defendants liable under a theory of command responsibility under the TVPA. *Yousuf v. Samantar*, 1:04-CV-1360 (LMB/JFA) (E.D. Va. Aug. 28, 2012); *Warfaa v. Ali*, 33 F. Supp. 3d 653 (E.D. Va. 2014). In *Yousuf*, the Court found the defendant liable not only because he knew about the detailed human rights abuses, but also because he affirmatively ordered such abuses. *Yousuf v. Samantar*, at *32. Although the defendant did not personally carry out the attacks, the Court found him liable relying on his own testimony and admissions because he "in fact ordered and affirmatively permitted such [human rights] violations." *Id*. Furthermore, the Court reasoned that the defendant "'substantial[ly] assist[ed]' his subordinates with 'the purpose of facilitating' the acts alleged in the second amended complaint." *Id*. (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388 (4th Cir. 2011)).

Similarly, in *Warfaa*, this Court found that the plaintiff's allegations were sufficient to support a theory of liability under the command responsibility doctrine with respect to the TVPA.

*Warfaa v. Ali*, 33 F. Supp. 3d at 666. Specifically, the Court held that "Plaintiff has alleged facts showing defendant not only knew that members of his battalion were torturing plaintiff, but that defendant personally participated in plaintiff's torture and further attempted to kill him by shooting him five times." *Id.*

Unlike in *Warfaa* and *Yousuf*, Plaintiffs here do not allege any facts showing that Defendants ordered or participated in any attacks on the Plaintiffs. Rather, the Complaint simply concludes that the individuals responsible for the alleged attacks were under Gen. Hifter's "command responsibility," and implies that Defendants must have known about the alleged acts. Complaint, ECF No. 1, Page 7, 8. Because there are no such facts to plead, Plaintiffs instead use broad statements by Gen. Hifter about the overall course of the conflict, that were made well after the purported incidents, to obscure their omission by suggesting that those general pronouncements reveal some specific knowledge of the alleged attacks. Complaint, ECF. No. 1, Page 10. Such conclusory allegations are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Further, Plaintiffs' theory of liability based on the Command Responsibility Doctrine fails because it is based on unsubstantiated legal conclusions. Plaintiffs have not alleged any facts showing that (1) the perpetrators of the alleged offenses were part of the LNA and under the control of Gen. Hifter; (2) that Gen. Hifter knew of subordinates that had committed, were committing, or planned to commit the alleged offenses; and (3) that Gen. Hifter failed to address such offenses. While Plaintiffs argue that military operations resulted in the deaths of Abdel Salam, Ibrahim, Khalid, and Mustafa al-Suyid and Mustafa and Ali al-Krshiny, they allege no facts connecting Gen. Hifter to the alleged offenses as necessary to substantiate their theory of command responsibility. Additionally, Plaintiffs do not explain how the alleged offenses were supposedly directed or approved through the LNA chain of command.

Plaintiffs' Complaint alleges that various majors, colonels, and other LNA officials led units that carried out certain operations that allegedly killed or tortured Plaintiffs. Those allegations, however, do not connect any decisions by Gen. Hifter as commander of the LNA with the offenses alleged to have occurred during military operations.  Simply put, the alleged offenses, while horrific in nature, did not occur with Gen. Hifter's knowledge or under his direction. Moreover, Plaintiffs have not demonstrated that Gen. Hifter failed to address the alleged offenses. As the court explained in *Mamani*, such broad accusations are "easy to say about leaders of nations, but without adequate factual support of more specific acts by *these* defendants, these 'bare assertions' are 'not entitled to be assumed true.'" *Mamani v. Berzain*, 654 F.3d 1148, 1154 (11th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

In addition, Plaintiffs' single claim concerning Defendants Khalid and Saddam Hifter is wholly unsupported by any alleged facts. In the Plaintiffs' Complaint, there is merely one conclusory statement with respect to Gen. Hifter's sons: "Khalid and Saddam aided and abetted their father's crimes." Complaint, ECF No. 1, Page 6. This Court, in analyzing application of the Alien Tort Statute ("ATS"), explained that for liability to attach "for aiding and abetting a violation of international law, a defendant must provide substantial assistance with the purpose of facilitating the alleged violation," and the conduct must be purposeful. *Yousuf v. Samantar*, 1:04CV1360 (LMB/JFA), at *27 (E.D. Va. Aug. 28, 2012).

As with the conclusory allegations against Gen. Hifter, Plaintiffs simply do not substantiate their allegations against his Defendant sons. The Plaintiffs also do not allege that Gen. Hifter's sons provided substantial assistance or that their alleged conduct was purposeful. Simply put, Plaintiffs state without any support that Khalid and Saddam Hifter aided and abetted Gen. Hifter.

Accordingly, the attempt by the Plaintiffs to find Khalid and Saddam Hifter liable is without basis in fact or law, and should likewise be dismissed along with the claims against their father.

### C.   THE KILLINGS ALLEGED BY PLAINTIFFS WERE NEITHER EXTRAJUDICIAL NOR DELIBERATE.

The TVPA authorizes claims against individuals who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to torture or to extrajudicial killing. 28 U.S.C. § 1350 note. Under the TVPA, an extrajudicial killing is a "deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized people." *Id*.  Significantly, the term "does not include any such killing that, under international law, is law-fully carried out under the authority of a foreign nation." *Id*.

The allegations detailed in the Plaintiffs' Complaint may instead be the result of lawfully carried out military operations which, as head of the LNA, Gen. Hifter is authorized to carry out for the State of Libya. The TVPA is not intended to create liability for collateral civilian casualties resulting from legitimate military operations undertaken in a civil war. *See* S. REP. NO. 102-249, at 5 (1991). Furthermore, the causalities experienced in a civil war are not equivalent to extrajudicial killings where persons are killed without having been tried and convicted for the crimes they allegedly committed. Here, the casualties alleged in the Plaintiffs' Complaint are not extrajudicial killings to the extent that they occurred during lawfully carried out military operations in the course of Libya's civil war.

Even where a killing is found to be extrajudicial, the TVPA additionally requires that such a killing be deliberate. Courts have stressed that killings are only "deliberated" when they are "undertaken with studied consideration and purpose," and not "accidental or negligent." *Mamani v. Berzain*, 654 F.3d at 1155. In *Mamani*, the court found that "alternative explanations (other than

extrajudicial killing) for the pertinent seven deaths easily come to mind; for instance, the alleged deaths are compatible with accidental or negligent shooting (including mistakenly identifying a target as a person who did pose a threat to others), individual motivations (personal reasons) not linked to defendants, and so on." *Id*. Here, as Plaintiffs' Complaint acknowledges, Libya is in a state of ongoing civil war, and Plaintiffs have not alleged any facts showing that the alleged killings were undertaken with studied consideration and purpose by Defendants.

The Plaintiffs further allege that on or about October 15, 2014, LNA units surrounded the family home of the al-Suyids in Benghazi. Complaint, ECF No. 1, Page 7. Furthermore, the al-Suyids Plaintiffs allege that "a gunfight ensued" in which additional persons were "kidnapped," resulting in the deaths of Kahlid, Adbel Salam, and Ibrahim al-Suyid. While recognizing the horrific nature of such events in the course of civil war, the deaths did not occur with the studied consideration and purpose that is required for an extrajudicial killing to be deliberate under the TVPA. Further, there are many alternative explanations for these deaths, beginning with the fact that they allegedly occurred during a gunfight. As explained in *Mamani*, the perpetrators of the alleged offenses could have been influenced by personal motivations and acted without the direction of their leaders.

Similarly, the facts alleged regarding the al-Krshiny Plaintiffs also give rise to alternative explanations for the alleged deaths other than a deliberate extrajudicial killing. Those Plaintiffs allege that during another gunfight, several individuals were taken prisoner by another LNA unit, that Ibrahim and Mustafa al-Krshiny were beaten, and that Mustafa and Ali al-Krshiny were later killed. Plaintiffs also have not alleged any facts showing how these events were deliberate under the TVPA. Although Plaintiffs allege that these events began with a gunfight involving LNA forces led by Colonel Bargathi, they fail to explain how Defendants are connected to these claims.

Accordingly, Plaintiffs cannot show that the alleged deaths were deliberated by Defendants, and they therefore cannot satisfy a critical element of the TVPA.

## II.     PLAINTIFFS' REMAINING VIRGINIA STATE TORT LAW CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

"Statutes of limitations are designed to assure fairness to a defendant and to relieve courts of the burden of evaluating stale claims brought by a plaintiff who failed to exercise due diligence in asserting his or her rights." *Yousuf v. Samantar*, at *9 (*citing Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). Plaintiffs' Complaint alleges conduct that occurred between October 15, 2014 and November 5, 2014. Specially, the Complaint states that "Over a two-day period in October 2014, two families were among those in Defendants' crosshairs. Defendants' forces attacked the family homes of the al-Suyids and the al-Krshinys as part of this offensive."

The statute of limitations begins to run for the causes of action in a complaint when the tort is committed. *See Luddeke v. Amana Refrigeration*, 239 Va. 203, 207 (1990). Accordingly, the Complaint's state tort claims can be dismissed because the statute of limitations has expired. Va. Code § 8.01-244; Va. Code § 8.01-243; *Jordan v. Shands*, 255 Va. 492, 499 (1998) (explaining that a claim for false imprisonment must be brought within two-years of the incident); *Luddeke v. Amana Refrigeration*, 239 Va. at 207 (1990) (explaining that a claim for Intentional Infliction of Emotional Distress has a two-year statute of limitations). Va. Code § 8.01-248. (explaining that every personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued). Plaintiffs' remaining claims for wrongful death, battery, assault, false imprisonment, and intentional infliction of emotional distress all fall outside Virginia's relevant statute of limitations and therefore are void. Further, the Virginia tort claims should also be dismissed as they do not implicate Virginia, and because there are no valid federal claims in this matter.

III.    **THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS.**

A.    **PLAINTIFFS' PURPORTED SERVICE OF PROCESS IS INVALID.**

Absent valid "service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Brothers, Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff Co.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Rule 4(e)-(j) of the Federal Rules of Civil Procedure provides the different manners in which one party can serve another party. Rule 4(e)(1) states that an individual within a judicial district of the United States may be served pursuant to state law by serving a summons in the state where the district court is located or where service is made. An individual may also be served by delivering a copy of the summons and complaint to the individual personally. Fed. R. Civ. P. 4(e)(2).

Under Virginia law, if an individual cannot personally be served, and a copy of the process cannot be left with a family member other than a "temporary sojourner or guest" 16 years or older, a party may post a copy of the process on the main entrance of the individual's place of abode. Va. Code Ann.§ 8.0l-296(2)(b). After doing so, however, not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent must mail to the party served a copy of such process and thereafter file in the office of the clerk of the court a certificate of such mailing. *Id*.

As the U.S. Supreme Court has explained, "the house must be [defendant's] usual place of abode, so that, when he returns home, the copy of the process posted on the front-door will operate as notice." *Earle v. McVeigh*, 91 U.S. 503, 508 (1875); *see Painter v. Blue Ridge Reg'l Jail Auth.*,

No. 6:17-cv-00034, *5 (W.D. Va. Jan. 23, 2019) (same). Notably, "[o]wnership of property does not indicate that an individual resides at the property." *Malibu Media, LLC v. Bondoc*, No. 1:18-cv-052, *4 (TSE/IDD) (E.D. Va. Nov. 14, 2018).

As a consequence of improper service, "a court is without jurisdiction to render a personal judgment against a defendant." *Id.* (quoting *Joe Hand Promotions, Inc. v. Citibars, Inc.*, 2012 U.S. Dist. LEXIS 18500, at *4 (E.D. Va. 2012); (quoting *Federal Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135 (4th Cir. 1984)); see *Md. State Fireman's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant.")

In *Painter v. Blue Ridge Reg'l Jail Auth.*, the court vacated the default judgment for lack of personal jurisdiction because the plaintiff improperly served the defendant. No. 6:17-cv-00034, *6 (W.D. Va. Jan. 23, 2019). There, the plaintiff attempted to serve the defendant under Virginia Code Section 8.01-296(2)(b) by posting service on his place of abode, but the court found service invalid as the plaintiff did not post service at the defendant's *usual* place of abode. *Id.* at *5. The court reasoned that the defendant had not been living at the address where the plaintiff posted service for about a year, and service was therefore invalid because it was not posted where the defendant was currently living.

In *Malibu Media, LLC v. Bondoc*, the plaintiff attempted to serve the defendant at an address other than the one at which the plaintiff alleged he lived. No. 1:18-cv-052 (TSE/IDD), *4 (E.D. Va. Nov. 14, 2018). The plaintiff further failed to allege or provide any information as to whether the defendant resided at the address where service was attempted. *Id.* The court explained that property ownership alone does not necessarily mean that a person lives there, and because the

defendant did not live at the address where the plaintiff posted service, the defendant was not adequately apprised of the pending lawsuit and was not afforded an opportunity to be heard. *Id*.

Here, Plaintiffs' attempts at serving Defendants similarly did not adequately apprise them of the pending lawsuit. The Plaintiffs' use of Virginia State Law to effectuate service ignores the clear reality that Defendants have been in Libya for years and do not intend to reside in the United State, let alone Virginia. The Plaintiffs explain that on March 14, 2020, a private process server, posted the alias summons and complaint at 5505 Seminary Road, Unit 2310N in Falls Church, Virginia and mailed a copy of the alias summons and complaint to each Defendant. Plaintiffs' purported service under Rule 4(e)(1) is however invalid, because 5505 Seminary Road, Unit 2310N in Falls Church, Virginia is not Defendants' usual place of abode, and they did not receive the summons or complaint by mail.

The fact that Gen. Hifter does not live in Virginia has been well reported in the news. Jon Anderson, *The Unravelling*, The New Yorker, Feb. 16, 2015, *available at* https://www.newyorker.com/magazine/2015/02/23/unravelling. Indeed, Plaintiffs even acknowledge that 5505 Seminary Road, Unit 2310N in Falls Church, Virginia is not Gen. Hifter's place of abode. Plaintiffs have stated that "[a]fter a decades' long absence, Khalifa Hifter traveled to Libya in 2011 to fight in Libya's civil war and eventually seized control of the LNA." Complaint, ECF No. 1, page 4, 5. Plaintiffs therefore clearly understand that Gen. Hifter does not live in Virginia nor does he intend on returning to Virginia. In addition, ownership of property does not mean that someone resides at that property for purposes of effectuating service. Even assuming Defendants have some ownership interest in 5505 Seminary Road, Unit 2310N in Falls Church, Virginia, they do not live there, and service cannot be effectuated there as it is not their place of abode.

Simply put, service of process satisfies due process when it provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Amazon Web Servs. v. Global Equity Mgmt., S.A.*, 2017 U.S. Dist. LEXIS 148477, at *9 (E.D. Va. 2017) (citing to *Mullane v. Cent Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Here, considering the facts alleged by Plaintiffs, Defendants' current presence in Libya, and media reporting regarding those facts, it is clear that a condominium in Virginia is not any Defendant's usual place of abode. Plaintiffs' Complaint, therefore, should be dismissed for insufficient service of process under Rule 12(b)(5).

### B.   PLAINTIFFS SHOULD NOT BE GIVEN EXTENDED TIME TO CURE ANY PROCEDURAL DEFICIENCIES.

Although courts do not have personal jurisdiction over a defendant if service of process is ineffective, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 12(m). Courts in the Fourth Circuit consider six factors in determining whether good cause exists to extend the time for service: "(1) the plaintiff's control over the delay in service; (2) whether the defendant was evasive; (3) if the plaintiff acted diligently; (4) whether the plaintiff was represented by counsel; (5) if the defendant will be prejudiced; and (6) whether the plaintiff asked for an extension of time before the deadline." *Painter v. Blue Ridge Reg'l Jail Auth.*, No. 6:17-cv-00034 at *6 (citing *Scott v. Md. St. Dep't of Labor*, 673 F. App'x 299, 306 (4th Cir. 2016)).  Here, each of these factors weighs heavily in Defendants' favor.

First, the delay in service in this case was fully within the Plaintiffs' control. It is well reported and understood—including by Plaintiffs—that Gen. Hifter does not reside in Virginia, but Plaintiffs' nonetheless posted service at a Virginia address.  The fact that Defendants were known to be in Libya shows not only that the Plaintiffs had control over any delay, but also

illustrates that Defendants were not seeking to evade any attempts at service. Rather, they were unaware of the pending lawsuit as they were and remain engaged in the war in Libya.

Plaintiffs also did not act diligently in attempting to serve Defendants. Even the briefest research would lead to the conclusion that they do not live in Virginia and have not lived there for many years. Plaintiffs' Complaint even acknowledges that fact. Moreover, the remaining factors weigh in favor of Defendants because the Plaintiffs are represented by counsel, they did not request an extension of time before the deadline to properly Defendants, and Defendants will be prejudiced by the continuation of this matter as while they are engaged in the ongoing Libyan conflict.  Any request by Plaintiffs to receive an extension of time to serve Defendants should therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their Motion to Dismiss or, in the alternative, for Summary Judgment.

Dated: August 20, 2020                                 Respectfully submitted,


Duncan P. Levin, Esq.
Tucker Levin, PLLC
230 Park Avenue, Suite 440
New York, New York 10169
212-330-7626
dlevin@tuckerlevin.com
www.tuckerlevin.com
*Counsel for Defendants*


Edward J. Ungvarsky
VSB 83014
Ungvarsky Law, PLLC

22

114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com
*Local Counsel for Defendants*