THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MUNA AL-SUYID, ET AL., | ) | |
| | ) | Civ. No. 1:20-cv-00170-LMB |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| KHALIFA HIFTER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Duncan P. Levin, Esq.
Tucker Levin, PLLC
230 Park Avenue, Suite 440
New York, New York 10169
212-330-7626
dlevin@tuckerlevin.com
www.tuckerlevin.com

Edward J. Ungvarsky, Esq.
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com

## **TABLE OF CONTENTS**

**INTRODUCTION**................................................................................................1

**BACKGROUND** ...............................................................................................3

**ARGUMENT**....................................................................................................4

I.     PLAINTIFFS' ALLEGATIONS PRESENT A NON-JUSTICIABLE POLITICAL QUESTION......................................................................................................4

II.    GEN. HIFTER IS ENTITLED TO HEAD-OF-STATE IMMUNITY .............................8

III.   PLAINTIFFS HAVE NOT ADEQUATELY PLED A CLAIM UNDER THE TORTURE VICTIMS PROTECTION ACT .................................................................. 10

      A.     PLAINTIFFS DID NOT EXHAUST THEIR REMEDIES IN LIBYA ............... 10

      B.     GEN. HIFTER DID NOT KNOW NOR SHOULD HAVE KNOWN OF THE CONDUCT ALLEGED..................................................................... 11

      C.     THE ALLEGED KILLINGS WERE NEITHER EXTRAJUDICIAL NOR DELIBERATE ................................................................................ 13

IV.   DEFENDANTS WERE NOT PROPERLY SERVED AND PLAINTIFFS SHOULD NOT BE GIVEN TIME TO CURE ANY DEFICIENCY......................................... 14

V.    PLAINTIFFS' FAILURE TO DEFEND THEIR VIRGINIA STATE LAW CLAIMS CONSTITUTES ABANDONMENT OF THE CLAIMS ................................................ 17

**CONCLUSION** ............................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................1, 13

*Baker v. Carr*,
    369 U.S. 186 (1962)........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................ 12, 16

*Burma Task Force v. Sein*,
    Civ. Action No. 1:15-cv-07772 (S.D.N.Y. Feb. 12, 2016)................................................8

*Chavez v. Carranza*,
    559 F.3d 486 (6th Cir. 2009) ........................................................................................ 12

*Chiminya Tachiona v. Mugabe*,
    216 F. Supp. 2d 262 (S.D.N.Y. 2002)............................................................................ 11

*Doe v. Drummond Co.*,
    782 F.3d 576 (11th Cir. 2015) ...................................................................................... 12

*Dusenbery v. United States*,
    534 U.S. 161 (2002)...................................................................................................... 16

*E.E.O.C. v. St. Francis Xavier Parochial*,
    117 F.3d 621 (D.C. Cir. 1997)...................................................................................... 15

*Habyarimana v. Kagame*,
    696 F.3d 1029 (10th Cir. 2012) .....................................................................................8

*Harrell v. United States*,
    13 F.3d 232 (7th Cir.1993) .......................................................................................... 15

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011) ................................................................................7, 14

*Marbury v. Madison*,
    5 U.S. 137 (1803)...........................................................................................................7

*Muhammad v. Maryland*,
    No. ELH-11-3761, 2012 WL 987309 (D. Md. Mar. 20, 2012) ....................................... 17

*Painter v. Blue Ridge Reg'l Jail Auth.*,
　　No. 1:18-cv-052 (TSE/IDD) (E.D. Va. Nov. 14, 2018)................................................... 15

*Rosenberg v. Lashkar-E-Taiba*,
　　11- CV-3893 (DLI) (CLP) (E.D.N.Y. Mar. 31, 2017)....................................................9

*Saltany v. Reagan*,
　　702 F. Supp. 319 (D.D.C. 1988) .......................................................................................8

*Savang et al v. Lao People's Democratic Republic et. al.*,
　　Civ. Action No. 2:16-CV-02037 (E.D. Cal. July 13, 2017) ............................................8

*Schneider v. Kissinger*,
　　412 F.3d 190 (D.C. Cir. 2005) ......................................................................................5, 7

*Sheller–Paire v. Gray*,
　　888 F. Supp. 2d 34 (D.D.C. 2012) ................................................................................ 15

*Spacil v. Crowe*,
　　489 F.2d 614 (5th Cir. 1974) .........................................................................................6, 9

*Tawfik v. Sheikh Sabah al-Ahmad al-Jaber al-Sabah*,
　　11 Civ. 6455 (ALC) (JCF) (S.D.N.Y. Aug. 16, 2012)....................................................9

*Wainright v. Carolina Motor Club, Inc.*,
　　No. 1:03 CV 01185, 2005 WL 1168463 (M.D.N.C. Apr. 27, 2005).............................. 17

*Walker v. Mary Wash. Healthcare*,
　　Civil Action No. 3:15-cv-717 (E.D. Va. July 31, 2017).................................................. 17

*Warfaa v. Ali*,
　　33 F. Supp. 3d 653 (E.D. Va. 2014) ...............................................................................9

*Ye v. Zemin*,
　　383 F.3d 620 (7th Cir. 2004) ................................................................................... 6, 8, 9

*You et al v. Japan et. al.*,
　　Civ. Action No. 3:15-cv-03257 (N.D. Cal. Feb. 11, 2016) ............................................8

*Yousuf v. Samantar*,
　　1:04-cv-1360 (LMB/JFA) (E.D. Va. Aug. 28, 2012) ..................................................... 12

**OTHER MATERIALS**

Steve Holland, *White House says Trump spoke to Libyan commander Haftar on Monday*,
    Apr. 19, 2019, *available at* https://www.reuters.com/article/us-libya-security-
    trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-Monday-
    idUSKCN1RV0WW...................................................................................................6

# INTRODUCTION

Defendant General Khalifa Hifter is commander-in-chief of the Libyan National Army ("LNA"), as appointed by the duly elected Libyan House of Representatives, and he is entitled to the immunity that position affords him. As he commands the LNA, Gen. Hifter has been in direct communication with President Trump about mutual national interests, and the continuation of this case would necessarily impact the foreign policy of the U.S. Executive Branch. Moreover, no matter how graphically they are described, none of Plaintiffs' allegations actually support a claim against Gen. Hifter under the Torture Victims Protection Act ("TVPA"). Indeed, Plaintiffs do not even try to show how the other Defendants in this matter are involved in any of the conduct that they allege. And instead of properly serving notice of this matter, Plaintiffs left a copy at property where none of the Defendants reside. For any and all of these reasons, this case must be dismissed.

To survive a motion to dismiss, Plaintiffs' allegations must be substantiated—their Complaint cannot merely comprise speculation and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. Plaintiffs' theory of liability in this case is only that: mere speculation and conclusory statements. Even viewing the Complaint in their favor, Plaintiffs have failed to properly serve Defendants, have not met their burden to survive a motion to dismiss; ; and have not stated a claim upon which this Court can grant relief. Therefore, this Court should dismiss Plaintiffs' Complaint.

Allowing this case to proceed would require a finding that someone who resides outside of the United States, and who has been actively involved for many years in prosecuting a foreign war in Libya, can be properly served by leaving a copy of a complaint at a non-resident condominium property in Virginia. The Court would then, in order for this case to be able to move forward, also

have to conclude that Gen. Hifter is not entitled to immunity as a head of state, which is clearly not the case given his command of the LNA and his personal involvement in direct diplomatic efforts with the President of the United States. Finally, the Court would need to determine that this matter would not impact U.S. foreign policy interests outside those of the Judicial Branch, which is clearly not the case given the fragile negotiations that are underway in attempt to bring about peace in Libya. Those ongoing negotiations must involve both the current Administration and whichever Administration is in office in January, as well as U.S. allies and the other nations of the Middle East and North Africa.

But even if this Court holds that service was proper in this matter, that Gen. Hifter is not the head of state of Libya, and that the Executive Branch's foreign policy will be unaffected by this lawsuit, Plaintiffs' Complaint should nonetheless be dismissed for failure to state a claim under the TVPA. The arguments throughout Plaintiffs' Complaint that Defendants are liable under the TVPA are based on pure speculation—Plaintiffs cannot show that Defendants were involved in or directed the alleged incidents and are left hypothesizing that it "is at best improbable" that they were not responsible. Pls.' Opp. to Defs.' Mot. to Dismiss ("Pls.' Opp."), ECF. No. 47, at 18. Moreover, Plaintiffs allege *no* facts showing how Defendants Khalid and Saddam Hifter—Gen. Hifter's sons—are involved in any of the alleged conduct. Rather, Plaintiffs try to attach Gen. Hifter's sons by implication alone to their argument that Gen. Hifter is liable because the casualties allegedly occurred under his command. The case is simply devoid of any evidence, despite its graphic allegations.

Plaintiffs' principal theory of liability falls under the doctrine of command responsibility, which requires that an offense be committed under a superior's command and that the commander knew or should have known that the offense would occur and failed to take steps to prevent it from

happening. Plaintiffs, however, do not and cannot allege any facts showing that any of the Defendants either knew or should have known that the alleged conduct would occur or that they failed to take steps to prevent the conduct from occurring. Instead, Plaintiffs first miscomprehend the standard under the command responsibility doctrine by erroneously attempting to raise it to strict liability and next try to shift the burden onto Defendants to show that their improper standard has *not* been met.

Accordingly, in addition to the problems with service of process, the head of state immunity that Gen. Hifter should be afforded, and the non-justiciable political questions, this Court must also dismiss the Complaint because, notwithstanding their graphic nature, Plaintiffs' allegations do not support a claim under the TVPA against any of the Defendants.

## BACKGROUND

Defendant Gen. Hifter is a dual United States and Libyan citizen. The duly elected Libyan House of Representatives, the country's only legislature, appointed him commander of the LNA on March 2, 2015. Defendants Khalid and Saddam Hifter are Gen. Hifter's sons and are also officers in the LNA. Libya is currently in a state of civil war with the country divided between two major factions: the Libyan House of Representatives and LNA, and the Government of National Accord ("GNA"). The LNA is based in Tobruk and the GNA is based in Tripoli.

Gen. Hifter initially fled from Libya around 1987 under threat from Muammar Gaddafi's government and moved to the United States where he became a source for the Central Intelligence Agency. In 2011, Gen. Hifter returned to Libya from the United States to support the Libyan Revolution. In February 2014, Libya broke out into a second civil war in which Gen. Hifter led military operations to reunify the country, including in what is known as "Operation Dignity."

Currently, Libya remains embroiled in that civil war. Plaintiffs' allegations pursuant to the TVPA are raised in this context .

On February 18, 2020, Plaintiffs filed suit against Defendants and attempted to effectuate service on March 14, 2020, through a private process server who purportedly posted the summons and complaint at a condominium in Falls Church, Virginia and mailed a copy of the alias summons and complaint to each Defendant. Defendants, however, never received notice nor were notified of it. In the absence of Defendants' entry or response in this matter, U.S. Magistrate Judge Anderson issued a Report and Recommendation on June 17, 2020, which recommended that default judgment be entered against Defendants.

On or around July 31, 2020,  Defendants became aware of the lawsuit and notified the Court that they wished to enter an appearance. The Court permitted Defendants to respond to the Complaint, which they did on August 20, 2020. That response is presently before the Court in Defendants' Motion to Dismiss the Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).

## ARGUMENT

## I.   PLAINTIFFS' ALLEGATIONS PRESENT A NON-JUSTICIABLE POLITICAL QUESTION.

Gen. Hifter has represented Libya directly before President Trump, and the continuation of this matter would inherently interfere with President Trump's ability to conduct U.S. foreign policy with Gen. Hifter. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opposition") misconstrues the very clear caselaw on non-justiciable political questions. The central point, clearly missed by Plaintiffs, is that Gen. Hifter's position and role in Libya respectfully preclude the Judicial Branch from intervening in matters that could interfere with the political branches' dealings with Gen. Hifter and the rest of the Government of Libya.

The political question argument does not rise and fall on whether Defendants' acts are "official" ones—although it does not exclude that possibility. Plaintiffs completely miss the point by arguing that "the Executive Branch would not object on political question grounds because it is the United States' official policy to oppose those crimes." Pls.' Opp., ECF. No. 47, at 7. Furthermore, Plaintiffs mistakenly argue that "[t]he issue here is not whether the U.S. Government should support Defendant [Gen. Hifter]." *Id.* at 8. These propositions are a distraction. Regardless of whether the United States objects to the alleged incidents or supports any party to this matter (although, as follows, the U.S. Administration does support Gen. Hifter), the issue is whether this litigation itself could interfere with the Executive Branch's ability to conduct U.S. foreign policy. The answer is clear—it can and does.

The political question doctrine prevents a court from exercising jurisdiction over a case in which the underlying issues are committed to the political branches. *Schneider v. Kissinger*, 412 F.3d 190, 193 (D.C. Cir. 2005). Courts consider six factors to determine whether a case presents a political question: "[1] textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment of multifarious pronouncements by various departments on one question." *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962)).Only one of the *Baker v. Carr* factors needs to be present to prevent a court from exercising jurisdiction over the case. 412 F.3d at 193.

Here, allowing this case to proceed would potentially disrupt ongoing negotiations between the United States and Libya. Furthermore, to proceed, the Court would necessarily have to reach a determination that Gen. Hifter is not immune as the head of state of Libya—a determination that has been deemed by the courts to be in the discretion of the Executive Branch. *See Ye v. Zemin*, 383 F.3d 620, 626 (7th Cir. 2004); *Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974). These issues affect not just relations between the United States and Libya, but they also have U.S. foreign policy implications for the relationships between the United States and the countries of the entire Middle East and North Africa region, as the leadership of Libya will engage with neighboring countries and the United States on various regional and international priorities and objectives.

Plaintiffs argue that *Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) presents similar facts and that the court in *Mamani* rejected the political question argument. However, in *Mamani*, the defendants were the *former* president and defense minister of Bolivia. Here, instead of involving a former government official, this case involves a *current* commander-in-chief and head of state in Gen. Hifter who may become the sole leader of reunified Libya. As acknowledged by both parties, Libya is presently divided between two factions, and the United States is absolutely engaged in diplomatic discussions with Gen. Hifter. This is evident at the highest level of the Executive Branch, as Gen. Hifter has engaged directly with President Trump. *See e.g.*, Steve Holland, *White House says Trump spoke to Libyan commander Haftar on Monday*, Apr. 19, 2019, *available at* https://www.reuters.com/article/us-libya-security-trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-Monday-idUSKCN1RV0WW (observing that the United States needs Gen. Hifter's "support in building democratic stability there in the region"). General Hifter's ongoing, current role at the top of the Libyan government is precisely why the political question doctrine applies here even if it did not in *Mamani*.

6

Furthermore, in *Mamani*, the court reasoned that "[t]he United States government notified the district court that it had received a diplomatic note from the current government of Bolivia in which the government of Bolivia formally waived any immunity that defendants might otherwise enjoy." *Mamani v. Berzain*, 654 F.3d 1148, 1151 (11th Cir. 2011). That lawsuit not only involved previous government officials, but the sitting Bolivian government expressly stated that it did not request immunity for those officials. Any United States foreign policy objectives in that matter therefore would not be negatively impacted in the same way that they would in the instant matter if this Court allows this lawsuit to proceed. Moreover, the Administration's goals with respect to Libya may change following the coming election and inauguration next January. Accordingly, the Court should not allow a matter to proceed that might interfere with the foreign policy decisions that this Administration or the next Administration wishes to pursue in Libya.

Plaintiffs also seemingly question the relevance of *Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005) and *Yousuf v. Samantar*, 552 F.3d 371 (4th Cir. 2009) because the political questions at issue were not specific to TVPA claims. The political question doctrine, however, applies regardless of the precise nature of the underlying issues presented. As the D.C. Circuit explained:

> Chief Justice Marshall first expressed the recognition by the judiciary of the existence of a class of cases constituting 'political act[s], belonging to the executive department alone, for the performance of which entire confidence is placed by our Constitution in the supreme executive; and for any misconduct respecting which, the injured individual has no remedy.'

*Schneider*, 412 F.3d at 193 (citing *Marbury v. Madison*, 5 U.S. 137, 164 (1803). Here, the Plaintiffs' Complaint clearly presents a non-justiciable political question because of the sensitive, dynamic nature of the ongoing conflict in Libya and the *current* role of Defendants—particularly Gen. Hifter—in that arena. Accordingly, Plaintiffs' Complaint should be dismissed.

## II.       GEN. HIFTER IS ENTITLED TO HEAD-OF-STATE IMMUNITY.

Gen. Hifter was appointed by the Libyan House of Representatives as commander-in-chief of the LNA, and he is entitled to the immunity that position affords him. Within Plaintiffs argument that head-of-state immunity is "rarely granted" is the concession that it exists and has been recognized by the courts including in cases alleging, *inter alia*, torture, genocide, and arbitrary arrest and imprisonment. *See, e.g., Ye v. Zemin*, 383 F.3d at 626 ("The obligation of the Judicial Branch is clear—a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff."); *See also Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012) ("We must accept the United States' suggestion that a foreign head of state is immune from suit—even for acts committed prior to assuming office—as a conclusive determination by the political arm of the Government that the continued [exercise of jurisdiction] interferes with the proper conduct of our foreign relations." (internal quotations marks omitted)).

Under 28 U.S.C. § 517, the United States has in similar cases stepped in to file a Suggestion of Immunity with the court. *See e.g.*, *Burma Task Force v. Sein*, Civ. Action No. 1:15-cv-07772, ECF No. 14 (S.D.N.Y. Feb. 12, 2016); *You et al v. Japan et. al.*, Civ. Action No. 3:15-cv-03257, ECF No. 167 (N.D. Cal. Feb. 11, 2016); *Savang et al v. Lao People's Democratic Republic et. al.*, Civ. Action No. 2:16-CV-02037, ECF. No. 26 (E.D. Cal. July 13, 2017). Plaintiffs necessarily acknowledge the doctrine. "[i]t is settled law that 'a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff.'" Pls.' Opp., ECF. No. 47, at 10 (citations omitted). When the Executive Branch determines that a head of state or head of government is immune from suit, judicial deference to that determination is required. *Saltany v.*

*Reagan,* 702 F. Supp. 319, 320 (D.D.C. 1988). This deference is predicated on constitutional considerations arising out of the Executive's authority to conduct foreign affairs. *See Ye v. Zemin*, 383 F.3d at 626.

Moreover, judicial deference to the Executive Branch in such matters is "motivated by the caution we believe appropriate of the Judicial Branch when the conduct of foreign affairs is involved." *Id.*; *see also Spacil v. Crowe*, 489 F.2d at 619 ("Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy."). Even where the United States does not proactively enter a matter to assert immunity, courts may request that the United States file a Statement of Interest in a pending matter. *See e.g.*, *Rosenberg v. Lashkar-E-Taiba*, 11- CV-3893 (DLI) (CLP) (E.D.N.Y. Mar. 31, 2017); *Tawfik v. Sheikh Sabah al-Ahmad al-Jaber al-Sabah*, 11 Civ. 6455 (ALC) (JCF) (S.D.N.Y. Aug. 16, 2012). This very Court has done precisely that in another TVPA case. *See* Letter from the Court to the U.S. Department of State, June 21, 2013, *Warfaa v. Ali*, 33 F. Supp. 3d 653 (E.D. Va. 2014) (ECF No. 71, Civ. Action No. 1:05-cv-00701-LMB-JFA) (requesting that the State Department express its views on immunity as well as whether discovery in would interfere with U.S. foreign policy).

Plaintiffs seemingly advance two contrary arguments in seeking to support their claims, both of which cannot possibly be true at the same time: Gen. Hifter is not a head of state for purposes of determinations of immunity and political question purposes, but he and his sons "hold positions of power, including control over the country's military apparatus, and dominate the court systems." Pls.' Opp., ECF. No. 47, at 13. Further, the Plaintiffs explain that "Hifter and his sons command the LNA, which now controls most of Libya and might soon overrun Tripoli itself." *Id.*

at 14. The Court should not countenance Plaintiffs' seeking to approbate Gen. Hifter's position depending upon their immediate legal argument.

Furthermore, Plaintiffs dismiss statements made by President Trump as "offhand" in attempt to diminish his state-to-state communications with Gen. Hifter and misconstrue media reporting that Gen. Hifter is the head of state. *Id*. at 11. Although Plaintiffs claim that Gen. Hifter is not head of state, and having to accept that the House of Representatives—a legislature—cannot itself be the head of state, nowhere do the Plaintiffs explain exactly their perspective as to who is the Libyan head of state. That is because as the commander-in-chief of the LNA, Gen. Hifter *is* the head of state. He is thus entitled to immunity, and Plaintiffs' Complaint should be dismissed.

## III.   PLAINTIFFS HAVE NOT ADEQUATELY PLED A CLAIM UNDER THE TORTURE VICTIMS PROTECTION ACT.

The facts alleged by Plaintiffs, although described in graphic detail, even taken as true, do not support a claim against the Defendants under the TVPA. Plaintiffs' Complaint accordingly should be dismissed for failure to state a claim upon which relief can be granted.

### A.   PLAINTIFFS' DID NOT EXHAUST THEIR REMEDIES IN LIBYA.

As described above, Plaintiffs appear to shift gears, and with respect to the TVPA's requirement that a claimant must exhaust all domestic remedies, contend that Defendants "hold positions of power, including control over the country's military apparatus, and dominate the court systems." Pls.' Opp., ECF. No. 47, at 13. Furthermore, they contend that Defendants "command the LNA, which now controls most of Libya and might soon overrun Tripoli." *Id*. at 14. They thus contend that his control over the country and its judiciary prevents them from even initiating, let alone exhausting, remedies before the Libyan courts for purposes of the TVPA's requirements.

Plaintiffs, however, have not alleged any facts showing what, if any, attempts have made to seek remedies in Libya. This is despite the TVPA's requirement that Plaintiffs to exhaust their

local remedies before seeking relief in U.S. courts, and they have not even attempted to do so. Plaintiffs cite to *Chiminya Tachiona v. Mugabe*, 216 F. Supp. 2d 262 (S.D.N.Y. 2002), to support their argument that they cannot seek remedies in Libya because doing so would be futile. Pls.' Opp., ECF. No. 47, at 14. In that case, however, the plaintiffs alleged substantial facts in support of their allegation that they could not seek domestic remedies. For example, the plaintiffs in *Tachiona* alleged that the defendant, the then-president of Zimbabwe, "disregarded a number of Zimbabwean High Court rulings" and complaints against the him were ignored. *Chiminya Tachiona v. Mugabe*, 216 F. Supp. 2d at 275. Such factual allegations demonstrate specific, concrete reasons why domestic remedies were unavailable to the plaintiffs. Here, where no such facts have been alleged, Plaintiffs must first be required to exhaust their remedies in Libya before availing themselves of this Court.

### B. GEN. HIFTER DID NOT KNOW NOR SHOULD HAVE KNOWN OF THE CONDUCT ALLEGED.

Plaintiffs' theory of liability under the command responsibility doctrine is built on a set of assumptions and conclusory statements that are divorced from the pleaded facts. To start, the majority of Plaintiffs' allegations concern Gen. Hifter and not his sons. Plaintiffs attempt to implicate his sons by referring to "Defendants" in the plural and referencing "his sons" in connection with Gen. Hifter, but nowhere do Plaintiffs allege any *facts* showing that Gen. Hifter's sons were involved in or directed the alleged incidents as required by the TVPA.

Additionally, Plaintiffs, in an apparent attempt to expand the scope of the command responsibility doctrine, misguide the Court on the doctrine's scope. Plaintiffs do not provide any legal support or citation for their suggestion that "[a] military commander is responsible for everything his or her unit does or fails to do." Pls.' Opp., ECF. No. 47, at 16. They do not do so, and they cannot do so—because that is not the standard. Three elements must be met to establish

liability through the command responsibility doctrine: "(1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes." *Doe v. Drummond Co*., 782 F.3d 576, 609 (11th Cir. 2015); *see also Yousuf v. Samantar*, 1:04-CV-1360 (LMB/JFA), at *26 (E.D. Va. Aug. 28, 2012) (quoting *Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009)). Contrary to Plaintiffs' implication, the relevant standard is not strict liability.

Because Plaintiffs cannot prove liability under it the actual, established legal standard, they resort instead to baseless assumptions and speculation. For example, the Plaintiffs hypothesize that "Hifter at the very least *should have* known what happened to Plaintiffs" and that "[t]he suggestion that these LNA officers were somehow strangers to, or beyond the control of, Khalifa Hifter or his sons, is at best improbable." Pls.' Opp., ECF. No. 47, at 16, 18. Instead of showing how Gen. Hifter allegedly meets the requirements for liability under the command and control doctrine and the TVPA, Plaintiffs only suggest that Defendants "tellingly" do not provide any evidence or even allegations. *Id*. at 18. Plaintiffs' baseless assumptions and conclusions seek to reverse Plaintiffs' burden and cannot survive a motion to dismiss.

The standard for surviving a motion to dismiss is clear: the Plaintiffs' Complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (internal citations omitted). A plaintiff's factual allegations must "be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a complaint "that offers labels and conclusions" and

"naked assertions devoid of further factual enhancement" does not suffice. *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal citations omitted). Plaintiffs' Complaint does not suffice.

Plaintiffs do not substantiate their allegations that Gen. Hifter knew that the alleged conduct would occur. Nor do Plaintiffs explain how Defendants should have known that the alleged conduct would occur, and, explain how, if they should have known that the alleged conduct would occur, they failed to take any actions to prevent it from occurring. Rather, Plaintiffs argue that it is "improbable" that Defendants did not know, and that "at the very least" Defendants should have known. Pls.' Opp., ECF. No. 47, at 16, 18. Plaintiffs do not and cannot allege the specific facts needed to support a theory of liability under the command responsibility doctrine because their allegations are speculative of what they believed occurred during the conduct of a civil war between two factions in Libya.

Notably, because Plaintiffs cannot point to specific facts, they instead reiterate paragraphs from the Complaint throughout their Opposition. But simply repeating those allegations does not provide support for any theory of liability. The motion to dismiss standard requires the moving party to support such allegations beyond mere speculation and baseless assumptions. Plaintiffs' theory of liability in this case however relies on just that. The incidents alleged by Plaintiffs did not occur with Defendants' knowledge or any reason to know that they would occur.

## C.   THE ALLEGED KILLINGS WERE NEITHER EXTRAJUDICIAL NOR DELIBERATE.

Plaintiffs acknowledge that the TVPA does not create liability for "collateral civilian causalities resulting from legitimate military operations undertaken in a civil war" because "good-faith accidents and errors tragically happen in the fog and friction of war." Pls.' Opp., ECF. No. 47, at 20.

13

The incidents alleged in this case were neither deliberate nor extrajudicial. Plaintiffs attempt to distinguish *Mamani v. Berzain* by simply stating that the alleged incidents here were undertaken with studied consideration and purpose. In citing *Mamani*, Plaintiffs suggest that these alleged causalities were not the result of an ongoing civil uprising or were the result of negligence. *Id.* at 22. In *Mamani*, however, the court explained, "Given these pleadings, alternative explanations (other than extrajudicial killing) for the pertinent seven deaths easily come to mind; for instance, the alleged deaths are compatible with accidental or negligent shooting (including mistakenly identifying a target as a person who did pose a threat to others), individual motivations (personal reasons) not linked to defendants, and so on." *Mamani v. Berzain*, 654 F.3d at 1155. Here, the Plaintiffs do not show that there are no other explanations for the alleged deaths that occurred. And, if these incidents took place, they reasonably could have been the result of LNA members acting of their own volition during combat in a military offensive during a broader civil war. Thus, Plaintiffs cannot show any facts demonstrating that the alleged events and purported killings were undertaken with studied consideration and purpose.

## IV.   DEFENDANTS WERE NOT PROPERLY SERVED AND PLAINTIFFS SHOULD NOT BE GIVEN TIME TO CURE ANY DEFICIENCY.

Plaintiffs' assertions that Defendants were properly served, or that they had actual notice of the Complaint, are wholly invalid. Plaintiffs argue that they properly served Defendants because they left the Complaint at a condominium in Virginia and mailed the Complaint to Defendants. However, Plaintiffs' purported service under the state law of the Commonwealth of Virginia is invalid because the address at which Plaintiffs allege they posted the Complaint is not Defendants' usual place of abode.

Plaintiffs first make the unsupported argument that the authority cited by Defendants to explain that property ownership alone does not indicate residence is irrelevant due to the advent of the internet. Pls.' Opp., ECF. No. 47, at 23. This is not the law.

Furthermore, Plaintiffs seemingly suggest that a United States Supreme Court authority is irrelevant because *Earle v. McVeigh* is "a 145-year-old case which predates pertinent modern communications and travel technologies such as telephones and airplanes." *Id*. This still does not explain how Plaintiffs properly served Defendants. Further, Defendants' arguments are supported by the fact that *Painter v. Blue Ridge Reg'l Jail Auth*., which relies on *Earle v. Mcveigh*, is a 2019 case. In *Painter v. Blue Ridge Reg'l Jail Auth.*, the court explained ownership alone does not necessarily mean that a person lives at that property, and because the defendant in that case did not live at the address where the plaintiff posted service, the defendant was not adequately apprised of the pending lawsuit nor afforded an opportunity to be heard. *Painter v. Blue Ridge Reg'l Jail Auth.*, No. 1:18-cv-052 (TSE/IDD), *4 (E.D. Va. Nov. 14, 2018).

In addition, Plaintiffs try to introduce new allegations that were not pled in their Complaint to argue that Defendants were adequately apprised of this lawsuit. This invitation should be rejected. *Sheller–Paire v. Gray*, 888 F. Supp. 2d 34, 39 n.3 (D.D.C. 2012) ("[T]he Court need not accept additional allegations inserted in a document, such as an opposition memorandum, that is not a complaint or amendment to the complaint." (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993))); *E.E.O.C. v. St. Francis Xavier Parochial*, 117 F.3d 621, 624-25 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, [this Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint are matters of which [this Court] may take judicial notice."). Specifically, Plaintiffs reason that their further allegations that certain property taxes were paid, that Gen. Hifter

purportedly visited his grandchildren, and that a plane registered in his name was in the United States all somehow demonstrate that the address at which the Plaintiffs purported to effectuate service is the Defendants' usual place of abode. Pls.' Opp., ECF. No. 47, at 24. This is not the case.

Service under Va. Code Ann.§ 8.0l-296(2)(b) must occur at the Defendants' usual place of abode, meaning that the Defendant would be adequately apprised of the lawsuit upon their return home. It is clear and acknowledged by all parties that Defendants do not reside in Virginia. By Plaintiffs' logic, under Virginia law, Defendants would be required to fly from Libya to the United States regularly to make sure that no lawsuits had been posted on their doorstep. Moreover, given the litany of media and open source reporting cited by Plaintiffs regarding Defendants' presence in Libya, it stretches credulity that Plaintiffs believed that Defendants reside in Virginia. Each of the Defendants reside in Libya, and the service in this case at a condominium in Virginia was therefore improper.

Finally, the Plaintiffs argue that Defendants had actual notice because the case was reported in the news, and that because al-Jazeera has millions of Facebook and Twitter followers that the Defendants must have been aware of the lawsuit. Again, this is not the law. *See Dusenbery v. United States*, 534 U.S. 161, 170 n.5 (2002) (equating "actual notice" with "receipt of notice"). Again, instead of presenting factual allegations, Plaintiffs rely on the argument that they deem it "implausible" that Defendants were not aware of this matter. Pls.' Opp., ECF. No. 47, at 25. Such insinuations are completely divorced from the motion to dismiss standard—*i.e.*, that allegations be substantiated and more than speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. There is no "overwhelming" evidence, as Plaintiffs suggest, that Defendants knew about this case. To the contrary, Defendants did not receive notice, and the Plaintiffs' baseless assumptions do not change

that fact. Accordingly, this lawsuit should be dismissed for failure to properly serve the Defendants, and Plaintiffs should not be given time to cure their deficiencies.

## V.   PLAINTIFFS' FAILURE TO DEFEND THEIR VIRGINIA STATE LAW CLAIMS CONSTITUTES ABANDONMENT OF THOSE CLAIMS.

"Courts have ruled that a plaintiff's failure to respond to an argument seeking dismissal constitutes an abandonment of the challenged claim." *Walker v. Mary Wash. Healthcare*, Civil Action No. 3:15-cv-717, at *9 (E.D. Va. July 31, 2017); *See, e.g.*, *Muhammad v. Maryland*, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."); *Wainright v. Carolina Motor Club, Inc.*, No. 1:03 CV 01185, 2005 WL 1168463, at *13 (M.D.N.C. Apr. 27, 2005) ("Plaintiff's failure to argue this claim is tantamount to abandonment of the claim."). Here, because the Plaintiffs have not argued that their Virginia state tort law claims are within the statute of limitations, Plaintiffs have therefore conceded that they are not and abandoned those claims.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss or, in the alternative, for Summary Judgment.

Dated: September 16, 2020                                    Respectfully submitted,

                                                             Duncan P. Levin, Esq.
                                                             Tucker Levin, PLLC
                                                             230 Park Avenue, Suite 440
                                                             New York, New York 10169
                                                             212-330-7626
                                                             dlevin@tuckerlevin.com
                                                             www.tuckerlevin.com

/s/ EDWARD J. UNGVARSKY
Edward J. Ungvarsky, Esq.
Ungvarsky Law, PLLC
114 North Alfred Street
Alexandria, VA 22314
571-207-9710
ed@ungvarskylaw.com
www.ungvarskylaw.com