**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MUNA AL-SUYID, individually and on behalf of the | : | |
| estates of her family members ABDEL SALAM | : | |
| AL-SUYID, IBRAHIM AL-SUYID, KHALID | : | |
| AL-SUYID and MUSTAFA AL-SUYID, and | : | |
| ABDALLA AL-KRSHINY, AHMAD AL-KRSHINY, | : | |
| MAHMUD AL-KRSHINY, | : | |
| and IBRAHIM AL-KRSHINY, individually | : | |
| and on behalf of his family member ALI AL-KRSHINY | : | |
| and MUSTAFA AL-KRSHINY, | : | |
| | : | Civil Action No. |
| | : | 1:20-cv-00170-LMB-JFA |
| Plaintiffs, | : | |
| | : | |
| | : | |
| KHALIFA HIFTER, | : | MARCH 12, 2021 |
| | : | |
| Defendant. | : | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**
**DEFENDANT'S AFFIRMATIVE DEFENSES**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS .............................................................................................. 2

  I.  Factual Background ................................................................................................. 2

  II.  Procedural History ................................................................................................ 3

    A.  Relevant Background ....................................................................................... 3

    B.  The Motion to Dismiss..................................................................................... 4

      1.  Rule 12(b)(1) Arguments ............................................................................ 4

      2.  Rule 12(b)(6) Arguments ............................................................................ 6

      3.  Rule 12(b)(5) Arguments ............................................................................ 7

    C.  The Court's September 29, 2020, Order Granting in Part and  Denying in Part Defendants' Motion to Dismiss .................................................................... 7

    D.  The State Department's Refusal to Submit a Statement of Interest................................. 8

    E.  Defendant's Answer.......................................................................................... 9

ARGUMENT ................................................................................................................. 10

  I.  Each Affirmative Defense Fails to Provide Plaintiffs with Fair Notice ............................ 12

  II.  Defendant's First, Second, Third, Fourth, Fifth, Tenth, and Eleventh Affirmative Defenses are Legally Invalid ................................................................................. 13

    A.  The Statute of Limitations and Laches Defenses Lack a Valid Premise ...................... 14

    B.  Failure to State a Claim is an Improper Affirmative Defense ......................................... 14

    C.  Immunity is Inapplicable to Jus Cogens Violations Alleged in the Complaint.............. 15

    D.  The Political Question Doctrine is Inapplicable ............................................................ 17

  III.  Alternatively, the First, Second, Third, and Eleventh Affirmative Defenses  Should be Stricken under the Law of the Case Doctrine.................................................... 18

CONCLUSION................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Aida Elzagally, et al. v. Khalifa Hifter, et al.</u>,
19 Civ. 853 (Sept. 29, 2020 E.D. Va.) ............................................................ *passim*

<u>Ashcroft v. Iqbal</u>,
556 U.S. 662 (2009) ...............................................................................................13

<u>Banks v. Realty Mgmt. Serv., Inc.</u>,
2010 WL 420037 (E.D. Va. Jan. 29, 2010) ..........................................................10

<u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544 (2007) ...............................................................................................13

<u>Blonder Tongue Lab v. Univ. of Ill. Found.</u>,
402 U.S. 313 (1971) ...............................................................................................11

<u>Brown v. Wells Fargo Bank, N.A.</u>,
2012 WL 13214663 (D.D.C. Oct. 1, 2012) ...........................................................12

<u>Cabello v. Fernandez Larios</u>,
402 F.3d 1148 (11th Cir. 2005) .............................................................................14

<u>Cheney v. Vitro Am., Inc.</u>,
2010 WL 512581 (W.D. Va. 2010) ........................................................................15

<u>Chuidian v. Philippine Nat'l Bank</u>,
912 F.2d 1095 (9th Cir. 1990) ...............................................................................16

<u>Clem v. Corbeau</u>,
98 F. App'x 197 (4th Cir. 2004) ............................................................................11

<u>Comm. & Indus. Ins. Co. v. Newhall Contracting Inc.</u>,
2014 WL 4161971 (S.D. W.Va. Aug. 19, 2014) ...................................................11

<u>Drapkin v. Mjalli</u>,
441 F. Supp. 3d 145 (M.D.N.C. 2020) ..................................................................13

<u>Enahoro v. Abubakar</u>,
408 F.3d 877 (7th Cir. 2005) .................................................................................16

<u>Entek GRB, LLC v. Stull Ranches, LLC</u>,
840 F.3d 1239 (10th Cir. 2016) .............................................................................19

Finjan, Inc. v. ESET, LLC,
   2017 WL 3149642 (S.D. Cal. July 24, 2017) ........................................................12

Flame S.A. v. Indus. Carriers, Inc.,
   2014 WL 2871432 (E.D. Va. June 24, 2014) ........................................................11

Golden Valley Nutrition, LLC v. ImmunoNutrient Labs., Inc.,
   2018 WL 7341677 (E.D. Va. Sept. 28, 2018)........................................................10

Goodman v. Proxair, Inc.,
   494 F.3d 458 (4th Cir. 2007) ...............................................................................18

Hanzlik v. Birach,
   2009 WL 2147845 (E.D. Va. July 14, 2009) ...................................................11, 13

Hayne v. Green Ford Sales, Inc.,
   263 F.R.D. 647 (D. Kan. 2010)............................................................................14

Hilao v. Estate of Marcos,
   25 F.3d 1467 (9th Cir. 1994) ...............................................................................15

United States ex rel. Landis v. Tailwind Sports Corp.,
   308 F.R.D. 1 (D.D.C. 2015)................................................................................15

Malibu Media, LLC v. Popp,
   2015 WL 10937405 (E.D. Va. Apr. 13, 2015) ................................................11, 14

Microsoft Corp. v. Comp. Support Servs. of Carolina Inc.,
   123 F. Supp. 2d 945 (W.D.N.C. 2000)..........................................................11, 13

Odyssey Imaging, LLC v. Cardiology Assocs. of Johnson, LLC,
   752 F. Supp. 2d 721 (W.D. Va. 2010) ..................................................................15

Palmer v. Oakland Farms, Inc.,
   2010 WL 2605179 (W.D. Va. June 24, 2010) ................................................13, 14

Powertech Tech., Inc. v. Tessera, Inc.,
   2012 WL 1746848 (N.D. Cal. May 16, 2012) .......................................................18

Racick v. Dominion Law Assocs.,
   270 F.R.D. 228 (E.D.N.C. 2010) .........................................................................11

Riddick v. Watson,
   2020 WL 6939730 (E.D. Va. Nov. 25, 2020).......................................................19

Ross v. Am. Express Co.,
   264 F.R.D. 100 (S.D.N.Y. 2010) .........................................................................13

iii

Samantar v. Yousuf,
    560 U.S. 305 (2010)....................................................................................8, 15

Telectronics Proprietary, Ltd., v. Medtronic, Inc.,
    687 F. Supp. 832 (S.D.N.Y. 1988) ...............................................................13

Topline Solutions, Inc. v. Sandler Sys., Inc.,
    2010 WL 2998836 (D. Md. July 27, 2010)....................................................13

TFWS, Inc. v. Franchot,
    572 F.3d 186 (4th Cir. 2009) ........................................................................18

United States v. Cunningham,
    2009 WL 3350028 (E.D. Va. Oct. 15, 2009)..................................................18

Waites v. Wells Fargo Bank, N.A.,
    2016 WL 659084 (E.D. Va. Feb. 16, 2016)....................................................19

Warfaa v. Ali,
    33 F. Supp. 3d 653 (E.D. Va. 2014) ...............................................................8

Ye v. Zemlin,
    383 F.3d 620 (7th Cir. 2004) ........................................................................16

Yousuf v. Samantar,
    552 F.3d 371 (4th Cir. 2009), aff'd Samantar v. Yousuf, 560 U.S. 305 (2010) ....................15

Yousuf v. Samantar,
    699 F.3d 763 (4th Cir. 2012) ........................................................................16

Zaklit v. Glob. Linguist Sols, LLC
    53 F. Supp. 3d 835 (E.D. Va. 2014) .............................................................18

Zamma Canada Ltd. v. Zamma Corp.,
    2020 WL 7083940 (E.D. Va. Dec. 3, 2020) ..................................................10

**Statutes**

28 U.S.C. § 517....................................................................................................8

**Other Authorities**

T. Leigh Anenson, Announcing the Clean Hands Doctrine, 51 U.C. DAVIS L. REV.
    1827, 1841 (June 2018)..................................................................................12

John R. Knight, The Law of the Case Doctrine: What Does it Really Mean, 43
    FEDERAL LAWYER 1, 8 (Oct. 2018)...............................................................18

## INTRODUCTION

Defendant Khalifa Hifter – a United States citizen and resident of this District – stands credibly accused of committing human rights violations in Benghazi against Plaintiffs and their families. Having narrowly avoided entry of a default judgment in this case, having failed to dispose of Plaintiffs' Torture Victims Protection Act claims, and having lost his initial counsel following the State Department's refusal to offer a statement of interest on his behalf, Defendant's Answer filed by his new counsel on February 19, 2021 [Dkt 66] pays mere lip service to the severity of the allegations against him. Simply put, the Answer amounts to a shotgun pleading.

In particular, the Answer asserts eleven boilerplate affirmative defenses, each of which merely cites a legal doctrine that purportedly bars Plaintiffs' claims. The affirmative defenses laid out in the Answer are so barebones that Plaintiffs can only guess as to the theories upon which each affirmative defense lies and, thus, do not provide Plaintiffs with the fair notice required by Federal Rule of Civil Procedure 8(b)(1). Whatever constitutes the bare minimum pleading requirements for affirmative defenses, Defendant's Answer misses the mark.

While courts disfavor striking affirmative defenses with prejudice, certain of Defendant's affirmative defenses are so meritless that Defendant should not be permitted to amend them. Specifically: Defendant should not be permitted to replead his:

- Fourth and Tenth Affirmative Defenses for statute of limitations and laches, respectively, as the atrocities recounted in Plaintiffs' Complaint occurred well within the ten-year limitations period provided for TVPA claims;

- Eleventh Affirmative Defense for failure to state a claim, which courts in this Circuit uniformly dispose of as an improper affirmative defense;

- First, Second, Third, and Fourth Affirmative Defenses for head-of-state immunity, sovereign immunity, and foreign official act immunity, respectively, and the political question doctrine, each of which are inapplicable as a matter of law where, as here, the defendant is an individual

1

government official charged with plausible jus cogens violations and whom the U.S. Government refuses to deem the "head" of a foreign sovereign.

## STATEMENT OF FACTS

### I.        Factual Background

Plaintiffs, the Suyids and Krshinys, are two families in Benghazi, Libya. Compl. ¶¶ 9-13. In October 2014, troops under orders from Defendant Khalifa Hifter stormed these families' homes, killed several of their family members, and tortured and/or executed the survivors without trial. Id. ¶¶ 26-46.

Defendant is a United States citizen, resident of the Eastern District of Virginia, and owner of significant assets in this District. Id. ¶¶ 17-18. Since 2014, Defendant has served as field marshal in the Libyan National Army ("LNA"). Id. ¶¶ 24-25. In October 2014, the LNA launched an operation to kill named opponents in Benghazi, including members of Plaintiffs' families. Defendant's spokesperson and propogandist called for them to be "liquidated" and ordered that no prisoners be taken. Id. ¶¶ 26-27. Plaintiffs were specifically targeted either because they lived in Benghazi and/or their Turkish ethnicity. Id. ¶ 67.

The LNA kidnapped Abdel Salam and Ibrahim al-Suyid. Forces under the command of Defendant's immediate subordinates tortured and executed these men while in custody, and killed Mustafa and Khalid al-Suyid as well. Id. ¶ 31.

Similarly, the LNA targeted – by name in a public announcement – the Krshiny family: they killed two brothers and took five prisoners from the family. Two of the prisoners were taken to Defendant's headquarters and beaten. One of them, Ibrahim, was tortured, including by electrocution, mutilated (losing an eye), and mock executed. The other, Mustafa, was found dumped on a roadside, tortured, and shot dead, execution-style, with his hands tied behind his back. Four other al-Krshiny brothers – Abdalla, Ahmad, Ali, and Mahmud – were captured, placed

2

in a truck, and shot while in custody in that vehicle. Ali was killed in the fusillade. Id. ¶¶ 34-35,

45.

The cruelty that the al-Suyids and Krshinys suffered at the hands of Defendant represents

but a fraction of the violence he has caused in Libya. Indeed, Defendant has endorsed extrajudicial

killings as a pillar of the LNA's tactics: "Never mind the consideration of bringing a prisoner here.

There is no prison here. The field is the field, end of story." Id. ¶ 46.

## II.      Procedural History

### A.      Relevant Background

Plaintiffs commenced this action on February 18, 2020, seeking to hold Defendant and his

sons – Khalid and Saddam – accountable for the unspeakable atrocities they committed against

Plaintiffs and/or members of their families. [Dkt 1] (referred to above as the "Compl."). The

Complaint asserted seven causes of action against all three Defendants:  violations of the Torture

Victims Protection Act, Pub. L. No. 102-256, 28 U.S.C. § 1350 note (the "TVPA") (Count I); Civil

Conspiracy (Count II); Wrongful Death (Count III); Battery (Count IV); Assault (Count V); False

Imprisonment (Count VI); and Intentional Infliction of Emotional Distress (Count VII).

Summonses and alias summonses issued on February 24, 2020 and March 10, 2020; the

latter being returned executed on March 20, 2020. [Dkt 20-22]. The Clerk of this Court entered

default on May 5, 2020. [Dkt 25]. A hearing took place on Plaintiffs' motion for default judgment

before United States Magistrate Judge John F. Anderson on June 12, 2020, Plaintiffs' moving

papers having been served on May 26, 2020. [Dkt 29-30]. Magistrate Judge Anderson issued a

Report & Recommendation on June 17, 2020, recommending that default judgment be entered on

behalf of Plaintiffs and that Plaintiffs be awarded damages in the amount of eighty million dollars

(the "R&R"). [Dkt 31].

However, before United States District Judge Leonie M. Brinkema could issue a ruling on the R&R, attorneys Duncan Levin, Esq. ("Attorney Levin") and Edward Ungvarsky, Esq. ("Attorney Ungvarsky") entered limited appearances on behalf of Defendants on July 31, 2020 [Dkts 32, 36]. At Defendants' then-counsel's request, the Court set aside the Clerk's order of default on August 6, 2020. [Dkts 33-35].

## B.    The Motion to Dismiss

Shortly after Attorneys Levin and Ungvarsky appeared on behalf of Defendants, Defendants moved to Dismiss the Complaint in its entirety on August 20, 2020. [Dkt 38]. In support thereof, Defendants filed a Memorandum of Law, in which they argued that all claims pressed in the Complaint should be disposed as to all Defendants under:  (1) Federal Rule of Civil Procedure ("Rule") 12(b)(1), on the ground that the Court lacks subject matter jurisdiction of the dispute as a non-justiciable political question and that Defendant, in particular, is immune as Libya's head-of-state; (2) Rule 12(b)(6) on the ground that Plaintiffs failed to adequately allege even their TVPA claims; and (3) Rule 12(b)(5) for insufficient service under state and federal law. [Dkt 39 ("Mem")].

### 1.    Rule 12(b)(1) Arguments

Defendants sought dismissal of the Complaint pursuant to Rule 12(b)(1), with respect to Defendant Khalifa Hifter in particular, arguing that even if each and every allegation in the Complaint were true (1) the Complaint presented nonjusticiable political questions, the full disposition of which would threaten to imperil the United States' executive branch's diplomatic interests in Libya and beyond and (2) Defendant Khalifa Hifter enjoyed common law head-of-state immunity that protected him from any liability. Mem. at 6-10.

4

Defendant's political-question argument was premised upon the two following theories, each of which arose from the broader notion that "[m]oving forward with this case w[ould] inherently impede the respect due to the political branches of government in the conduct of foreign affairs." Mem. at 7.

- Allowing the case to proceed would jeopardize the United States' efforts – apparently undertaken primarily through the U.S. Department of State (the "State Department") – to bring an end to the civil war in Libya through negotiations with Defendant Khalifa Hifter and the LNA. Mem. at 8. Defendant Khalifa Hifter principally emphasized the fact that "the United States Embassy in Libya [wa]s specifically in direct negotiations with [Defendant Khalifa] Hifter to reopen oil field terminals [in Libya] that ha[d] been under an eight-month blockade." Transcript at 12:2-6, Aida Elzagally, et al. v. Khalifa Hifter et al., 19 Civ. 853 (Sept. 29, 2020 E.D. Va.) [Dkt 44] ("Tr.").

- The Complaint would require "a U.S. court to adjudicate the conduct of the armed forces" – the LNA – "of a foreign government" – Libya – because the gruesome deaths and serious bodily injuries giving rise to the Complaint were the result of official acts of an existing foreign government in the midst of a "legitimate military mission in the course of Libya's civil war." Mem. at 8.

Importantly, neither Defendant nor his then-attorneys even sought the State Department or any other branch of the U.S. Government's views as to whether the Court's adjudication of this matter would, in fact, encroach upon its foreign policy goals. Tr. at 11:4-14.

Defendant's argument that he cannot be hailed into federal court because he enjoyed common law, head-of-state immunity similarly lacked foundation. See id. at 8. Indeed, the Memorandum of Law did not even describe with any specificity Defendant's role in Libya. See Mem. at 9 ("[Former] President Trump has recognized Gen. Hifter's legitimate role on behalf of the State of Libya[.]").

Rather, Defendant baldly asserted he was immune from suit in light of a single telephone conversation he had with former President Trump, in which then-President Trump "reportedly

'recognized Field Marshal Hifter's significant role in fighting terrorism and securing Libya's oil resources, and the two discussed shared vision for Libya's transition to a stable, democratic political system.'" Mem. at 9 (citing Al Jazeera, Trump Praises Haftar in Apparent Reversal of U.S. Policy on Libya, Apr. 20, 2019, available at https://www.aljazeera.com/news/2019/04/trump-calls-haftar-praises-significant-role-terrorism-fight-190419182035115.html).

### 2. Rule 12(b)(6) Arguments

Defendants further argued that even if the Court possessed subject-matter jurisdiction over the dispute, Plaintiffs failed to state a claim against them. Because this is at heart a TVPA case, only Defendants' arguments that Plaintiffs failed to state a TVPA claim are discussed below.[1] Specifically, Defendants argued:

- Plaintiffs' failure to exhaust adequate and available remedies in Libya, including through a judicial proceeding there, was fatal. Defendants argued that Plaintiffs could not merely rely upon the averment in the Complaint that Libya's dysfunctional judicial system made such efforts futile when they had not first attempted to initiate such proceedings. Mem. at 10-11.

- Plaintiffs failed to show that Defendant knew or should have known that his subordinates in the LNA committed or were planning to commit acts violative of the law of war, which is required to show command responsibility. Mem. at 13.

- Plaintiffs failed to allege that the killings and serious bodily injuries underlying the Complaint were "extrajudicial" or "deliberate", as required under the TVPA, as opposed to "collateral civilian casualties resulting from legitimate military operations undertaken in" the course of Libya's civil war. Mem. at 15.

---

[1] As set forth infra at 8, Plaintiffs' TVPA claim is the sole remaining claim in this action.

###### 3.      Rule 12(b)(5) Arguments

Finally, Defendants argued that Plaintiffs' purported service of process was invalid under federal and Virginia law because it did not adequately apprise Defendants of the pending lawsuit. Mem. at 18-20.

#### C.      The Court's September 29, 2020, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

On September 29, 2020, the Court held a hearing on Defendants' motion to dismiss, at which, following oral argument, it denied in part and granted in part Defendants' motion to dismiss. See generally Tr.[2] Put simply, the Court narrowed the scope of the Complaint by dismissing Defendant Khalifa Hifter's sons from the action, and allowing the TVPA claim, which the Court found well-pleaded, to proceed against Defendant Khalifa Hifter.

Specifically, the Court found as to Plaintiffs' TVPA claim that "[t]here are certain paragraphs in this complaint that have the kind of specificity that would clearly be sufficient at this pleading stage to allow the case to go forward [against Defendant Khalifa Hifter himself] under the command control doctrine." Tr. at 26:14-27:11. The logical conclusion of the Court's determination is that it rejected each argument put forward by Defendants in their Memorandum of Law that Plaintiffs' TVPA claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

The Court also found unpersuasive Defendant's argument that he was immune from suit pursuant to the common law doctrine of head-of-state immunity. Id. at 29:23-30:1. In fact, the Court rejected the notion that any type of immunity protected Defendant from the allegations in the Complaint, which, in the Court's view, constitute jus cogens violations. Id. ("[E]ven if

---

[2] The September 29, 2020 motions hearing was a joint one; Defendants also moved to dismiss on practically identical grounds the Complaint in Elzagally v. Haftar, 19 Civ. 853 [Dkts 32, 34].

[Defendant] had some sort of immunity, it doesn't protect [him] … in my view, not in these types of cases [where <u>jus</u> <u>cogens</u> violations are alleged.]").

Although the Court noted that, at the motion to dismiss stage, it was "not at all concerned about" whether the Complaint presented an improper political question that the Court lacked authority to adjudicate, the Court stated that it would "address a letter to the State Department advising them essentially of what is before the Court … and give the [State Department] an opportunity … to express its position." <u>Id.</u> at 30:8-15. The Court noted that it had undertaken the same approach "in the <u>Samantar</u> case." <u>Id.</u>; <u>see</u> <u>Warfaa v. Ali</u>, 33 F. Supp. 3d 653 (E.D. Va. 2014) (a companion case of <u>Samantar v. Yousuf</u>, 560 U.S. 305 (2010), in which the Court rejected defendant's argument that the TVPA claim raised a nonjusticiable political question, in part because defendant could not "identify a single decision of the Executive Branch that might justify application of the political question doctrine because no such decision has in fact been made").

### D.     The State Department's Refusal to Submit a Statement of Interest

Following the Court's order on September 29, 2020, it stayed the case for sixty days and, on October 26th, sent a letter to the State Department inviting it to submit a statement of interest regarding Defendant's contention that the Complaint presented nonjusticiable political questions that encroached upon the United States' foreign policy decision-making. [Dkt 53]. On January 4, 2021, the State Department filed a letter stating that it "appreciate[d] the Court's invitation to express its views [but] at this time … <u>decline[d]</u> to file a Statement of Interest pursuant to 28 U.S.C. § 517." [Dkt 54 (emphasis added)].

### E.     Defendant's Answer

Just one week after the State Department's letter, Attorneys Levin and Ungvarsky moved to withdraw as counsel for Defendant on January 11, 2021 Hifter. [Dkt 55]. The Court granted their motion on January 12, 2021. [Dkt 56].

On January 15, 2021, the Court ordered that the stay imposed on September 29, 2020, be lifted, and set a deadline of February 5, 2021, for Defendant to Answer the Complaint to avoid a second default and face entry of judgment. [Dkt 57]. February 5th came and went without any Answer or other filing from Defendant. On February 6, 2021, Jesse R. Binnall, Esq. ("Attorney Binnall") filed a notice of appearance on Defendant's behalf [Dkt 58], and on February 8th filed an expedited motion for an extension of time to file an Answer by February 19th [Dkt 59].

On February 19, 2021, Attorney Binnall filed an Answer on behalf of Defendant. [Dkt. 66] (the "Answer"). The Answer sets forth eleven affirmative defenses that only cite the legal doctrines upon which Defendant intends to rely. He merely pleads:

### FIRST AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by sovereign immunity.

### SECOND AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by head of state immunity.

### THIRD AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by foreign official act immunity.

### FOURTH AFFIRMATIVE DEFENSE

The plaintiffs' claims' claims are barred by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred because the claims constitute a non-justiciable political question beyond this Court's jurisdiction.

9

## SIXTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by customary international law.

## SEVENTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by equitable doctrine of estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by the equitable doctrine of waiver.

## NINTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by the equitable doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by equitable doctrine of latches.

## ELEVENTH AFFIRMATIVE DEFENSE

The plaintiffs fail to state a cause of action upon which relief may be granted.

None of Defendant's affirmative defenses set forth any factual material from which one can infer the basis of each defense. See Answer at 9-10.

## ARGUMENT

Under Rule 12(f), a "court may strike from a pleading any insufficient defense" upon a "motion made by a [defendant]" within 21 days of the plaintiff's answer. See Zamma Canada Ltd. v. Zamma Corp., 2020 WL 7083940, at *7 (E.D. Va. Dec. 3, 2020) (holding that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"); Golden Valley Nutrition, LLC v. ImmunoNutrient Labs., Inc., 2018 WL 7341677, at *2 (E.D. Va. Sept. 28, 2018) (same); Banks v. Realty Mgmt. Serv., Inc., 2010 WL 420037, at *1 (E.D. Va. Jan. 29, 2010) (instructing that a Rule 12(f) motion is the "primary

procedure for objecting to an insufficient defense" (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1380 (3d ed. 2004)).

Affirmative defenses in an answer are judged under the standard of Rule 8(b)(1), which requires defendants to "state in short and plain terms its defenses to each claim against it." Flame S.A. v. Indus. Carriers, Inc., 2014 WL 2871432, at *2 (E.D. Va. June 24, 2014) (quoting Fed. R. Civ. P. 8(b)(1)). "The purpose of [an affirmative defense] is to give the opposing party notice of the plea of [the affirmative defense] and a chance to argue, if he can, why the imposition of [the affirmative defense] would be inappropriate." Blonder Tongue Lab v. Univ. of Ill. Found., 402 U.S. 313, 350 (1971). Thus, an affirmative defense that is "threadbare and provide[s] neither 'fair notice of the nature of the defense'' is deficient under even the less scrutinizing standards of Rule 8(b)(1). Flame S.A., 2014 WL 2871432, at *3 (quoting Clem v. Corbeau, 98 F. App'x 197, 203, 203 (4th Cir. 2004)); see also Comm. & Indus. Ins. Co. v. Newhall Contracting Inc., 2014 WL 4161971, at *2 (S.D. W.Va. Aug. 19, 2014) (striking affirmative defenses where the court could not conclude that the broad and general manner in which the affirmative defenses were pled provided plaintiffs with fair notice).

So too is an affirmative defense "insufficient" under Rule 8(b)(1) if it "is clearly invalid as a matter of law." Racick v. Dominion Law Assocs., 270 F.R.D. 228, 232 (E.D.N.C. 2010); see also Hanzlik v. Birach, 2009 WL 2147845, at *3 (E.D. Va. July 14, 2009) (same) (citing Microsoft Corp. v. Comp. Support Servs. of Carolina Inc., 123 F. Supp. 2d 945, 949 (W.D.N.C. 2000)); Malibu Media, LLC v. Popp, 2015 WL 10937405, at *5 (E.D. Va. Apr. 13, 2015) ("A court may strike a defense that is clearly insufficient as a matter of law." (citing Fed. R. Civ. P. 12(f))).

## I.     Each Affirmative Defense Fails to Provide Plaintiffs with Fair Notice

As shown <u>supra</u> at 9-10, the threadbare manner in which Defendant pled each of the eleven affirmative defenses is so devoid of factual or legal support – express or contextual – that it fails to provide Plaintiffs with an opportunity to discern, let alone respond to, the theories upon which Defendant Khalifa Hifter's defenses rest. It "is not sufficient merely to cite to a doctrine" as Defendant does here; "even the barest form of pleading requires more for an affirmative defense to put a plaintiff on notice." <u>Brown v. Wells Fargo Bank, N.A.</u>, 2012 WL 13214663, at *3 (D.D.C. Oct. 1, 2012); <u>see also</u> <u>Finjan, Inc. v. ESET, LLC</u>, 2017 WL 3149642, at *2 (S.D. Cal. July 24, 2017) (applying "fair notice standard" and concluding that "[m]ere reference to a legal doctrine [does not] provide] <u>fair notice</u> of an affirmative defense absent some fact or argument explaining the defense") (internal quotations and citation omitted) (emphasis added).

Defendant could not set forth his affirmative defenses in more general terms. For example, Plaintiffs are left to guess which body of "customary international law" purportedly immunizes Defendant from plausible <u>jus</u> <u>cogens</u> violations.

The defenses that this suit is barred by the equitable doctrines of waiver, estoppel, and unclean hands are also incomprehensible:  Plaintiffs were <u>civilians</u> in Benghazi, <u>tortured</u> at the hands of LNA soldiers under Defendant's direct command because of where they lived and, in the case of the al-Krshinys, for their Turkish ethnicity." Compl. ¶¶ 20, 67. Equitable defenses "rest on maxims obligating litigants to follow the golden rule or … prevent them from taking advantage of their own wrong." "[C]ore values supporting equitable defenses include[e] promoting fair play, protecting weaker parties, and preserving the integrity of the judicial system." T. Leigh Anenson, <u>Announcing the Clean Hands Doctrine</u>, 51 U.C. DAVIS L. REV. 1827, 1841 (June 2018). Plaintiffs can only speculate in what manner Defendant intends to apply equitable defenses to claims that

Plaintiffs were the specifically named targets of war crimes perpetrated by Defendant. Courts routinely strike equitable defenses where, as here, they are pled in such a manner that they constitute "bare legal conclusions." Palmer v. Oakland Farms, Inc., 2010 WL 2605179, at *6 (W.D. Va. June 24, 2010) (citing Telectronics Proprietary, Ltd., v. Medtronic, Inc., 687 F. Supp. 832, 841 (S.D.N.Y. 1988); Topline Solutions, Inc. v. Sandler Sys., Inc., 2010 WL 2998836, at *2 (D. Md. July 27, 2010) ("Even before Twombly and Iqbal, the defenses of waiver, estoppel and laches were consistently struck when pled without reference to some facts.").[3]

While Rule 8(b)(1) requires only that Defendant "state in short and plain terms [his] defenses to each claim against [him]," it does not provide him with a  green light to file an Answer that is largely a "black box," which is not only immune from scrutiny, but which also fails to inform Plaintiffs of the nature of his defenses to this action.

Accordingly, the Court should strike all of Defendant's affirmative defenses for failing to provide Plaintiffs with fair notice of the nature of his defenses.

## II.   Defendant's First, Second, Third, Fourth, Fifth, Tenth, and Eleventh Affirmative Defenses are Legally Invalid

A court may strike a defense that is clearly insufficient as a matter of law. Hanzlik v. Birach, 2009 WL 2147845, at *3 (citing Comp. Support Servs. of Carolina Inc., 123 F. Supp. 2d at 949). "'[W]hen the proposed affirmative defense is not a defense to liability, that is, when the proposed affirmative defense lacks a sound basis in law,'" amendment is futile and should be denied. Drapkin v. Mjalli, 441 F. Supp. 3d 145, 151 (M.D.N.C. 2020) (quoting Ross v. Am. Express Co., 264 F.R.D. 100, 118 (S.D.N.Y. 2010)).

---

[3] That courts in the Alexandria Division of this District have, to this point, concluded that the "plausibility" standard under Rule 8(a)(1) enunciated in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) is of no moment here. While Defendant's affirmative defenses fall far short of the pleading requirements under Twombly and Iqbal, they also fail to satisfy the basic requirement of providing requisite "fair notice."

For the following reasons, Defendant's First, Second, Third, Fourth, Fifth, Tenth, and Eleventh Affirmative Defenses are meritless and should be stricken without leave to replead.

## A.    The Statute of Limitations and Laches Defenses Lack a Valid Premise

Defendant asserts that this action should be "barred by the applicable statute of limitations" and/or "by the equitable doctrine of laches." Answer at 9-10 (Fourth and Tenth Affirmative Defenses). Courts in this Circuit warn that such defenses must show "that the pleader at least has some valid premise for asserting the defense and is not merely tossing it into the case like a fish-hook without bait." Palmer, 2010 WL 2605179, at *6 (quoting Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 651 (D. Kan. 2010) (interpreting the Federal Rules); see also Sandler Sys., Inc., 2010 WL 2998836, at *2.

In addition to overlooking "Rule 84 and its reference to the Appendix of Forms, including the suggestion in paragraph 6 of Form 30 that the alleged number of years be shown" for defenses involving time limitations, id. (citing Hayne, 263 F.R.D. at 651), Defendant also ignores the statute of limitations period applicable to TVPA claims – the only remaining claim in this action. The limitations period for such claims is ten years. Cabello v. Fernandez Larios, 402 F.3d 1148 (11th Cir. 2005). The events detailed in the Complaint that give rise to Defendant's liability occurred in or around October 2014 – less than six years before Plaintiffs commenced this action. Compl. ¶¶ 26-46. Defendant's statute of limitations and laches defenses are legally insufficient and factually wrong.

## B.    Failure to State a Claim is an Improper Affirmative Defense

In his Eleventh Affirmative Defense, Defendant pleads that Plaintiffs "fail to state a claim upon which relief can be granted." Answer at 10. This affirmative defense is improper; the Fourth Circuit does not recognize "failure to state a claim" as a cognizable affirmative defense. Malibu

Media LLC, 2015 WL 10937405, at *3 ("failure to state a claim is not an acceptable affirmative defense because it has not been recognized as an affirmative defense"); Odyssey Imaging, LLC v. Cardiology Assocs. of Johnson, LLC, 752 F. Supp. 2d 721, 727 (W.D. Va. 2010) (stating that failure to state a claim is not an affirmative defense at all); Cheney v. Vitro Am., Inc., 2010 WL 512581, at *1 (W.D. Va. 2010) (stating that failure to state a claim is not an affirmative defense, but rather a basis upon which to file a motion to dismiss); accord United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. 1, 4-5 (D.D.C. 2015) (granting plaintiff's motion to strike affirmative defense asserting failure to state a claim as an improper affirmative defense).

Because leave to replead would be futile, the Court should strike the Eleventh Affirmative Defense with prejudice.

### C.    Immunity is Inapplicable to Jus Cogens Violations Alleged in the Complaint

In his First, Second, and Third Affirmative Defenses, Defendant asserts immunity from suit under the doctrines of sovereign immunity, head-of-state immunity, and foreign official immunity.

As an initial matter, the First Affirmative Defense for "sovereign immunity" is inapplicable here. In Yousuf v. Samantar, 552 F.3d 371, 381 (4th Cir. 2009), aff'd Samantar v. Yousuf, 560 U.S. 305 (2010), the Fourth Circuit held that a high-ranking government official was not entitled to sovereign immunity under the FSIA, concluding that such immunity applies only to an "agency or instrumentality of a foreign state[,]" not "individual government agents." The case at bar is a TVPA case. However, as Defendant is an individual – not an agency or instrumentality – and his status as a natural person will not change, the Second Affirmative Defense should be stricken with prejudice to the extent it relies upon the FSIA. Hilao v. Estate of Marcos, 25 F.3d 1467, 1472 (9th Cir. 1994) ("[A]cts of torture, execution, and disappearance were acts clearly outside of his

authority as President …. Marcos' acts were not taken within any official mandate and therefore not the acts of an agency or instrumentality within the meaning of FSIA.").

The Third Affirmative Defense should be stricken because foreign official immunity cannot withstand the jus cogens violations Plaintiffs allege in their Complaint. In Yousuf v. Samantar, 699 F.3d 763, 777 (4th Cir. 2012) the Fourth Circuit "conclude[ed] that under international and domestic law, officials from other countries are not entitled to foreign official immunity for jus cogens violations, even if the acts were performed in the defendant's official capacity. See also Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1103 (9th Cir. 1990) ("Sovereign immunity … will not shield an official who acts beyond the scope of his authority"); Enahoro v. Abubakar, 408 F.3d 877, 893 (7th Cir. 2005) (Cudahy, J., dissenting) ("Officials receive no immunity for acts that violate international jus cogens human rights norms (which by definition are not legally authorized acts).")

Finally, the Second Affirmative Defense for head-of-state immunity is now meritless in light of the State Department's January 4th letter. [Dkt.54]. While this Circuit recognizes that "head-of-state immunity … is of an absolute nature and applies even against jus cogens claims," Yousuf, 699 F.3d at 776, courts should defer to the Executive branch's suggestion as to whether a defendant enjoys such immunity. Id. (citing Ye v. Zemlin, 383 F.3d 620, 624-25 (7th Cir. 2004)). The Executive branch was solicited for its input regarding this action on October 24, 2020. [Dkt 53]. The State Department was specifically informed that Defendant "assert[ed] head-of-state immunity." Id. Because the State Department weighed in and declined to suggest Defendant's head-of-state immunity [Dkt 54], the Second Affirmative Defense is baseless, and leave to amend would be futile.

16

**D.      The Political Question Doctrine is Inapplicable**

In his Fifth Affirmative Defense, Defendant avers that the Complaint should be "barred because the claims constitute a non-justiciable political question beyond this Court's jurisdiction." Defendant fails to plead facts that shed light upon the theory he seeks to pursue this defense. However, to the extent it is the same theory that he relied upon in his initial Motion to Dismiss – that adjudication of this Complaint would cause this Court to tread improperly upon the State Department's foreign policy interests – that theory is now legally invalid.

Although the Court expressed skepticism at the September 29, 2020, hearing that the political question doctrine is applicable here, out of an abundance of caution, it solicited the State Department for its views on the matter.  Specifically, the Court stated:

> [T]o make sure that we are not going to bump into a political question problem, …
> [I am] going to follow the same route that I took in the <u>Samantar</u> case. And that is,
> I am going to address a letter to the State Department, advising them essentially of
> what is before the Court in both these cases and give them an opportunity – give
> the [State] Department an opportunity to express its position. That's the safest way
> of handling these two cases.
>
> *      *      *      *
>
> I'm going to give the State Department 60 days to voice any position if it has one.
> If it doesn't do anything, then I'm going to assume the U.S. government doesn't
> have a concern about it.

Tr. at 30, ¶¶ 8-15; 18-21 (emphasis added).

As stated above, on October 26, 2020, the Court sent a letter to the State Department inviting it to provide its position. On January 4, 2021, the State Department filed a letter in this matter declining to do so. Defendant's theory that he cannot be hailed into a federal court despite being a United States citizen, a resident of this District, and plausibly charged with human rights violations, because it somehow infringes upon the State Department's foreign policy objectives,

is devoid of merit now, in light of the State Department's position. Accordingly, the Fifth Affirmative Defense should be stricken with prejudice.

### III.   Alternatively, the First, Second, Third, and Eleventh Affirmative Defenses Should be Stricken under the Law of the Case Doctrine

A Rule 12(f) motion to strike is a proper vehicle to lodge a challenge pursuant to the law of the case doctrine. See, e.g., Powertech Tech., Inc. v. Tessera, Inc., 2012 WL 1746848 (N.D. Cal. May 16, 2012). The doctrine was "created to maintain consistency and avoid reconsideration during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest." John R. Knight, The Law of the Case Doctrine:  What Does It Really Mean?, 43 FEDERAL LAWYER 8 (Oct. 1996). Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," unless certain exceptions, which are inapplicable here, apply Zaklit v. Glob. Linguist Sols., LLC 53 F. Supp. 3d 835, 846 (E.D. Va. 2014) (citing TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009) (generally a decision in a case will govern throughout the pendency of that case unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice"). The doctrine applies to "questions actually decided as well as to those decided by necessary implication."  United States v. Cunningham, 2009 WL 3350028, at *4 (E.D. Va. Oct. 15, 2009).

"While it is generally not appropriate to consider the viability of affirmative defenses at the Rule 12(b)(6) stage, in 'relatively rare circumstances' where all of the facts 'necessary to the affirmative defense clearly appear on the face of the complaint,' an affirmative defense … may be resolved on a motion to dismiss." Goodman v. Proxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007);

see also Waites v. Wells Fargo Bank, N.A., 2016 WL 659084, at *2 (E.D. Va. Feb. 16, 2016);

Riddick v. Watson, 2020 WL 6939730, at *3 (E.D. Va. Nov. 25, 2020).

Here, Defendant impermissibly seeks a second bite at the apple by re-asserting affirmative

defenses for (1) head-of-state immunity (First Affirmative Defense), (2) sovereign immunity

(Second Affirmative Defense), (3) foreign official act immunity (Third Affirmative Defense), and

failure to state a claim (Eleventh Affirmative Defense), as the Court already made rulings of law

on these issues unfavorable to Defendant in its September 29, 2020 Order.

The Court specifically addressed in its September 29th Order Defendant's claim that he

enjoyed head-of-state immunity and, more broadly, whether any immunity could protect

Defendant from liability on Plaintiffs' TVPA claim; it held on September 29th that:

> The head of state immunity argument, I don't think, at this point, has –
> I'm not at all concerned about that.  As I've said, these are allegations
> of jus cogens violations. And even if [Defendant] had some sort of
> immunity, it doesn't protect, in that respect, in my view, not in these
> types of cases.

Tr. at 29, ¶¶ 20-22. The Court's decision is well-founded in Fourth Circuit law, which restricts

defendants such as Khalifa Hifter from immunizing themselves from serious human rights

violations by pointing to their position as government officials, particularly, where, as here, the

State Department declines to endorse the defendant's view. See supra at 18.

The First, Second, and Third Affirmative Defenses treat the Court's decision as "little more

than an invitation to take a mulligan." Entek GRB, LLC v. Stull Ranches, LLC, 840 F.3d 1239,

1250 (10th Cir. 2016).  None of the exceptions to the law of the case doctrine apply here: the facts

upon which Defendant relies to claim immunity have only eroded since September 29th; there

have not been a contrary decision of law on the issue since the Court's Order; the Court's decision

19

was not clearly erroneous. Accordingly, to allow Defendant to re-plead these immunities as if the court has not already rejected them, would violate the law of the case doctrine.

The same is true of Defendant's Eleventh Affirmative Defense for failure to state a claim, which, even if it were recognized as a viable affirmative defense, seeks to impermissibly relitigate the Court's finding that the Complaint has "the kind of specificity that would clearly be sufficient at this pleading stage to allow the case to go forward against [Defendant] under the command control doctrine." Tr. at 26:17-21.

## CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiff's motion to strike each of Defendant's affirmative defenses.

DATED: March 12, 2021

Respectfully submitted,

*/s/ Kevin T. Carroll*_____

Kevin T. Carroll (VSB#95292)
Wiggin and Dana LLP
800 17th Street, NW, Suite 520
Washington, DC 20006
kcarroll@wiggin.com
Phone: 202-800-2475
Facsimile: 212-551-2888