IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MUNA AL-SUYID, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-00170(LMB/JFA) |
| ) | |
| KHALIFA HIFTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

DEFENDANT'S RESPONSE BRIEF
TO PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES

A motion to strike is a disfavored remedy. Plaintiffs have been on notice of the substance of Mr. Hifter's affirmative defenses through previous filings in this case. Additionally, Mr. Hifter filed a motion for leave to amend his Answer to include more facts and information to ensure that Plaintiffs have sufficient notice of the substance of his affirmative defenses. Striking Mr. Hifter's affirmative defenses is drastic and is simply not warranted in this case.

Nevertheless, Mr. Hifter has agreed to limit this dispute and consents to striking six affirmative defenses: (1) Sovereign Immunity, (2) Foreign Official Act Immunity, (3) Statute of Limitations, (4) Customary International Law, (5) Equitable Doctrine of Unclean Hands, and (6) Equitable Doctrine of Laches. Mr. Hifter, however, contests Plaintiffs' Motion to Strike the five remaining affirmative defenses: (1) Head of State Immunity, (2) Non-Justiciable Political Question, (3) Equitable Doctrine of Estoppel, (4) Equitable Doctrine of Waiver, and (5) Failure to State a

1

Claim for Which Relief May be Granted. For the reasons set forth below, the Court should deny Plaintiffs' motion.

## ARGUMENT

### I. Plaintiffs Had Fair Notice of Mr. Hifter's Affirmative Defenses and Mr. Hifter will File a Motion for Leave to Amend His Answer to Provide Further Context.

When pleading affirmative defenses, a defendant is required to provide a short and plain statement of the defense to place the plaintiff on notice of the affirmative defenses. Fed. R. Civ. Pro. 8(b)(1). "The purpose of [an affirmative defense] is to give the opposing party notice of the plea of [the affirmative defense] and a chance to argue, if he can, why the imposition of [the affirmative defense] would be inappropriate." *Blonder-Tongue Lab., Inc. v. Univ. Of Ill. Found.,* 402 U.S. 313, 350 (1971). A district court, on motion of a party under Federal Rule of Civil Procedure 12(f), may order stricken from any pleading any insufficient defense. Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990).

The primary purpose of affirmative defenses is to put the plaintiffs on notice so they can prepare arguments against the defense. *See e.g., Blonder-Tongue Lab,* 402 U.S. at 350. Plaintiffs are on notice of Mr. Hifter's arguments regarding these affirmative defenses. Mr. Hifter has filed several briefs with this Court alleging facts sufficient to put the Plaintiffs on notice of the merits of the affirmative defenses

alleged. Mr. Hifter's motion to dismiss, ECF No. 38 and 39, included a thorough discussion of immunity, the political question doctrine, and that Plaintiffs' allegations are insufficient. Mr. Hifter's defenses do not seek to confuse the issues or obfuscate the substance of his defense. Rather, Mr. Hifter has consistently expressed his views of the merits of this case.

"To determine whether the plaintiff has fair notice of the defense, the Court considers whether 'the challenged defenses are contextually comprehensible and possibly related to the controversy.'" *Benedict v. Hankook Tire Co. Ltd.*, 2018 WL 936090, at *2 (E.D. Va. Feb. 16, 2018) (citing *CertusView Techs., LLC v. Usic, LLC*, 2014 WL 12591937, at *6 (E.D. Va. Dec. 15, 2014) (citations omitted)). In recent years, the trend in this District has been not to "apply the *Twombly/Iqbal* standard to affirmative defenses." *Id.* Accordingly, in this District, "the Court evaluates defendant's affirmative defenses under the lower pleading standard." *Id.* at *3. "While the plaintiff often can conduct an investigation before filing the complaint to ensure its allegations are adequately supported, the defendant must respond quickly after being served," requiring a lower standard of review. *Odyssey Imaging LLC v. Cardiology Assoc. Of Johnston Ltd.*, 752 F.Supp.2d 721, 726 (W.D. Va. 2010). Because of the differences in timing, a defendant's pleaded defenses are not held to the same standards under Rule 8(a). *Id.* Rule 8 "does not require the responding party to make a 'showing'; instead, the responding party meets minimum pleading standards by stating its defenses in short and plain terms." *Henderson v. Gen. Revenue Corp.*, 2019 WL 4148172, at *3 (W.D. Va. Aug. 30, 2019) (citing *Tuggle v. Mamaroneck Capital,*

*LLC*, 2019 WL 3782818 (M.D. Ga Aug. 12, 2019). "If the drafters of Rule 8 intended for defendants to plead affirmative defenses with the factual specificity required of complaints, they would have included the same language requiring a showing of entitle[ment] to relief in the subsections governing answers and affirmative defenses. [T]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Id.* The parties have the opportunity to address the affirmative defenses at trial. *Id.* at *4.

In reviewing a motion to strike, the court "must view the pleading under attack in a light most favorable to the pleader." *Warren v. Tri Tech Laboratories, Inc.*, 2013 WL 2111669, at *7 (W.D. Va. May 15, 2013) (citing *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 232 (E.D.N.C. 2010)). In *Warren*, the plaintiff argued that the defendant's affirmative defenses were "perjured" and "boilerplate." Instead of striking the defenses or requiring the defendant to file an amended complaint, the court ruled the affirmative defenses were acceptable because they were "contextually comprehensible" when viewed in light of Plaintiff's factual pleadings. *Id.* (citing *Odyssey Imaging, LLC v. Cardiology Associates of Johnston, LLC,* 752 F.Supp.2d at 727). Courts must consider the affirmative defenses in light of "the context of the complaint, answer, and motion to dismiss." *Id*.

Therefore, Mr. Hifter's affirmative defenses do meet the current standard required in this District. First, this Court must view the facts in the light most favorable to Mr. Hifter. The defenses need to be contextually comprehensible and

4

possibly related to the controversy. The heightened pleading standards only apply to complaints, not affirmative defenses. Courts may consider the complaint, answer, and a motion to dismiss in deciding whether affirmative defenses are possibly related and contextually comprehensible to the controversy. Accordingly, Mr. Hifter has met his burden, and this Court need not strike Mr. Hifter's five remaining affirmative defenses.

Alternatively, rather than strike his affirmative defenses, the appropriate remedy in this situation is to grant Mr. Hifter's concurrently filed motion for leave to amend his answer (ECF Nos. 75 and 76) to include additional facts and information rather than to take the drastic, disfavored action of striking Mr. Hifter's affirmative defenses. Federal Rule of Civil Procedure 15(a)(2) governs motions for leave to amend and specifies that courts "should freely give leave [to amend] when justice so requires." The Fourth Circuit has affirmed this policy to "liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (citing *Coral v. Gonse*, 330 F.2d 997, 998 (4th Cir. 1964)). "The Fourth Circuit also recognizes that '[t]he law is well settled that leave to amend a pleading should be denied <u>only when</u> the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or or the amendment would be futile.' *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted) (emphasis in original)." *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, 2021 WL 755479, at *2 (E.D. Va. Feb. 16, 2021). "Instead of granting a motion to strike, a court typically allows a defendant to amend an insufficient answer." *Warren v. Tri Tech Labratories,*

*Inc.*, 2013 WL 2111669, at *7 (W.D. Va. May 15, 2013). (citing *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 232 (E.D.N.C.2010)).

In this case, it would not be prejudicial to the Plaintiffs to allow Mr. Hifter to amend his answer. The Plaintiffs have been on notice of the substance of the defenses that Mr. Hifter will be presenting. Discovery recently was opened and has been temporarily stayed by the Court. Moreover, Mr. Hifter is not seeking to add any new affirmative defenses. Rather, Mr. Hifter is agreeing to remove some affirmative defenses and providing facts and context to others. Finally, the Plaintiffs have asked for more detail, which Mr. Hifter will provide in his amended answer. Therefore, Plaintiffs would not be prejudiced by granting Mr. Hifter's motion to amend or by this Court not striking these affirmative defenses.

Mr. Hifter acted in good faith by moving to amend his answer promptly. The Plaintiffs have had multiple opportunities to understand Mr. Hifter's defenses through previous filings and hearings before the Court. Further, none of the affirmative defenses are futile. As laid out below, each of the affirmative defenses maintained by Mr. Hifter are sufficient to move forward into discovery.

For additional clarity, Mr. Hifter includes below, for each of the affirmative defenses that he maintains, a further detailed statement. Mr. Hifter also filed a motion for leave of the Court to amend his answer to include a more robust description of each affirmative defense.

II. The Court Should Not Strike Mr. Hifter's Remaining Affirmative Defenses.

Plaintiffs argue that seven of Mr. Hifter's affirmative defenses are legally invalid. Mr. Hifter agrees to strike four of those defenses as well as others that he has deemed inapplicable (sovereign immunity, foreign official act immunity, statute of limitations, customary international law, equitable doctrine of unclean Hands, and equitable doctrine of laches). Mr. Hifter's remaining affirmative defenses should not be stricken for the reasons set forth below.

### Head of State Immunity

Mr. Hifter's head of state immunity affirmative defense should not be stricken because he has been appointed as the leader of the Libyan National Army ("LNA"). He was appointed to this position by the Libyan House of Representatives and has engaged in discussions with other nations on behalf of Libya and the LNA.[1]

This affirmative defense is therefore appropriate and should not be stricken with or without prejudice because Mr. Hifter has engaged in responsibilities

---

[1] *See e.g.*, Libyan Strong Man Hafter in Russia for "military talks", the New Arab, November 28, 2016, available at https://english.alaraby.co.uk/english/news/2016/11/28/libyan-strongman-haftar-in-russia-for-military-talks; Russia Urges Libya Leadership Role For UN-Defying Military Chief, Breitbart, December 26, 2016, available at https://www.bloomberg.com/news/articles/2016-12-26/russia-urges-libya-leadership-role-for-un-defying-military-chief; U.S. Dep't of State, U.S. Delegation Meets with General Khalifa Haftar, Nov. 25, 2019, available at https://www.state.gov/u-s-delegation-meets-with-general-khalifa-haftar/(explaining that senior U.S. officials met with General Hifter to discuss bringing an end to the Libyan conflict); Samer Al-Atrush, Trump Backed Libyan Strongman's Attack on Tripoli, U.S. Officials Say, April 24, 2019, available athttps://www.bloomberg.com/news/articles/2019-04-24/trump-libya-haftar-tripoli(reporting that President Trump supported Mr. Hifter's offensive into the capital of Libya, Tripoli).

including those of the Head of State, a position that includes an absolute immunity. To strike this affirmative defense with prejudice is a drastic remedy unwarranted by the facts before this Court rather than allowing amendment as it is not prejudicial to the Plaintiff, brought in bad faith, or futile. At the very least, he should be given the opportunity to develop this defense without prematurely striking it.

In a related matter, *Elzagally, et al. v. Hifter*, et al., 1:19-cv-00853, Dkt. 44 at 14, 29-30, this Court opined that it had jurisdiction over these cases because of the alleged *jus cogens* violations. This Circuit has previously held that foreign official immunity does not apply in light of *jus cogens* violations. *Yousuf v. Samantar,* 699 F.3d 763, 776-77 (4th Cir. 2012). It is less clear, however, what the effect of such alleged *jus cogens* violations would be on head of state immunity. *Samantar* recognized, "American courts have generally followed the foregoing trend, concluding that *jus cogens* violations are not legitimate acts and therefore do not merit foreign official immunity but still recognizing that head of state immunity, based on status, is of an absolute nature and applies even against *jus cogens* claims." *Id.* at 776.

While Plaintiffs argue that because the State Department declined this Court's request to suggest immunity, Mr. Hifter cannot argue for immunity, this absence of declared immunity is not determinative of whether Mr. Hifter is actually entitled head of state of immunity. The Supreme Court held that regarding state immunity, in the absence of recognition of the immunity by the Department of State, courts have the authority to decide for themselves whether all the requisites for such immunity existed. *Ex parte Republic of Peru*, 318 U.S. 578, 587 (1943). Additionally, the head

of state is entitled to the same immunity as the state itself. *Republic of Austria v. Altmann,* 541 U.S. 677, 709 (2004) (Breyer, J., concurring in the opinion). Therefore, the affirmative defense of head of state immunity is still a valid claim, even in the absence of a direct suggestion of immunity from the Executive. President Trump publicly supported Mr. Hifter. Therefore, looking at all of the circumstances, the court may still find immunity for Mr. Hifter.

### *Non-Justiciable Political Question*

In *Baker v. Carr*, the Supreme Court described six factors that must be considered when determining whether a civil action presents a non-justiciable political question: "[1] textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment of multifarious pronouncements by various departments on one question." *Schneider v. Kissinger,* 412 F.3d 190, 194(D.C. Cir. 2005) (citing *Baker v. Carr*, 369 U.S. 186 (1962)). Only one of these factors must be present to prevent a court from exercising jurisdiction over the case. *Schneider v. Kissinger*, 412 F.3d at 194.

In this case, as many as five of the six *Baker v. Carr* factors are involved. First, the foreign relation dynamics involved in this case place it squarely within the purview of the Executive Department. The former Administration was actively engaged in the situation in Libya and even showed certain support for Mr. Hifter.[2] The former Administration (at the end of its tenure) denied weighing in on the related matters against Mr. Hifter before this Court[3]; however, the present Administration has not done so.

For over a century, the Supreme Court has recognized that legitimate acts conducted during a civil war are outside the purview of the courts. "Where a civil war prevails . . . generally speaking foreign nations do not assume to judge of the merits of the quarrel." *Underhill v. Hernandez*, 168 U.S. 250, 252-53 (1897). Furthermore, "[i]f the political revolt fails of success, still if actual war has been waged, acts of legitimate warfare cannot be made the basis of individual liability." *Id.* at 253. Moving forward with this case not only involves ascertaining facts in an ongoing civil war thousands of miles away but will also inherently impede the respect due to the political branches of government in the conduct of foreign affairs because Plaintiffs

---

[2] *See e.g.*, U.S. Dep't of State, U.S. Delegation Meets with General Khalifa Haftar, Nov. 25, 2019, available at https://www.state.gov/u-s-delegation-meets-with-general-khalifa-haftar/(explaining that senior U.S. officials met with General Hifter to discuss bringing an end to the Libyan conflict); Samer Al-Atrush, Trump Backed Libyan Strongman's Attack on Tripoli, U.S. Officials Say, April 24, 2019, available at https://www.bloomberg.com/news/articles/2019-04-24/trump-libya-haftar-tripoli(reporting that President Trump supported Mr. Hifter's offensive into the capital of Libya, Tripoli).

[3] Dkt. 54

intend to hold liable a party with whom the United States has engaged in seeking to bring peace to Libya. Further, the alleged incidents for which Plaintiffs seek to hold Mr. Hifter liable (if they occurred) happened during a legitimate military mission in the course of Libya's civil war.

Second, and relatedly, there is a lack of judicially discoverable and manageable standards for resolving this matter. Plaintiffs' allegations of extrajudicial killings and torture under the TVPA essentially require a United States court to adjudicate the conduct of the armed forces of a foreign government that is actively working with the United States to try to bring peace to the region. Accordingly, allowing this case to proceed could complicate and jeopardize United States foreign policy and relations with Libya, regardless of Mr. Hifter's role in the country, as well as constrain the actions of the current Administration.

Third, the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion, supports non-justiciability because the Court will have to decide whether Mr. Hifter is a head of state. Fourth, the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government, applies because of the Executive's role as well.

Finally, the potentiality of embarrassment from multifarious pronouncements by various departments on one question, is at stake. As shown above, the previous Administration clearly communicated and worked with Mr. Hifter regarding the need for democracy in Libya. It is unknown what the current Administration will do. While the State Department, at the very end of the previous Administration, declined to file

a State of Interest in the two related matters to this one, the simple fact is it is completely unknown what decisions the Executive is making or determining regarding Mr. Hifter and/or Libya.

As stated above, the State Department's declination of this Court's suggestion of immunity is not determinative. This affirmative defense is appropriate and should not be stricken because multiple of the *Baker v. Carr* factors indicate that this case presents a non-justiciable political question.

### *Equitable Doctrine of Estoppel and Waiver*

The Equitable doctrines of waiver and estoppel bar the enforcement of a party's legal rights due to that party's conduct, and, in the case of estoppel, the effect of that conduct on another party's actions. 31 C.J.S. Estoppel and Waiver § 229. Here, Plaintiffs are estopped from seeking relief or have waived their relief because of their participation in the civil war.

Plaintiffs' Complaint alleges that Khalid al-Suyid and Mustafa al-Suyid were killed in a gunfight or wounded in a gunfight and found dead at a later time, respectively. Plaintiffs' Complaint ¶30. The Complaint further explains that "a gunfight ensued, during which Muna al-Suyid's brothers Mustafa and Khalid defended the family home." *Id.* Plaintiff al-Suyid alleges violations of extra-judicial killing for her brothers that were killed in a gun battle in which they actively participated.

Plaintiffs' Complaint further alleges, Plaintiff al-Suyid's "father, Abdel Salam and brother Ibrahim [al-Suyid] were kidnapped on their way home to rescue the

12

family." *Id.* Plaintiff al-Suyid alleges violations of extra-judicial killing for her other brother and father who were on their way home to get involved in an ongoing gunfight. Plaintiffs' Complaint alleges that there was also a gunfight at the al-Krshiny family home during which two members of the extended family were killed. Plaintiffs' Complaint at ¶36. During this gunfight at least one more of the plaintiffs was injured in the fighting.

These affirmative defenses are appropriate and should not be stricken because some of the Plaintiffs, or the decedents in whose name the case is brought, acted in such a manner that they waived their right to recover under the TVPA or their conduct caused some of the hostile action resulting in their damages and thus are equitably estopped from seeking recovery. They were not innocent bystanders when they engaged in the hostilities, engaging in a potentially deadly exchange of gunfire with tragic results.

### *Failure to State a Claim Upon Which Relief May Be Granted*

The Plaintiffs cite to several previous cases from this Court and others within the Fourth Circuit in furtherance of their claim that there is no such affirmative defense in the circuit; however, the Fourth Circuit has previously recognized such a defense in an appeal. In *Martin v. Sw. Virginia Gas Co.,* 135 F.3d 307 (4th Cir. 1998), the Fourth Circuit held that "Southwestern pleaded as an affirmative defense that Martin failed to state a claim upon which relief could be granted . . . . While the district court did not address this issue, we agree." *Martin*, 135 F.3d at 309 (emphasis added). The Fourth Circuit recognized "[t]his defense is preserved even though not

ruled upon by the trial court. *See Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 610–11, n. 1 (6th Cir.1995); *see also Daingerfield Island Protective Soc'y v. Lujan,* 797 F. Supp. 25, 29 (D.D.C.1992) (if defense of failure to state a claim is raised in defendant's Answer, the defense is not subject to waiver and may be asserted in any subsequent motion for summary judgment) (citing Fed. R. Civ. P. 12(h)(2)), *aff'd,* 40 F.3d 442 (D.C.Cir.1995)." *Martin*, 135 F.3d at 309, n.1.

"The affirmative defense of failure to state a claim upon which relief may be granted is specifically set forth as a possible defense in the Appendix of Forms of the Federal Rules of Civil Procedure, Form 20." *Mendrala v. Crown Mortg. Co.*, 1990 WL 60705, at *3 (N.D. Ill. Apr. 23, 1990). Additionally, several courts within the Fourth Circuit have held that failure to state a claim upon which relief may be granted is a valid affirmative defense under Form 20. *See Monster Daddy, LLC v. Monster Cable Prod., Inc.*, 2011 WL 494626, at *3 (D. S.C. Feb. 7, 2011) (holding that form 20 includes failure to state a claim upon which relief may be granted, so the defendant's affirmative defense was sufficient); *U.S. v. Gwinn*, 2006 WL 3377636, at *2 (S.D. W. Va. Nov. 20, 2006) (holding that the defendant's affirmative defense of failure to state claim upon which relief may be granted is sufficient, as it is allowed in Form 20). Accordingly, failure to state a claim upon which relief may be granted is a valid affirmative defense.

To strike this affirmative defense with prejudice is a drastic remedy unwarranted by the facts before this Court rather than allowing amendment as it is not prejudicial to the Plaintiff, brought in bad faith, or futile.

### III. The Law of the Case Doctrine Does Not Support Striking Mr. Hifter's Affirmative Defenses.

Finally, Plaintiffs allege that affirmative defenses for Head of State Immunity, Sovereign Immunity, Foreign Official Act Immunity, and Failure to State a Claim have already been determined and therefore they should not be able to be raised as affirmative defenses under the Law of the Case Doctrine. They are incorrect.

"Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same cases.'" *Zaklit v. Global Linguist Solutions, LLC*, 53 F. Supp. 3d 835, 846 (E.D. Va. Sept. 16, 2014) (citing *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). A motion to dismiss proceeding, however, generally does not reach the merits of an affirmative defense.

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . . But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint.*" *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993) (emphasis added); *accord Desser v. Woods*, 266 Md. 696, 296 A.2d 586, 591 (1972).

*Goodman v. Proxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). To meet this high standard, it requires that <u>all necessary facts</u> to the affirmative defense are before the Court when the determination is made. *Id.* (emphasis added).

In support of striking the Head of State Immunity defense, Plaintiffs point to a statement by this Court during the motion to dismiss hearing; however, a mere

15

showing that the Court may not be persuaded by this defense does not make a showing that all the facts necessary were before the Court, particularly as to this issue where the application of immunity has been left unknown by the Fourth Circuit. Further, while the State Department (under the prior administration) declined weighed in, there is a new administration which has not weighed in on this issue at this time. Additionally, as Libya has been and is embroiled in a civil war with constantly shifting power struggles, it is unlikely that all of the facts concerning what took place have been uncovered or brought before this Court. Therefore, these defenses should not be stricken.

## CONCLUSION

For the reasons stated above and in the Defendant's Motion for Leave to Amend his Answer, this court should deny Plaintiffs' motion to strike.

Dated: March 26, 2021                                Respectfully submitted,


/s/ Jesse Binnall
Jesse R. Binnall (VSB #79292)
Lindsay R. McKasson (VSB #96074)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
lindsay@binnall.com

*Counsel for Defendant Khalifa Hifter*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2021, I electronically filed the foregoing Response Brief to Plaintiff's Motion to Strike Affirmative Defenses with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

<u>/s/ Jesse Binnall</u>
Jesse R. Binnall

*Counsel for Defendant Khalifa Hifter*
