# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

_____

MUNA AL-SUYID, individually and on behalf of the    :
estates of her family members ABDEL SALAM    :
AL-SUYID, IBRAHIM AL-SUYID, KHALID    :
AL-SUYID and MUSTAFA AL-SUYID, and    :
ABDALLA AL-KRSHINY, AHMAD AL-KRSHINY,    :
MAHMUD AL-KRSHINY,    :
and IBRAHIM AL-KRSHINY, individually    :
and on behalf of his family member ALI AL-KRSHINY    :
and MUSTAFA AL-KRSHINY,    :
    :    Civil Action No.
    :    1:20-cv-00170-LMB-JFA
        Plaintiffs,    :
    :
    :
KHALIFA HIFTER,    :    MAY 27, 2021
    :
        Defendant.    :
_____:

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## SECOND MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

   Statement of Facts ......................................................................................................... 2

     I.   Factual Background .............................................................................................. 2

     II.   Procedural History ............................................................................................. 4

       A.   The Complaint .............................................................................................. 4

       B.   Defendant Narrowly Avoids Default Judgment ......................................... 4

         1.   Rule 12(b)(1) Arguments ..................................................................... 5

         2.   Rule 12(b)(6) Arguments ..................................................................... 7

         3.   Rule 12(b)(5) Arguments ..................................................................... 7

       D.   The Court's September 29, 2020 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss .................................................................. 7

       E.   The State Department's First Refusal to Submit a Statement of Interest .................. 9

       F.   Defendant's Initial Answer and Plaintiffs' Motion ......................................... 9

       G.   Defendant's Amended Answer ..................................................................... 11

ARGUMENT ................................................................................................................... 13

     I.   Defendant's First, Second, and Fifth Affirmative Defenses are Legally Invalid .......... 13

       A.   The First and Second Affirmative Defenses are Inapplicable ................................... 14

       B.   Defendant's Fifth Affirmative Defense is Unrecognized in this Circuit ................... 17

     II.   Defendant's Third and Fourth Affirmative Defenses Should be Judicially Estopped .... 18

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aida Elzagally, et al. v. Khalifa Hifter et al.,
  19 Civ. 853 (Sept. 29, 2020 E.D. Va.) ............................................................. *passim*

Banks v. Realty Mgmt. Serv., Inc.,
  2010 WL 420037 (E.D. Va. Jan. 29, 2010) ............................................................13

Blonder Tongue Lab v. Univ. of Ill. Found.,
  402 U.S. 313 (1971)............................................................................................14

Cheney v. Vitro Am., Inc.,
  2010 WL 512581 (W.D. Va. 2010) ........................................................................17

Clem v. Corbeau,
  98 F. App'x 197 (4th Cir. 2004) ...........................................................................14

Comm. & Indus. Ins. Co. v. Newhall Contracting Inc.,
  2014 WL 4161971 (S.D. W.Va. Aug. 19, 2014) ....................................................14

Drapkin v. Mjalli,
  441 F. Supp. 3d 145 (M.D.N.C. 2020) .............................................................15, 16

Flame S.A. v. Indus. Carriers, Inc.,
  2014 WL 2871432 (E.D. Va. June 24, 2014) ....................................................13, 14

Golden Valley Nutrition, LLC v. ImmunoNutrient Labs., Inc.,
  2018 WL 7341677 (E.D. Va. Sept. 28, 2018).........................................................13

Handelsgesellschaft v. Sheridan Trans. Co.,
  800 F. Supp. 1359 (E.D. Va. 1992) ......................................................................18

Hanzlik v. Birach,
  2009 WL 2147845 (E.D. Va. July 14, 2009) .........................................................14

United States ex rel. Landis v. Tailwind Sports Corp.,
  308 F.R.D. 1 (D.D.C. 2015)..................................................................................17

Malibu Media, LLC v. Popp,
  2015 WL 10937405 (E.D. Va. Apr. 13, 2015) ..................................................14, 17

Martin v. Southwestern Va. Gas Co.,
  135 F.3d 307 (4th Cir. 1998) ...............................................................................17

Microsoft Corp. v. Comp. Support Servs. of Carolina Inc.,
    123 F. Supp. 2d 945 (W.D.N.C. 2000) ...........................................................14

Odyssey Imaging, LLC v. Cardiology Assocs. of Johnson, LLC,
    752 F. Supp. 2d 721 (W.D. Va. 2010) ...........................................................17

Racick v. Dominion Law Assocs.,
    270 F.R.D. 228 (E.D.N.C. 2010) ...................................................................14

Ross v. Am. Express Co.,
    264 F.R.D. 100 (S.D.N.Y. 2010) ...................................................................15

Samantar v. Yousuf,
    560 U.S. 305 (2010)................................................................................9, 15

Tenneco Chem., Inc. v. William T. Burnett & Co.,
    691 F.2d 658 (4th Cir. 1982) ........................................................................18

Warfaa v. Ali,
    33 F. Supp. 3d 653 (E.D. Va. 2014) ................................................................9

Ye v. Zemlin,
    383 F.3d 620 (7th Cir. 2004) ........................................................................15

Zamma Canada Ltd. v. Zamma Corp.,
    2020 WL 7083940 (E.D. Va. Dec. 3, 2020) ....................................................13

**Statutes**

28 U.S.C. § 517.......................................................................................................9, 13

Torture Victims Protection Act, Pub. L. No. 102-256, 28 U.S.C. § 1350 note .................... *passim*

**Rules and Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures §
    1380 (3d ed. 2004) ......................................................................................13

Al Jazeera, Trump Praises Haftar in Apparent Reversal of U.S. Policy on Libya,
    Apr. 20, 2019, available at https://www.aljazeera.com/news/2019/04/trump-
    calls-haftar-praises-significant-role-terrorism-fight-190419182035115.html.........................6

Fed. R. Civ. P. 8(b)(1)........................................................................................1, 13, 14

Fed. R. Civ. P. 12(b)(1).................................................................................................5

Fed. R. Civ. P. 12(b)(5)..............................................................................................5, 7

Fed. R. Civ. P. 12(b)(6)...........................................................................................5, 7, 8

Fed. R. Civ. P. 12(f) ................................................................................................................11, 13, 14

## INTRODUCTION

On March 12, 2021, Plaintiffs moved to strike from Defendant Khalifa Hifter's initial Answer, filed February 19, 2021 [Dkt. 66] (the "Initial Answer"), all eleven affirmative defense without prejudice, at a minimum, on the ground that each failed to provide "fair notice" as required by Federal Rule of Civil Procedure 8(b)(1), and Defendant's seven affirmative defenses grounded in immunity, the political question doctrine, failure to state a claim, and time limitations, with prejudice, as legally baseless (and, thus, that amendment of the Answer would be futile). [Dkt. 71] (the "Motion").  Rather than respond to Plaintiffs' Motion, on March 25, 2021, Defendant filed an amended Answer that omitted six of the affirmative defenses asserted in the Initial Answer and amended the five remaining affirmative defenses – (1) Head-of-State Immunity (the "First Affirmative Defense"); (2) Political Question Doctrine (the "Second Affirmative Defense"); (3) Estoppel (the "Third Affirmative Defense"); (4) Waiver (the "Fourth Affirmative Defense"); and (5) Failure to State a Claim (the "Fifth Affirmative Defense").  [Dkt. 75] (the "Amended Answer").

However, Defendant's amendments still fail to remedy fatal deficiencies that Plaintiffs identified in their Motion and, moreover, introduce new flaws that warrant striking the amended affirmative defenses.

*First*, Defendant's First and Second Affirmative Defenses for Head-of-State Immunity and Political Question Doctrine, respectively, lack basis in fact and law.  This Court has already held that Defendant's asserted immunity is inapplicable against the credible jus cogens violations for which he stands accused in the Complaint, and the U.S. Department of State's second refusal to submit a Statement of Interest on Defendant's behalf should put to rest both of these defenses once and for all.

*Second*, Defendant's Third and Fourth Affirmative Defenses for Estoppel and Waiver, respectively, conflict entirely with prior positions Defendant took in his motion to dismiss the Complaint, and should, therefore, be barred by the doctrine of judicial estoppel.

*Third*, Defendant's Fifth Affirmative Defense for Failure to State a Claim is not cognizable in the Circuit in which this Court sits, and Defendant's contention otherwise is misguided.

For the foregoing reasons, this Court should strike each of Defendant's affirmative defenses set forth in his Amended Answer.

### Statement of Facts

The facts pertinent to determining this motion overwhelmingly are set forth in the Motion, Plaintiff's Memorandum of Law in Support of the Motion [Dkt. 72] ("Mem."), and Plaintiff's Letter of May 18, 2021 [Dkt. 95] (the "May 18, 2021 Letter"), which are expressly incorporated here. However, for the Court's convenience, a summary of those facts, as well as facts that have developed since Plaintiffs filed their Motion on March 12, 2021, are recited below.

## I.    Factual Background

Plaintiffs, the Suyids and Krshinys, are two families in Benghazi, Libya.  Compl. ¶¶ 9-13. In October 2014, troops of the Libyan National Army ("LNA"), under orders from Defendant Khalifa Hifter, stormed these families' homes, killed several of their family members, and tortured and/or executed the survivors without trial.  Id.  ¶¶ 26-46.

Defendant is a United States citizen, resident of the Eastern District of Virginia, and owner of significant assets in the District.  Id. ¶¶ 17-18.  Since 2014, Defendant has served as field marshal in the LNA.  Id. ¶¶ 24-25.  In October 2014, the LNA launched an operation to kill

named opponents in Benghazi, including members of Plaintiffs' families.  Defendant's spokesperson and propogandist called for them to be "liquidated" and ordered that no prisoners be taken.  Id. ¶¶ 26-27.  Plaintiffs were specifically targeted, either because they lived in Benghazi and/or their Turkish ethnicity.  Id. ¶ 67.

The LNA kidnapped Abdel Salam and Ibrahim al-Suyid.  Forces under the command of Defendant's immediate subordinates tortured and executed these men while in custody, and killed Mustafa and Khalid al-Suyid as well.  Id. ¶ 31.

Similarly, the LNA targeted – by name in a public announcement – the Krshiny family: they killed two brothers and took five prisoners from the family.  Two of the prisoners were taken to Defendant's headquarters and beaten.  One of them, Ibrahim, was tortured, including by electrocution, mutilated (losing an eye), and mock executed.  The other, Mustafa, was found dumped on a roadside, tortured, and shot dead, execution-style, with his hands tied behind his back.  Four other al-Krshiny brothers – Abdalla, Ahmad, Ali, and Mahmud – were captured, placed in a truck, and shot while in custody in that vehicle.  Ali was killed in the fusillade.  Id. ¶¶ 34-35, 45.

These represent but a fraction of the war crimes Defendant – a United States citizen with a residence in this District – had perpetrated in Libya.  Defendant's jus cogens violations are not a collateral and unintended consequence of the civil war in which the LNA, under his command, is engaged, but one of his core tactics.  Indeed, the Court need only take Defendant at his word: "Never mind the consideration of bringing a prisoner here.  There is no prison here.  The field is the field, end of story."  Id. ¶ 46 (quoting a video released by Defendant announcing that the LNA's opponents should be shown "[n]o mercy").

## II.     Procedural History

### A.     The Complaint

Plaintiffs commenced this action on February 18, 2020, less than six years after the

atrocities committed by Defendant took place, seeking to hold Defendant and his sons – Khalid

and Saddam – accountable for their crimes against Plaintiffs and members of their families.

[Dkt. 1] (referred to above as "Compl.").  The Complaint asserted seven causes of action against

all three Defendants:  violations of the Torture Victims Protection Act, Pub. L. No. 102-256, 28

U.S.C. § 1350 note (the "TVPA") (Count I); Civil Conspiracy (Count II); Wrongful Death

(Count III); Battery (Count IV); Assault (Count V); False Imprisonment (Count VI); and

Intentional Infliction of Emotional Distress (Count VII). Summonses and alias summonses

issued on February 24, 2020 and March 10, 2020; the latter being returned executed on March

20, 2020.  [Dkts. 20-22].

### B.     Defendant Narrowly Avoids Default Judgment

After Defendant failed to respond to the Complaint, the Clerk of this Court entered

default on May 5, 2020.  [Dkt. 25].  A hearing took place on Plaintiffs' motion for default

judgment before United States Magistrate Judge John F. Anderson on June 12, 2020, Plaintiffs'

moving papers having been served on May 26, 2020. [Dkt 29-30]. Magistrate Judge Anderson

issued a Report & Recommendation on June 17, 2020, recommending that default judgment be

entered on behalf of Plaintiffs and that Plaintiffs be awarded damages in the amount of eighty

million dollars.  [Dkt 31] (the "R&R").

However, before this Court could issue a ruling on the R&R, attorneys Duncan Levin,

Esq. ("Attorney Levin") and Edward Ungvarsky, Esq. ("Attorney Ungvarsky") entered limited

appearances on behalf of Defendants on July 31, 2020 [Dkts 32, 36]. At Defendants' then-

counsel's request, the Court set aside the Clerk's order of default on August 6, 2020. [Dkts 33-35].

### C.    The Motion to Dismiss

Shortly after Attorney Levin and Ungvarsky's appearance, Defendants moved to dismiss the Complaint in its entirety on August 20, 2020. [Dkt. 38]. In support thereof, Defendants filed a Memorandum of Law, in which they argued that all claims pressed in the Complaint should be disposed as to all Defendants under:  (1) Federal Rule of Civil Procedure ("Rule") 12(b)(1), on the ground that the Court lacks subject matter jurisdiction of the dispute as a non-justiciable political question and that Defendant, in particular, is immune as Libya's head-of-state; (2) Rule 12(b)(6) on the ground that Plaintiffs failed to adequately allege even their TVPA claims; and (3) Rule 12(b)(5) for insufficient service under state and federal law. [Dkt 39 ("Defs.' Mem")].

### 1.    Rule 12(b)(1) Arguments

Defendants sought dismissal of the Complaint pursuant to Rule 12(b)(1), with respect to Defendant Khalifa Hifter in particular, arguing that even if each and every allegation in the Complaint were true (1) the Complaint presented nonjusticiable political questions, the full disposition of which would threaten to imperil the United States' executive branch's diplomatic interests in Libya and beyond and (2) Defendant Khalifa Hifter enjoyed common law head-of-state immunity that protected him from any liability.  Defs.' Mem. at 6-10.

 Defendant's political-question argument was premised upon the two following theories, each of which arose from the broader notion that "[m]oving forward with this case w[ould] inherently impede the respect due to the political branches of government in the conduct of foreign affairs." Defs.' Mem. at 7.

- Allowing the case to proceed would jeopardize the United States' efforts – apparently undertaken primarily through the U.S. Department of State (the

5

"State Department") – to bring an end to the civil war in Libya through negotiations with Defendant Khalifa Hifter and the LNA.  Mem. at 8. Defendant Khalifa Hifter principally emphasized the fact that "the United States Embassy in Libya [wa]s specifically in direct negotiations with [Defendant Khalifa] Hifter to reopen oil field terminals [in Libya] that ha[d] been under an eight-month blockade."  Transcript at 12:2-6, Aida Elzagally, et al. v. Khalifa Hifter et al., 19 Civ. 853 (Sept. 29, 2020 E.D. Va.) [Dkt 44] ("Tr.").

- The Complaint would require "a U.S. court to adjudicate the conduct of the armed forces" – the LNA – "of a foreign government" – Libya – because the gruesome deaths and serious bodily injuries giving rise to the Complaint were the result of official acts of an existing foreign government in the midst of a "legitimate military mission in the course of Libya's civil war."  Defs.' Mem. at 8.

Importantly, neither Defendant nor his then-attorneys even sought the view of the State Department or any other branch of the U.S. Government as to whether the Court's adjudication of this matter would, in fact, encroach upon its foreign policy goals. Tr. at 11:4-14.

Defendant's argument that he cannot be hailed into federal court because he enjoyed common law, head-of-state immunity similarly lacked foundation. See id. at 8. Indeed, the Memorandum of Law did not even describe with any specificity Defendant's role in Libya. See Defs.' Mem. at 9 ("[Former] President Trump has recognized Gen. Hifter's legitimate role on behalf of the State of Libya[.]").

Rather, Defendant baldly asserted he was immune from suit in light of a single telephone conversation he had with former President Trump, in which then-President Trump "reportedly 'recognized Field Marshal Hifter's significant role in fighting terrorism and securing Libya's oil resources, and the two discussed shared vision for Libya's transition to a stable, democratic political system.'" Defs.' Mem. at 9 (citing Al Jazeera, Trump Praises Haftar in Apparent Reversal of U.S. Policy on Libya, Apr. 20, 2019, available at https://www.aljazeera.com/news /2019/04/trump-calls-haftar-praises-significant-role-terrorism-fight-190419182035115.html).

### 2.     Rule 12(b)(6) Arguments

Defendants further argued that even if the Court possessed subject-matter jurisdiction over the dispute, Plaintiffs failed to state a claim against them. Because this is at heart a TVPA case, only Defendants' arguments that Plaintiffs failed to state a TVPA claim are discussed below.  Specifically, Defendants argued:

- Plaintiffs' failure to exhaust adequate and available remedies in Libya, including through a judicial proceeding there, was fatal. Defendants argued that Plaintiffs could not merely rely upon the averment in the Complaint that Libya's dysfunctional judicial system made such efforts futile when they had not first attempted to initiate such proceedings. Defs.' Mem. at 10-11.

- Plaintiffs failed to show that Defendant knew or should have known that his subordinates in the LNA committed or were planning to commit acts violative of the law of war, which is required to show command responsibility.  Defs.' Mem. at 13.

- Plaintiffs failed to allege that the killings and serious bodily injuries underlying the Complaint were "extrajudicial" or "deliberate", as required under the TVPA, as opposed to "collateral civilian casualties resulting from legitimate military operations undertaken in" the course of Libya's civil war.  Defs.' Mem. at 15.

### 3.     Rule 12(b)(5) Arguments

Finally, Defendants argued that Plaintiffs' purported service of process was invalid under federal and Virginia law because it did not adequately apprise Defendants of the pending lawsuit. Defs.' Mem. at 18-20.

### D.     The Court's September 29, 2020 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

On September 29, 2020, the Court held a hearing on Defendants' motion to dismiss, at which, following oral argument, denied in part and granted in part Defendants' motion to

dismiss. See generally Tr.[1] Put simply, the Court narrowed the scope of the Complaint by dismissing Defendant Khalifa Hifter's sons from the action, and allowing the TVPA claim to proceed, which the Court found well-pleaded, to proceed against Defendant Khalifa Hifter.

Specifically, the Court found as to Plaintiffs' TVPA claim that "[t]here are certain paragraphs in this complaint that have the kind of specificity that would clearly be sufficient at this pleading stage to allow the case to go forward [against Defendant Khalifa Hifter himself] under the command control doctrine." Tr. at 26:14-27:11. The logical conclusion of the Court's determination is that it rejected each argument put forward by Defendants in their Memorandum of Law that Plaintiffs' TVPA claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

The Court also found unpersuasive Defendant's argument that he was immune from suit pursuant to the common law doctrine of head-of-state immunity. Id. at 29:23-30:1. In fact, the Court rejected the notion that any type of immunity protected Defendant from the allegations in the Complaint, which, in the Court's view, constitute jus cogens violations. Id. ("[E]ven if [Defendant] had some sort of immunity, it doesn't protect [him] … in my view, not in these types of cases [where jus cogens violations are alleged.]").

Although the Court noted that, at the motion to dismiss stage, it was "not at all concerned about" whether the Complaint presented an improper political question that the Court lacked authority to adjudicate, the Court stated that it would "address a letter to the State Department advising them essentially of what is before the Court … and give the [State Department] an opportunity … to express its position." Id. at 30:8-15. The Court noted that it had undertaken the

---

[1] The September 29, 2020 motions hearing was a joint one; Defendants also moved to dismiss on practically identical grounds the Complaint in Elzagally v. Haftar, 19 Civ. 853 [Dkts 32, 34].

same approach "in the <u>Samantar</u> case." <u>Id.</u>; <u>see</u> <u>Warfaa v. Ali</u>, 33 F. Supp. 3d 653 (E.D. Va. 2014) (a companion case of <u>Samantar v. Yousuf</u>, 560 U.S. 305 (2010), in which the Court rejected defendant's argument that the TVPA claim raised a nonjusticiable political question, in part because defendant could not "identify a single decision of the Executive Branch that might justify application of the political question doctrine because no such decision has in fact been made").

### E.     The State Department's First Refusal to Submit a Statement of Interest

Following the Court's order on September 29, 2020, it stayed the case for sixty days and, on October 26, 2020, sent a letter to the State Department inviting it to submit a statement of interest regarding Defendant's contention that the Complaint presented nonjusticiable political questions that encroached upon the United States' foreign policy decision-making. [Dkt 53] (the "First Solicitation"). On January 4, 2021, the State Department filed a letter stating that it "appreciate[d] the Court's invitation to express its views [but] at this time … decline[d] to file a Statement of Interest pursuant to 28 U.S.C. § 517." [Dkt 54 (emphasis added)] ("Terwilliger Letter").

### F.     Defendant's Initial Answer and Plaintiffs' Motion

Just one week after the State Department's letter, Attorneys Levin and Ungvarsky moved to withdraw as counsel for Defendant on January 11, 2021 Hifter. [Dkt 55]. The Court granted their motion on January 12, 2021. [Dkt 56].

On January 15, 2021, the Court ordered that the stay imposed on September 29, 2020, be lifted, and set a deadline of February 5, 2021, for Defendant to Answer the Complaint to avoid a second default and face entry of judgment. [Dkt 57]. February 5th came and went without any Answer or other filing from Defendant. On February 6, 2021, Jesse R. Binnall, Esq. ("Attorney

Binnall") filed a notice of appearance on Defendant's behalf [Dkt 58], and on February 8th filed an expedited motion for an extension of time to file an Answer by February 19th [Dkt 59].

On February 19, 2021, Attorney Binnall filed an Answer on behalf of Defendant. [Dkt. 66] (the "Answer"). The Answer sets forth eleven affirmative defenses that only cite the legal doctrines upon which Defendant intends to rely. He merely pleads:

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by sovereign immunity.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by head of state immunity.

<u>**THIRD AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by foreign official act immunity.

<u>**FOURTH AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims' claims are barred by the applicable statute of limitations.

<u>**FIFTH AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred because the claims constitute a non-justiciable political question beyond this Court's jurisdiction.

<u>**SIXTH AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by customary international law.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by equitable doctrine of estoppel.

<u>**EIGHTH AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by the equitable doctrine of waiver.

<u>**NINTH AFFIRMATIVE DEFENSE**</u>

The plaintiffs' claims are barred by the equitable doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by equitable doctrine of latches.

## ELEVENTH AFFIRMATIVE DEFENSE

The plaintiffs fail to state a cause of action upon which relief may be granted.

None of Defendant's affirmative defenses set forth any factual material from which one can infer the basis of each defense. See Initial Answer at 9-10.  Accordingly, Plaintiffs moved under Fed. R. Civ. P. 12(f) to (1) strike each affirmative defense, without prejudice, on the ground that each failed to provide Plaintiffs with fair notice of the nature of the defenses and (2) strike Defendants' affirmative defenses predicated upon (a) immunity, (b) political question doctrine, (c) time-limitations, and (d) failure to state a claim, with prejudice, as legally invalid. Pls.' Mem. at 13-20.  With respect to the legally invalid affirmative defenses, Plaintiffs specifically argued:

- Defendant's affirmative defenses for head-of-state immunity, sovereign immunity, and foreign official act immunity, and the political question doctrine each were inapplicable as a matter of law where, as in this case, the Defendant is an individual (asserted) government official, charged with plausible jus cogens violations, for whom the U.S. Government refuses to submit a Statement of Interest either deeming him the "head" of a foreign sovereign or declaring that the case infringes upon the U.S. Government's diplomatic, security, or other foreign policy interests.

- Defendant's affirmative defenses for statute of limitations and laches, respectively, were inapplicable because the atrocities recounted in the Complaint occurred less than six years before Plaintiffs filed and, thus, within the 10-year limitations period provided for TVPA claims.

- Defendant's affirmative defense for failure to state a claim is an improper affirmative defense that courts in this Circuit uniformly dispose.

### G.    Defendant's Amended Answer

Practically admitting that each of affirmative defense set forth in his Initial Answer was fatally flawed, rather than oppose the Motion, Defendant sought leave to file his Amended

Answer on March 25, 2021.  [Dkts. 75-76].  The Court granted leave [Dkt. 85], and, on April 1, 2021, Defendant filed the Amended Answer [Dkt. 86].

The Amended Answer omits six of the meritless affirmative defenses set forth in the Initial Answer:  (1) sovereign immunity, (2) foreign official immunity, (3) statute of limitations, (4) customary international law; (5) unclean hands; (6) laches.  However, it retains, and supplements with new allegations, the following five affirmative defenses:

- **First Affirmative Defense – Head-of-State Immunity:**  The Amended Answer includes new allegations that Defendant "was appointed head of the Libyan National Army by the Libyan House of Representatives.  He currently undertakes responsibilities including meeting and negotiating with foreign heads of state.  The former Executive treated him as the head of state."  Amended Answer at 10.

- **Second Affirmative Defense – Political Question Doctrine:**  The Amended Answer includes new allegations that "[t]he United States has an interest in the region and it is within [t]he Executive's domain to make decisions regarding foreign affairs." Id. at 10.

- **Third Affirmative Defense – Estoppel:**  The Amended Answer includes new allegations that "[s]everal of the plaintiffs, or decedents in whose name relief is sought, took actions that influenced the outcome of events negatively including possessing weapons and engaging in gunfights during the civil war.  Because they likewise engaged in the civil war fighting, they are estopped from seeking relief." Id. at 10.

- **Fourth Affirmative Defense – Waiver:**  The Amended Answer includes new allegations that Plaintiffs "were not innocent bystanders but engaged in gunfights during the civil war.  Because they likewise engaged in the civil war fighting, they have waived their causes of action." Id. at 10-11.

- **Fifth Affirmative Defense – Failure to State a Claim:**  The Amended Answer includes new allegations that, in essence, Defendant purportedly did not know of the alleged war crimes, of which Plaintiffs and their families were the targets.  Id. at 11.

Unfortunately, despite Defendant's amendments, each of the affirmative defenses that remain suffer from the same or newly introduced deficiencies and, therefore, should be stricken.

**H.      The State Department's Second Refusal to Submit a Statement of Interest**

On April 5, 2021, the Court stayed this case, and, "[a]s a courtesy to the new administration," sent to the State Department a second letter soliciting its input as to whether this case, and the other two TVPA actions pending against Hifter in this District, should proceed before this Court.  [Dkt. 89] (the "Second Solicitation").  On May 14, 2021, the State Department responded that it <u>again</u> declined to file a Statement of Interest pursuant to 28 U.S.C. § 517, endorsing Defendant's theory that he is recognized as Libya's head-of-state by the U.S. Government or that this Court should extinguish its jurisdiction over this case on the ground that a nonjusticiable political question exists.  [Dkt. 93] ("Parekh Letter").  Accordingly, the Court lifted the stay on May 18, 2021.  [Dkt. 94].

**ARGUMENT**

**I.      Defendant's First, Second, and Fifth Affirmative Defenses are Legally Invalid**

Under Rule 12(f) a "court may strike from a pleading any insufficient defense" upon a "motion made by a [defendant]."  <u>See</u> <u>Zamma Canada Ltd. v. Zamma Corp.</u>, 2020 WL 7083940, at *7 (E.D. Va. Dec. 3, 2020) (holding that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"); <u>Golden Valley Nutrition, LLC v. ImmunoNutrient Labs., Inc.</u>, 2018 WL 7341677, at *2 (E.D. Va. Sept. 28, 2018) (same); <u>Banks v. Realty Mgmt. Serv., Inc.</u>, 2010 WL 420037, at *1 (E.D. Va. Jan. 29, 2010) (instructing that a Rule 12(f) motion is the "primary procedure for objecting to an insufficient defense" (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1380 (3d ed. 2004)).

Affirmative defenses in an answer are judged under the standard of Rule 8(b)(1), which requires defendants to "state in short and plain terms its defenses to each claim against it." <u>Flame S.A. v. Indus. Carriers, Inc.</u>, 2014 WL 2871432, at *2 (E.D. Va. June 24, 2014) (quoting Fed. R.

13

Civ. P. 8(b)(1)). "The purpose of [an affirmative defense] is to give the opposing party notice of the plea of [the affirmative defense] and a chance to argue, if he can, why the imposition of [the affirmative defense] would be inappropriate." Blonder Tongue Lab v. Univ. of Ill. Found., 402 U.S. 313, 350 (1971). Thus, an affirmative defense that is "threadbare and provide[s] neither 'fair notice of the nature of the defense'' is deficient under even the less scrutinizing standards of Rule 8(b)(1). Flame S.A., 2014 WL 2871432, at *3 (quoting Clem v. Corbeau, 98 F. App'x 197, 203, 203 (4th Cir. 2004)); see also Comm. & Indus. Ins. Co. v. Newhall Contracting Inc., 2014 WL 4161971, at *2 (S.D. W.Va. Aug. 19, 2014) (striking affirmative defenses where the court could not conclude that the broad and general manner in which the affirmative defenses were pled provided plaintiffs with fair notice).

So too is an affirmative defense "insufficient" under Rule 8(b)(1) if it "is clearly invalid as a matter of law." Racick v. Dominion Law Assocs., 270 F.R.D. 228, 232 (E.D.N.C. 2010); see also Hanzlik v. Birach, 2009 WL 2147845, at *3 (E.D. Va. July 14, 2009) (same) (citing Microsoft Corp. v. Comp. Support Servs. of Carolina Inc., 123 F. Supp. 2d 945, 949 (W.D.N.C. 2000)); Malibu Media, LLC v. Popp, 2015 WL 10937405, at *5 (E.D. Va. Apr. 13, 2015) ("A court may strike a defense that is clearly insufficient as a matter of law." (citing Fed. R. Civ. P. 12(f))).

### A.       The First and Second Affirmative Defenses are Inapplicable

A court may strike a defense that is clearly insufficient as a matter of law. Hanzlik v. Birach, 2009 WL 2147845, at *3 (citing Comp. Support Servs. of Carolina Inc., 123 F. Supp. 2d at 949). "'[W]hen the proposed affirmative defense is not a defense to liability, that is, when the proposed affirmative defense lacks a sound basis in law,'" amendment is futile and should be

denied. Drapkin v. Mjalli, 441 F. Supp. 3d 145, 151 (M.D.N.C. 2020) (quoting Ross v. Am. Express Co., 264 F.R.D. 100, 118 (S.D.N.Y. 2010)).

Defendant's First Affirmative Defense based in Head-of-State Immunity is as deficient now as it was in his Initial Answer. This Court has already addressed and rejected Defendant's assertion of head-of-state immunity in its on-the-record ruling at the September 29, 2020 hearing, when the Court held that it was "not at all concerned about that [argument]," and that "even if [Defendant] has some sort of immunity, it does not protect [him], … in my view, and in these types of cases." Tr. at 29:20-22.

Moreover, while this Circuit recognizes that "head-of-state immunity … is of an absolute nature and applies even against jus cogens claims," Yousuf, 699 F.3d at 776, courts should defer to the Executive branch's suggestion as to whether a defendant enjoys such immunity. Id. (citing Ye v. Zemlin, 383 F.3d 620, 624-25 (7th Cir. 2004)). Twice has this Court informed the State Department that Defendant "assert[ed] head-of-state immunity" in this case, see First Solicitation; Second Solicitation; Twice has the State Department declined to submit a Statement of Interest supporting Plaintiff's unfounded assertion, see Terwilliger Letter; Parekh Letter. Accordingly, under Yousuf, Defendant lacks any legal or factual basis to continue to cling to his theory of head-of-state immunity to defeat credible jus cogens violations against him.

Plaintiff's Second Affirmative Defense predicated upon the political question doctrine should fail for similar reasons. Although the Court expressed skepticism at the September 29, 2020, hearing that the political question doctrine is applicable here, out of an abundance of caution, it solicited the State Department for its views on the matter. Specifically, the Court stated:

> [T]o make sure that we are not going to bump into a political question problem, …
> [I am] going to follow the same route that I took in the Samantar case. And that is,
> I am going to address a letter to the State Department, advising them essentially of
> what is before the Court in both these cases and give them an opportunity – give

the [State] Department an opportunity to express its position. That's the safest way of handling these two cases.

\*      \*      \*      \*

I'm going to give the State Department 60 days to voice any position if it has one. If it doesn't do anything, then I'm going to assume the U.S. government doesn't have a concern about it.

Tr. at 30, ¶¶ 8-15; 18-21 (emphasis added).

As stated above, the Court sent its First Solicitation to the State Department on October 26, 2020; the First Solicitation indicated that the State Department was being invited to share its views in light of the fact that "adjudicating th[is] action may have implications for the foreign relations of the United States."  First Solicitation at 2.  On January 4, 2021, the State Department responded with a declination.  Terwilliger Letter.  Out of "courtesy" towards the new administration, on April 5, 2021, this Court <u>again</u> invited the State Department to provide its views on the case, foreboding that a decision by this Court "could have significant diplomatic implications for the foreign policy of the United States."  Second Solicitation at 2.  <u>Again</u>, the State Department declined to submit a Statement of Interest on behalf of Defendant.  Perakh Letter.

By <u>twice</u> rejecting this Court's invitation to submit a Statement of Interest, the State Department makes unequivocal its view that no political question within the exclusive domain of the Executive Branch exists warranting dismissal of this suit, and this Court should recognize the effect of the Perakh Letter as extinguishing both Plaintiff's First and Second Affirmative Defenses.  <u>See</u> Tr. at 30 ("[If [the State Department doesn't do anything in response to this Court's invitation to voice any position], then I'm going to assume the U.S. government doesn't have any concern about [the asserted political question doctrine problem].");  <u>see</u> <u>also</u> . Mjalli,

441 F. Supp. 3d at 151 (instructing that a "proposed affirmative defense [that] lacks a sound basis in law" should be stricken).

### B.      Defendant's Fifth Affirmative Defense is Unrecognized in this Circuit

Defendant's Fifth Affirmative Defense should be stricken because "failure to state a claim is not an acceptable affirmative defense" in this Circuit.  See Malibu Media LLC, 2015 WL 10937405, at *3 ("failure to state a claim is not an acceptable affirmative defense because it has not been recognized as an affirmative defense"); Odyssey Imaging, LLC v. Cardiology Assocs. of Johnson, LLC, 752 F. Supp. 2d 721, 727 (W.D. Va. 2010) (stating that failure to state a claim is not an affirmative defense at all); Cheney v. Vitro Am., Inc., 2010 WL 512581, at *1 (W.D. Va. 2010) (stating that failure to state a claim is not an affirmative defense, but rather a basis upon which to file a motion to dismiss); accord United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. 1, 4-5 (D.D.C. 2015) (granting plaintiff's motion to strike affirmative defense asserting failure to state a claim as an improper affirmative defense).

In his memorandum of law in support of leave to file his Amended Answer, Defendant cites to numerous out-of-circuit cases, all of which are unavailing, and to Martin v. Southwestern Va. Gas Co., 135 F.3d 307, 309 (4th Cir. 1998), for the notion that failure to state a claim is an acceptable affirmative defense in this Circuit.  That citation is entirely misleading.  In Martin, the defendant raised "failure to state a claim upon which relief could be granted because [plaintiff's] cause of action accrued prior to the effective date of the ADA" as an affirmative defense.  Id.  at *3 n.1 (emphasis added).  In other words, the defendant in Martin asserted statute of limitations defense. Thus, Martin, has no application here, where Defendant concedes he has no time-based affirmative defense.  (See Amended Answer (omitting time-based affirmative defenses).)

**II.      Defendant's Third and Fourth Affirmative Defenses Should be Judicially Estopped**

Defendant's Third and Fourth Affirmative Defenses of estoppel and waiver are also defective, despite his new allegations. Defendant now invokes these defenses by asserting for the first time that Plaintiffs "influenced the outcome of events negatively" and purportedly engaged in gunfights with Libyan National Army forces.  (Amended Answer at 10.)  This characterization, however, conflicts with Defendant's prior statements about Plaintiffs. In his prior motion to dismiss, Defendant's argument that he cannot be liable under the Torture Victims Protection Act rests upon his description of Plaintiffs as "collateral civilian casualties" and their deaths as "accidental or negligent," rather than "studied" or "deliberate."  (ECF No. 39 at 15.) Defendant should be judicially estopped from taking inconsistent positions in this litigation. Handelsgesellschaft v. Sheridan Trans. Co., 800 F. Supp. 1359, 1365 (E.D. Va. 1992) ("judicial estoppel applies where a party attempts to assert different positions or factual claims in the same proceeding"); see also Tenneco Chem., Inc. v. William T. Burnett & Co., 691 F.2d 658, 664-65 (4th Cir. 1982) (same).

**CONCLUSION**

For the foregoing reasons, the Court should grant the Plaintiff's motion to strike each of Defendant's affirmative defenses in his Amended Answer.

DATED: May 28, 2021

Respectfully submitted,

*/s/ Kevin T. Carroll*

Kevin T. Carroll (VSB#95292)
Joseph G. Grasso (*pro hac vice*)
Wiggin and Dana LLP
800 17th Street, NW, Suite 520
Washington, DC 20006
kcarroll@wiggin.com
Phone: 202-800-2475
Facsimile: 212-551-2888