IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AIDA ELZAGALLY *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | 1:19-cv-00853 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |
| MUNA AL-SUYID *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | 1:20-cv-00170 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |
| ALI ABDALLA HAMZA *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | 1:20-cv-01038 (LMB/JFA) |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT HIFTER'S
OBJECTION TO MAGISTRATE JUDGE PROPOSED FINDINGS OF FACT
AND RECOMMENDATION**

Imposing default against Mr. Hifter is too harsh a remedy when the case against him is based on speculation and news articles. Plaintiffs, even after their depositions, have failed to present any admissible evidence against Mr. Hifter, or

even the Libyan National Army, that would show he was responsible for the deaths of their loved ones. Mr. Hifter has stated under oath and in written discovery that he has no knowledge of the incidents alleged in the Complaint.

## BACKGROUND

As highlighted in the briefs in opposition to default in the three cases, many of the plaintiffs have no personal knowledge of the incidents alleged in their complaints. Those that do lack any admissible evidence or knowledge about who was responsible for the alleged incidents or how their attackers were connected to the LNA or its command structure. *See Elzagally*, No. 1:19-cv-853, Dkt. No. 146; *Hamza*, No. 1:20-cv-1038, Dkt. No. 137; *al-Suyid*, No. 1:20-cv-170, Dkt. No. 205. The only expert, hired by the *Hamza* Plaintiffs, had no knowledge of the specific incidents, the munitions used, or the people involved, and his opinions would be subject to a *Daubert* motion. *See Hamza*, Dkt. No. 137. Indeed, contrary to the *Hamza* Plaintiffs' primary theory—that purported "airstrikes" could only have come from the LNA because only the LNA had airstrike capability—their own expert testified that multiple factions in the war had conducted airstrikes. Of course, the *Hamza* Plaintiffs have presented no testimony or document to show that these explosions were in fact airstrikes as opposed to some other munition.

Plaintiffs' documents are no more availing than their testimony. Not only do they not show any evidence of how the LNA, or Mr. Hifter was responsible for specific incidents or deaths—for example, a death certificate showing that a person was killed

2

by gunfire does not show who fired the gun—but they have produced no witnesses who would even be able to authenticate or provide foundation for these documents.

## STANDARD OF REVIEW

A party may object to a magistrate judge's proposed findings and recommendations on a dispositive issue. Fed. R. Civ. P. 72(b). A party may serve and file written objections to a magistrate judge's proposed findings and recommendations, and the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Switzer v. Town of Stanley*, No. 5:11-cv-00021, 2012 WL 3315084, at *1 (W.D. Va. Aug. 10, 2012).

The Federal Magistrate's Act provides that "[a] judge of the court may reconsider any pretrial matter. . .where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). To reach a determination, the district court "may also receive further evidence," as stated in 28 U.S.C. § 636(b)(1)(A). *Wojcicki v. Aiken Technical College*, 360 F.App'x. 484, 487 (4th Cir. 2010)(explaining that the Fourth Circuit reviews a district court's refusal to accept new evidence under an abuse of discretion standard).

A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bruce v. Harford*, 21 F. Supp. 3d 590, 593-94 (E.D. Va. 2014)(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). A finding is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."

3

*MeadWestvaco Corp. v. Rexam PLC*, No. 1:10-cv-511, 2011 WL 2938456, at *2(E.D. Va. July 18, 2011)(citing *United Mktg. Solutions, Inc. v. Fowler*, No. 1:09-cv-1392, 2011 WL 837112, at *2(E.D. Va. Mar. 2, 2011)). The contrary to law standard is akin to de novo review for questions of law. *Sectek Inc. v. Diamond*, 2016 WL 5897763, at *2. De novo review requires the court "exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995). Therefore, this Court must independently review the factual findings of the Order for clear error and review legal conclusions de novo.

Where a discovery violation has occurred, it is within the Court's discretion to choose an appropriate remedy considering the totality of the circumstances. *Samsung Elec. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 200 (E.D. Va. 2016). The four-part test is (1) whether the non-complying party acted in bad faith; (2) the prejudice caused by non-compliance; (3) the need for deterrence; and (4) whether a less drastic sanction would be effective. *Id.* In the D.C. Circuit, when faced with default judgment in the context of a Torture Victims Protection ("TVPA") case, it found that a court does not unquestionably accept a complaint's unsupported allegations as true. *See Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014).

ARGUMENT

I. **A lesser remedy than default is appropriate under the four-factor test**

The appropriate remedy in this case is something short of the drastic sanction of default. Plaintiffs' allegations amount to bare assertions without admissible,

4

supporting evidence. The balance of the four factors weighs against such a harsh sanction. *See Kim*, 774 F.3d at 1047.

Under the first factor, Mr. Hifter has not acted in bad faith. Throughout these proceedings, Mr. Hifter has litigated good faith and legally complex discovery concerns. This was not a mere "delay tactic" as suggested by the Magistrate Judge. While this Court ultimately granted Plaintiffs' Motions to Compel, overruling many of Mr. Hifter's objections, it did so only in part, sustaining relevancy objections to many discovery requests as being outside the scope of the specific incidents alleged in the Complaint. The pace of discovery further slowed, not because of any delay by Mr. Hifter, but because of the improper *ex parte* communication to the Court instigated by counsel for the *al-Suyid* Plaintiffs, and the subsequent stay of proceedings.

Under the second factor, the prejudice to Plaintiffs is not substantial because their case lacks any direct evidence to begin with. Mr. Hifter has no knowledge of the events alleged in the Complaint, and none of the plaintiffs have any personal knowledge of Mr. Hifter. There is no reason to believe that Mr. Hifter's deposition answers would be any different from his written statements.

While deterrence is a legitimate concern of this Court, and there is no question that Mr. Hifter has caused delays to discovery due to his failure to appear at depositions, the deterrent effect of a sanction less than default is appropriate in this case, as discussed with regard to the fourth factor, the effectiveness of a less drastic sanction.

Under the fourth factor, a less drastic sanction would be effective. For example, Mr. Hifter could be prohibited from testifying or introducing evidence on his own behalf, while still being permitted to contest liability and hold Plaintiffs to their burden of production. Indeed, the D.C. Circuit's opinion in *Kim* suggests that this approach would be appropriate.

In *Kim*, the Plaintiffs alleged that their relative had been abducted by North Korea, tortured, and killed. *Kim*, 774 F.3d at 1049. Their allegations were supported by confirmed evidence that North Korean agents had planned and executed the abduction. *Id.* Two expert witnesses who provided evidence that victims of forced abduction by North Korea, particularly those with Kim's political and religious beliefs, were subjected to torture, and expert testimony revealed that Kim died from starvation. *Id.* at 1049–51. The D.C. Circuit found Plaintiffs' evidence to be "satisfactory to the court" to support default judgment, but specifically noted that if there had not been "confirmed evidence" tying Kim's disappearance to North Korea, the outcome would likely have been different, requiring "too many logical leaps." *Id.* at 1051. Also notable for comparison purposes: North Korea is an authoritarian hegemony, with no factions, no militias, and no foreign state mercenaries.

In this case, Plaintiffs ask this Court to make far too many logical leaps. Unlike *Kim*, it is not clear who controls or commands Libya, or even specific parts of Libya. There is currently a parallel legislature and competing governments. Over the course of the Libyan civil war, there have been numerous armies, militias, factions, and

6

foreign mercenary groups fighting, with shifting coalitions, allegiances, and loyalties. *Hamza*'s purported expert testified as much.

Plaintiffs simply cannot show that it was the LNA that was responsible for the alleged incidents, and even if they could, they cannot show how Mr. Hifter would have been legally responsible for those incidents. *See Doe v. Drummond Co.*, 782 F.3d 576,609 (11th Cir. 2015); *see also Yousuf v. Samantar*, 2012 WL 3730617, *11 (E.D. Va. Aug. 28, 2012) (quoting *Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009)). Plaintiffs have not presented admissible evidence of the superior subordinate relationships, the knowledge of the superior, or failure of prevention or punishment. They have not alleged what local unit of the LNA conducted the supposed operations, who gave orders in those units, and what orders were given. Mr. Hifter himself is not a local unit commander. In this multi-faction mess of a civil war in Libya it is simply too much of a leap to attribute specific gunshots or explosions to the LNA, much less to Mr. Hifter. Plaintiffs have produced no admissible evidence and the sole expert, for the *Hamza* Plaintiffs only, lacks any reliable data or methodology to support his opinions. Therefore, Plaintiffs should not be awarded a default judgment under these circumstances.

## II.   Mr. Hifter's political situation puts him in an untenable position

Mr. Hifter wishes to convey his deepest respect for this Court and for U.S. law, but respectfully believes that this is not the proper forum to resolve issues involving actions that allegedly occurred in Libya, alleged by Libyans, against a Libyan citizen. Mr. Hifter believes that due to the explosive nature of Libyan politics, that

submission to questioning by foreign attorneys would be an untenable admission of having done something wrong in Libya. While Mr. Hifter desires to work within the U.S. justice system, he urges this Court to consider the international context of this case, and that he should not be obligated to submit to a foreign deposition in another country, during an ongoing conflict, particularly in the midst of a delicate peace process, where bad actors will take advantage of the situation, and a cascade of lawsuits would result.

Mr. Hifter wishes to emphasize to this court, that while it has ruled on these issues previously, Mr. Hifter as Field Marshal of the LNA acted as a chief executive and head of state, and that he maintains immunity from any civil action in a U.S. court. The fact that he is a U.S. Citizen should not prejudice his rights in Libya, and that he should be subject to Libyan courts for these allegations. The Plaintiffs in this case have made no attempt to seek remedy in the Libyan court system that is the appropriate place for this litigation.

Mr. Hifter is willing to work with this Court to accommodate a limited inquiry, limited to the events alleged in the Complaints, and with protections for Libyan national security. Mr. Hifter means no disrespect toward this Court, but must protect his country's security, stability, and the peace process.

## CONCLUSION

Default judgment in this case is far too harsh of a sanction given the totality of the circumstances, particularly the lack of any evidence to support Plaintiffs' TVPA claim.. District courts deciding TVPA matters should not enter default judgment

where Plaintiffs cannot prove their case on the merits. *See Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014). Plaintiffs, in this case, cannot do so. For these reasons, Mr. Hifter respectfully objects to the Findings and Recommendations of June 10, 2022, and asks this Court to deny Plaintiff's Motion for Default Judgment.

Dated: June 24, 2022                                Respectfully submitted,

/s/ Jason C. Greaves
Jason C. Greaves, VSB No. 86164
Jesse R. Binnall, VSB No. 79292
Lindsay R. McKasson, VSB No. 96074
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
            jesse@binnall.com
            lindsay@binnall.com

*Attorneys for Defendant Khalifa Hifter*

9

## CERTIFICATE OF SERVICE

I certify that on June 24, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jason C. Greaves
Jason C. Greaves

*Attorney for Defendant Khalifa Hifter*