**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **AIDA ELZAGALLY, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No.: 1:19-cv-853** |
| | : | |
| v. | : | |
| | : | |
| **KHALIFA HIFTER,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| **MUNA AL-SUYID, et al.,** | : | **Civil Action No.: 1:20-cv-170** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **KHALIFA HIFTER** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| **ALI ABDULLAH HAMZA, et al.** | : | **Civil Action No.: 1:20-cv-1038** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(CASES CONSOLIDATED FOR** |
| v. | : | **PURPOSES OF DISCOVERY &** |
| | : | **LIMITED PRETRIAL** |
| | : | **PROCEEDINGS)** |
| **KHALIFA HIFTER,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT KHALIFA HIFTER'S MOTION TO SET ASIDE**
<u>**DEFAULT ON LIABILITY PURSUANT TO FEDERAL RULE OF CIVIL**</u>
<u>**PROCEDURE 55(c) AND FOR OTHER RELIEF**</u>

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY ................................................................................ 1

II.  PROCEDURAL BACKGROUND ................................................................................ 4

III. STANDARD OF REVIEW ................................................................................ 6

IV.  ARGUMENT ................................................................................ 7

   A.  Hifter has meritorious defenses ................................................................................ 7

      1.  Insufficient pleadings ................................................................................ 8

      2.  Plaintiffs lack evidence to prove liability under the Command Responsibility Doctrine. . 9

      3. Plaintiffs fail to meet the elements of the TVPA ................................................. 10

   B.  Hifter acted with reasonable promptness in filing this motion ......................................... 12

   C.   Hifter was not "personally responsible" for having to reschedule his depositions nor did he act in bad faith, considering the politicization of this case in the media by plaintiffs, their spokesmen, and their counsel ................................................................................ 13

   D. Prejudice to the Plaintiffs. ................................................................................ 18

   E. Hifter has not engaged in dilatory conduct since he acted in good faith ............................... 19

   F. This Honorable Court has less drastic sanctions available to impose that do not determine the outcome of the merits of the matter ................................................................... 20

V.   RELIEF REQUESTED ................................................................................ 22

EXHIBIT LIST

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 10

*Baker v. Carr*, 369 U.S. 186 (1962) .............................................................................. 12

*Burton v. The TJX Cos., Inc., No.* 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839, 2008 WL
    1944033 (E.D. Va. May 1, 2008) ............................................................................ 18

*Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413 (4th Cir. 2010) ... 7,
    19

*Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002) ................................... 9, 10

*Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966) ................................................................. 7

*In re Columbia Leasing LLC*, 981 F. Supp. 2d 490 (E.D.Va. 2013) ...................................... 7

*Kay Co., LLC v. EQT Prod. Co.*, No. 1:13-CV-151, 2018 U.S. Dist. LEXIS 221459 (N.D.W. Va.
    Aug. 27, 2018) ................................................................................................. 17

*Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044 (D.C. Cir. 2014) ................... 8, 9

*Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199 (2d Cir. 2013) ................................ 17

*Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951 (4th Cir.1987) ............................................ 6, 7

*Mamani v. Berzain*, 21 F.Supp.3d 1353 (S.D. Fla. 2014) .................................................. 9

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) ....................................................... 10

*McCoy v. Johnson*, 176 F.R.D. 676 (N.D. Ga. 1997) ....................................................... 8

*Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547 (S.D.N.Y. 1989). .................................. 21

*Payne ex rel. Estate of Calzada v. Brake*, 439 F. 3d 198 (4th Cir. 2006) ............................... 6

*Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710 (E.D. Va. 2011) ...... 12, 19

*Shepherd v. ABC*, 62 F.3d 1469 (D.C. Cir. 1995) ....................................................... 20, 22

*Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969) ........................................................... 7

*United States v. Moradi*, 673 F.2d 725 (4th Cir.1982) ................................................ 12

*Vick v. Wong*, 263 F.R.D. 325 (E.D. Va. 2009) .......................................................... 18

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) ............................................. 11

**Statutes**

Torture Victim Protection Act of 1991, 28 U.S.C. 1350 (note) .......................... 1, 10, 11

**Other Authorities**

Brumback, Kate, *Judge delays Gov. Kemp's testimony in Georgia election probe* THE

    WASHINGTON TIMES (Aug. 29, 2022),

    https://www.washingtontimes.com/news/2022/aug/29/judge-delays-gov-kemps-testimony-

    georgia-election-/ ................................................................................................ 17

Farooq, Umar A., *US court finds Libya's Khalifa Haftar liable for war crimes* LIBYA TRIBUNE

    (July 31, 2022), https://en.minbarlibya.org/2022/07/31/us-court-finds-libyas-khalifa-haftar-

    liable-for-war-crimes/ ......................................................................................... 16

Fed. R. Civ. P. 55(c) (2015 Comm. Notes) ................................................................. 12

*Haftar stands convicted of war crimes* LIBYAN EXPRESS (July 29, 2022),

    https://www.libyanexpress.com/haftar-stands-convicted-of-war-crimes/ ............... 14

https://www.vaed.uscourts.gov/code-pretrial-and-trial-conduct .................................. 16

*Libyan American Alliance Calls on Amb. Norland to Clarify his Statement on Hifter's Role in*

    *Libya's Future*, LIBYAN AMERICAN ALLIANCE (Aug. 6, 2021),

    https://www.libyanamericanalliance.org/press-releases-2/libyan-american-alliance-calls-on-

    amb-norland-to-clarify-his-statement-on-hifters-role-libyas-future ........................... 1

*Norland: Field Marshal Haftar Can Contribute to the Unification of the Libyan Army*
  ALMARSAD (Aug. 6, 2021), https://almarsad.co/en/2021/08/06/norland-haftar-can-contribute-
  to-the-unification-of-the-libyan-army/ ..................................................................................... 1

*Remarks at a UN Security Council Briefing on Libya*, UNITED STATES MISSION TO THE UNITED
  NATIONS (Aug. 30, 2022), https://usun.usmission.gov/remarks-at-a-un-security-council-
  briefing-on-libya-10/ ............................................................................................................. 17

S.C. Res. 632, U.N. Doc. S/RES/632 (Aug. 19, 2022) ................................................................ 2

**Rules**

FED. R. CIV. P. 55(c) ............................................................................................................. 6, 7

Defendant, Field Marshal Khalifa Hifter ("Hifter"), submits this Memorandum of Law in support of his Motion to Set Aside Default on Liability pursuant to Federal Rule of Civil Procedure 55(c) and For Other Relief.

## I.     INTRODUCTION AND SUMMARY

Defendant Hifter is the Commander-in-Chief of the Libyan National Army (LNA), duly appointed by the Libyan House of Representatives and a leading candidate for president of Libya, having been recognized by the United States as a significant military unifying figure.[1] He was sued by three groups of Libyan plaintiffs alleging that he is liable for the deaths of their loved ones and injuries suffered during hostilities waged by various warring factions in and around Tripoli in 2019 as a continuation of the decade-old civil war following the overthrow of Libyan leader Muammar Gaddafi in 2011.

Plaintiffs allege that Hifter, as commander of the LNA, violated the Torture Victims Protection Act (TVPA) by having those under his command intentionally target plaintiffs and their relatives with mortar attacks from miles away and by other actions.  Hifter denied the barebone allegations and raised several defenses, both factual and legal, including jurisdictional and justiciability ones under the political question doctrine.

---

[1] During an interview with Al-Jazeera on August 5, 2021, Ambassador Richard B. Norland, U.S. Special Envoy for Libya, said, "[t]here are a number of significant figures in the Libyan political and military scene right now, General Hifter is clearly one of them and his influence in helping, particularly in unifying the military institution in the country, could be significant." *See Libyan American Alliance Calls on Amb. Norland to Clarify his Statement on Hifter's Role in Libya's Future*, LIBYAN AMERICAN ALLIANCE (Aug. 6, 2021), https://www.libyanamericanalliance.org/press-releases-2/libyan-american-alliance-calls-on-amb-norland-to-clarify-his-statement-on-hifters-role-libyas-future; *see also Norland: Field Marshal Haftar Can Contribute to the Unification of the Libyan Army* ALMARSAD (Aug. 6, 2021), https://almarsad.co/en/2021/08/06/norland-haftar-can-contribute-to-the-unification-of-the-libyan-army/.

Several stays of this case were imposed by the Court to ask the views of the State Department, including a stay in which the Court recognized that this case was being exploited by the plaintiffs for political purposes (and who continue to do so to this day by falsely claiming that this Court found Hifter guilty of "war crimes") to interfere with the then-scheduled presidential elections on December 24, 2021, and because one of the plaintiffs' lead attorneys engaged in *ex parte* contact with the Court.[2] After the elections were postponed, the stay was lifted and litigation resumed. However, recent developments in the peace process backed by the United States, have since caused the United Nations to issue a report that the framework of elections "is within reach."[3]

After failing to attend several depositions sought by the plaintiffs because of Hifter's conflicts with his military duties, the Court adopted the Magistrate's Proposed Findings and Recommendations, and on July 29, 2022, imposed the severest of discovery sanctions: a finding of default on liability and allowing the plaintiffs to proceed with assessing their damages in the tens of millions of dollars.[4]

As will be more fully argued herein, entering default on liability has unfairly allowed Plaintiffs to seek damages for injuries for which there is no legally sufficient claim or supporting evidence, thus depriving Hifter of meritorious defenses. Plaintiffs' depositions and other discovery in this case has revealed that no Plaintiff witnessed any act committed by Hifter or any

---

[2] Ord. (Nov. 4, 2021) *Hamza* ECF No. 91, Ex. 1 ("Moreover, these [*ex parte*] communications appear to lend support to defendant's argument that his litigation is being used to influence Libya's fragile political situation.") *Id*. at 3.

[3] *See* S.C. Res. 632, U.N. Doc. S/RES/632 (Aug. 19, 2022) ("An agreement on a constitutional framework for the holding of elections is within reach . . ."). Hifter will step down from his role as head of the LNA pursuant to Libyan law once the new election date is set just as he did three months before the December 24, 2021 elections.

[4] Ord. (July 29, 2022) *Elzagally* ECF No. 159.

individual over which Hifter had any authority or control. Indeed, Plaintiffs' own expert testified that mortar attacks could have been launched by forces other than LNA.

Moreover, the entry of default has wrongly treated Hifter as acting in bad faith for cancelling his depositions when in fact his military duties precluded his attendance. Hifter must answer to the Libyan House of Representatives that appointed him and his military command, both of whom have submitted official letters attached to this motion,[5] as well as a Declaration by Hifter himself[6], explaining the limits on his ability to disclose information relating to the Libyan conflict that Plaintiffs seek. Thus, Hifter was not acting in bad faith nor was he personally responsible for having to cancel the depositions.

The delay has not prejudiced the plaintiffs since they have already obtained documents from Hifter during discovery and any deposition would not provide them with further information about the LNA's military plans and activities.

Finally, the Court has several options short of default judgment on liability to remedy any discovery violations that would deter future misconduct that were not fully considered, as well as having the deposition by written questions, which the Court even suggested, to eliminate objections to the subject matters to be covered in questioning. That format would also prevent a video conference deposition from being leaked to his enemies to further use this litigation "to influence Libya's fragile political situation," as this Court put it, as well as to thwart Hifter's candidacy and his efforts to bring peace and stability to the region.[7]

---

[5] *See* Letter from Exec. Secretary of the Gen. Staff of the LNA (Sept. 7, 2022) Ex. 2, Letter from Chairman of Def. and Sec. Comm. In the Libyan H.R. (Sept. 8, 2022) Ex. 3.
[6] *See* Decl. of Khalifa Hifter (Sept. 8, 2022) Ex. 4.
[7] Ord. (Nov. 4, 2021) *Hamza* ECF No. 91, Ex. 1.

## II.      PROCEDURAL BACKGROUND

The procedural background of this case is recounted in the Magistrate's Proposed

Findings of Fact and Recommendations of June 10, 2022, and will not be repeated here.[8] In the

interest of judicial economy, Defendant Hifter presents the salient aspects of this case that lead to

this Court's imposition of a default on liability as a sanction for Hifter not appearing at several

scheduled depositions due to his duties as Commander of the LNA and his candidacy for

president in the elections originally scheduled for December 24, 2021, but subsequently

postponed.

During the pendency of this case, this Court imposed several stays recognizing the

foreign policy aspects of this case. On September 29, 2020, the action was stayed for sixty days.

Then, on April 5, 2021, the case was stayed until May 18, 2021, to give the U.S. State

Department in the new administration an opportunity to respond to a letter from this Court

regarding its interest in this case. More recently, the Court stayed the action from November 4,

2021, through March 11, 2022, in the *Hamza* matter and to April 22, 2022, in the *Al-Suyid* and

*Elzagally* matters, to allow for the Libyan elections to take place without this litigation

impinging on that process.[9] Once the stays were lifted, plaintiffs again proceeded to notice

Hifter's deposition, which was canceled due to his military duties during the crisis in Libya,

including dealing with warring factions, religious groups, and foreign forces and mercenaries.

On Friday, May 6, 2022, this Court held a hearing to consider several motions by

Defendant and the terms of a Protective Order that the parties were negotiating regarding the

procedures for taking depositions, including the one scheduled for Monday, May 9, 2022. The

---

[8] *See* Proposed Findings of Fact and Recommendations (June 10, 2022) *Al-Suyid* ECF No. 209.
[9] Ord. (Nov. 4, 2021) *Hamza* ECF No. 91, Ex. 1; Ord. (Mar. 11, 2022) *Hamza* ECF No. 106;
Ord. (Apr. 22, 2022) *Elzagally* ECF No. 130; Ord. (Apr. 22, 2022) *Al-Suyid* ECF No. 187.

Court denied Hifter's motion to stay and issued a 14-page Protective Order to govern the procedures to be used in taking the deposition the following Monday, May 9.[10]

When Hifter's counsel conveyed to Hifter the terms of the Protective Order, there was not enough time over the weekend for Hifter and Libyan authorities to review the terms of the Protective Order, translate it into Arabic, and coupled with his duties with the LNA, Hifter had to cancel his appearance for that Monday, May 9.

Upon learning of his inability to attend the May 9 deposition, Hifter's counsel offered to reschedule his deposition for the first week of June, but Plaintiffs' counsel rejected this offer. Hifter is apologetic to this Honorable Court and to Plaintiffs' counsel in creating an unfortunate delay in this matter. Although Hifter wishes to restore his name from the unsubstantiated claims against his person and the LNA, he was unable to appear for the deposition because of the nature of his position as commander of the LNA and concerns of Libyan national security, legal, and political issues involved in his testimony in this matter, and the plaintiffs' efforts to use the deposition to inflame the political environment. He had no choice but to cancel at no fault of his own.

On May 20, 2022, Plaintiffs filed Plaintiff's Motion for Default and Sanctions.[11] In response, Hifter filed an Opposition to Plaintiffs' Motion for Default. On June 10, 2022, Magistrate Judge John F. Anderson heard arguments on the Motion for Default and issued Proposed Finding of Fact and Recommendations to find Hifter's failure to be deposed to be egregious and recommended that a sanction for default on liability be entered.[12] In the Proposed Findings of Fact and Recommendations, Judge Anderson noted that Hifter did not file an

---

[10] *See* Protective Ord. (May 6, 2022) *Hamza* ECF No. 128.
[11] *See* Pl's Mot. For Default J. (May 20, 2022) *Al-Suyid* ECF No. 199.
[12] *See* Proposed Findings of Fact and Recommendations (June 10, 2022) *Al-Suyid* ECF No. 209.

affidavit under oath certifying why he missed the deposition in May of 2022,[13] which has since been cured in this motion.

On July 29, 2022, this Court held a hearing on Judge Anderson's recommendations and adopted them and granted plaintiffs' motion for default but stayed the case to allow the plaintiffs to submit a proposal for the damages hearing, which was filed on September 9, 2022.  The Court also granted Hifter's counsel to withdraw from the case, after which Hifter began searching for substitute counsel, and retained undersigned counsel in the last couple weeks.

Throughout the proceedings, with the exception of his appearance at a deposition, Hifter has complied with his discovery obligations under the rules of this Court.  Hifter has answered Plaintiffs' Interrogatories and responded to Requests for Documents. He has produced all responsive documents in his possession, custody, or control. He cannot produce what he does not have nor what are national and state secrets.

## III.    STANDARD OF REVIEW

Under FED. R. CIV. P. 55(c), "[t]he court may set aside an entry of default for good cause."[14] Although the Fourth Circuit  has not specifically defined "good cause" in the Rule 55(c) context, the Fourth Circuit has held that a district court should consider: 1) whether the moving party has a meritorious defense, 2) whether it acts with reasonable promptness, 3) the personal responsibility of the defaulting party, 4) the prejudice to the party, 5) whether there is a history of dilatory action, and 6) the availability of sanctions less drastic.[15] This criteria should

---

[13] *Id.* at p. 14.
[14] FED. R. CIV. P. 55(c).
[15] *See Payne ex rel. Estate of Calzada v. Brake*, 439 F. 3d 198, 204-05 (4th Cir. 2006); *see also Lolatchy v. Arthur Murray, Inc*., 816 F.2d 951, 953 (4th Cir.1987).

be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments."[16]

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."[17] Unlike a Rule 60(b) motion, "'Rule 55(c)'s good cause standard ... is more forgiving of defaulting parties because it does not implicate any interest in finality.'"[18] Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.[19] When weighing these factors together, and having them "liberally construed," Hifter submits that there is sufficient good cause to vacate the default on liability.

## IV.    ARGUMENT

In reviewing the following six factors that are relevant in deciding whether there is good cause under Rule 55(c) to vacate the default on liability, and liberally construing them in the movant's favor, the Court should grant Hifter's motion.

### A.  Hifter has meritorious defenses

Hifter has raised meritorious defenses, both factual and legal, such that entering default on liability is an extreme discovery sanction that would unfairly allow Plaintiffs to recover for claims for which there is no legally sufficient claim or supporting evidence to prove Hifter intentionally killed or tortured these plaintiffs in violation of the Torture Victim Protection Act

---

[16] *Lolatchy*, 816 F.2d at 954.
[17] *In re Columbia Leasing LLC*, 981 F. Supp. 2d 490, 493 (E.D.Va. 2013) (*quoting Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010)).
[18] *Id.*
[19] *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) *citing Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966).

or ordered or approved others to do so.

### 1.  Insufficient pleadings

Plaintiffs' depositions and other discovery reveal that no Plaintiff has personal knowledge of any act committed by Hifter or that he ordered any individual over which Hifter had any command authority or control to commit the alleged violations.

- Plaintiff Ali Abdalla Hamza testified that on October 27, 2021, he has no personal knowledge regarding who committed the acts alleged in his complaint.[20] Rather, when the alleged events took place, he was in Canada.[21]

- Plaintiff Abdalhalem Hamza, on October 28, 2021, was in another part of Benghazi when the alleged events took place.[22] Abdalhalem Hamza lacks any personal knowledge of the key allegations in his complaint.[23]

- Plaintiff Salimah Jibreel testified that she had personal knowledge of the bombing of her home, but no information about the type of munition or where it may have been launched from.[24] She testified about being captured with her daughter and husband but could not identify her kidnappers or their affiliation.[25]

Plaintiffs' own expert, Wolfram Lacher, also testified that he had no conversations with anyone who had personal knowledge of the events, did not visit the sites of the alleged incidents, and acknowledged that opposition to Hifter's forces also were capable of airstrikes.[26]

When faced with a default judgment in the context of a TVPA case, the D.C. Circuit ruled that a court does not unquestionably accept a complaint's unsupported allegations as true.[27] Default judgment should not be entered unless plaintiff's claim is legally sufficient.[28]  Here,

---

[20] *See* Opposition to Plaintiff's Motion for Default Judgment Ex. 1, at pp. 30–33 (June 3, 2022) *Hamza* ECF No. 137.
[21] *Id.* at pp. 44–45.
[22] *Id.* at Ex. 2, at pp. 25–26.
[23] *See id.*
[24] *Id.* at Ex. 3, at pp. 40–41.
[25] *Id.* at pp. 44–57.
[26] *Id.* at Ex. 4, at pp. 11–14.
[27] *See Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014).
[28] *See McCoy v. Johnson*, 176 F.R.D. 676, 679 (N.D. Ga. 1997).

Plaintiffs' have failed to bring forward any evidence supporting their claim that Hifter participated in or was personally liable for extrajudicial killings or torture. Their claims are merely conclusory. Nothing suggests that Hifter's deposition testimony would change that. Rather, he has already denied the accusations and has no knowledge of plaintiffs' claims.  Even if the Court were to accept all the allegations in plaintiffs' complaints to be true, the Court can find that the evidence is too weak to support their claims.[29]

### 2. Plaintiffs lack evidence to prove liability under the Command Responsibility Doctrine.

Since Hifter did not commit any of the alleged acts himself, the plaintiffs must rely on the command responsibility doctrine to prove that Hifter is liable for their injuries.  Bare allegations and conclusory statements do not suffice.

The command responsibility doctrine has three prongs:

> (1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes.[30]

To establish the 'superior-subordinate relationship' element, Plaintiffs must allege facts plausibly suggesting that [d]efendants had 'effective control'" over the soldiers' actions.[31] Second, "[t]o establish the knowledge element of command responsibility, [p]laintiffs must allege facts plausibly suggesting that [d]efendants 'knew or should have known, owing to the circumstances at the time,' that their soldiers 'had committed, were committing, or planned to

---

[29] *See Kim*, 774 F.3d at 1047.
[30] *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002).
[31] *Mamani v. Berzain*, 21 F.Supp.3d 1353, 1376 (S.D. Fla. 2014).

commit extrajudicial killings."[32] Third, "[t]o establish the failure-to-act element of command responsibility, plaintiffs must allege facts plausibly suggesting that defendants 'failed to prevent the extrajudicial killings or 'failed to punish' the soldiers afterward.[33]

Accordingly, even assuming that LNA forces were responsible for Plaintiffs' injuries, which they have failed to show and Hifter denies, Hifter need only show the failure of the plaintiffs to meet just *one* prong of this standard to prevail.  The Plaintiffs' attempt to impute knowledge of these injuries to Hifter was the military operation of Operation Dignity, but that mission was designed to combat pro-Islamic militants, including ISIS, and not target innocent civilians. In *Mamani*, the court explained that such broad accusations are, "easy to say about leaders of nations, but without adequate factual support of more specific acts by these defendants, these 'bare assertions' are 'not entitled to be assumed true.'"[34]

Hifter has stated that he lacks personal knowledge of the alleged acts, agreed to a peaceful ceasefire, and fully condemns all violence against peaceful civilians regardless of their politics.  In short, Hifter has a meritorious defense to Plaintiffs' bald assertions under the Command Responsibility Doctrine.

### 3. Plaintiffs fail to meet the elements of the TVPA.

Plaintiffs' claims fail as a matter of law. The TVPA mandates that "[a] court . . . decline to hear a claim . . . if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."[35] Courts have found that a plaintiff has

---

[32] *Id.* at 1377 (*quoting Ford*, 289 F.3d at 1288).

[33] *Id.* at 1378.

[34] *Mamani v. Berzain*, 654 F.3d 1148, 1154 (11th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

[35] Torture Victim Protection Act of 1991, 28 U.S.C. 1350 (note).

exhausted adequate and available remedies when they have sought relief through the initiation of a judicial proceeding in the country where the conduct took place.[36] Here, Plaintiffs have not alleged any facts showing that they have exhausted their available remedies and Hifter should be permitted to bring forward a defense on its merits that plaintiff failed to meet this presumption.

Although Plaintiffs contend that they cannot obtain relief in Libya due to a dysfunctional judicial system, Plaintiffs have failed to demonstrate that they have attempted in any way to seek relief before the Libyan courts before reaching that conclusion. Instead, Plaintiffs are attempting to use the context of the Libyan conflict as an excuse to get relief in U.S. courts prior to exhausting their options through the functioning Libyan courts. As a result of alternative avenues for relief left unaddressed and unused by Plaintiffs, they have failed to show that they have exhausted all of their available remedies as required under the TVPA.

In sum, the plaintiffs have failed to bring forward sufficient claims that fall under the TVPA and it is a logical leap that Hifter's deposition alone would allow the plaintiff to meet the burden of their case, nor would it resolve that failure of plaintiffs to exhaust all the remedies available to them pursuant to the TVPA.

### 4. Political Question Doctrine

While this Court has denied Hifter's defense under the political question doctrine with respect to this Court's interference with the United States policy because the State Department through the Justice Department had earlier expressed no interest in the case "at this time,"[37] because of the changed circumstances in the political situation in Libya and the recent peace talks led by United Nation authorities, counsel wishes to reach out to the State Department to get

---

[36] *See e.g., Xuncax v. Gramajo*, 886 F. Supp. 162, 178 (D. Mass. 1995).
[37] *See* Notice by the United States of America (May 14, 2021) *Al-Suyid* ECF No. 93.

11

their current views of the matter.  Indeed, when that course of action was suggested by Hifter's prior counsel at the July 29, 2022 default hearing, the Court responded, "I might or might not, you know, consider that as something worth taking  into consideration."[38]  Moreover, another factor of the political question doctrine is applicable here, namely, that there are no "judicially manageable standards" to adjudicate plaintiffs' claims of whether it can be proven that Hifter is personally responsible for the injuries, the source of the mortar attacks that struck plaintiffs' homes, and determining the damages sustained.[39]

### B.  Hifter acted with reasonable promptness in filing this motion.

Hifter has acted promptly to file this motion in an effort to avoid further delay in this matter.  Reasonable promptness is determined at the discretion of the trial judge and is evaluated "in light of the facts and circumstances of each occasion."[40] In fact, "[u]ntil final judgment is entered, Rule 54(b) allows revision of the default judgment at any time."[41]

The default Order was issued on July 29, 2022, where Hifter's prior counsel was allowed to withdraw from the case. Hifter promptly sought to find and retain substitute counsel. The undersigned substitute counsel for the Defendant was recently retained and received the case file from prior counsel's office on August 30, 2022.  Since then, counsel has ordered relevant transcripts of hearings in this case, which have now been placed on the docket and counsel is further reviewing the case file.  This motion was thus filed as expeditiously as possible under the circumstances.

---

[38] *See* Tr. (July 29, 2021) *Hamza* ECF No. 152, at 6.
[39] *See Baker v. Carr*, 369 U.S. 186, 226 (1962).
[40] *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 726 (E.D. Va. 2011) (*quoting United States v. Moradi*, 673 F.2d 725, 727 (4th Cir.1982)).
[41] Fed. R. Civ. P. 55(c) (2015 Comm. Notes).

**C. Hifter was not "personally responsible" for having to reschedule his depositions nor did he act in bad faith, considering the politicization of this case in the media by plaintiffs, their spokesmen, and their counsel.**

While Hifter complied with written discovery from the plaintiffs, as Commander of the LNA, not only did his military duties cause him to cancel the video conferenced depositions as his prior counsel represented to the Court, but also authorities from the Libyan House of Representatives that appointed him and the LNA's General Staff limited his ability to be subject to disclosing sensitive military and national security secrets in any video conferenced deposition likely to be misused by plaintiffs and opponents of the LNA and Hifter for political purposes.

As such, Hifter is not "personally responsible" for the short notice to cancel and reschedule his deposition nor did he act in bad faith; rather, his duties as a high-ranking official limited his ability to be deposed as explained in greater detail in his Declaration of September 8, 2022, and the official letters from the Chairman of Defense and Security Committee of the Libyan House of Representatives and the Executive Secretary of Chief of Staff of the LNA, all of which are attached hereto and for which the Court may take judicial notice.[42] These communications are being submitted to the Court with this motion because Magistrate Anderson noted the absence of any Affidavit his Proposed Findings of Fact and Recommendations from Hifter explaining his reason for missing the May 9, 2022 deposition, the cancellation of which led to the default.[43]

---

[42] *See* Letter from Exec. Secretary of the Gen. Staff of the LNA (Sept. 7, 2022) Ex. 2; Letter from Chairman of Def. and Sec. Comm. In the Libyan H.R. (Sept. 8, 2022) Ex. 3; and Decl. of Khalifa Hifter (Sept. 8, 2022) Ex. 4.

[43] *See* Proposed Findings of Fact and Recommendations (June 10, 2022) *Hamza* ECF No. 141, at p. 14. Moreover, between this Court's hearing on Friday, May 6, 2022, when the Court signed off on a complex 14-page protective order governing the procedure of the video conference, and the deposition itself scheduled that Monday, May 9, there was little time left that weekend for Hifter and Libyan authorities to translate the documents in Arabic and discuss the implications of the order with Hifter's U.S. counsel. *See generally* Protective Ord. (May 6, 2022) *Hamza* ECF

As the official communications demonstrate, precisely because this lawsuit has been

misused for political purposes by the plaintiffs, as this Court has even recognized, there were

justifiable concerns that any deposition would also be used by political enemies of the House of

Representatives, the LNA, and Hifter himself as a candidate, to further destabilize the already

fragile political situation in Libya.  Accordingly, Hifter was directed not to attend any deposition

until there were proper safeguards in place, including receiving written questions in advance, a

procedure which this Court itself had previously suggested[44] as well as by Libyan authorities in

their September 8 letters.[45]

To make matters worse, at a press conference outside the courthouse following this

Court's default hearing, plaintiffs' spokesmen, accompanied by plaintiffs' attorney,

mischaracterized this Court's default ruling as a finding that this Court found Hifter guilty of

committing "war crimes."[46]  Needless to say, this dangerous characterization has all the more

exacerbated the political instability in Libya by placing the authority of the Court in the middle

of a highly-charged internal political debate with international implications, contrary to this

Court's assessment that imposing the default on liability, "may have absolutely no impact….The

---

No. 128. Regardless of the stipulations in the Protective Order of who could be in the room in the
United States from the plaintiffs' legal team during the deposition and who can have physical
"eyes only" access to the transcript, the risk that the video deposition or transcript being leaked
was simply too great and not agreeable to Libyan authorities.  Hence, through no fault of his
own, Hifter was unable to participate in the deposition and his counsel unsuccessfully sought to
reschedule it in early June.

[44] *See* Tr. (Oct. 29, 2021) *Hamza* ECF No. 155, at 23. Indeed, as will be suggested *infra*, to solve
this impasse to depose Hifter, deposition by written questions under Rule 31 would be more
appropriate and will also prevent any videotaped deposition or transcript from being leaked out
to Hifter's and LNA opponents.

[45] *See generally* Letter from Exec. Secretary of the Gen. Staff of the LNA (Sept. 7, 2022) Ex. 2,
Letter from Chairman of Def. and Sec. Comm. In the Libyan H.R. (Sept. 8, 2022) Ex. 3.

[46] *See Haftar stands convicted of war crimes* LIBYAN EXPRESS (July 29, 2022),
https://www.libyanexpress.com/haftar-stands-convicted-of-war-crimes/.

ramifications of this case, at most, are a financial judgment. And, you know, that's all."[47]   That

isn't all.  To the contrary, the court's default ruling has had a tremendous impact on the political

situation in Libya.  The ramifications of the default go well beyond any "financial judgment"

against Hifter personally, which in itself is draconian should plaintiffs' claim for tens of millions of

dollars in damages be awarded as they now seek.

As the General Secretary of Staff of the LNA described the fallout from this Court's default
ruling:

> A charge by one party at this lawsuit, imputed to a US court that FM
> committed war crimes, means that the LNA, which he heads, also
> committed war crimes. Knowing that no court in Libya, or under the UN,
> or even in the United States has made such statement, the widespread
> dissemination in the media of these false statements constitute a grave
> threat to the country's security and needs to addressed by that court
> immediately. Hence, our office has asked the FM to stop any participation
> in a deposition before such statement is issued by the Virginia Court and
> an agreement is reached by the court and the FM lawyers about the next
> stage of the process that can accommodate the interests of all parties.[48]

Similar concerns were expressed by the Chairman of the Defense and Security Committee

of the Libyan House of Representatives:

> The lawsuit campaign waged by these factions and paralleled by their
> attacks on the grounds against the army and the people of Libya, aimed at
> smearing and discrediting the representatives of the people of Libya by
> falsely claiming the legitimate army and its commander were committing
> so-called "war crimes." Such accusations were made by the same militant
> factions and their regional affiliates against Presidents George Bush and
> Barack Obama over the years. Both were accused falsely as war criminals.
> And Islamist militants tried to exploit such falsehood in courts worldwide.
> Not one court accepted this smear. Using the manual of Brotherhood
> propaganda, the Libya branch of the Brotherhood organized a series of
> lawsuits claiming the LNA and its commander committed war crimes,
> including in Tripoli.[49]

---

[47] *See* Tr. (July 29, 2021) *Hamza* ECF No. 152, at 7.
[48] Letter from Chairman of Def. and Sec. Comm. In the Libyan H.R. (Sept. 8, 2022) Ex. 3.
[49] Letter from Exec. Secretary of the Gen. Staff of the LNA (Sept. 7, 2022) Ex. 2.

While this Court recognized the politicization of this lawsuit by the media in the foreign and U.S. press, the Court demurred at the default hearing, noting that "I also don't feel -- if the foreign media  don't properly construe what we're doing, so be it."[50] While that sentiment may be true as a general matter, in this case, it is the **plaintiffs themselves**, through their spokesmen and accompanied by their attorney, who are using the foreign media, by litigating this case outside the courthouse in a press conference where the Court has some supervisory authority.[51]

During that press conference, led by plaintiffs' spokesman, Esam Omeish, president of the Libyan American Alliance, which is providing legal and research support to the plaintiffs,[52] "[Mark] Zaid, the attorney for one of the group of plaintiffs, agreed that this case could soon go from a civil one to a criminal one.

> "I have made this clear. I asked both the attorney general under the Trump administration and the Biden administration that under US law – which I actually helped work on 25 or so years ago, the War Crimes Act of 1996 – that Haftar as a US citizen can and should be prosecuted," Zaid said.[53]

The Court should also take judicial notice of recent developments in the political situation in Libya as reflected in United Nations Security Council proceedings that occurred after the Magistrate's recommendations to impose default as a discovery sanction and this Court's

---

[50] *See* Tr. (July 29, 2021) *Hamza* ECF No. 152, at 10.

[51] *See* Code of Trial and Pretrial Conduct: "**Public Statements about Pending Litigation** A case should be tried in the courtroom and not in the media. A lawyer should follow all rules and orders of the court concerning publicity. In the absence of a specific rule or order, a lawyer should not make any extrajudicial statement that may prejudice an adjudicative proceeding." https://www.vaed.uscourts.gov/code-pretrial-and-trial-conduct.

[52] Omeish and his Libyan American Alliance are well known adversaries of Hifter because he opposes the Muslim Brotherhood attempts to take over Libya and establish a caliphate.  For an expert opinion on the Muslim Brotherhood's efforts to use this case for their political purposes. *See* Letter from John Rossomando to Robert H. Cox (Sept. 11, 2022) Ex. 5.

[53] Farooq, Umar A., *US court finds Libya's Khalifa Haftar liable for war crimes* LIBYA TRIBUNE (July 31, 2022), https://en.minbarlibya.org/2022/07/31/us-court-finds-libyas-khalifa-haftar-liable-for-war-crimes/.

subsequent default ruling, which all the more weigh in favor of vacating the default because of its disruptive impact it could have on the United Nations efforts to have elections rescheduled and on Hifter's ability to run as president.[54]

Although the Court is familiar with political figures and high-profile parties, Hifter has an absolute duty to his country and his people, which caused cancellations of his deposition, including the most recent deposition on May 9, 2022, that was particularly problematic.

Courts regularly deny requests to depose a defendant's CEO or other executives on the grounds that interfering with the CEO's duties is not justified by the need for information.[55] And courts exercise caution in requiring United States political figures to testify to prevent unnecessarily disrupting their governmental duties or interfering with upcoming elections.[56] It would be unthinkable that a foreign national could not only sue our Secretary of Defense or a Commanding General operating in a foreign country for alleged "war crimes" committed there, but require such a person to sit for a deposition or be subject to a default judgment in that country. Hence, Hifter's political question defense and issues of comity are all the more relevant.

At a minimum, this Court should exercise caution in wielding its power and fashion a less drastic sanction or accommodate the legitimate interests of Hifter as both the commander of the

---

[54] *See* S.C. Res. 632, U.N. Doc. S/RES/632 (Aug. 19, 2022) ("An agreement on a constitutional framework for the holding of elections is within reach . . ."); *see also Remarks at a UN Security Council Briefing on Libya*, UNITED STATES MISSION TO THE UNITED NATIONS (Aug. 30, 2022), https://usun.usmission.gov/remarks-at-a-un-security-council-briefing-on-libya-10/.

[55] *Kay Co., LLC v. EQT Prod. Co.*, No. 1:13-CV-151, 2018 U.S. Dist. LEXIS 221459 (N.D.W. Va. Aug. 27, 2018).

[56] *See Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199 (2d Cir. 2013); Brumback, Kate, *Judge delays Gov. Kemp's testimony in Georgia election probe* THE WASHINGTON TIMES (Aug. 29, 2022), https://www.washingtontimes.com/news/2022/aug/29/judge-delays-gov-kemps-testimony-georgia-election-/ (Court delays Governor Kemp's grand jury appearance until after November elections to prevent political opposition from using it for political purposes).

LNA and a leading candidate for Libya's presidency, particularly where, as here, no helpful evidence would be deduced to support the plaintiffs' bare allegations that Hifter himself is responsible for plaintiffs' injuries.

### D. Prejudice to the Plaintiffs.

"To determine if the non-defaulting party was prejudiced, courts examine whether the delay (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud."[57] The Fourth Circuit gives greater weight to the first two factors.[58]

Here, Hifter has complied with all written discovery requests, including Interrogatories and Requests for Production. Further, Hifter has given the plaintiffs a sworn declaration stating his denials of the events alleged by the plaintiffs. Yet, plaintiffs insist that a video deposition is necessary to move forward, because the discovery provided thus far has failed to establish their case-in-chief to prove their conclusory allegations that Hifter "personally committed, or exercised command responsibility over or directed, ordered, conspired with or aided and abetted soldiers in the LNA to commit the extrajudicial killings of Decedents."[59] The plaintiffs' claims amount to nothing more than a fishing expedition in support of a political attack, in which they have failed to establish any viable connection of Hifter to the extrajudicial killings of decedents.

Moreover, as previously noted, Hifter had valid reasons why his depositions were cancelled, and the record does not show whether the plaintiffs took up this Court's suggestion to

---

[57] *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (*quoting Burton v. The TJX Cos., Inc., No.* 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008)).
[58] *Id.*
[59] First Amended Complaint for Extrajudicial Killing; Degrading Treatment; Crimes Against Humanity; and War Crimes (Sept. 17, 2020) *Hamza* ECF No. 8, at ¶ 208.

submit their questions prior to the deposition to settle any objections that Hifter may have with

the Magistrate, which might have facilitated discovery. In short, the plaintiffs' claims were

already lacking evidence from their own witnesses and Hifter's deposition would not provide

them with any evidence to prove their case.  In any event, this factor must be weighed against all

the other factors that show that Hifter has good cause to vacate the default on liability.

### E. Hifter has not engaged in dilatory conduct since he acted in good faith

As previously discussed, Hifter's missed depositions were not in bad faith. "Courts often

look to whether there are other instances of dilatory action on the part of the defaulting party as a

factor to determine whether setting aside entry of default is warranted."[60] While it may seem that

Hifter engaged in more than one dilatory action, these delays were a result of dual

responsibilities between this Court and the Libyan legal system.

Although a protective order was entered on Friday, May 6, 2022, regarding the scheduled

deposition for Monday, May 9, 2022, that was not sufficient time for the Libyan officials to

approve the deposition that would involve national security and state secrets. In addition, the

delays can also be attributed to less than ideal communications considering language differences

between Hifter in Libya and prior local counsel, and Hifter's limited availability as Commander

of the LNA.  Furthermore, communications had to be translated in Arabic and sufficient time

was needed to consider the proposed deposition procedures, especially in light of the political

attacks by the plaintiffs.

Because it is difficult for even the most sophisticated defendant to navigate between the

discovery requirements and deadlines of this Court, it must be considered that Hifter has an

---

[60] *Pinpoint IT Servs.*, 812 F.Supp.2d at 727; *see also Colleton Prep.*, 616 F.3d at 418.

obligation to comply with foreign law and officials. As new counsel enters this case, any dilatory actions on the part of Hifter were unintentional, and delay in proceeding with this case with additional written discovery and on the merits should no longer be an issue.

### F. This Honorable Court has less drastic sanctions available to impose that do not determine the outcome of the merits of the matter.

"In order to promote disposition of cases on merits, to protect parties and attorneys from possible misuses of inherent power, and to preserve its effectiveness, district court may use its inherent power to enter default judgment only if it finds, first by clear and convincing evidence—preponderance is insufficient—that abusive behavior occurred, and second that lesser sanction would not sufficiently punish and deter abusive conduct while allowing full and fair trial on merits."[61]

Even if the Court found that abusive behavior occurred, which Defendant disputes, the Court did not consider lesser sanctions to punish and deter such conduct.

While Hifter has been unable to attend the previously scheduled depositions for good faith reasons, as previously noted, Hifter has complied with all Requests for Production and Interrogatories throughout the proceeding. Admittedly, Hifter attempted to reschedule depositions on short notice due to the nature of his position in Libya, concerns about the scope of any deposition, and the politicization of the proceeding by the plaintiffs, but a less drastic sanction would be an appropriate alternative to the video or virtual depositions such as written depositions.

Although the plaintiffs have been unable to use oral deposition testimony, depositions by written questions are available under Fed. R. Civ. P. 31 which is appropriate because of the

---

[61] *Shepherd v. ABC*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

special circumstances in this case considering Hifter's position as Commander of the LNA and a presidential candidate.[62] As a general practice, "[h]igh ranking government officials are generally not subject to depositions unless they have some personal knowledge about matter and party seeking deposition makes showing that information cannot be obtained elsewhere."[63]

Here, Hifter is a high-ranking official that has sworn that he lacks personal knowledge of about the claims alleged by the plaintiffs, but he is nevertheless willing to be deposed by written deposition. Therefore, Hifter cannot provide any relevant information regarding this matter, because as previously mentioned he does not have the information the parties seek. Indeed, this Court suggested a modified version of written depositions in this case for both parties during its hearing on the parties' deposition disputes on October 29, 2021, when it said:

> "Look, I think if -- because of the problems that are being created here, it might not be a bad idea before you restart the depositions that were terminated to write out the questions you want to put to the witness, see if there's an objection ahead of time before you waste the time and money of setting these depositions up, and if there's a dispute, go back before the magistrate judge . . ."[64]

Hifter is in a precarious position in Libya where he has conflicting duties to his position as a state official in Libya and to this Honorable Court, such that he did not act in bad faith in missing his depositions and did not engage in egregious conduct. Alternatively, Hifter could be barred from introducing evidence on his own behalf or prohibited from testifying at trial. "In order to promote disposition of cases on merits, to protect parties and attorneys from possible misuses of inherent power, and to preserve its effectiveness, district court may use its inherent power to enter default judgment only if it finds, first by clear and convincing evidence—

---

[62] *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989).
[63] *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998).
[64] *See* Tr. (Oct. 29, 2021) *Hamza* ECF No. 155, at 23.

preponderance is insufficient—that abusive behavior occurred, and second that lesser sanction would not sufficiently punish and deter abusive conduct while allowing full and fair trial on merits."[65] Here, the lesser sanctions would sufficiently punish and deter abusive conduct while allowing the defendant a full and fair trial on the merits of the remaining claim by the plaintiffs.

Additionally, Hifter denies that abusive behavior has occurred or that he has cancelled the depositions in bad faith as previously argued. Compliance with the all the remaining discovery exemplifies Hifter's willingness to participate in the proceedings and have the case progress forward to restore his name from the unsubstantiated claims by the plaintiffs and their baseless charges that this Court has found him to be a war criminal.

In sum, when weighing all of the six factors and liberally construing them in Hifter's favor, there is good cause to vacate the default on liability.

## V.     RELIEF REQUESTED

For the foregoing reasons, Defendant Hifter respectfully moves this Honorable Court for an Order (1) setting aside the entry of default as to liability dated July 29, 2022; (2) ordering the Plaintiffs to take Hifter's deposition by written questions under Rule 31, or, in the alternative, impose less severe sanctions; and (3) staying the damages portion of this case until the disposition of this motion.

---

[65] *Shepherd*, 62 F.3d at 1472.

Dated:  September 13, 2022.

Respectfully submitted,

KHALIFA HIFTER

By Counsel

  /s/ Robert H. Cox_____
Robert H. Cox (VSB No. 33118)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
(703) 883-0880 [telephone]
(703) 883-0899 [facsimile]
rcox@brigliahundley.com

## CERTIFICATE OF SERVICE

I certify that on September 13, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

  /s/ Robert H. Cox_____
Robert H. Cox (VSB No. 33118