```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION
     ---------------------------x
 3   AIDA ELZAGALLY, et al.,     :    Civil Action No.:
                                 :    1:19-cv-853
 4            Plaintiffs,        :
         versus                  :
 5                               :    Friday, May 5, 2023
     KHALIFA HIFTER,             :
 6                               :
              Defendant.         :
 7   ---------------------------x
     MUNA AL-SUYID, et al.,      :    Civil Action No.:
 8                               :    1:20-cv-170
              Plaintiffs,        :
 9       versus                  :
                                 :
10   KHALIFA HIFTER,             :
                                 :
11            Defendant.         :
     ---------------------------x
12   ALI ABDULLAH HAMZA, et al.,:     Civil Action No.:
                                 :    1:20-cv-1038
13            Plaintiffs,        :
         versus                  :
14                               :
     KHALIFA HIFTER,             :
15                               :
              Defendant.         :
16   ---------------------------x
             The above-entitled hearing was heard before the
17   Honorable John F. Anderson, United States Magistrate Judge.
     This hearing commenced at 10:29 a.m.
18                    A P P E A R A N C E S:

19   FOR THE PLAINTIFFS:    MARK S. ZAID, ESQUIRE
     (Hamza)                MARK S. ZAID, P.C.
20                          1250 Connecticut Avenue, NW
                            Suite 700
21                          Washington, D.C.  20036
                            (202) 330-5610
22
                            THOMAS CRAIG, ESQUIRE
23                          JESSICA RABINOWITZ, ESQUIRE
                            FH&H PLLC
24                          1751 Pinnacle Drive
                            Suite 1000
25                          Tysons, Virginia  22102
                            (703) 590-0366                    1
```

```
 1                    A P P E A R A N C E S: cont.

 2   FOR THE PLAINTIFFS:     FAISAL GILL, ESQUIRE
     (Elzagally)             GILL LAW FIRM
 3                           1155 F Street
                             Suite 1050
 4                           Washington, D.C.  20004
                             (202) 570-8223
 5
     FOR THE DEFENDANT:      ROBERT COX, ESQUIRE
 6                           MADISON BEATTY, ESQUIRE
                             BRIGLIA HUNDLEY
 7                           1921 Gallows Road
                             Suite 750
 8                           Tysons Corner, Virginia 22182
                             (703) 883-0880
 9
        (PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING,
10      TRANSCRIPT PRODUCED BY COMPUTERIZED TRANSCRIPTION.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

2

```
 1              P R O C E E D I N G S
 2          THE DEPUTY CLERK:  Aida Elzagally, et al. versus
 3   Khalifa Hifter, Civil Action Number 19-cv-853; Muna
 4   al-Suyid, et al. versus Khalifa Hifter, Civil Action Number
 5   20-cv-170; Ali Abdullah Hamza, et al. versus Khalifa Hifter,
 6   Civil Action Number 20-cv-1038.
 7          THE COURT:  Okay.  So who's going to be -- well,
 8   introduce everybody, and tell me who's going to be the
 9   primary spokesperson.
10          MR. GILL:  Good morning, Your Honor.  Faisal Gill
11   for Plaintiffs Elzagally, and appearing today for the
12   al-Suyid plaintiffs as well.
13          THE COURT:  Thank you.
14          MR. ZAID:  Mark Zaid, along with Thomas Craig and
15   Jess Rabinowitz for the Hamza plaintiffs, Your Honor.
16          THE COURT:  Okay.  Thank you.
17          MR. COX:  Good morning, Your Honor.  Bob Cox
18   appearing on behalf of Defendant Khalifa Hifter.  With me is
19   Madison Beatty, also with the law firm of Briglia Hundley,
20   and she's been admitted to the Court.
21          THE COURT:  Okay.  Who's going to be --
22          MR. COX:  Oh, Your Honor, I do have a preliminary
23   matter.  I don't know whether it's going to actually come up
24   during our argument, but as the Court knows, the transcript
25   has been filed under seal at this point, and to the extent
```

3

```
 1   that joint plaintiffs intend to quote directly from the
 2   transcript --
 3              THE COURT:  Yeah.  We're not going to be able --
 4   we don't need to get into the substantive part of the
 5   transcript.
 6              MR. COX:  Okay.  Thank you, Your Honor.
 7              THE COURT:  I've read all of it.
 8              So, Mr. Gill, you're going to -- well, let me just
 9   first hear from Mr. Cox.
10              I mean, I've read everything, I've read the whole
11   transcript, so I know what went on.  Mr. Cox, why wouldn't
12   it be appropriate to have an additional period of time, and
13   whether it's five or less hours, they're asking for five,
14   under the circumstances of this case?
15              MR. COX:  I think, Your Honor, that -- based on
16   the briefing, that plaintiffs have not met their burden
17   under 30(d) to show additional time.
18              I think -- I don't want to belabor our papers.  I
19   know Your Honor's fully familiar --
20              THE COURT:  I mean, the whole apex doctrine that
21   you argue a lot about, I mean, honestly, that is really
22   geared towards more the chairman of General Motors being
23   deposed in a products liability case where he or she really
24   has not been involved in.  This is different in that, you
25   know, your client, while is a very important and busy
```

                                                                4

1  person, is the defendant in this case.  And so, I mean,
2  there is some watering down of the apex doctrine arguably
3  when it is the actual defendant that they are trying to
4  depose; not the president of a corporation who has very
5  little independent knowledge of what he or she did.
6              MR. COX:  Yes, Your Honor.  And I do appreciate
7  that difference.  I did cite to some cases involving agency
8  officials.  I felt that the defendant is akin to that.  He's
9  head of the Armed Forces in Libya, he also has official
10 duties, as we've cited in our -- both our opposition and our
11 reply brief.
12             As -- since the deposition, he has been very
13 active meeting with ambassadors, senior officials with the
14 U.S. State Department and the CIA.  I mean, I think he does
15 fall into the type of individual, I think, Your Honor, that
16 this is meant to protect.
17             And, again, the Court made this decision, and I
18 noted this in my response.  The Court did allow this
19 deposition to go forward.  And, you know, I just think a
20 second deposition, given the factual circumstances that he
21 has very limited, if any, personal knowledge here regarding
22 the events, I think weighs in favor of a protective order.
23 Or the Court fashioning a more limited scope of discovery,
24 either through allowing plaintiffs additional, you know,
25 discovery either through interrogatories.  They haven't

5

1  demonstrated that they can't find these facts through other
2  witnesses, Your Honor, or through the alternative that we
3  proposed initially, is the Rule 31.
4         THE COURT:  What other alternatives are viable
5  alternatives?  I mean, your client referenced some other
6  people that may have information, but the ability to depose
7  them is non existent.
8         MR. COX:  Right.
9         THE COURT:  I mean, so that potential source of
10 information really isn't viable.
11        So what -- where do you think they would get these
12 other sources of information?
13        MR. COX:  Sure.  Well, I think, Your Honor, that
14 there are other eyewitnesses, relatives of plaintiffs who
15 would have more information about the knowledge.
16        But I think where I'm proposing the alternative,
17 Your Honor, is, you know, either through additional -- if
18 they have specific questions -- where they seem to focus a
19 lot of their argument is, you know, a handful of brochures,
20 three of them that were produced from the deposition and
21 some initial YouTube videos related to a press conference.
22 These could be more appropriately addressed either in
23 written interrogatories to Defendant Hifter, or in the
24 alternative I've also proposed is a Rule 31 deposition by
25 written questions.  That means -- Judge Brinkema noted even

6

```
 1   earlier in this case different circumstances when she was
 2   talking about the deposition is that providing questions in
 3   advance would also help.  I asked for that assistance to
 4   make sure that the deposition moved efficiently and smoothly
 5   before the November 6th deposition, and joint plaintiffs
 6   would not give me anything other than a very broad-brush
 7   view of the topics, saying that it was going to be what was
 8   in the complaints.
 9            THE COURT:  Well, I think I understand your
10   position.
11            Let me hear from Mr. Gill as to why you think more
12   time is needed, and why you think the seven hours that you
13   got was appropriately allocated.
14            MR. GILL:  Your Honor, as we want to note from the
15   very beginning, these are three cases that have not been
16   joined.  So these are three individuals plaintiffs, that
17   will have three individual trials, and three individual
18   motions of summary judgments.  They were joined for the
19   purpose of a deposition, and we thought seven hours would be
20   sufficient, but, as you would -- I'm sure you know, that
21   individually we're entitled to 21 hours.  We agreed to seven
22   hours because we thought efficiently we could move through
23   it.
24            The Number 1 issue that I would cite in the
25   deposition, Defendant Hifter stated his interrogatories that
```

7

1  his previous counsel had represented to us are his
2  interrogatories were, in fact, not.  He said he had never
3  seen these before, they were not his.
4          THE COURT:  Well --
5          MR. GILL:  I mean, the discovery that was provided
6  to us --
7          THE COURT:  You've spent a lot of time dealing on
8  that issue and very little time asking him specific
9  questions about certain things.
10         MR. GILL:  I mean, I can ask Mr. Zaid, he was the
11 one deposing him.
12         But we did.  As you know, Your Honor, from back in
13 your -- you were an attorney on this side, depositions
14 normally begin in the beginning with general questions, and
15 they move to specificity, which we did.  And there was an
16 issue with an interpreter, and there was an issue where
17 General Hifter was not fully cooperative.
18         THE COURT:  I think that's an overstatement, at
19 best.
20         I will tell you, I was pleased in reading the
21 transcript at how cooperative both counsel and the defendant
22 was in this case.  I mean, I thought -- I was concerned that
23 this deposition may not go as smoothly as it did.  I thought
24 the questioning, while in some areas was a little astray as
25 far as getting to the core issues involved in the case, but,

8

```
 1  you know, I thought the questioning was appropriate.  I
 2  thought the responses were appropriate.  You know, this was
 3  not -- well ...
 4            MR. GILL:  Your Honor, there was significant
 5  discovery produced to us afterwards, and I know for my
 6  clients --
 7            THE COURT:  And I understand that --
 8            MR. GILL:  And for my client --
 9            THE COURT:  And things were raised and those kinds
10  of things, and that's an issue that I think weighs in your
11  favor that, you know, you asked for certain information, you
12  know, apparently it was agreed that certain information
13  would be provided to you.
14            MR. GILL:  Your Honor, in our case, in the
15  Elzagally case, we have filed several motions to compel
16  discovery.  We have never really gotten full discovery when
17  we filed them.
18            The first time we filed the motion to compel,
19  there was an order of default judgment entered against
20  General Hifter because he failed to show up for depositions.
21  Then he changed his mind, he decided to show up for
22  depositions, so that was taken care of.  But even the last
23  deposition, Judge Brinkema had said he had to produce
24  discovery beforehand.  He didn't really produce discovery.
25  And I understand there was different counsel there, but
```

1  discovery has been an issue in this case from the very
2  beginning, and all we're asking for is five more hours to
3  basically adequately depose General Hifter.  Five more hours
4  between two plaintiffs who have received discovery
5  afterwards, including -- and I do think this is fairly
6  important, Your Honor -- the fact that the deponent
7  disavowed all of his interrogatory answers.  I mean, he said
8  these are not mine, even though they're signed by him.
9              THE COURT:  Well, that -- and there is some
10 back-and-forth on that.  I mean, I think English versions
11 and other things came into play.  But I don't want to get
12 into the substance of what was said or done in a deposition
13 other than broad brushes about the conduct that was done.
14             MR. GILL:  Your Honor, the only one thing that I
15 will -- and I'm not going to cite from the deposition, but
16 just a broad brush, that General Hifter did invoke a
17 privilege this Court had previously ruled that he was not
18 entitled to towards the end when I was deposing him, the
19 last few minutes, which, again, this Court had clearly ruled
20 that General Hifter is not entitled to.
21             So, for those reasons, we do believe that we would
22 be entitled to five more hours, which we think is a
23 reasonable amount of time.  We'll move very efficiently
24 between two plaintiffs to get that done.  And I think
25 hopefully Counsel would agree that we've been very

10

1  accommodating on General Hifter's schedule as to when he is
2  able to appear. And, you know, if -- at one point if the
3  president of the United States, President Clinton, was able
4  to be deposed, I think General Hifter can be deposed in this
5  case, which is --
6              THE COURT: Well, he's already been deposed. He's
7  been deposed for seven hours. And you knew you had seven
8  hours, and just -- Mr. Zaid took six hours and whatever
9  minutes and, you know, gave you 30 minutes each at the end.
10 You know, that's ...
11             MR. GILL: Your Honor, as you know, depositions go
12 at their own pace, and we tried to do a good-faith effort to
13 make --
14             THE COURT: There were plenty of breaks in that
15 deposition and plenty of discussions about, oh, you know,
16 we've got three hours and two minutes left, we've got, you
17 know -- so the clock was running, and everybody knew it was
18 running.
19             MR. GILL: And I totally understand that, Your
20 Honor. But as you ruled in the very beginning, you said try
21 seven hours, and if you feel you need more, come back to me
22 and ask. And I think you would agree that Mr. Zaid did, you
23 know, conduct a deposition efficiently.
24             THE COURT: Well, you know, I thought it was a
25 very thorough analysis of the background and, you know, the

11

1    common issues were, I think, you know, fully and completely
2    covered.
3            MR. GILL:  Yes, sir.  Which is why we feel the
4    five hours will be enough because we would not recover that
5    issue; we would just go to the specifics of our individual
6    cases.
7            THE COURT:  All right.  Well, Mr. Cox, anything
8    else?  Or anybody else want to say anything?
9            MR. COX:  Your Honor, I would just note -- and
10   maybe this is a procedural issue.
11           I would just note for the Court, we noted in our
12   brief that I believe that only the Elzagally plaintiffs are
13   properly before the Court on this motion.  And the al-Suyid
14   case, Wiggins Dana, the sole Virginia-barred counsel,
15   withdrew.  Mr. Grasso is still admitted pro hac vice.
16           To date, I have not seen an entry of appearance
17   for Mr. Gill, who now says he's representing the al-Suyid
18   plaintiffs.  The first time I was even aware that he was
19   representing the al-Suyid plaintiffs was last week when he
20   signed his brief and noted that he's representing them now.
21           So I think to the extent the Court is inclined to
22   allow additional time, I would respectfully request that the
23   Court limit it only to the Elzagally plaintiffs who said
24   that they can complete the deposition in a couple of hours.
25   Also confine him to the discovery issues and documents that

1  were produced.  I still think, Your Honor, they haven't met
2  their burden, but I understand and appreciate the Court's
3  decision in this.
4         THE COURT:  Okay.  Well, procedurally you need to
5  understand that every party has to be represented by both,
6  you know, a member of the Virginia bar.
7         MR. GILL:  Yes, Your Honor.  I am a member of the
8  Virginia bar, and since the local counsel for the al-Suyid
9  case is no longer with the firm, I will be entering my
10 appearance.  There will be a motion for substitution for
11 counsel.
12        I, unfortunately, just have not gotten the
13 attorney retainer agreement back from the clients yet,
14 otherwise I would have entered my appearance.  I'm just
15 entering my appearance today for the purposes of this
16 motion, and I stated so on the brief.  If Your Honor would
17 like me to officially enter my appearance on --
18        THE COURT:  You just need to take care of those
19 details.
20        MR. GILL:  I will.  I will, Your Honor.  Right
21 away.
22        THE COURT:  Well, again, I just -- I do want to
23 let the parties know that I thought the defendant in this
24 case was responsive to the request, that one issue -- and,
25 you know, whether you want to try to get that addressed more

13

```
 1    fully, it's not really in part -- in front of me today.  If
 2    you all can discuss how to deal with that issue.
 3              But absent that one area, I thought, you know, he
 4    was -- did a fair job in responding to the questions that
 5    were asked.  I don't think there was any disruption in the
 6    deposition based on conduct or anything like that throughout
 7    the -- all the pages that I read.
 8              But in reading it, you know, it became clear to me
 9    that there was really only about 150 pages of real testimony
10    taken in those seven hours.  I mean, I was -- you know, the
11    transcript is longer, but there are 20 pages of, you know,
12    winding up and who's here and who's there and the
13    videographer and things like that.  And then there were, you
14    know, various other pages of dealing with some procedural
15    issues.  But in the real core of questions to the defendant
16    and responses from the defendant, it was only 150 pages.
17              You know, in looking back at it, this was a case
18    in which you were using an interpreter.  You do have
19    multiple parties there.  There was obviously some
20    disconnect, confusion about documents that were being
21    presented, whether they were seen by the defendant before,
22    familiar to the defendant, those kinds of things.
23              And, you know, the advisory committee notes in the
24    2000 amendment that sort of put in this seven-hour
25    presumptive deadline talks about certain factors about
```

extending time and ones if an interpreter is required. And I know how difficult it can be doing a deposition with an interpreter. It can sometimes take, you know, maybe not twice as long, but it can take significantly longer because, you know, you ask a question, translate, get an answer, translate, those kinds of things.

It also mentions cases in which there are multi parties. We obviously have a case here, or three cases that we've allowed to proceed with one deposition where we've got multi parties involved. And they do have an ability. I'm a little surprised that more time wasn't given for each of the other two plaintiffs' counsel to participate, but I can see how the flow of the deposition went there.

And there was a need, at various points in time, I think a delay in the documents that were presented to the defendant that he had to take some time to review before he could respond to the questions about whether they were familiar or not.

Given all those factors, I am going to go ahead and require that an additional deposition be taken, but it's going to be limited to three hours. I think -- you know, if you're focused in your questionings, I think all the common questions for the most part were presented, answered, understanding background, experience, when he became this, when he became that, what his job duties and

```
 1   responsibilities are.  And I think, you know, he -- you
 2   probably will be getting a lot of the same answers to the
 3   specific questions that you got for the first party who was
 4   questioning him on that, but I think you are entitled to get
 5   that on the record.
 6              I am going to require, though -- and I think this
 7   is one of the reasons why I'm reducing the time period --
 8   that to the extent that you plan to use documents in
 9   questioning the defendant in this case, I want you to
10   provide those documents to Mr. Cox a week before the
11   deposition.  I think it's more efficient that if you do
12   that -- and actually, the advisory committee notes talk
13   about that as being something that can help make a
14   deposition more efficient.  You know, there's no reason to
15   hold anything back on this.  I mean, I think he's entitled
16   to know what it is that you're going to ask so he can look
17   at it, if it has to be translated for him or those kinds of
18   things.
19              So a week before the deposition, you know, to the
20   extent that you are planning to use documents in your
21   questioning of the defendant, provide them to Mr. Cox so
22   Mr. Cox can see them, have them and at least have the time
23   to talk to the deponent about it before the deposition.  So
24   three hours.  Documents a week before the deposition.
25              I'm not going to -- I want you all to set the time
```

```
 1   in place.  I know there were issues about, you know, it
 2   being in a court order and there being posts made and things
 3   like that.  I mean, you know, I hope I don't have to enter
 4   an order as to, you know, the date and time that it's going
 5   to be taken so that that then becomes part of the -- you
 6   know, the public record.  But you all talk about what you
 7   need to do, try and get it done as soon as you can.  And I
 8   know you all were good about accommodating the schedules and
 9   doing it at a -- I think it was a Sunday morning here and a
10   Sunday evening there.  But whatever.  Okay.
11           MR. GILL:  Your Honor, can I --
12           THE COURT:  Sure.
13           MR. GILL:  Two minor issues.  One as a
14   clarification.  I anticipate that General Hifter will invoke
15   the same privilege that he invoked towards the end of my
16   deposition.
17           Are you saying that you want us to separately
18   brief that?
19           THE COURT:  Yes.  I mean, if you think that's an
20   issue that you want to pursue -- it hasn't been briefed
21   here.  You say it's been decided.
22           MR. GILL:  Yes, Your Honor.
23           THE COURT:  You will need to -- you know, I think
24   what the appropriate procedure for you to do is to say, you
25   know, this question was asked and answered, do you want the
```

```
 1  Court to rule that he needs to answer that question.
 2          MR. GILL:  Even though Your Honor -- the Court has
 3  entered an order in the past saying that that privilege is
 4  not available to the General?
 5          THE COURT:  Because --
 6          MR. GILL:  Yes, Your Honor.
 7          THE COURT:  -- he's now asserted it, and you need
 8  to have someone compel him to do that.
 9          MR. GILL:  Yes, Your Honor.
10          THE COURT:  That isn't part of this motion.
11          MR. GILL:  Yes, Your Honor.  I will separately
12  brief that.
13          And the second point, Your Honor, was, I know you
14  don't want to enter a date certain, but in the past what
15  we've had is, we've had dates, and then the General has not
16  shown up for those dates.  In fact, a couple of times --
17          THE COURT:  And I know there was some discussion
18  about that.  But, you know, he showed up, he sat for
19  seven hours, he was cooperative during the deposition.
20  Mr. Cox will work with him to get a schedule done.  Mr. Cox
21  will do what he needs to do.  You all work with him on the
22  schedule.  If there are issues that come up with that, then
23  let me know.
24          MR. GILL:  Could we at least request, Your Honor,
25  that it would -- that you set -- that the deposition has to
```

18

```
 1   be scheduled by a certain time in the future so we're not
 2   out there just ...
 3           THE COURT:  Mr. Cox, how long?  Do you think
 4   60 days would be enough time to coordinate the timing and
 5   scheduling of the deposition?
 6           MR. COX:  I think that's reasonable, Your Honor.
 7           THE COURT:  Okay.
 8           MR. COX:  If you're done with that, I have one
 9   other point.
10           THE COURT:  Yeah, I am done with that.  Okay.
11           MR. COX:  So one other thing, and, again, you may
12   feel that I need to make, myself, a motion.  I raised it in
13   our brief that we had asked that General Hifter's Libyan
14   lawyer be allowed to attend.  The plaintiffs objected, even
15   though he had signed the protective order.  So he's not
16   specifically provided, I guess, as counsel admitted to this
17   Court to attend under the protective order, so should I make
18   a separate motion to modify the protective order?
19           THE COURT:  I think so, because, I mean, I want to
20   hear why that wouldn't be appropriate under the
21   circumstances.  He may not be able to participate in the
22   deposition, but whether he would be able to --
23   "participate," meaning question or do anything like that.
24   But attending would be something that I need to understand
25   more fully what the facts and circumstances are as to why
```

19

```
 1  that wouldn't be appropriate.
 2          MR. COX:  Understood, Your Honor.  And I wasn't
 3  asking him to defend -- participate; it was solely related
 4  to the issues Mr. Gill raised about the military doctrine
 5  and being able to confer with him on a break on those
 6  privileged assertions.  Thank you.
 7          THE COURT:  Okay.  Thank you.
 8          Thank you, Counsel.
 9             (Proceedings adjourned at 10:52 a.m.)
10          ----------------------------------
11  I certify that the foregoing is a true and accurate
12  transcription of my stenographic notes.
13                      _____
                                    /s/ Stephanie Austin
14                            Stephanie M. Austin, RPR, CRR
```

20