**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **MUNA AL-SUYID, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Civil Action No.: 1:20-cv-170** |
| | : | |
| | : | |
| **KHALIFA HIFTER,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS .......................................................... 1

III.  STANDARD OF REVIEW ......................................................................................... 3

IV.  ARGUMENT ................................................................................................................. 4

A.  Plaintiffs Lack Standing to Bring a Suit in the Eastern District of Virginia ...................... 5

  1.  Plaintiffs Must be a Legal Representative to Bring an Action for Wrongful Death ........ 6

  2.  Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings ........................................ 8

  3.  The Extrajudicial Killing Must be Committed by an Individual Acting Under Actual or Apparent Authority, or Color of Law, of Any Foreign Nation. ........................................... 10

B.  The Court Must Dismiss this Claim Because It Lacks Jurisdiction .................................. 12

  1.  Plaintiffs' Claim Fails to Establish General Personal Jurisdiction Over Mr. Hifter. ..... 13

C.  Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya .................... 18

  1.  Defendant Has Proven that Plaintiffs Did Not Exhaust Their Administrative Remedies .. ........................................................................................................................... 19

  2.  Plaintiffs Have Not Proven that Local Remedies are Ineffective, Unduly Prolonged, Inadequate, or Obviously Futile. ......................................................................................... 20

D.  Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability.23

  1.  There is No Evidence that the Libyan National Army was Involved in the Alleged Incidents ............................................................................................................................... 24

V.  CONCLUSION ............................................................................................................ 27

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 870 F.Supp. 2d 415 (D. Md. 2012)........ 13

*Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008) .......................................................... 10

*American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F.Supp.2d 372

    (S.D.N.Y. 1998) ........................................................................................................................ 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................... 4

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)...................................................................... 10, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 27

*Baloco v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011) ........................................................... 6

*Bersoum v. Abotaeta*, 16 Civ. 987 (LGS), 2017 U.S. Dist. LEXIS 127460 (S.D.N.Y. Aug. 10,

    2017)......................................................................................................................................... 14

*Bersoum v. Mustafa*, 568 F. Supp. 3d 443 (S.D.N.Y. 2021) ....................................................... 13

*Boniface v. Viliena*, 338 F. Supp. 3d 50 (D. Mass. 2018).......................................................... 22

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) ......................................................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 4

*Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009)..................................................................... 24

*Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002) ........................................ 26

*Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42 (2d. Cir. 2014) .......................... 10, 12

*Conn v. Zakharov*, 667 F.3d 705 (6th Cir. 2012)........................................................................ 14

*Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019 (W.D. Wash. 2005) ....................................... 21

*Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980) .................................. 13

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................. 14

*De Lima v. Bidwell*, 182 U.S. 1 (1901) ........................................................................................ 11

*Doe I v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) ........................................................ 6, 22

*Doe v. Buratai*, 318 F.Supp. 3d 218 (D.C. 2018) ...................................................... 13, 15, 17, 18

*Doe v. Drummond*, 782 F.3d 576 (11th Cir. 2015) ........................................................................ 9

*Does v. Obiano*, No. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247 (S.D. Tex. Jan. 1, 2024).... 13, 15, 17, 18 ............................................................................................................................................

*Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019) ..................................................................... 17, 18

*Enohoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) ................................................................... 19

*Fugate v. Moore*, 86 Va. 1045 (1890) ........................................................................................... 7

*Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998 (N.D. Ala. Jan. 6, 2011) ................................................................................................................................ 6

*Gleich v. Wachovia Sec., LLC*, No. 3:04CV422, 2005 U.S. Dist. LEXIS 16748 (E.D. Va. Mar. 28, 2005) .......................................................................................................................................... 4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................................. 14

*Harmon v. Sadjadi*, 273 Va. 184 (2007) ................................................................................... 7, 8

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) .......................................................... 26

*Jane W. v. Thomas*, 560 F. Supp. 3d 855 (E.D. Pa. 2021) ......................................................... 25

*Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724 (S.D. Fla. Sep. 28, 2021) ............................................................................................... 19, 21, 23, 25

*Jean v. Dorelien*, 431 F.3d 776 (11th Cir. 2005) ......................................................... 18, 19, 20

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ..................................................................... 10, 12

*Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) ...................................... 10, 12

*Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016) .................................................. 11

*Kirschenbaum v. Assa Corp.*, 934 F.3d 191 (2d Cir. 2019) ....................................................... 11

*Mamani v. Berzaín*, 533 F. Supp. 3d 1252, 1267 (S.D. Fla. 2021)................................................ 26

*Mamani v. Berzain*, 636 F. Supp. 2d 1326 (S.D. Fla. 2009)......................................................... 22

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011)........................................................... 8, 9, 27

*Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216 (11th Cir. 2020).............. 8, 9

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009)................................................................... 17, 18

*McDaniel v. North Carolina Pulp Co.*, 198 Va. 612 (1956) ............................................................. 7

*Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001)................................................................. 10

*Moore v. Smith*, 177 Va. 621 (1941)................................................................................................ 7

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237 (2d Cir. 1991) ................... 11

*Mother Doe I v. Al Maktoum*, 632 F.Supp. 2d 1130 (S.D. Fla. 2007) ......................................... 14

*Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004) ....................................... 5

*Pierson v. Ray*, 386 U.S. 547 (1967) ........................................................................................... 18

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)....................................................................... 21

*Samantar v. Yousuf*, 560 U.S. 305 (2010)..................................................................................... 18

*Sikhs for Just. v. Singh*, 64 F. Supp. 3d 190 (D.D.C. 2014)........................................................ 13

*Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322 (E.D.N.Y. June 9, 2014)........................................................................................................................................ 6

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ...................................... 19

*Walden v. Fiore*, 571 U.S. 277 (2014)........................................................................................... 14

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016) ............................................................................ 14

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995)......................................................... 7, 21

*Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004)............................................................................. 17, 18

*Yoshida v. Capital Props. Mgmt.*, 68 Va. Cir. 279 (2005) ............................................................ 8

*Young v. Carter*, 61 Va. Cir. 682 (2002) ........................................................................ 8

*Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) ...................................................... 17

**Statutes**

28 U.S.C. § 1350 ................................................................................................................ 4

42 U.S.C. § 1997 .............................................................................................................. 19

Va. Code. Ann. § 8.01-50 .................................................................................................. 7

**Other Authorities**

Article 51 of the Additional Protocol I ........................................................................ 10

Article 57 of the Additional Protocol I. ........................................................................ 10

*Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l

L. 1 (2021) .................................................................................................................. 18

*Exhaustion of Local Remedies*, 29 FORDHAM INT'L L. J. ........................................ 21

H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991) ........................................................ 7

H.R. Rep. No. 102-367 (1991) ......................................................................................... 5

*Prosecutor v. Delalic* (Appeals Chamber ICTY, Feb. 20, 2001) ................................ 24

Pub. L. No. 102-256, 106 Stat. 73 (1992) ....................................................................... 4

S. Rep. No. 102-249 (1991) ............................................................................................. 4

**Rules**

FED. R. CIV. P. 56 ............................................................................................................ 1

Defendant Khalifa Hifter ("Mr. Hifter"), by and through the undersigned counsel, submits this Memorandum in Support of Motion for Summary Judgment pursuant to FED. R. CIV. P. 56:

## I.     INTRODUCTION

In 2011, a civil war began in the State of Libya ("Libya") which resulted in hundreds of militias and neighborhood groups clashing. Mr. Hifter was appointed as the Field Marshal of the Libyan National Army ("LNA"), which is also known as the Libyan Arabic Armed Forces, in March of 2015. Prior to 2015, Mr. Hifter held no official position in the LNA. To date, the State of Libya remains in an intrastate conflict involving numerous militias, tribes, and citizens. Upon the request of the Libyan people, Mr. Hifter publicized an initiative known as "Operation Dignity" designed to reunify the country and free Libya from terrorism.

Plaintiffs have mistakenly filed suit against Mr. Hifter for acts that that occurred in the midst of civil war which Mr. Hifter did not commit. Mr. Hifter's goal since the overthrow of Muammar Gaddafi's ("Gaddafi") regime has been to reunify Libya and prevent further harm to his country and its people. Mr. Hifter fully opposes the types of violent acts the Plaintiffs have accused him of., His efforts to unify Libya and defeat terrorism exemplify this.

Plaintiffs do not have a cognizable claim for relief against Mr. Hifter. Through discovery, it has been established that Mr. Hifter was not responsible for any of the allegations raised against him in this case. Mr. Hifter did not order, or have knowledge of, any attacks on civilians, nor did he hold an official position in furtherance of any such attacks. Accordingly, Mr. Hifter has filed this summary judgment motion under FED. R. CIV. P. 56 and requests this Court to dismiss the case against him with prejudice.

## II.    STATEMENT OF UNDISPUTED FACTS

1.  In 2011, civil war broke out in Libya.

2. Mr. Hifter is a Libyan citizen.

3. █████████████████████████████████████████████

   ████████████████████.[1]

4. █████████████████████████████████████████████

   ████████████████████████.[2]

5. █████████████████████████████████████████████

   ████████████████████████████████.[3]

6. ███████████████████████████████████████████████████.[4]

7. In October 2014, Libyans were working together to rid the country of terrorists and criminals under an operation titled "Operation Dignity."[5]

8. During this time period, there were many militias fighting in Benghazi, including ISIS, al-Qaeda, and the Islamic Fighters Movement.[6]

9. During this time period, many individuals wore army uniforms, and it was commonplace to see people in such uniforms in Libya.[7]

10. At the time, wearing an army uniform did not necessarily indicate that the wearer was part of an official army.[8]

11. Weapons of all kinds were being dispersed rampantly through the streets.[9]

---

[1] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 29:21-30:1, 39:2-4.
[2] *Id.* at 153:1-5.
[3] *Id.* at 39:6-14.
[4] *Id.* at 39:21-40:3.
[5] *Id.* at 82:11-16.
[6] *Id.* at 78:18-79:4.
[7] *See* Ex. B – Ahmad al- Krshiny Dep. at 32:22-33:16.
[8] *Id.* at 33:17-33:21.
[9] *See* Ex. C – Abdalla al- Krshiny Dep. at 27:6-7.

12. On March 2, 2015, Mr. Hifter was appointed as Field Marshal of the LNA by the Libyan House of Representatives.[10]



13.

.[11]

14.

15.

.[13]

16.

17.

18. .[16]

19. .[17]

## III.   STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[10] *See* Ex. D – Order Appointing K. Hifter.
[11] *See* Ex. E – Hifter Dep., June 26, 2023, at 209:11-14.
[12] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[13] *Id.*
[14] *Id.*
[15] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 155:1-5.
[16] *See* Ex. E – Hifter Dep., June 26, 2023, at 268:19-21.
[17] *Id.* at 268:22-269:6.

of law."[18] In determining if summary judgment is appropriate, the Court will only concern itself with disputes "that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted."[19] Facts are material if they have the ability to affect the outcome of the case under the governing law.[20] "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."[21] Once the moving party meets their burden that there are no genuine issues of material fact, the burden then shifts to the opposing party to respond.[22]

## IV.    ARGUMENT

Congress enacted the Torture Victim Protection Act of 1991 ("TVPA") in 1992 to "establish[] a civil action for recovery of damages from an individual who engages in torture or extrajudicial killing."[23] "[T]he Torture Victim Protection Act (TVPA) is designed to respond to this situation by providing a civil cause of action in U.S. courts for torture committed abroad."[24] The TVPA states:

> An individual who, under actual or apparent authority, or color of law, of any foreign nation – (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.[25]

---

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[19] *Gleich v. Wachovia Sec., LLC*, No. 3:04CV422, 2005 U.S. Dist. LEXIS 16748, at *3 (E.D. Va. Mar. 28, 2005) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[20] *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).
[21] *Id.*
[22] *Celotex Corp.*, 477 U.S. at 322.
[23] Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note); *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 (2012).
[24] S. Rep. No. 102-249, p. 3-4 (1991).
[25] 28 U.S.C. § 1350, note §2(a).

Further, the TVPA defines extrajudicial killing and torture within the meaning of the act.[26] The TVPA ultimately provides a cause of action for aliens and U.S. citizens to sue in U.S. federal courts if all elements of the TVPA are met.[27]

Here, Mr. Hifter cannot be found to have violated the TVPA. First, Plaintiffs lack standing to bring a TVPA suit in the Eastern District of Virginia because select Plaintiffs are not the proper individuals to bring forth such a claim, the alleged acts do not qualify as extrajudicial killings, nor were they committed by Mr. Hifter under the color of law of a foreign nation. Second, this Court lacks jurisdiction over Mr. Hifter, as there is no general personal jurisdiction over him, and he has head-of-state immunity. Third, Plaintiffs have provided no evidence Mr. Hifter is liable for the alleged acts because there is no evidence that (a) the LNA committed the acts, (b) Mr. Hifter knew or reasonably should have known soldiers were committing extrajudicial killings or torture, and/or (c) Mr. Hifter failed to prevent the acts from being committed. Therefore, Mr. Hifter's Motion for Summary Judgment should be granted.

### A. Plaintiffs Lack Standing to Bring a Suit in the Eastern District of Virginia.

Plaintiffs lack standing to sue Mr. Hifter under the TVPA because they are improper legal representatives claiming damages on behalf of themselves. A defendant may raise a defense for lack of standing at any time during proceedings if it appears the Court lacks subject matter jurisdiction over the plaintiff's claims.[28] To obtain relief under the TVPA, plaintiffs must be: (1) a legal representative or any person who may be a claimant in an action for wrongful death; (2) of

---

[26] *Id.* at note § 3(a)-(b).
[27] *See* S. Rep. No. 102-249, p. 4 (1991); H.R. Rep. No. 102-367, p. 86 (1991).
[28] *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 480 (M.D.N.C. 2004).

a victim of an extrajudicial killing; and (3) such extrajudicial killing must have been committed by an individual acting under actual or apparent authority, or color of law, of a foreign nation.[29]

Here, Plaintiffs fail to satisfy all three elements of the TVPA standing requirement. Plaintiffs are also incorrectly claiming damages on behalf of themselves when there is no evidence they were tortured. Therefore, Plaintiffs' claims must be denied.

1. Plaintiffs Must be a Legal Representative to Bring an Action for Wrongful Death.

The named Plaintiffs in this case are unable to recover for a wrongful death action. Here, (1) Muna al-Suyid filed claims under the TVPA individually and on behalf of the estates of Abdel Salam al-Suyid, Ibrahim al-Suyid, Khalid al-Suyid, and Mustafa al-Suyid; (2) Abdalla al-Krshiny, Ahmad al-Krshiny, and Mahmud al-Krshiny filed individual claims under the TVPA; and (3) Ibrahim al-Krshiny filed claims under the TVPA individually and on behalf of the estates of Ali al-Krshiny and Mustafa al-Krshiny.[30]

Plaintiff Muna al-Suyid individually is barred from recovering for a wrongful death action.[31] The plain language and the legislative history of the TVPA demonstrates that standing is limited to the victim or an individual bringing a claim on behalf of the victim.[32] Plaintiffs who fail to act in a representative capacity for the decedents' estates are "due to be dismissed from this action."[33] "[C]ourts may look to state law for guidance as to which parties would be proper

---

[29] *Baloco v. Drummond Co.*, 640 F.3d 1338, 1346 (11th Cir. 2011).

[30] Al-Suyid Complaint ("Compl.") ¶¶ 9-11, *Al-Suyid* ECF No. 1.

[31] Va. Code Ann. § 8.01-50.

[32] *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1313 (N.D. Cal. 2004) (reviewing the history and concluding that TVPA only allows for suits by or on behalf of a victim); *Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998, at *11 (N.D. Ala. Jan. 6, 2011) (holding that "to have standing under the TVPA . . . Plaintiffs **must** be seeking damages on behalf of the victim").

[33] *Giraldo*, 2011 U.S. Dist. LEXIS 160998 at *12; *Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322, at *9 (E.D.N.Y. June 9, 2014) (holding because a plaintiff was not tortured, he could only state a claim under the TVPA based on his father's execution).

wrongful death claimants."[34] In Virginia, a wrongful death claim must be "brought by and in the name of the personal representative of such deceased person."[35] However, no language under Virginia law allows a claimant to file a wrongful death claim in their individual capacity.[36] Further, there are no allegations that Muna al-Suyid was tortured. Consequently, Muna al-Suyid is barred from bringing individual claims under the TVPA.

Muna al-Suyid states she is the personal representative of Abdel Salam's, Ibrahim's, Khalid's, and Mustafa's estates pursuant to Libyan law and custom, and Ibrahim al-Krshiny states he is the personal representative of the estates of Ali and Mustafa.[37] However, Muna al-Suyid and Ibrahim al- Krshiny have provided no evidence that they have been appointed and/or qualified in Virginia to serve as personal representative the estates of Abdel Salam al-Suyid, Ibrahim al-Suyid, Khalid al-Suyid, Mustafa al-Suyid, Ali al-Krshiny or Mustafa al-Krshiny. In fact, Muna al-Suyid and Ibrahim al- Krshiny have not provided any evidence that they are acting as personal representatives in any jurisdiction, nor have they cited to any Libyan law or custom that appoints them as personal representative. Even if they had, it would be insufficient. "[I]t has been established in this jurisdiction that a foreign administrator, who has acquired no status in Virginia, is without authority to institute in his official capacity any action or suit in the courts of this State."[38]  In sum, Plaintiffs have provided no evidence that they have standing to bring claims for wrongful death pursuant to Virginia law.

---

[34] *Xuncax v. Gramajo*, 886 F. Supp. 162, 191 (D. Mass. 1995) (*quoting* H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991)).
[35] Va. Code. Ann. § 8.01-50(C).
[36] *Id.*
[37] Compl. ¶¶ 9-10.
[38] *Harmon v. Sadjadi*, 273 Va. 184, 193 (2007) (*citing McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 615 (1956) (*citing Moore v. Smith*, 177 Va. 621, 624 (1941) and *Fugate v. Moore*, 86 Va. 1045, 1047 (1890))).

Virginia law is clear that wrongful death actions must be brought by and in the name of the personal representative of the decedent, and the failure to do so is fatal to such a claim.[39] The Supreme Court of Virginia has consistently held that wrongful death suits are deemed a legal nullity if they are not brought by personal representatives who are appointed/qualified in Virginia.[40] It is not enough to look to the law of the foreign state because Virginia has an affirmative requirement that a personal representative must be appointed/qualified in Virginia for standing to exist under the Virginia wrongful death statute.[41] Therefore, the claims brought by Muna al-Suyid individually and as a personal representative and the claims brought by Ibrahim al-Krshiny as a personal representative are improper and must be dismissed due to lack of standing.

2.   Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings.

To have standing under the TVPA, Plaintiffs must present some evidence that their relatives' deaths were the result of a purposeful act to take another's life and that the deaths were not caused by "accidental or negligent" behavior, other external circumstances, or the result of just provocation or sudden passion.[42] The minimal requirement for an extrajudicial killing is that the killing must be "deliberate," which is defined as being "undertaken with studied consideration and purpose."[43]

Here, Plaintiffs do not present any evidence that the LNA was involved in the killings in October of 2014, much less any evidence that LNA or Mr. Hifter undertook the killings with consideration and purpose. Plaintiffs unsuccessfully attempt to utilize the status of Mr. Hifter,

---

[39] *Young v. Carter*, 61 Va. Cir. 682, 683 (2002).
[40] *Harmon*, 273 Va. at 193.
[41] *Yoshida v. Capital Props. Mgmt.*, 68 Va. Cir. 279, 287 (2005).
[42] *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1234-1235 (11th Cir. 2020).
[43] *Mamani v. Berzain ("Mamani I")*, 654 F.3d 1148 1155, (11th Cir. 2011).

Abdulrazaq al-Naduri, and the LNA in 2021 to retroactively apply command responsibility to the gunfight that occurred seven years prior.[44] No relevant evidence exists tying any circumstances in 2021 to the gunfights in 2014.  As such, Plaintiffs fail to bring forward any evidence that creates a causal link between the alleged acts in 2014 and Mr. Hifter.

Further, determining that Plaintiffs' relatives were deliberately killed does not alone satisfy the TVPA requirement because, "not all deliberated killings are extrajudicial killings."[45] "Extrajudicial killing" "does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation."[46] To determine whether these deliberated killings are extrajudicial, the Court must look to international law.[47]

Unlike in *Mamani v. Bustamante*, where the Court found sufficient "evidence that the decedents were killed by soldiers acting under orders to shoot or kill civilians and evidence that Defendants were connected to those orders,"[48] Plaintiffs have presented no evidence that LNA soldiers were acting under official orders connected to Mr. Hifter. Plaintiffs concede that no Libyan army existed in 2014, many factions were in violent conflict and wearing military uniforms, and carrying firearms was widespread among the in Libyan people.[49] Plaintiffs themselves have admitted to being armed and involved in the gunfights that occurred in 2014, supporting the conclusion that the deaths were caused by just provocation existed.[50]

---

[44] *See* Ex. F – Photograph of K. Hifter and al-Naduri in 2021.

[45] *Mamani I*, 654 F.3d at 1155.

[46] *Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1236-1237 (*citing* Pub. L. No. 102-256, § 3(a).

[47] *Id.* at 1236-1237 (*citing Doe v. Drummond*, 782 F.3d 576, 606 (11th Cir. 2015) ("[O]n the rare occasions when we do look to general principles of international law for guidance as to what a theory of liability or statutory definition requires, we do so only because the TVPA itself implicitly or explicitly incorporated those principles from international law.")).

[48] *Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1239.

[49] *See* Ex. B – Ahmad al- Krshiny Dep. at 32:22-33:16.

[50] *See* Ex. G – Pltf's Supplemental Responses to Def.'s First Set of Interrogatories, at p. 15.

In the midst of civil war with dozens of armed groups engaged in violent conflict, the laws of armed conflict recognize the principle of proportionality.[51] International law permits a killing in the midst of a non-international conflict involving multiple militias.[52] Given this undisputed evidence, Plaintiffs cannot legally establish a deliberate, extrajudicial killing under the TVPA. Therefore, their claim is barred.

3. The Extrajudicial Killing Must be Committed by an Individual Acting Under Actual or Apparent Authority, or Color of Law, of Any Foreign Nation.

Plaintiffs fail to demonstrate that Mr. Hifter was acting under authority or color of law of any foreign nation. The state-action or color-of-law requirement of the TVPA limits "the reach of federal law," and excludes "merely private conduct" from liability "no matter how . . . wrongful."[53] The TVPA only applies to individuals who act "under actual or apparent authority, or color of law, of any foreign nation."[54] To determine whether a defendant acted under color of foreign law, courts turn to "principles of agency law and to jurisprudence under 42 U.S.C. § 1983."[55] "[F]or purposes of the TVPA, an individual acts under color of law . . . when he acts together with state officials or with significant state aid."[56] A plaintiff "must adequately allege that the [defendant] possessed power under [foreign] law, and that the offending actions . . . derived from an exercise of that power, or that defendants could not have undertaken their culpable actions absent such power."[57]

---

[51] *See* Art. 51(5)(b), 57(2)(a)(iii) and (b) Additional Protocol I.

[52] *Id.*

[53] *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (quotations omitted).

[54] *See* § 1350 note § 2(a); *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009); *Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995).

[55] *Kadic*, 70 F.3d at 245.

[56] *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 52-53 (2d. Cir. 2014) (citations omitted); *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam) (internal quotation marks omitted), *a'ff'd for want of a quorum sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008); *Kadic*, 70 F.3d at 245 (same).

[57] *Arar*, 585 F.3d at 567-568.

10

Here, the Court has ruled that the "whole political structure of Libya is still certainly in flux"[58] and that the state secrets privilege is not applicable to the conduct alleged by Plaintiffs. As such, this Court cannot rule that Mr. Hifter is not protected by the Libyan state secrets privilege while simultaneously ruling that he is acting under actual or apparent authority of a foreign nation. To fail to recognize that Hifter lacked official authority in 2014, yet simultaneously rule that the LNA military operations in 2016 through 2019 are not protected as a Libyan state secret, would be so conflicting as to cause a manifest injustice. Even if this Court finds that Mr. Hifter is acting under the color of law of a foreign nation today, Plaintiffs have failed to provide any evidence that he held any actual or apparent authority under a foreign nation in 2014. "A foreign country was defined by Mr. Chief Justice Marshall and Mr. Justice Story to be one exclusively within the sovereignty of a foreign nation, and without the sovereignty of the United States."[59]

To date, the Libyan House of Representatives has not been recognized as a foreign government by the United States or the international community.[60] The Second Circuit has found that a foreign state is "an entity bearing the 'attributes of statehood,' which include a defined territory and population, self-governance and foreign relations, and the capacity to wage war and enter into international agreements."[61] ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.[62]

---

[58] Tr. Sept. 8, 2023, ECF No. 253, at p. 5.

[59] *De Lima v. Bidwell*, 182 U.S. 1, 180 (1901) (*citing The Boat Eliza*, 2 Gall. 4; *Taber v. United States*, 1 Story, 1; The Ship Adventure, 1 Brock. 235, 241.)

[60] *See* Ex. H – Adopting Resolution 2273 (2016), Security Council Extends Mandate of United Nations Support Mission in Libya until 15 June.

[61] *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019) (*citing Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 123 (2d Cir. 2016) (*quoting Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237, 1243-44 (2d Cir. 1991))).

[62] *See* Ex. E – Hifter Dep., June 26, 2023, at 209:11-14.

In addition, Mr. Hifter could not have acted under the color of Libyan law during the time of Plaintiffs' claims. Mr. Hifter was appointed as Commander-in-chief of the LNA on March 2, 2015.[63] Plaintiffs' claims arose in October 2014, several months prior to Mr. Hifter's appointment.[64] It was not possible for Mr. Hifter to act "together with state officials or with significant state aid" prior to his appointment as Commander-in-Chief.[65] Thus, Plaintiffs have failed to establish sufficient facts to show that Mr. Hifter possessed power under Libyan law and that extrajudicial killings or torture stemmed from this power.

As such, the individuals that committed the alleged extrajudicial killings could not have been official agents of Mr. Hifter, thus Mr. Hifter is not liable for their actions. Because Mr. Hifter is not an individual acting under actual or apparent authority, or color of law, of any foreign nation, a claim under the TVPA cannot be brought, and summary judgment in favor of Mr. Hifter is appropriate.

**B. The Court Must Dismiss this Claim Because It Lacks Jurisdiction.**

The Court must grant summary judgment in favor of Mr. Hifter because it lacks jurisdiction for two reasons: (1) there is no personal jurisdiction over Mr. Hifter, and (2) Mr. Hifter has head-of-state immunity. Despite denying Mr. Hifter's Motion to Dismiss, this Court is still without personal jurisdiction over Mr. Hifter.[66] If a court denies a motion to dismiss regarding a lack of personal jurisdiction, the court still may then grant a motion for summary judgment for lack of

---

[63] *See* Ex. D – Order Appointing K. Hifter.
[64] Compl. ¶¶ 25, 26, 29, 32, 34, 44, 45.
[65] *Chowdhury*, 746 F.3d at 52-53 (citations omitted); *Khulumani*, 504 F.3d at 260 (internal quotation marks omitted); *Kadic*, 70 F.3d at 245 (same).
[65] *Arar*, 585 F.3d at 567-568.
[66] Order Denying Defendant's Motion to Dismiss in Part, ECF No. 52.

personal jurisdiction after additional evidence is revealed.[67] Because the events occurred in Libya, general personal jurisdiction must be established in order for Plaintiffs' claims to move forward. In addition, if the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must find that head-of-state immunity is applicable. Under the common law, foreign officials may be entitled to either status-based immunity or conduct-based immunity.[68]

"Status-based immunity is available to diplomats and heads of state and shields them from legal proceedings by virtue of [their] current official position, regardless of the substance of the claim."[69] "Conduct-based immunity. . . is available to any public minister, official, or agent of the foreign state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."[70] In other words, "conduct-based immunities shield individuals from legal consequences for acts performed on behalf of the state during their tenure in office."[71]

1. Plaintiffs' Claim Fails to Establish General Personal Jurisdiction Over Mr. Hifter.

Even if Plaintiffs have sufficient subject matter jurisdiction, "subject matter jurisdiction is toothless without personal jurisdiction."[72] It is well-established in American law that a "judgment entered against [a party] not subject to the personal jurisdiction of the rendering court is a nullity."[73] There are two types of personal jurisdiction: specific and general personal jurisdiction.

---

[67] *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 870 F.Supp. 2d 415, 417-18 (D. Md. 2012).
[68] *Doe v. Buratai*, 318 F.Supp. 3d 218, 230 (D.C. 2018); *Does v. Obiano*, No. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247, at *6 (S.D. Tex. Jan. 1, 2024).
[69] *Id.*
[70] *Id.*
[71] *Sikhs for Just. v. Singh*, 64 F. Supp. 3d 190, 193 (D.D.C. 2014).
[72] *Bersoum v. Mustafa*, 568 F. Supp. 3d 443, 456 (S.D.N.Y. 2021).
[73] *Id.* (quoting *Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980)); *see also American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998).

Specific jurisdiction occurs when there is an affiliation between the forum and the underlying conduct giving rise to the controversy.[74] "[T]he paradigm forum for the exercise of general jurisdiction [for an individual] is the individual's domicile."[75]

For a court to have general jurisdiction over a party, a party must have contacts in [Virginia] that are "so continuous and systematic as to render [it] essentially at home in the forum State."[76] Because the alleged conduct occurred in Libya rather than Virginia, the Plaintiffs must rely on general personal jurisdiction. Although Mr. Hifter owns property in Virginia, other Circuits have held that mere property ownership is not enough to serve as the basis for general personal jurisdiction.[77] Mr. Hifter's property ownership alone does not give the Eastern District of Virginia personal jurisdiction over him in this lawsuit.



.[78]

.[80]He does not conduct business

---

[74] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[75] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

[76] *Bersoum v. Abotaeta*, 16 Civ. 987 (LGS), 2017 U.S. Dist. LEXIS 127460, at *11-13 (S.D.N.Y. Aug. 10, 2017) (*citing Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (dismissing TVPA claim for lack of general personal jurisdiction); *accord Waldman v. PLO*, 835 F.3d 317, 332 (2d Cir. 2016) (noting that Daimler's reasoning applies to general jurisdiction over individuals as well as corporations)).

[77] *See Conn v. Zakharov*, 667 F.3d 705, 715 (6th Cir. 2012) (A Russian-citizen owned properties in Ohio, but the court held that this was not enough to establish personal jurisdiction because he did not intend to stay in Ohio, he only used the property for business and tourism, and he did not vote in Ohio or have an Ohio driver's license.); *Mother Doe I v. Al Maktoum*, 632 F.Supp. 2d 1130, 1142 (S.D. Fla. 2007) ("By itself, ownership of property is insufficient to subject a nonresident defendant to the jurisdiction of the courts of this state, unless the cause of action arose out of such ownership.").

[78] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 39:8-14.

[79] *Id.* at 39:2-4.

[80] *Id.*

████████.[81] Accordingly, Mr. Hifter is not "at home" in Virginia, and this Court should grant his motion for summary judgment on the grounds that this Court lacks personal jurisdiction over him.

   2.   This Claim Lacks Jurisdiction Under Head-of-State Immunity.

If the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must also find that Mr. Hifter is entitled to head-of-state immunity. Determination of foreign official immunity is a two-step process.[82] "First, the foreign-official defendant may request a suggestion of immunity from the State Department. If the request is granted, the district court surrenders its jurisdiction."[83] "In the absence of recognition of the immunity by the [State Department], the district court moves to the second step, in which a district court has authority to decide for itself whether all the requisites for such immunity existed."[84] "In making that decision, the court inquires whether the ground of immunity is one which it is the established policy of the State Department to recognize."[85] Immunity may be found if (1) the defendant was a "public minister, official, or agent" of the state, (2) "he acted in his official capacity," and (3) "exercising jurisdiction would 'enforce a rule of law against the state.'"[86]

First, if the Court determines that Mr. Hifter was acting under the color of law of a foreign nation, then it must also find that Mr. Hifter was a public official at the time of the events of this Complaint, which would satisfy the first prong for judicial determination of head-of-state immunity. It is undisputed that on March 2, 2015, Mr. Hifter was appointed as Commander-in-

---

[81] *Id.* at 39:21-40:3.
[82] *Buratai*, 318 F.Supp. 3d at 230.
[83] *Id*.
[84] *Id*.
[85] *Id*.
[86] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7.

chief of the LNA,[87] but the LNA is not recognized as a legitimate government in the international community. However, if the Court determines that Mr. Hifter was in power at the time of these events in 2014, then the first prong for head-of-state immunity is satisfied. Plaintiffs themselves allege that Mr. Hifter was "appointed as a field marshal and head of the Libya National Army" and that he "act[ed] on the authority of the government of Libya."[88] Plaintiffs further allege in their Complaint that seeking personal damages against Mr. Hifter in Libya would be hard because Mr. Hifter is "the field marshal of the LNA who controls the government in much of Libya, including Plaintiffs' home jurisdiction."[89]

Second, if the Court finds that Mr. Hifter was a head-of-state official at the time of the allegations of this Complaint, then Mr. Hifter was acting in his official capacity. Plaintiffs allege that "[i]n October 2014 Defendant Khalifa Hifter's LNA, acting on authority of the government of Libya, launched what they inaptly called 'Operation Dignity…'"[90] Both the al-Suyid and al-Krshiny allegations state that the alleged actions were taken in furtherance of Operation Dignity, a military operation that Plaintiffs claim was authorized by the government of Libya.[91]

Third, while Plaintiffs claim to be suing Mr. Hifter in his individual capacity, the Complaint repeatedly connects Mr. Hifter's alleged actions to his official capacity and the LNA's years-long campaign to remove terrorists from Libya. Plaintiffs claim that Mr. Hifter was "acting on the authority of the government of Libya" when he launched "Operation Dignity."[92] Plaintiffs further

---

[87] *See* Ex. D – Order Appointing K. Hifter.
[88] Compl. ¶¶ 24, 26.
[89] *Id.* at ¶ 51.
[90] *Id.* at ¶ 26.
[91] *Id.* at ¶¶ 26, 29, 34.
[92] *Id.* at ¶¶ 26, 61.

allege that Mr. Hifter was "appointed as field marshal, as head of the Libyan National Army" due to the outbreak of civil war in 2011.[93]

While Plaintiffs claim that Mr. Hifter is unable to receive head-of-state immunity because he is subordinate to Libya's legislature and head-of-state, Mr. Hifter must merely be a "public minister, official, or agent" of the state to qualify for head-of-state immunity.[94] By interfering with the Libyan government, a decision here would "effectively enforce a rule of law" against Libya.[95] If the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must also recognize Mr. Hifter was acting as a head-of-state, and apply such immunity.

Lastly, while Plaintiffs claim that Mr. Hifter has no right to any conduct-based or foreign-official immunity because his alleged acts violated international human rights *jus cogens* norms,[96] the majority of circuit courts have repeatedly held that conduct-based immunity may still be granted under the circumstances alleged.[97] In *Yousuf v. Samantar*, the Fourth Circuit held that there was *jus cogens* exception to foreign official immunity, which is binding precedent on this Court.[98] Despite the ruling in *Yousuf*, Mr. Hifter contends that that Fourth Circuit decision is an outlier and the remaining jurisdictions including the Second, Seventh, and Ninth Circuits have rejected the

---

[93] *Id.* at ¶ 24.

[94] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7.

[95] *Buratai*, 318 F.Supp. 3d at 233.

[96] Compl. ¶ 52.

[97] *See Dogan v. Barak*, 932 F.3d 888, 896 (9th Cir. 2019) (declining "to hold that foreign officials are not immune from suit for violations of jus cogens norms"); *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009) ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *see also Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004) ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity."); *Buratai*, 318 F. Supp. 3d at 234 ("Although the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law.").

[98] *Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).

existence of that exception.[99] As such, there is a circuit split among the courts, and Mr. Hifter contends that the ruling in *Yousuf* is incorrect, and there is not a *jus cogens* exception to foreign official immunity. "The text of the TVPA does not mention immunity, and statutes are normally assumed not to displace the common law by implication."[100] Also, the Executive Branch has not recognized a *jus cogens* exception to immunity.[101]

Thus, if the Court finds that Mr. Hifter was acting under the color of law of a foreign nation, then it must also find that Mr. Hifter was a public official of Libya acting in his official capacity as Commander-in-chief of the LNA.  Thus, exercising jurisdiction here would improperly enforce a rule of law against the State of Libya, so Mr. Hifter is entitled to head-of-state immunity.

## C. Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya.

Plaintiffs have not exhausted their administrative remedies in Libya, thus their claims under the TVPA must fail. The TVPA exhaustion requirement "is an affirmative defense" where the defendant bears the initial burden of proof.[102] The court must decline a claim brought under the TVPA if the claimant has not exhausted all adequate and available remedies "in the place in which

---

[99] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *11; *see Dogan*, 932 F.3d at 896 (declining "to hold that foreign officials are not immune from suit for violations of jus cogens norms"); *Matar*, 563 F.3d at 15 ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *see also Ye*, 383 F.3d at 627 ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity."); *Buratai*, 318 F. Supp. 3d at 234 ("Although the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law.").

[100] *Id.* at *10 (*quoting* Curtis A. Bradley, *Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l L. 1, 17 (2021)); *see also Samantar v. Yousuf*, 560 U.S. 305, 320 (2010) ("The canon of construction that statutes should be interpreted consistently with the common law helps us interpret a statute that clearly covers a field formerly governed by common law."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (holding that Congress must give "clear indication that [it] meant to abolish wholesale all common-law immunities" in a statute).

[101] *Matar*, 563 F.3d at 14; *Buratai*, 318 F. Supp. 3d at 235.

[102] *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005).

the conduct giving rise to the claim occurred."[103] If evidence submitted by the parties conflicts, the court may "act[] as a fact finder in resolving [a] factual dispute" concerning exhaustion of remedies.[104] Because adequate legal remedies exist in Libya and Plaintiffs have not sufficiently proven that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile, Plaintiffs' claims fail under the TVPA exhaustion requirement.

     1.   <u>Defendant Has Proven that Plaintiffs Did Not Exhaust Their Administrative Remedies.</u>

     Exhaustion is an affirmative defense initially requiring the defendant to establish that plaintiffs did not exhaust their administrative remedies.[105] A defendant "must prove the existence of specific domestic remedies that should have been utilized."[106] "Plaintiffs . . . are entitled to a presumption that local remedies have been exhausted, which Defendants must overcome before Plaintiffs are required to prove exhaustion or, presumably, the futility of exhausting local remedies."[107] Ultimately, to succeed with an exhaustion defense, "a defendant must demonstrate that a plaintiff failed to exhaust all 'adequate and available' remedies."[108]

     Here, the undisputed evidence establishes that Plaintiffs have not exhausted their local remedies. Plaintiffs lived in Benghazi at the time the alleged events occurred.[109] Local remedies exist in Libya and specifically exist in both Benghazi and Tripoli. Judicial proceedings in Benghazi were operating (1) all of 2018, (2) all of 2019, except from April to June, (3) all of 2020, except

---

[103] 28 U.S.C. § 1350 Note, § 2(b).
[104] *See Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (adopting this exhaustion of administrative remedies rule from the PRLA, 42 U.S.C. § 1997e(a)).
[105] *Jean,* 431 F.3d at 781.
[106] *Enohoro v. Abubakar*, 408 F.3d 877, 892 (7th Cir. 2005).
[107] *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1357 (S.D. Fla. 2003).
[108] *Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724, at *26 (S.D. Fla. Sep. 28, 2021).
[109] Compl. ¶¶ 29, 34.

from April to June, (4) all of 2021, except from April to June, (4) all of 2022, and (5) all of 2023.[110]

Judicial proceedings in Tripoli were operating (1) from January to May and November to

December in 2014, (2) all of 2015, (3) all of 2016, (4) all of 2017, (5) all of 2018, (6) all of 2019,

except from January to March, (7) all of 2021, except from September to December, (8) all of

2022, and (9) all of 2023.[111]

Since the overthrow of the Gaddafi regime in 2011, the primary source of law in Libya has

been the Constitutional Declaration of the National Transitional Council which states that the

foundation for all law in Libya is the Shari'a.[112] The Libyan courts are divided into civil courts,

criminal courts, and administrative courts.[113] All matters are heard before judges, because there

are no jury trials in Libya.[114] As of 2022, all major Libyan city courts have been fully functional

on a full-time basis.[115] Because the Libyan court system is alive and well, Plaintiffs must pursue

their claims in Libya. They have not exhausted their local remedies.

2.   Plaintiffs Have Not Proven that Local Remedies are Ineffective, Unduly Prolonged,
     Inadequate, or Obviously Futile.

Plaintiffs have not proven that local remedies are ineffective. Here, Mr. Hifter has proven

that specific domestic remedies do exist and should be utilized. Once a defendant meets their

burden of proof, the burden shifts to the plaintiff to demonstrate that local remedies were

"ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."[116] The most

common way for a plaintiff to establish their exhaustion of local remedies is by filing suit in that

---

[110] *See* Ex. I – Declaration of Fathi Younis Toomi, p. 9.
[111] *Id.*
[112] *Id.* at ¶ 11.
[113] *Id.* at ¶ 14.
[114] *Id.*
[115] *Id.* at p. 9.
[116] *Jean,* 431 F.3d at 782; S. Rep. No. 102-249, at 10, 102nd Cong. 1st Sess. 1991, *reprinted in* 1991 WL 258662 (Leg. Hist.) (Nov. 26, 1991).

country.[117] Although the amount of money obtainable in a foreign court may not be as much as a plaintiff might be able to recover in an American court, that does not mean the remedy is so inadequate to excuse exhaustion.[118] Application of §2(b) of the TVPA here would "encourage the development of meaningful remedies" in Libya.[119]

Courts have interpreted the TVPA exhaustion requirement in many cases. In *Jaramillo v. Naranjo*, the Southern District of Florida held that plaintiffs exhausted their local remedies because (1) they sought relief through Colombia's criminal justice system and the Columbia Justice and Peace Process, (2) the Colombian court had not acted on the case in the 20 years after the murder, and (3) defendants offered no evidence that plaintiffs did not exhaust their remedies.[120]

In *Mamani v. Berzain*, the Southern District of Florida held that the plaintiffs had not exhausted their remedies in Bolivia because (1) they had not attempted to obtain compensation for the alleged extrajudicial killing from the government, (2) Bolivian law provided compensation, (3)

---

[117] *See e.g.*, *Xuncax*, 866 F. Supp. at 178 (holding that a plaintiff has properly exhausted their remedies available in the country where the conduct giving rise to their claim occurred where the plaintiff (1) provided 12 hours of testimony to the original court, (2) the criminal case against the defendant had made no progress for several years, and (3) under Guatemalan law, a civil action could not be brought until there was final judgment in the criminal proceeding).

[118] *See Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1025-26 (W.D. Wash. 2005) (holding that plaintiffs filing under the TVPA had to exhaust available remedies in Israel: "A foreign remedy is adequate even if not identical to remedies available in the United States. Courts usually find a foreign remedy adequate unless it is 'no remedy at all.'") (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).

[119] 28 U.S.C.S. § 1350 Note, § 2(b); *see* H.R. Rep. 102-367, at 5, 102nd Cong. 1st Sess. 1991, 1992 U.S.C.C.A.N. 84, 88, *reprinted in* 1991 WL 255964 (Leg. Hist.) (Nov. 25, 1991); *see also* E. Duruigbo, *Exhaustion of Local Remedies*, 29 FORDHAM INT'L L. J. at 1284 ("[W]e should not lose sight of the fact that the requirement of exhaustion of local remedies provides a window of opportunity to beam the search light on the existing state of affairs in developing countries and let such discovery inform and form the basis for meaningful social, economic, political, and legal reforms in those countries.").

[120] *Jaramillo*, 2021 U.S. Dist. LEXIS 184724 at *27.

the total monetary compensation was 14-15 times the Bolivian per capita income at the time, and (4) the plaintiffs had already received compensation from the Bolivian government.[121]

In *Boniface v. Viliena*, the Massachusetts District Court held that plaintiffs exhausted their local remedies because (1) the complaint contained detailed descriptions of events where individuals were targeted with threats, violence, and death for reporting a crime or participating in court proceedings, (2) the defendant fled to Massachusetts to avoid prosecution, and (3) the defendant used his political influence in Haiti to avoid accountability for his actions.[122]

In *Doe I v. Liu Qi*, the Northern District of California held that plaintiffs had exhausted their remedies in China because (1) the Chinese government had issued an ordinance prohibiting attorneys from engaging in legal advocacy on behalf of petitioners and that those making allegations against the government could suffer serious reprisals, (2) the plaintiffs were arrested after they tried to appeal to the Beijing government on behalf of practitioners who had been arrested, detained, and tortured, and (3) the plaintiffs fled China to escape further persecution.[123]

Here, Plaintiffs are unable to show that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile. The al-Suyid Plaintiffs filed a complaint with the Office of the Attorney General of Libya on July 17, 2016.[124] The al-Krshiny Plaintiffs also filed a complaint with the Office of the Attorney General of Libya on November 19, 2014.[125] In those cases, the office of the Attorney General appointed a prosecutor to the case.[126] The public prosecutor then

---

[121] *Mamani v. Berzain*, 636 F. Supp. 2d 1326, 1331-1332 (S.D. Fla. 2009).
[122] *Boniface v. Viliena*, 338 F. Supp. 3d 50, 66-67 (D. Mass. 2018).
[123] *Liu Qi*, 349 F. Supp. at 1319-1320.
[124] *See* Ex. J – SUYID-000001-000002.
[125] *Id.* at SUYID-000001.
[126] *Id.*

interrogated the complainants.[127] At no point have Plaintiffs attempted to file civil remedies in Libya.

Plaintiffs have also not been persecuted for bringing these complaints in Libya. Plaintiffs have not had to flee the country, rather they still live in Libya even after filing criminal complaints against Mr. Hifter in Libya and this suit in the United Staftes with no repercussions. Lastly, unlike in *Jaramillo* where the defendant offered no evidence that plaintiffs did not exhaust their remedies, Mr. Hifter has produced evidence that the Libyan court system is operational, and that Plaintiffs have not exhausted their remedies in Libya. Thus, because domestic remedies exist and Plaintiffs have not sufficiently proven that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile, Plaintiffs' claim must fail under the TVPA exhaustion requirement.

### D.  Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability.

Even if the Court finds this suit is proper in the Eastern District of Virginia, Plaintiffs' TVPA claim still fails to provide any evidence of intent or liability by the Defendant. Plaintiffs have provided no evidence to establish that Mr. Hifter is responsible for the alleged events on October 14, 2014, and October 17, 2014. ████████████████████

████████████████████████████████████████████.[128]

Three elements must be established for command responsibility to apply:

> (1) superior-subordinate relationship between the defendant/military commander and the person or persons who committed human rights abuses; (2) the defendant/military commander knew, or should have known, in light of the circumstances at the time, that subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant/military commander failed to take all

---

[127] *Id.*

[128] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 78:18-79:6.

necessary and reasonable measures to prevent human rights abuses and punish human rights abusers.[129]

For the reasons set out below, the Plaintiffs have failed to satisfy these elements.

1. <u>There is No Evidence that the Libyan National Army was Involved in the Alleged Incidents.</u>

First, Plaintiffs must establish a superior-subordinate relationship between Mr. Hifter and those behind the alleged conduct. Plaintiffs must allege facts showing that Mr. Hifter had "effective control" over the soldiers' actions.[130] The Eleventh Circuit has explained that "[t]he concept of effective *control* over a subordinate [is] the sense of a material ability to prevent or punish criminal conduct, however that control is exercised."[131] "[A] showing of the defendant's actual ability to control the guilty troops is required as part of the plaintiff's burden under the superior-subordinate prong of command responsibility, whether the plaintiff attempts to assert liability under a theory of *de facto* or *de jure* authority."[132]

Here, the Plaintiffs have provided no evidence to establish that those responsible for the alleged conduct reported to Mr. Hifter.[133] Their allegations tying these events to Mr. Hifter are based solely on mere speculation. Plaintiffs do not even assert that members of the LNA committed the alleged extrajudicial killings. The al-Suyid Plaintiffs claim that "Neighborhood Youths" led by Major General Abdulrazaq al-Baduri and Wanis Bukamada attacked the al-Suyid home.[134] The

---

[129] *Chavez v. Carranza*, 559 F.3d 486, 499 (6th Cir. 2009) (*citing Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)).

[130] *Mamani v. Berzain*, 21 F.Supp.3d 1353, 1376 (S.D. Fla. 2014).

[131] *Ford*, 289 F.3d at 1290 (*quoting Prosecutor v. Delalic* (Appeals Chamber ICTY, Feb. 20, 2001) ¶ 256).

[132] *Id.* at 1291.

[133] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.

[134] Compl. ¶¶ 29-33.

al-Krshiny Plaintiffs claim that units led by Major General Jamal al-Zahawi and Colonel Almadi al-Bargathi attacked the al-Krshiny home.[135]

While the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, Plaintiffs have failed to identify any causal link between the alleged events and the Libyan National Army. Unlike the defendant in *Jane W. v. Thomas*, Mr. Hifter was not part of the missions, was not present at the extrajudicial killings or tortures, and did not give any orders instructing the killings or torture.[136] Further, Plaintiffs have provided no evidence that uniformed LNA members were present at either site. As noted above, during this time period, many individuals wore army uniforms in Libya, even those not affiliated with the army. In fact, Plaintiffs concede that an individual wearing a uniform might not be an official member of an army.[137] Absent a causal link to the alleged acts, Mr. Hifter cannot be said to have had control over the "Neighborhood Youth" or other individuals involved in the alleged extrajudicial killing and torture of Plaintiffs. Nor can he be said to have control over a person by virtue of them wearing an army uniform.

### 2. There is No Evidence that Mr. Hifter Knew or Reasonably Should have Known that Soldiers Were Committing Extrajudicial Killings.

Plaintiffs must show that Mr. Hifter "knew or should have known, owing to the circumstances at the time," that soldiers "had committed, were committing, or planned to commit" extrajudicial killings.[138] In *Mamani*, the plaintiffs showed this element by presenting evidence of meetings where the defendant explicitly agreed to kill thousands of people.[139] Here, no such evidence has been presented by Plaintiffs. ███████████

---

[135] *Id.* at ¶¶ 34-46.
[136] *Jane W. v. Thomas*, 560 F. Supp. 3d 855, 880 (E.D. Pa. 2021).
[137] *See* Ex. B – Ahmad al- Krshiny Dep. at 33:17-33:21.
[138] *Jaramillo*, 2021 U.S. Dist. LEXIS 184724 at *23-24 (*citing Ford*, 289 F.3d at 1288.)
[139] *Berzain*, 21 F.Supp.3d at 1377 (*quoting Ford*, 289 F.3d at 1288).



.[143] Plaintiffs have failed to provide any evidence that Mr. Hifter exercised control of these various warring groups.

    3.  <u>There is No Evidence that Mr. Hifter Failed to Prevent any Extrajudicial Killings.</u>

    Plaintiffs are required to establish that Mr. Hifter "failed to take all necessary and reasonable measures" within his power to prevent or punish the extrajudicial killings.[144] Here, as already established, ███████████████████████████████████████████ ████ [145] Generally, knowledge is proven by showing actual endorsement.[146] Plaintiffs have presented no evidence that Mr. Hifter ordered, endorsed, or failed to take necessary measures to prevent the alleged killings. ████████████████████████████ ████████████████████████████.[147] Prior to 2014, Mr. Hifter was not in a position to take any necessary measures. ███████████████████████████

<hr />

[140] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[141] *Id.* at 82:11-16.
[142] *Id.* at 78:18-79:4.
[143] *See* Ex. E – Hifter Dep., June 26, 2023, at 222:3-8.
[144] *Mamani v. Berzaín*, 533 F. Supp. 3d 1252, 1267, 1293 (S.D. Fla. 2021).
[145] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[146] *See, e.g., Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002); *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996).
[147] *See* Ex. E – Hifter Dep., June 26, 2023, at 236:12-22.

██████.[148] This would have been the proper process for Plaintiffs to address their concerns and seek justice, a process Mr. Hifter supports.[149]

The events alleged by Plaintiffs took place prior to Hifter exercising any control over the LNA. Plaintiffs have failed to provide any evidence sufficient to tie Mr. Hifter to their allegations.[150] Plaintiffs have not met any of the prongs of the command responsibility doctrine. They have presented nothing more than mere speculation about Mr. Hifter's involvement in their allegations. As the court explained in *Mamani*, such broad accusations are "easy to say about leaders of nations, but without adequate factual support of more specific acts by these defendants, these 'bare assertions' are 'not entitled to be assumed true.'"[151] Plaintiffs' inability to establish any element of command responsibility results in a failure to demonstrate Mr. Hifter's liability for these claims. The failure to establish a causal link between the alleged events that took place in October of 2014 and Mr. Hifter is fatal to Plaintiffs' claims, and summary judgment should be granted.[152]

## V.     CONCLUSION

Defendant, Khalifa Hifter, has established that there are no genuine issues as to any material fact, and that, as the facts stand, Plaintiffs do not have a viable legal claim against him. As such, summary judgment should be entered in Mr. Hifter's favor and the case against him dismissed with prejudice.

---

[148] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 111:21-112:3.; *see also* Ex. E – Hifter Dep., June 26, 2023, at 239:10-18.
[149] *Id.*
[150] *See* Ex. F – Photograph of K. Hifter and al-Naduri in 2021.
[151] *Mamani I*, 654 F.3d at 1154 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).
[152] *See Qi*, 349 F. Supp. 2d at 1331-32 (finding that a superior subordinate relationship was established where one defendant had supervisory authority over perpetrators, and another defendant "played a major policy-making and supervisory role in the policies and practices that were carried out") (internal quotation marks omitted).

Dated: February 23, 2024

Respectfully submitted,

KHALIFA HIFTER

By Counsel

/s/ Madison A. Beatty
Robert H. Cox (VSB No. 33118)
Madison A. Beatty (VSB No. 98099)
BRIGLIA HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
(703) 883-0880 [telephone]
(703) 883-0899 [facsimile]
rcox@brigliahundley.com
mbeatty@brigliahundley.com

## CERTIFICATE OF SERVICE

I certify that on February 23, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Madison A. Beatty
Madison A. Beatty (VSB No. 98099)

28