**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MUNA AL-SUYID, et al. ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No.   1:20-cv-0170 (LMB/JFA) |
| ) | |
| KHALIFA HIFTER ) | FILED UNDER SEAL |
| Defendant, ) | Protective Order Docket #198 |
| ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs Muna al-Suyid, Ibrahim al-Krshiny, Abdalla al-Krshiny, Ahmad al-Krshiny and

Mahmud al-Krshiny ("Plaintiffs"), by counsel and pursuant to Federal Rule of Civil Procedure 56

and Local Rule 56, submit this reply brief in opposition to Defendant Khalifa Haftar's Motion for

Summary Judgment. For the reasons set forth in this brief, Defendant's Motion should be denied.

**I.       INTRODUCTION**

Hifter moved for summary judgment on Plaintiff's claims based on his denial of knowledge

of deaths of Plaintiffs' respective next of kin, Plaintiffs' lack of standing and lack of this Court's

jurisdiction over Hifter due to not acting under color of authority of a foreign state recognized by the

US government. Plaintiffs challenge all grounds based on the facts and case law cited herein.

**II.      STATEMENT OF DISPUTED MATERIAL FACTS SUPPORTING PLAINTIFF'S**
**CLAIMS OF NEGLIGENCE**

1.       Civil courts in Libya are not available for recourse for torture and killings as of no

later than September 4, 2014.  Exh. 1, p. 9.

2.       In February of 2014, Gen. Hifter led what is known as Operation Dignity. ECF No.

39, p. 10.

3.      The Operation Dignity forces were comprised of the Libyan National Army. Exh. 3, p. 38.

4.      The House of Representatives in Libya, who appointed Hifter to the position of General Commander of the Libyan National Army, publicly endorsed Operation Dignity in October 2014. Exh. 2, p. 3.

5.      Hifter's launching of Operation Dignity led to many attacks in and around Benghazi in October 2014 led to many civilian deaths with forces loyal to Hifter and Operation Dignity using machine guns, artillery and other weapons in their attacks. Exh. 3, p. 8; Exh. 2, p. 4.

6.      Khalid Bulghaib, a Hifter supporter, made a series of announcements that anyone from Misrath should have their homes looted and destroyed and should be purged completely. Exh. 3, p. 18.

7.      Operation Dignity forces committed multiple acts like the attack on al-Krishny, throughout October and November 2014.  Exh. 3, p. 16.

8.      On November 2, 2014, Faraj al-Bar'asi, Commander of the Jabal al-Akhdar Region for Operation Dignity, acknowledged that attacks against homes were carried out following Dignity forces' entry to Benghazi. Exh. 3, p. 16.

9.      As of January 2015, the Libyan National Army, who was part of the Operation Dignity Forces, agreed only to a partial ceasefire in their ongoing attacks. Exh. 3, p. 38-39.

10.     Lindsay McKasson, then counsel for Defendant in this matter, agreed, in the matter of *Elzagally v. Hifter*, that "[Hifter] has authority as the field marshal of the LNA, and I think that is undisputed." Exh. 4, 15:4-5.

███████ Defendant ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████

### III.     ARGUMENT

### A.     Summary Judgment Standard

Rule 56(c) requires that "[a] party asserting that a fact…is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the records; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Likewise, Local Rule 56(B) requires that a brief in response "include a specially captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."  In determining this motion, the Court "may assume that facts identified by [Hifter] in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id*.

The relevant inquiry at the summary judgment stage analyzes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S.242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not ... to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. National Cable Adv., LP*, 57 F.3d 1317, 1322-23 (4th Cir.1995). "The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

Here, Plaintiffs raise a genuine issue of material fact sufficient to overcome Defendant's summary judgment motion.  More importantly, Plaintiffs credibly challenge facts identified by Hifter and demonstrate contrary assertions of fact as required by Rule 56. (*See* Plaintiffs' Memorandum of Law, ECF No. 273 *generally*.)  Accordingly, the Court should recognize the genuine issue of material facts identified herein and deny summary judgment.

**B.      Hifter Acted Under Color of Law**

Plaintiffs contend that Defendant Hifter is not a head of state. But for purposes of applying

the TVPA, a military commander of a self-proclaimed governmental entity like the Libyan House of

Representatives can still trigger TVPA claims.  As cited in his recommendation for determining

Defendant's liability and awarding damages against Defendant Hifter in case, Judge Anderson was

persuaded by the 2nd Circuit where the "Libyan House of Representatives, through the LNA,

controlled defined territory, in this case Central and Eastern Libya, and controlled the populations

within those areas through the imposition of laws, taxes, trials, and death sentences." *Al-Suyid v*

*Khalifa Hiftar*, 2020 U.S. Dist. LEXIS 248317 at 17-18. *See Kadic v. Karadzic,* 70 F.3d 232. Judge

Anderson continued:

> There, "Srpska" was alleged to "control defined territory, control populations within
> its power, and to have entered into agreements with other governments . . . [i]t has a
> president, a legislature, and its own currency." *Id.* The Second Circuit continued by
> reframing the inquiry, noting that the concept of a state, where required for violations
> such as "official" torture, "requires merely the semblance of official authority . . . not
> whether statehood in all its formal aspects exists." *Karadzic*, 70 F.3d at 245.

Judge Anderson concludes his analysis by finding, "that (Al-Suyid) plaintiffs assertion that the LNA

acted under the authority of the Libyan House of Representatives, a de facto government, is sufficient

to meet the "foreign nation" requirement of the TVPA." *Id.* at 18. Further, it is clear that the House

of Representatives of Libya, who appointed Hifter as General Commander, publicly endorsed

Hifter's attacks under Operation Dignity in October 2014. Exh. 2, p. 3. Lindsay McKasson, then

counsel for Defendant in this matter, agreed, in the matter of *Elzagally v. Hifter*, that "[Hifter] has

authority as the field marshal of the LNA, and I think that is undisputed." Exh. 4, 15:4-5. Here, Hifter

admits to leading Operation Dignity, whose forces included the Libyan National Army, and was

endorsed by the House of Representatives. Thus, Hifter had authority as required under the TVPA.

**C.      Plaintiffs are Qualified as Representatives with Standing**

Defendant argues in his Memorandum that none of the Plaintiffs in this action are suing as

representatives of the decedents. Under the plain language of the TVPA, "any person who may be a claimant in an action for wrongful death" can receive damages under the TVPA specifically. Pursuant to Va. Code § 8.01-52, damages for wrongful death:

> shall be distributed as specified under § 8.01-54 to (i) the surviving spouse, children of the deceased and children of any deceased child of the deceased, and the parents of the decedent if any of such parents, within 12 months prior to the decedent's death, regularly received support or regularly received services from the decedent for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care, or (ii) if there be none such, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (iii) if the decedent has left both surviving spouse and parent or parents, but no child or grandchild, the award shall be distributed to the surviving spouse and such parent or parents or (iv) if there are survivors under clause (i) or clause (iii), the award shall be distributed to those beneficiaries and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (v) if no survivors exist under clause (i), (ii), (iii), or (iv), the award shall be distributed in the course of descents as provided for in § 64.2-200.

As an analogue to a cause of action under the TVPA, consider that Virginia law neither precludes not requires residency and formal appointment as an administrator to bring a cause of action for wrongful death. The relevant section of Virginia Code § 64.2-454 in its title envisages non-resident parties bringing an action for wrongful death. *See Id.* Appointment of administrator for prosecution of action for personal injury or wrongful death against or on behalf of estate of deceased resident or nonresident states:

> If a fiduciary has been appointed in a foreign jurisdiction, the fiduciary may qualify as administrator. The appointment of a fiduciary in a foreign jurisdiction shall not preclude a resident or nonresident from qualifying as an administrator for the purposes of maintaining a wrongful death action pursuant to § 8.01-50 or a personal injury action in the Commonwealth.

Each of the Plaintiffs has been clearly identified in the pleadings and subsequent motions as next of kin to the deceased individual: spouse, parent or child.  None of the cases nor statutes cited by Defendant negate a cause of action based on failure of the incantation of the word "estate" or "capacity". The Court shall not be led to dismiss this action when it is clear from the pleadings that

no plaintiff in this case is claiming torture or death of himself or herself; rather that of an immediate relative with standing to bring a cause of action, in this case under the TVPA.

## D.      Hifter Can be Held Liable Under the TVPA

After depositions and production of documents, Plaintiffs have corroborated their allegations that their respective next of kin were civilians killed by weapons exclusively used by forces of LNA commanded by Hifter. Granting the Defendant summary judgment at this stage contravenes the fundamental notion of assembling a jury to determine the facts at issue.

### A.   Evidence Points to Civil Liability for Defendant on Plaintiffs' TVPA Claim

As explained by the United States Supreme Court, the TVPA makes available to all individuals a civil cause of action for torture and extrajudicial killing that may be brought against natural persons. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1432 (2018). *See also Mohamad v. Palestinian Authority*, 566 U. S. 449, 451-452, 454 (2012). Specifically, the Act states that;

> "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation—(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or "(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death. . . . For the purposes of the TVPA, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." 28 U.S.C.S. § 1350 note.

Further, the TVPA continues:

> the term 'torture' means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind…

*Id.*

Here, Hifter, an individual, under actual authority as the leader of Operation Dignity, fully

backed by the Libyan National Army and endorsed by the House of Representatives, commanded

troops who repeatedly attacked civilians in their homes, including the instances which resulted in

the extrajudicial killing of decedents in this matter. It is not necessary to prove that Hifter himself

committed the extrajudicial killing of decedents. In recommending a default judgement in this

case against Hifter, Judge Anderson stated:

> The Ninth Circuit in *Hilao* described the principle of "command responsibility" as
> that which "holds a superior responsible for the actions of subordinates" and found
> the United States had moved toward recognizing the applicability of the principle for
> torture occurring during peacetime, not just during wartime. *Hilao v. Estate of
> Marcos*, 103 F.3d 767, 777 (9th Cir. 1996). Further, as the court cited, the legislative
> history of the TVPA evidenced this move, explaining that under international law
> "responsibility for torture, summary execution, or disappearances extends beyond the
> person or persons who actually committed those acts—anyone with higher authority
> who authorized, tolerated or knowingly ignored those acts is liable for them." *Id.*
> (*citing* S. Rep. No. 249, at 9 (1991)). More recently, the Supreme Court has affirmed that
> that "the TVPA contemplates liability against officers who do not personally execute
> the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458,
> 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012). Al-Suwaid v. Hifter, 2020 U.S. Dist.
> LEXIS 248317 at 20.

The record in this case shows ample evidence that Hifter's personnel committed these

acts in violation of the TVPA and did so for the purpose of killing innocent civilians. Decedents

in this matter were killed by brutal shellings during Defendant's Operation Dignity. Exh. 3, p.

18. Further, Plaintiffs have developed evidence that these attacks were further initiated by close

Hifter allies. *Id.* Further, Operation Dignity leaders acknowledged that attacks against homes

were carried out following Dignity forces' entry to Benghazi. Exh. 3, p. 16. This Court has

likewise recognized liability by a Defendant under the TVPA *in Bashe Abdi Yousuf v. Mohamed

Ali Samantar*, 2012 U.S. Dist. LEXIS 122403, 2012 WL 3730617, where Judge Brinkema

wrote:

The Supreme Court recently affirmed that "the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing." *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709, 182 L. Ed. 2d 720 (2012) (citation omitted). Even before Mohamad, "virtually every court to address the issue" has "recogniz[ed] secondary liability for violations of international law since the founding of the Republic." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011) (internal quotation marks and alterations omitted); accord *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11, 19, 397 U.S. App. D.C. 371 (D.C. Cir. 2011) (citing *The Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258-59 (2d Cir. 2009); *Khulumani v. Barclay Nat'l Bank*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1258 n.5 (11th Cir. 2009), abrogated on other grounds, Mohamad, 132 S. Ct. at 1706 & n.2). For command responsibility to apply, three elements must be established: (1) [A] superior-subordinate relationship between the defendant/military commander and the person or persons who committed human rights abuses; [*32] (2) the defendant/military commander knew, or should have known, in light of the circumstances at the time, that subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant/military commander failed to take all necessary and reasonable measures to prevent human rights abuses and punish human rights abusers. *Chavez*, 559 F.3d at 499 (holding that "command responsibility does not require proof that a commander's behavior proximately caused the victim's injuries") (citing *Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)); *see also Hilao*, 103 F.3d at 776-79 (same); *see generally Doe v. Qi*, 349 F. Supp. 2d 1258, 1329 (N.D. Cal. 2004) ("The principle of command responsibility that holds a superior responsible for the actions of subordinates appears to be well accepted in U.S. and international law in connection with acts committed in wartime . . . .") (citing In re Yamashita, 327 U.S. 1, 14-16, 66 S. Ct. 340, 90 L. Ed. 499 (1946)). *Samantar* at 31-32.

Here, it is clear that a jury can find Hifter liable under the command responsibility of the TVPA. First, there is evidence of the existence of a superior-subordinate relationship between Hifter and the LNA. Hifter admits he led Operation Dignity as early as February 2014. Second, it is clear that Hifter knew or should have known that his troops committed, were committing, or planned to commit these attacks based on his leader's admission that these acts of attacking civilians in their homes was the confirmed acts of Operation Dignity. The LNA and Operation Dignity forces repeatedly attacked civilians in their homes in October and November 2014 while under the command of Hifter. Exh 3, p. 16. The House of Representatives publicly endorsed Operation Dignity in October 2014. Exh. 2, p. 3.

Further, there is evidence in the record that Hifter clearly ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

**B.  Plaintiffs are entitled to damages under the TVPA.**

Under the TVPA, individuals who may be claimants under the action are those "who may be [] claimant[s] in an action for wrongful death." 28 U.S.C. § 1350, note § 2(a)(2) (2006). The TVPA "suggests looking to state law for 'guidance' regarding which parties would be proper wrongful death claimants and permits suit 'by the victim or the victim's legal representative or a beneficiary in a wrongful death action.'" *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 346 (S.D.N.Y. 2014) (emphasis added)(quoting S. Rep. No. 102-249 at *7 (1991)), aff'd sub nom. *Sikhs for Justice, Inc. v. Nath*, 596 F. App'x 7 (2d Cir. 2014); see also *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1349 (11th Cir. 2011) ("[S]tate law should govern the determination of whether a plaintiff is a claimant in an action for wrongful death and, where state law would provide no remedy, a court may apply the foreign law that would recognize the plaintiff's claim."). Pursuant to Va. Code § 8.01-52, damages for wrongful death:

> shall be distributed as specified under § 8.01-54 to (i) the surviving spouse, children of the deceased and children of any deceased child of the deceased, and the parents of the decedent if any of such parents, within 12 months prior to the decedent's death, regularly received support or regularly received services from the decedent for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care, or (ii) if there be none such, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (iii) if the decedent has left both surviving spouse and parent or parents, but no child or grandchild, the award shall be distributed to the surviving spouse and such parent or parents or (iv) if there are survivors under clause (i) or clause (iii), the award shall be distributed to those beneficiaries and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent or (v) if no survivors exist under clause (i), (ii), (iii), or (iv), the award shall be distributed in the course of descents as provided for in § 64.2-200.

As stated earlier challenging Defendant's arguments that Plaintiffs lack standing, each Plaintiff in

this case is an immediate family member of decedents that are entitled to recover under the wrongful death statute.

### C. Defendant cannot establish head of state immunity.

Plaintiffs rely on the multitude of litigation that has taken place in this action already in direct conflict with Defendant's arguments regarding head of state immunity. First, this Court rightfully gave the U.S. State Department the ability to weigh in and state that immunity should be granted to Defendant. The U.S. Department took no such action. Second, the parties have argued multiple times regarding this issue. Plaintiffs rely on this  Court's earlier decisions on the issue and also on the binding law of the Fourth Circuit in *Samantar*, where the Court states

> Moreover, we find Congress's enactment of the TVPA, and the policies it reflects, to be both instructive and consistent with our view of the common law regarding these aspects of *jus cogens*. Plaintiffs asserted claims against Samantar under [**35] the TVPA which authorizes a civil cause of action against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture" or "extrajudicial killing." Pub. L. 102-256, § 2(a), 28 U.S.C. 1350 note. "The TVPA thus recognizes explicitly what was perhaps implicit in the Act of 1789—that the law of nations is incorporated into the law of the United States and that a violation of the international law of human rights is (at least with regard to torture) *ipso facto* a violation of U.S. domestic law." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 105 (2d Cir. 2000). Thus, in enacting the TVPA, Congress essentially created an express private right of action for individuals victimized by torture and extrajudicial killing that constitute violations of *jus cogens* norms. *See* S. Rep. No. 102-249, at 8 (1991) ("[B]ecause no state officially condones torture or extrajudicial killings, few such acts, if any, would fall under the rubric of 'official actions' taken in the course of an official's duties.").

*Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).

There is no doubt that the shelling of civilians in their homes is a violation of *jus cogens* norms. Thus, Hifter is not entitled to head of state immunity in order to shield himself from liability in this matter.

### D. Plaintiffs' Claims Cannot be Dismissed for Failure to Exhaust Remedies

This case arises out of the war in Libya which is still engaged in civil war.  Plaintiffs have

been unable to redress any of their grievances in any forum in Libya. Civil courts in Libya are not

available for recourse for torture and killings as of no later than September 4, 2014, according to the

United Nations.  Exh. 1, p. 9.  This court is not being asked to review

any decision of a court in Libya and this Court remains the only forum in the world where Plaintiffs

can seek recourse.

Defendant bears the burden of demonstrating that Plaintiffs have not exhausted remedies in

Libya. Looking into the legislative history of the exhaustion requirement of TVPA, the Senate

Committee Report states:

> As a general matter, the committee recognizes that in most instances the initiation of
> litigation under this legislation will be virtually prima facie evidence that the claimant
> has exhausted his or her remedies in the jurisdiction in which the torture occurred.
> The committee believes that courts should approach cases brought under the proposed
> legislation with this assumption.
>
> . . . . Once the defendant makes a showing of remedies abroad which have not been
> exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies
> were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. The
> ultimate burden of proof and persuasion on the issue of exhaustion of remedies,
> however, lies with the defendant.

S.Rep. No. 249 (1991 WL 258662, *9-10). The legislative history of the TVPA "indicates

that the exhaustion requirement . . . was not intended to create a prohibitively stringent condition

precedent to recovery under the statute." *Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass., April 12,

1995) at 178; *see also, Hilao*, 103 F.3d at n.778 (applying the burden shifting procedure suggested

in the Senate Committee Report). Hifter must demonstrate that Plaintiffs have "available and

adequate remedies" in Libya, only after which plaintiffs bear the burden to show such remedies are

not "adequate" or are "obviously futile." *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 2000

U.S. App. LEXIS 23274, 31 ELR 20166, 157 Oil & Gas Rep. 1.

Defendant attempts to utilize expert opinion as support to meet the burden of their affirmative defense when this Court made clear that they had lost any chance to present such evidence. [ECF Doc. No. 255, 260]. Defendant specifically asked to late designate an expert on the legal system in Libya even though the deadline for designating experts had well passed, and the Court denied such motion. Defendant's attempt to use such inadmissible evidence to support their Motion for Summary Judgment should be completely ignored by this Court.

**E.   Hifter Waived Any Objections to Personal Jurisdiction by Subjecting Himself to this Court.**

Defendant now argues at this summary judgment stage that this case should be dismissed for lack of personal jurisdiction. However, Defendant has waived such argument. Defendant filed a motion to dismiss in this matter in 2020. In this Motion, Defendant failed to mention or raise any defense concerning lack of personal jurisdiction over Defendant Hifter for lack of residency. Instead, his motion was based on head of state immunity, failure to exhaust all remedies, failure to state a claim, and non-justiciable political question. "Consistent with Rule 12(h)'s plain language and well-established authority, defendant [ ] waived his Rule 12(b)(2) defense of lack of personal jurisdiction by failing to raise the defense in his Rule 12 motion to dismiss." *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) (noting that a defense of lack of personal jurisdiction is waived "if not timely raised in the answer or a responsive pleading"); Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense listed in Rule 12(b)(2)-(5) by: . . . omitting it from a motion in the circumstances described in Rule 12(g)(2) . . ."); Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.")

**II.    CONCLUSION**

Accordingly, for the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendant's Motion for Summary Judgment on the grounds that Defendant's liability for Plaintiffs' deaths under the TVPA can be proven at trial.

March 22, 2024                                        Respectfully submitted,

*FMG*

Faisal Gill (VSB 93255)
Gill Law Firm
1717 Pennsylvania Ave Suite 1025
Washington DC 20006
fgill@glawoffice.com
310-418-6675
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record in this case:

*FMG*

Faisal Gill (VSB 93255)
Counsel for Plaintiffs