**EXHIBIT 4**

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
AIDA ELZAGALLY, et al.,      .    Civil Action No. 1:19cv853
                             .
             Plaintiffs,     .    Alexandria, Virginia
                             .    September 13, 2021
      vs.                    .    11:05 a.m.
                             .
KHALIFA HAFTAR,              .
                             .
             Defendant.      .
                             .
.   .   .   .   .   .   .   .   . X
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFFS:                 FAISAL M. GILL, ESQ.
                                    Gill Law Firm
                                    1717 Pennsylvania Avenue, N.W.
                                    Suite 1025
                                    Washington, D.C. 20005


FOR THE DEFENDANT:                  LINDSAY R. McKASSON, ESQ.
                                    Binnall Law Group, PLLC
                                    717 King Street, Suite 200
                                    Alexandria, VA 22314


TRANSCRIBER:                        ANNELIESE J. THOMSON, RDR, CRR
                                    U.S. District Court, Third Floor
                                    401 Courthouse Square
                                    Alexandria, VA 22314
                                    (703)299-8595


(Pages 1 - 26)


(Proceedings recorded by electronic sound recording, transcript
 produced by computerized transcription.)

2

                        P R O C E E D I N G S

1
2           THE CLERK:  Elzagally, et al., versus Haftar, Case

3   No. 19cv853.  Will the parties please note their appearances

4   for the record.

5           MR. GILL:  Good morning, Your Honor.  Faisal Gill for

6   the plaintiffs.

7           THE COURT:  Good morning, Mr. Gill.

8           MS. McKASSON:  Good morning, Your Honor.  Lindsay

9   McKasson for defendant, Mr. Hifter.

10          THE COURT:  All right, good morning.

11          This matter comes before the Court on plaintiffs'

12  motion to compel.  I've received the motion, the opposition,

13  and the reply brief.  I've had a chance to review all of them,

14  so I'll hear argument briefly, but you don't need to repeat

15  what is already in the papers.

16          If you are fully vaccinated and you feel comfortable,

17  you can take off your mask when you are at the podium to

18  address me.  I would ask, of course, that everyone keep their

19  masks on when they are not speaking.  I am fully vaccinated,

20  but I find it's difficult for me to communicate well if I keep

21  my mask on, but nobody is obliged to take their mask off.

22          Okay.  I'll hear from you first, Mr. Gill.

23          MR. GILL:  Thank you, Your Honor.  I'm also fully

24  vaccinated.

25          Your Honor, there is no dispute, as you've seen from

1   the papers, there is no dispute as to the law here.  The law is

2   very clear.  Our own circuit, the Fourth Circuit, has ruled in

3   this case and not too long ago in *El-Masri*, where it states the

4   state secrets privilege is only available for the United States

5   government.

6           This is not the United States government.  There is

7   no precedent anywhere that allows the state secrets privilege

8   to be asserted by anybody other than the United States.

9   Defense counsel in their brief admit that.

10          The issue here is not what the law is but what the

11  law should be, and I don't think we should be here to discuss

12  that issue.  It is -- the law is extremely clear.  The state

13  secrets privilege does not apply to Mr. Hifter, and he cannot

14  assert it.

15          On -- leaving that aside, leaving the state secrets

16  privilege aside, the rest of the objections that counsel have

17  made, relevance objections, also, you know, also fall -- should

18  fall on deaf ears because the documents that we're asking for

19  are extremely relevant.  They go to the heart of the case.

20          The -- our complaint is that General Hifter was

21  basically indiscriminately bombing the areas where our

22  plaintiffs were, were killed.  The only way we can prove that

23  in court is to get the documents that we're asking for.

24          We specifically tailored our request to the time

25  period in question.  We didn't ask for from the very beginning.

4

1    We're not asking for right now.  So to the extent that counsel

2    has raised the issue of military operations and not having

3    military operations right now, we are not asking for military

4    operations right now.

5            We've had a specific time period that we are asking

6    for, and based on the fact that there would be absolutely no

7    way for us to prove that it was General Hifter that was

8    actually behind the bombings and it was General Hifter that was

9    bombing in the way that he did that violated law of armed

10   conflict and inflicted the damage without these documents.

11           And the fact that state secrets privilege only

12   applies to the United States is -- for those reasons, the Court

13   should grant this motion to compel.

14           Again, we should not be talking about what the law

15   should be.  That should be -- that's a matter for another

16   branch of government, not this branch of government.

17           THE COURT:  Well, let me -- I'll give the defense a

18   chance to address the issue on the state secrets privilege, but

19   let's set that aside for a moment and talk about there are a

20   lot -- there are a lot of interrogatories and requests for

21   production of documents requests here.

22           MR. GILL:  Yes, Your Honor.

23           THE COURT:  And a lot of them are addressed in the

24   motion and the opposition.  Frankly, as a court, it's always a

25   little challenging when there's a whole laundry list to go

5

 1    through one by one, as opposed to resolving a discrete issue,

 2    and that's certainly true with the state secrets privilege.

 3    Either it applies or it doesn't.  If it doesn't apply, then the

 4    objection is overruled, and that's not a basis for withholding

 5    or failing to respond, but setting that aside, there are a

 6    whole slew of objections based on relevance and, and burden.

 7         Let me ask you this question:  There are a number of

 8    interrogatories and requests for production of documents that

 9    essentially address issues that go to General Hifter's

10    authority or the, whether he was acting with authority or under

11    the color of law.  I'm trying to understand, though, whether

12    that is, in fact, really in dispute.  It's alleged in the

13    complaint that he was the head of the Libyan National Army, and

14    I believe -- and again, I'll let the defendants address it --

15    that they concede that, that they have admitted that.

16         So all of the questions that go to the House of

17    Representatives and the orders of the appointment and

18    communications with foreign governments, to, to what issue,

19    what, what claim or defense do those go to if that is not in

20    dispute, whether he was serving at this time as the leader of

21    the Libyan National Army?

22         MR. GILL:  Your Honor, you're absolutely correct.  I

23    mean, if there is no dispute on that and if the defense counsel

24    is willing to stipulate to that, then that does not become an

25    issue.  As you know, that is a -- an element of the TVPA.  If

6

1    defense counsel is willing to stipulate to that, that that does
2    not come into court or does not come in as part of trial, then
3    certainly we can agree to that and we can withdraw those
4    specific interrogatories.
5           The interrogatories that we're mainly concerned about
6    are the other interrogatories, the ones about authority.  If
7    defense counsel is willing to stipulate, then we'll gladly
8    withdraw those and, and stipulate to that.
9           THE COURT:  Well, thank you.  And I'll, I'll address
10   that with defense counsel.
11          To be clear, and I think you've said this, but I want
12   to be -- make sure I'm understanding, there are objections
13   that, that are interposed regarding some of the questions about
14   witnesses and activities and orders that, that were given.
15          MR. GILL:  Yes, Your Honor.
16          THE COURT:  Are you intending that those are supposed
17   to be specific to the three incidents that are alleged in the
18   amended complaint on April 6, April 14, and April 16, or are
19   you seeking information beyond that?  In other words, you make
20   a reference to a time period, April 6 to April 16, I think,
21   but, of course, there could have been other military operations
22   going on at that time.
23          There's an objection.  I'm trying to clarify whether
24   or not you're simply asking for things that are related
25   directly to the claims in the amended complaint.

1          MR. GILL:  Your Honor, certainly we're asking for

2     things that are related to the amended complaint.  However,

3     even though we asked for a specific time period for some of the

4     interrogatories, I believe there are some interrogatories where

5     we've asked for a little bit broader information, because

6     again, our claim has been that General Hifter was

7     indiscriminately bombing.

8          So to the extent that there are other orders that go

9     to that, and as you know, discovery is supposed to be fairly

10    open and, and liberal, what -- I want to make clear that what

11    we're not asking for, we have not asked for is the present, and

12    I think that has been the defense's issue, is that we're asking

13    for any current military operations.

14          I mean, to the extent that we've asked for some past

15    operations that are a little bit broader just to kind of for us

16    to be able to, you know, get to the fact that it was General

17    Hifter's MO to order indiscriminate bombings such as these,

18    that is what we're looking for.

19          So it is maybe a little broader time period in the

20    past for some of the interrogatories, and I can certainly

21    respond in more detail as to which interrogatory and request

22    for documents that would be, but what we're -- I just want to

23    make very clear we're not asking for is any current operations.

24    So we have limited it.

25          So we have not said, you know, from that time to

1    present, to where, you know, the Court could easily state,

2    well, you know, what would that have to do with our, with our

3    claims?

4            THE COURT:  Well, is there any time period that, that

5    goes past April 16, 2019?

6            MR. GILL:  Again, Your Honor, I would have to

7    double-check my interrogatories.  I do not believe so, but I

8    can certainly double-check that while I'm, while I'm sitting

9    here.

10           THE COURT:  Is there anything else?

11           MR. GILL:  No, Your Honor, that's it.

12           THE COURT:  Thank you.

13           MR. GILL:  Thank you.

14           MS. McKASSON:  Good morning, Your Honor.  Lindsay

15    McKasson for Mr. Hifter.  I did have one administrative matter

16    that I'd like to bring up at the, at the beginning of my

17    argument, which is that I believe it was a mistake, but

18    attached to Mr. Gill's declaration, it said that there were

19    objections and responses.  It was actually just the, the

20    objections.

21           So I do have the responses if Your Honor would like

22    to review the responses, and I apologize I did not notice that

23    before yesterday, and therefore, we did not attach our

24    responses as an exhibit.

25           So I do have copies for everyone if you would like to

9

1   review our responses to interrogatories, because I don't think

2   it is clear that we actually -- that Mr. Hifter actually did

3   respond to a lot of the interrogatories and did not solely rely

4   on the objections.

5           THE COURT:  Thank you, and thank you for making that

6   clear.  I'm not sure that I, I need --

7           MS. McKASSON:  Okay.

8           THE COURT:  -- the responses in order to address

9   these specific legal issues, of course.

10          As you know, in general, discovery is not filed with

11  the Court and doesn't need to be, and so to the extent you

12  think there's something that's important to your argument, I'd

13  certainly be willing to consider it, but I, I understand your

14  position.

15          MS. McKASSON:  Okay.  Thank you.

16          Plaintiffs are asking that Mr. Hifter put his life at

17  risk by responding to further discovery requests in this

18  matter.  Mr. Hifter should not be in the position between

19  choosing his life or answering discovery in a case that is

20  venued outside of his country of origin and residence.

21          Importantly, for reasons of comity, this Court should

22  not order that Mr. Hifter respond to the discovery requests

23  that seek military information because it would set a dangerous

24  precedent for United States citizens or military members being

25  sued outside of the United States.

1    We've discussed in detail the state secrets issue in

2  our briefs.  I think I will move past that issue for right now,

3  but I would like to focus on comity.

4    There is a case, *Mujica v. Airscan, Inc.*, which is

5  771 F.3d 580, which is a Ninth Circuit case from 2014.  It

6  says:  International comity is the recognition which one nation

7  allows within its territory to the legislative, executive, or

8  judicial acts of another nation, having due regard both to

9  international duty and convenience, and to the rights of its

10  own citizens or of other persons who are under the protection

11  of its laws.

12    It continues:  Comity refers to the spirit of

13  cooperation in which a domestic tribunal approaches the

14  resolution of cases touching the laws and interests of other

15  sovereign states.

16    Finally, it notes:  Comity is a practice among

17  political entities (as countries, states, or courts of

18  different jurisdictions), involving especially mutual

19  recognition of legislation, executive, and judicial acts.

20    Here there is a true conflict between the United

21  States and Libyan law, the discovery rules of the United States

22  on the one hand and the military secrets law of Libya on the

23  other.  Mr. Hifter should not be required to subject himself to

24  breaking the laws of Libya in order to comply with the United

25  States' discovery rules.

1      Beyond the true conflict, there are other factors to

2  consider.  That same Ninth Circuit case noted that the general

3  presumption against extraterritorial application of U.S. law

4  recognizes that United States law governs domestically but does

5  not rule the world.  Comity similarly rests on respect for the

6  legal systems of members of the international legal

7  community -- a kind of international federalism -- and thus

8  serves to protect against unintended clashes between our laws

9  and those of other nations which could result in international

10  discord.

11      As Mr. Hifter argued in his brief, there is an

12  ongoing civil war in Libya in which it is unknown and unclear

13  which side will win and what the United States' position is on

14  that subject.  If the United States forces production of

15  military secrets by a foreign military leader, it sets a

16  dangerous precedent for nations to do the same to the United

17  States, not to mention could result in the international

18  discord of which the Supreme Court warned.

19      THE COURT:  Well, let, let me stop you --

20      MS. McKASSON:  Okay.

21      THE COURT:  -- and ask you a couple of questions.

22      So I take it you agree, as reflected in your papers,

23  that the law is settled that the state secrets doctrine can

24  only be invoked by the United States government; is that right?

25      MS. McKASSON:  I think that that's a little bit of a

1  different question -- difficult question to answer only because

2  the holding was not necessarily that it could only be provided

3  by the United States.  Those cases involved the United States,

4  and, in fact, *Reynolds*, on which the Fourth Circuit based its

5  decision, where it did say it should be -- it is provided by

6  the United States, it was citing *Reynolds*, which actually only

7  said the government.

8           I don't think either one of those cases actually

9  held, considering both were involving United States claims,

10 that it could only be provided by the United States, but I do

11 admit at the very least -- oh, go ahead.

12          THE COURT:  Maybe I can be more specific.  Is it --

13 do you agree that the law is clear the state secrets doctrine

14 can be invoked only by a governmental entity and not by an

15 individual?  In other words, it is not a private right that

16 individuals can raise?

17          MS. McKASSON:  Yes, I, I believe that that is true,

18 but I, I think that Mr. Hifter as the field marshal of the LNA

19 is bringing that claim, as the field marshal -- field marshal

20 of the LNA and not as himself as an individual.

21          And I guess I can skip ahead that a lot of the

22 documents requested are not documents that would necessarily be

23 in Mr. Hifter's control as an individual, but he would only

24 have access to those documents because he is the field marshal

25 of the LNA, and therefore, these documents do not belong to

13

1    Mr. Hifter, but they belong to the Libyan National Army, and

2    for him to be required to disclose such documents again puts

3    this comity issue -- puts comity at issue.

4           I think that we can -- I'll fast-forward to some of

5    the issues that Your Honor raised.  Plaintiffs' amended

6    complaint contains only three relevant dates:  April 6, 14, and

7    April 16.  Many of these requests go far beyond those dates,

8    and even if they do say that they at times are only at a

9    two-week period, all military actions between those two weeks

10   is far beyond the scope.

11          Those three dates, plaintiff actually -- sorry, not

12   plaintiff -- Mr. Hifter did provide interrogatory responses

13   regarding those three dates, though he did not provide

14   documents.

15         Plaintiffs argue that they need information regarding

16   funding, support, and, and communication with international

17   leaders to support their claim of his position of authority,

18   and as Your -- as Your Honor already noted, there is no dispute

19   regarding his authority.  Mr. Hifter admits that he is the

20   leader of the LNA.  He is the field marshal.  There is no

21   dispute regarding his authority.  The dispute is the nexus

22   between his authority and the actions in the amended complaint.

23        THE COURT:  Let me make sure I understand that

24   because this is important and it can simplify what the parties

25   are fighting about in this case.  Is it your position that the

14

```
 1    defendant is not going to seek to have the case dismissed on
 2    summary judgment or on another motion to dismiss or at trial
 3    based on the failure of the plaintiffs to be able to establish
 4    that he was acting at the time under color of law or the
 5    authority of the state of Libya?
 6              MS. McKASSON:  He -- I think that there still is a
 7    dispute as to whether he was acting at all because I don't
 8    think that there's any connection between him and these
 9    actions.  There are ten -- at least ten warring factions going
10    on right now in Libya.  There is right now --
11              THE COURT:  So, so the question is whether or not the
12    plaintiffs need to collect information to establish
13    Mr. Hifter's position with regard to the government that he
14    purports to be affiliated with.  On the one hand, I've heard
15    you just say, as your papers reflect and as the answer
16    reflects, that you admit that he was appointed by a
17    representative body to be the head of the Libyan National Army,
18    and so to the extent he's interacting with foreign governments
19    or he is dealing with the funding of the army or the
20    appointment by the House of Representatives, there's no need to
21    collect information on that if the defendant is waiving any
22    claim later that the plaintiffs will have failed to meet their
23    burden with regard to that element of the TVPA, not the element
24    that you're referring to, which is whether or not he had
25    knowledge of or, you know, condoned these, these actions that
```

15

1  they believe constitute the killing of others that would --

2  that was unlawful, but only as to the issue of the color of law

3  or his actual or apparent authority.

4          MS. McKASSON:  Yes.  He has authority as the field

5  marshal of the LNA, and I think that that is undisputed.

6          THE COURT:  Okay.  Thank you.  I think that is a

7  clear statement made in open court and can address that issue

8  sufficiently.

9          So let's go on to some of the other issues.  I will

10  tell you, let me just say for purposes of clarity and so that

11  we can move forward, I do not believe that this Court has the

12  ability to extend or change or modify the law, that the law of

13  the Supreme Court and the Fourth Circuit is binding with regard

14  to the state secrets privilege, and that it cannot be raised by

15  an individual as opposed to a governmental entity, and that it

16  can't be raised by a foreign governmental entity, that the law

17  is clear that only the United States can choose to interpose

18  that objection based on what I am bound by.

19          I would also note that the government has declined to

20  intervene, file a statement of interest in a -- you know, in

21  these related cases, and, and so the government has not chosen

22  to take a position on this issue.

23          Again, I don't think it's dispositive of what happens

24  in the case, but I think it is relevant for the consideration

25  of whether or not these foreign policy issues or the issue of

1    comity can, can correctly be addressed here within this

2    judicial proceeding, and so I do overrule those objections and

3    grant the motion with regard to the issue of state secrets, but

4    I do want to be clear that with regard to whatever answers have

5    already been provided, whatever supplemental answers need to be

6    provided, we've addressed the issue completely of relevance and

7    burden.

8            MS. McKASSON:  Okay.  And thank you, Your Honor.

9            I'm, I'm trying to find where -- I think that outside

10   of the state secrets issue, a lot of the interrogatories and

11   requests for production are overly broad.  Just by way of a few

12   examples, giving the name and address of each person who is

13   under him in the military.  That is, if he is at the top of the

14   military, every single person in the military, military -- all

15   military actions from April 4, 2019, to April 16, 2019, again,

16   that's all military actions within a two-week period --

17           THE COURT:  Well, do you concede that military

18   actions related to the allegations in the complaint are

19   relevant and fair game, in other words, the activities of April

20   6, April 14, and April 16 relating to the specific locations

21   that are identified in the complaint?

22           MS. McKASSON:  I concede that those are relevant.  I

23   do reserve the issue of state secrets and comity, but I do

24   concede that those three dates are relevant to the complaint

25   here.

1          THE COURT:  Would you also concede that providing

2    information with regard to witnesses, whether it be people in

3    the chain of command or others who would have had some

4    awareness or knowledge of those incidents, would likewise also

5    be relevant?

6          MS. McKASSON:  Yes.  The same response that I, I do

7    not want to concede on the issue of state secrets or comity,

8    but I concede --

9          THE COURT:  Those objections are preserved.

10          MS. McKASSON:  Okay.  Thank you.

11          THE COURT:  You don't need to repeat that.  The

12    record is clear that you've, you've made those objections.

13          MS. McKASSON:  Okay.  Thank you very much, Your

14    Honor.

15          I do concede that there, that there -- the relevance

16    of those three dates, and I apologize, Your Honor, I don't

17    remember the specific things that you noted, but, but those

18    three --

19          THE COURT:  Well, it was a question about witnesses

20    and specifically a chain of command.  In other words, if the

21    plaintiffs are seeking to know who gave the orders with regard

22    to a particular attack from the -- Mr. Hifter down through the

23    chain of command to the people who carried it out --

24          MS. McKASSON:  I think that is relevant to the TVPA

25    claim, Your Honor.

18

```
 1              THE COURT:  Okay.  Thank you.

 2              MS. McKASSON:  Other interrogatories and requests for

 3    production refer to a relationship to the HAF, which is an

 4    undefined term.  In plaintiffs' moving papers, they, they state

 5    that the HAF is obviously the LNA, the Libyan National Army.

 6              Well, for instance, in Interrogatory No. 6, it says

 7    describe your relationship to the HAF.  Mr. Hifter is the field

 8    marshal to the LNA.  Beyond that, what sort of specific

 9    relationship are they looking for?

10              Regarding Interrogatory 17, describe in detail your

11    knowledge of the population centers, and then states three

12    population centers, again, this is just a very broad question

13    relating to three different population centers.

14              Mr. Hifter actually in his responses to their

15    interrogatories did the best he could without providing state

16    secrets in providing responses to these, but, but again, a lot

17    of them are just extremely broad.

18              And then many of the interrogatories and requests for

19    production refer to a, a paragraph of the complaint and ask why

20    he denied that paragraph.  Again, Mr. Hifter did the best to

21    provide an answer, but it's a very broad question why, you

22    know, he denied, you know, something like an allegation such as

23    he waged indiscriminate war.

24              Well, you know, how do you provide an interrogatory

25    response saying, I did not wage indiscriminate war?  And
```

1  similarly with the request for production of documents

2  regarding the same.

3         I made this argument earlier, but I would like to

4  close with regard to the requests for production of documents.

5  These documents are not Mr. Hifter's documents.  These

6  documents belong to the LNA, and to the extent that he has

7  access to them, it is only because he is the field marshal and

8  not because they are his own documents, and so I do think that

9  there are issues of comity there where this is a -- these are

10 documents that are not Mr. Hifter's as an individual.  They are

11 documents of the LNA, and the TVPA specifically cannot be

12 claimed against an organization.  It can only be against an

13 individual, and therefore, I do not think that the plaintiffs

14 should be able to compel production of documents that belong to

15 the LNA and not Mr. Hifter.

16        And unless Your Honor has any more questions, I'm

17 finished.

18        THE COURT:  Thank you.

19        Mr. Gill, I'll give you one final chance to be heard.

20        MR. GILL:  Yes, Your Honor.  Thank you very much.

21 First, on the argument that these documents belong to the LNA

22 and not Mr. Hifter is not a relevant argument mainly because

23 Mr. Hifter is a head of the LNA, those documents are under his

24 command and control, and he has access to those documents, and

25 that's what the discovery should be.

1          To Ms. -- to counsel's point of overbroadness, again,
2  a lot of the answers invoke the state secrets privilege.  After
3  the state -- as Your Honor has just ruled, the state secrets
4  privilege is no longer -- is not applicable to this case.  If
5  counsel would like to reanswer the questions, I'm sure we can
6  work out, you know, whatever (inaudible) there are to the fact
7  that they're overbroad.

8          We did our best to keep the questions very, very
9  limited, very, very focused.  I mean, as counsel even stated,
10  we asked for military operations for a two-week period.  We
11  didn't say months; we didn't say years; we didn't say anything.
12  So we are doing our best, but we do need to get the evidence
13  that we need in order to prove -- you know, in order to prove
14  our case.

15          THE COURT:  Well, let me ask you some of the same
16  questions I asked your opposing counsel there.

17          MR. GILL:  Yes, Your Honor.

18          THE COURT:  But you've heard the defense concede that
19  information regarding the three specific incidents on April 6,
20  14, and 16 are fair game, having overruled the issue of state
21  secrets.

22          Let me one more time make sure that, that I
23  understand.  This is one of the reasons that courts don't like
24  going through interrogatories or requests for production of
25  documents question by question because it's not the Court's job

1    to rewrite or make what might be inartful a more artful or

2    specific request.  So we sort of have to live with what, what

3    we've got.

4            MR. GILL:  Yes, Your Honor.

5            THE COURT:  In the interests of efficiency, however,

6    I'm going to try and get us to, you know, an understanding so

7    that everybody understands what is being sought and what is

8    then being provided.

9            So are you asking for information about military

10   activities outside that took place between April 6 and April 16

11   that are not related to those three locations?

12           MR. GILL:  No, Your Honor.  We're asking for again

13   military operations that took place within those two-week

14   period that we stated.  The not related to, I mean, if there's

15   a military operation that took place not even anywhere near

16   that area, then no.  We're not asking, like, on the southern

17   side.

18           THE COURT:  Well, the three locations are, as I

19   understand it, Spring Valley, or Wadi al Rabie --

20           MR. GILL:  Yes, Your Honor.

21           THE COURT:  -- on April 6; the Ayan Zarah district on

22   April 14; and the Hay Alintassar area in Tripoli.

23           MR. GILL:  Yes, Your Honor.

24           THE COURT:  Is that correct?

25           MR. GILL:  That's correct, Your Honor.

22

```
1              THE COURT:  Okay.  And that's the information you're

2    looking for.

3              MR. GILL:  Yes, Your Honor.

4              THE COURT:  That's what you're intending to get from

5    them through your interrogatories and requests for production

6    of documents; is that right?

7              MR. GILL:  Yes, Your Honor.

8              THE COURT:  Very good.  Then based on your

9    representation, the defense counsel's representation, I'm

10   granting the motion, and I'm requiring that any interrogatory

11   requests for production of documents related to those events on

12   those dates be provided fully, and defense counsel has

13   indicated that they have already provided some responses.  I

14   haven't seen them.  I don't need to see them.

15             MR. GILL:  Yes, Your Honor.

16             THE COURT:  But to the extent that any documents have

17   been withheld based either on the objection which has been

18   overruled with regard to state secrets or based on relevance or

19   overbreadth under the theory that it was ambiguous whether or

20   not more information was being sought regarding military

21   operations in other cities or other locations on, on other

22   dates or even that fell on the same date, what I am granting is

23   the ability to collect information directly related to the

24   claims in your amended complaint, which are those locations on

25   those dates.
```

1          MR. GILL:  Yes, Your Honor.

2          THE COURT:  Accordingly, that would apply to the

3  information seeking witness information, whether it's in the

4  chain of command or otherwise.

5          On the other hand, I'm denying the request with

6  regard to every potential person in the Libyan National Army.

7  I can't imagine that you would have wanted that --

8          MR. GILL:  No, Your Honor.

9          THE COURT:  -- but to the extent there's any

10  ambiguity, I'm not requiring that that be turned over.

11          It would not be relevant, and it would be overbroad.

12          Likewise, I'm not requiring any information about

13  other military operations that are not related to the events in

14  the amended complaint.

15          So the reason I am giving this much detail is because

16  I'm not trying to specify every single interrogatory and every

17  request for production of documents.  I hope that this guidance

18  will allow both of you to understand the scope of what I am

19  granting.  So I am granting the motion in part, and I'm denying

20  it in part.

21          I'm also denying it with regard to those

22  interrogatories and requests for production of documents that

23  go to Mr. Hifter's authority given the representations both in

24  the answer that he is the duly appointed head of the Libyan

25  National Army and concession that that is not an issue that's

24

```
1    really in dispute in this case.

2              MR. GILL:  Yes, Your Honor.

3              THE COURT:  That is not a concession as to the other

4    elements of the TVPA, and so both sides are welcome to argue

5    about the legal significance and the facts going to what

6    happened, whether he knew about it, whether he can be held

7    responsible.

8              But as I understand it, I am denying the motion with

9    regard to communications with other governments, with regard to

10   the House of Representatives, with regard to funding sources,

11   under the theory that those are questions that you are

12   propounding in order to establish his authority under color of

13   law.

14             Is that clear?

15             MR. GILL:  Yes, Your Honor.

16             THE COURT:  Okay.  The Haftar's Armed Forces.  It

17   sounds to me like this is a semantic issue.  Tell me what it is

18   you're asking for.  I'm not -- they seem to indicate that to

19   the extent Haftar's Armed Forces is simply a different name for

20   the Libyan National Army --

21             MR. GILL:  Yes, Your Honor.

22             THE COURT:  -- they are conceding that he is the head

23   of the Libyan National Army.

24             MR. GILL:  Yes, Your Honor.  And that's, that's what

25   we're asking for, and we made that clear in our papers as well,
```

25

1  that we've heard it referred to as Haftar's Armed Forces and,

2  you know, LNA, so we just used a different term, but it is the

3  LNA that we're, we're looking for.

4          THE COURT:  So that issue is moot now that they've

5  made this representation, or is there something that needs to

6  be done?

7          MR. GILL:  I mean, to the extent that that's the only

8  army that General Hifter is using and not some mercenaries that

9  are outside of the official LNA, that was what we were trying

10  to go for, if there are any mercenaries there.  There have been

11  media reports and such that there are some mercenaries that

12  General Hifter is using that might not be actually incorporated

13  in the official LNA.  So that is why we, we've asked for any

14  Armed Forces that he is -- that he is in charge of, which, I

15  mean, again, we don't think the question is, is overbroad or

16  confusing.  If that's the only Armed Forces that General Hifter

17  has, then he can just state that under, you know, under oath

18  and interrogatory and provide documents of that, and we're

19  fine.

20          THE COURT:  Very good.  Well, based on that

21  specification, I will make sure rather than trying to go

22  through a fuller cross-examination from the bench, that to the

23  extent that Haftar's Armed Forces is not a term of art that

24  refers to some other group of people or that the -- Mr. Hifter

25  has some other organization that he supervises, that should be

26

1    reflected in the responses.

2            MR. GILL:  Thank you, Your Honor.

3            THE COURT:  Is there anything else that I need to

4    address that I am leaving out?  The motion is granted in part

5    and denied in part, as I've stated from the bench.  My order

6    will simply reflect that.  This transcript will reflect the

7    details.

8            MR. GILL:  Thank you, Your Honor.  That's it.

9            THE COURT:  I will require that any supplementation

10   based on today's argument be made within ten days.

11           MR. GILL:  Yes, Your Honor.  Thank you.

12           THE COURT:  Thank you.

13           You may call the next matter.

14           MS. McKASSON:  Thank you, Your Honor.

15           THE COURT:  Thank you.

16                            (Which were all the proceedings

17                             had at this time.)

18

19                    CERTIFICATE OF THE TRANSCRIBER

20       I certify that the foregoing is a correct transcript from

21   the official electronic sound recording of the proceedings in

22   the above-entitled matter.

23

24       _____
                         /s/
                   Anneliese J. Thomson
25