```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
                       ALEXANDRIA DIVISION

----------------------------x
AIDA ELZAGALLY, et al.,     :   Civil Action No.:
                            :   1:19-cv-853
            Plaintiffs,     :
     versus                 :
                            :   Friday, April 12, 2024
KHALIFA HIFTER,             :   Pages 1-15
                            :
            Defendant.      :
----------------------------x
MUNA AL-SUYID, et al.,      :   Civil Action No.:
                            :   1:20-cv-170
            Plaintiffs,     :
     versus                 :
                            :
KHALIFA HIFTER,             :
                            :
            Defendant.      :
----------------------------x
ALI ABDALLA HAMZA, et al.,  :   Civil Action No.:
                            :   1:20-cv-1038
            Plaintiffs,     :
     versus                 :
                            :
KHALIFA HIFTER,             :
                            :
            Defendant.      :
----------------------------x
```

     The above-entitled cross motions for summary judgment hearing was heard before the Honorable Leonie M. Brinkema, United States District Judge.  This hearing commenced at 10:02 a.m.

                    A P P E A R A N C E S:

FOR THE PLAINTIFFS:    MARK ZAID, ESQUIRE
(Hamza)                MARK S. ZAID, P.C.
                       1250 Connecticut Avenue, NW
                       Suite 700
                       Washington, D.C.  20036
                       (202) 330-5610

1

```
 1                    A P P E A R A N C E S:

 2   FOR THE PLAINTIFFS:    THOMAS CRAIG, ESQUIRE
     (Hamza)                FH&H PLLC
 3                          1751 Pinnacle Drive
                            Suite 1000
 4                          Tysons, Virginia  22102
                            (703) 590-1234
 5
     FOR THE PLAINTIFFS:    FAISAL GILL, ESQUIRE
 6   (Elzagally &           GILL LAW FIRM
     al-Suyid)              1155 F Street
 7                          Suite 1050
                            Washington, D.C.  20004
 8                          (202) 570-8223

 9   FOR THE DEFENDANT:     ROBERT COX, ESQUIRE
                            MADISON BEATTY, ESQUIRE
10                          JAMES HUNDLEY, ESQUIRE
                            BRIGLIAHUNDLEY, P.C.
11                          1921 Gallows Road
                            Suite 750
12                          Tysons Corner, Virginia  22182
                            (703) 883-9103
13
          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
14

15

16

17

18

19

20

21

22

23

24

25
                                                                 2
```

```
 1                      P R O C E E D I N G S
 2           THE DEPUTY CLERK:  Civil Action Numbers
 3   1:19-cv-853, 1:20-cv-170 and 1:20-cv-1038.  Elzagally, et
 4   al. versus Hifter; al-Suyid, et al. versus Hifter, et al;
 5   and Hamza, et al. versus Hifter.
 6           Counsel, if you'll please note your appearances
 7   for the record.
 8           MR. ZAID:  Good morning, Your Honor.  Mark Zaid
 9   and Tom Craig for the Khalifa -- sorry, for the Hamza -- I'm
10   on the wrong side.  I started off -- it's early in the
11   morning, Your Honor.  The Hamza plaintiffs.
12           THE COURT:  Good morning.
13           MR. GILL:  Good morning, Your Honor.  Faisal Gill
14   for the Elzagally and the al-Suyid plaintiffs.
15           THE COURT:  Good morning.
16           MR. COX:  Good morning, Your Honor.  Bob Cox with
17   BrigliaHundley representing the defendant, Khalifa Hifter.
18   Also with me from my law firm are Madison Beatty and Jim
19   Hundley.
20           THE COURT:  All right.  Good morning.  We have
21   before us today cross motions for summary judgment.
22           Now, as you know, motions for summary judgment can
23   only be granted if the Court is satisfied that there are no
24   material issues of fact that are in dispute.  And, quite
25   frankly, nearly all of the arguments that are made in these
```

3

```
 1  motions are, in my view, too factually involved that they
 2  could properly be subject for summary judgment.
 3          There is, however, one issue that has been in this
 4  case from the time that they were first filed -- in
 5  different formats, but it's always been there -- and that is
 6  the issue of whether or not this Court has appropriate
 7  personal jurisdiction over Mr. Hifter.
 8          Now, it's very interesting that this is now the
 9  time when discovery is complete and the summary judgment
10  motions were to have addressed this issue.  It certainly was
11  raised in the defendant's papers.
12          In two of the three cases -- in all three cases
13  the plaintiff -- the defendant has consistently argued that
14  the Court does not have personal jurisdiction.  In two of
15  the three cases, that argument was raised, but the basis for
16  claiming no personal jurisdiction was head of state
17  immunity.  In the third case, however, with new counsel,
18  Mr. Hifter also raised the issue that this Court does not
19  have general personal jurisdiction over the defendant.
20          This Court has, and the parties have agreed that
21  all three cases, because there's such an overlap of core
22  issues, would be basically treated as one overall case, and
23  that is reflected in the fact that, for example, the
24  depositions were taken -- of the defendant were taken by all
25  the counsel together.
```

4

```
 1              And so, in my view, general personal jurisdiction
 2   is the core issue for which the factual record does not
 3   appear to be in dispute, and it's now just a matter of the
 4   Court applying rules of law to the facts in this case.  And
 5   as I understand the facts of this case, they are the
 6   following -- and this is the time for everybody to clear up
 7   the record if the Court misunderstands it.
 8              Mr. Hifter is both a Libyan and U.S. citizen.  He
 9   was born -- he was a native of Libya, came to the United
10   States after having lived in Libya for many years, became
11   naturalized in the United States and lived here
12   approximately 23 years.
13              It is uncontested, as I understand this record,
14   that in 2011, he left the United States.  In particular, he
15   left Virginia.  And, according to the record that's before
16   this Court, even though there were different representations
17   made earlier on in the case before discovery was complete,
18   there is no evidence in this record that at any point after
19   he left in 2011 did he ever physically return to this
20   district.  If I misunderstand the record, this is the time
21   to clarify it.
22              It is also uncontested that he has never voted in
23   any election, and, at most, the only property he has
24   admitted to owning in this district is a condominium, one
25   condominium, in which he has apparently not lived since
```

5

```
1   2011.
2            There is references to another piece of property
3   which he doesn't even know where it's located, and I haven't
4   seen anywhere in the record where that other property, which
5   is described as a farm, has been identified, whether it's in
6   the Western District of Virginia, the Eastern District of
7   Virginia or where it is.
8            That would appear to be the only evidence in this
9   case of his contacts with this jurisdiction in over, what,
10  12, 13 years.  And I don't believe under the Virginia
11  long-arm statute or under the principles of due process that
12  that is sufficient evidence of purposeful and meaningful
13  contacts with this jurisdiction that would permit this Court
14  to exercise jurisdiction over this defendant.
15           Now, the defendants did raise the issue of
16  personal jurisdiction, general personal jurisdiction, in the
17  motions for summary judgment, and the only opposition that I
18  saw from the plaintiffs -- unless I've misread your
19  papers -- was an argument that that had been waived.
20           And, as I said, I don't think under the unique
21  facts of this -- of these cases, that that has been waived.
22  The mere fact that the defendant sat for a deposition, as
23  you know, that was highly forced by the Court.  He was
24  required or he would face sanctions by the Court.  That was
25  not a voluntary, in my view, agreement to be deposed, and
```

```
 1   that is, in part, what the plaintiff -- the defendant has
 2   argued.
 3           So I want to hear from the plaintiff as to whether
 4   there is any other evidence that you believe is properly,
 5   first of all, within your summary judgment papers, that
 6   would support the Court finding that general personal
 7   jurisdiction is, in fact, appropriate in this case.  All
 8   right.
 9           MR. CRAIG:  Your Honor, I think that your
10   recitation of facts was correct, but I think it's
11   incomplete.  I think there's one another fact.
12           THE COURT:  All right.  I want to know what other
13   facts do you have, number one; and, number two, were they in
14   the summary judgment papers?
15           MR. CRAIG:  The other fact is that in the -- and
16   this was discussed in the Rule 12 motions and hearing, the
17   plaintiff entered into a contract in this jurisdiction in
18   2017 to hire a PR firm presumably to --
19           THE COURT:  Where is that evidence in the summary
20   judgment record?
21           MR. CRAIG:  Your Honor, this was --
22           THE COURT:  It's not in the record.  It's not --
23   summary judgment is you give the Court the uncontested
24   facts.
25           Now, I've been through his deposition.  I've read
```

7

```
 1  it twice -- two depositions.  There is not a scintilla --
 2  not a single question asked about that.
 3          MR. CRAIG:  Right.  We didn't ask, Your Honor,
 4  because they admitted in their answer that that was correct.
 5  We alleged that in paragraph 20 of our amended complaint,
 6  and, in response, they admitted that fact.  That's why we
 7  didn't ask him about it because he's already admitted it,
 8  and the defense is -- and the defendant's admission in his
 9  answer is an admissible fact.
10          THE COURT:  Anything else?
11          MR. CRAIG:  That's it.  That's all I have for you,
12  Your Honor.
13          THE COURT:  All right.  Let me hear the
14  defendant's response.
15          MR. GILL:  Your Honor, may I add one thing for the
16  Elzagally plaintiffs?
17          THE COURT:  Go ahead, Mr. Gill.  You have other
18  evidence?
19          MR. GILL:  Yes, Your Honor.  Just one.
20          In the Elzagally case at that time, Your Honor, in
21  the motion to dismiss, personal jurisdiction was
22  specifically raised with the ATS claims that we had.  And at
23  that time, Your Honor had ruled that there was not
24  sufficient contacts -- that that was the purpose of you
25  dismissing the ATS claims and the other Virginia common law
```

8

1  claims that we had brought at that time.
2          THE COURT: Right.
3          MR. GILL: But they did raise the personal
4  jurisdiction. And that's why we didn't ask that question
5  because it was raised, it was dismissed.
6          And the only one thing I'd add is the TVPA --
7  under the TVPA, I mean, all cases will be like this, because
8  in order to prove under TVPA or get a claim under TVPA, it
9  has to be someone outside the U.S. jurisdiction acting under
10 color of authority. So I think personal jurisdiction is
11 already kind of taken into account in that way by the
12 statute, but it was specifically raised in their ATS claims.
13         THE COURT: But in terms -- the statute certainly
14 has not abrogated the concept of due process and the
15 requirements that a Court must always have not only subject
16 matter jurisdiction, but personal jurisdiction over the
17 defendant. Like in the *Samantar* case, Mr. Samantar was
18 living in Fairfax County. That was a very easy situation.
19 But there has to be some proper basis for the Court
20 exercising its jurisdiction.
21         MR. GILL: And one other fact, Your Honor. In
22 discovery earlier, we tried to get from, Field Marshal
23 Hifter, all the times that he had revisited the United
24 States to meet with U.S. government officials, CIA, because
25 there was some allegations. And then Magistrate Judge

9

1  Nachmanoff denied our request to compel on that, and one of
2  the reasons was that Hifter had admitted that there is no
3  dispute as to whether they were acting under color of
4  authority and for all those reasons.  So since they admitted
5  that, we backed off on that.  But those issues were raised
6  at that time, and we did try to find out whether Field
7  Marshal Hifter has revisited the United States since that
8  time, and we were prevented from doing so.
9          THE COURT:  You didn't appeal that decision to the
10 Court; did you?
11         MR. GILL:  Only because they admitted it, Your
12 Honor.  If they admitted -- Judge Nachmanoff asked what was
13 the reason for that, and then we stated it, and it was
14 admitted.
15         But, again, personal jurisdiction, when they
16 answered, we believe, as in other cases, personal
17 jurisdiction was agreed on by the Court and was waived and
18 moving forward.
19         THE COURT:  All right.  Let me hear the
20 plaintiffs' [sic] response.
21         MR. COX:  Thank you, Your Honor.
22         I think the Court has recognized the key issue
23 here on personal jurisdiction.  It was not argued in
24 their -- in the briefs before the Court; it was not taken --
25 they didn't elucidate any facts in the deposition indicating

1  that Mr. Hifter had returned to the United States.  I
2  understand Mr. Gill's argument now, but that was never
3  addressed in the deposition.  There's no evidence here that
4  once he left in 2011, that Mr. Hifter returned to this
5  jurisdiction or availed himself of -- as Your Honor noted,
6  voting here --
7         THE COURT:  I mean, there's no evidence he owns a
8  bank account here.  There's no evidence that he even pays
9  taxes here.  Those are obvious questions.  If he owns a
10 condominium, one would think he is paying taxes.  But it
11 could be a spouse or he subletted it.  There were no
12 questions at all that were asked.
13        Now, the only thing that did not -- and it wasn't
14 certainly raised in the deposition.  The only thing that the
15 plaintiff has argued, which was obviously not brought to our
16 attention in the summary judgment opposition, was that you
17 did in your -- in paragraph 20 of the answer in at least one
18 of these cases admit that he hired a PR firm in Virginia.
19        Do you want to address that issue to see whether
20 that makes any difference?
21        MR. COX:  Your Honor, I'll have to admit that I
22 was not involved in the case at that time as counsel.  I
23 don't know the specifics about him hiring a PR firm within
24 the Commonwealth.  So I don't -- I don't know.  I mean,
25 prior counsel seemed to concede that issue, but it's still,

11

```
 1  in our opinion, insufficient contacts with this
 2  jurisdiction, the fact that he may have had discussions or
 3  talked about hiring a -- or had hired a PR firm.
 4          So it was not, you know -- also I will note it's
 5  not argued in their papers, and I think it's a little bit
 6  late at this point, Your Honor, to be raising this.
 7          As to Mr. Gill's color of law argument, that's not
 8  related to jurisdiction; that's related to the command
 9  responsibility issue and whether Mr. Hifter acted under
10  color of law in decisions he made in Libya, not in the
11  United States.
12          THE COURT:  Well, there are multiple questions
13  which could easily have been asked during the deposition
14  that would have made it clear one way or the other whether
15  there was a proper basis for the Court to exercise general
16  personal jurisdiction over the defendant.  But I'm finding
17  under the facts that are before this Court that there is
18  insufficient facts to support that, and so I'm going to be
19  granting the motion for summary judgment solely on that
20  issue.
21          All the other issues that you all have raised are
22  too intermixed with fact for the Court to be able to grant
23  summary judgment.  But the facts, in my view, are not in
24  dispute, and they are, as a matter of law in my view,
25  insufficient to satisfy the Virginia long-arm statute, as
```

12

```
 1   well as Constitutional principles of due process, and, for
 2   those reasons, I'm granting defendant's motions for summary
 3   judgment on that issue, and these three cases will be
 4   dismissed.  Thank you.
 5           MR. CRAIG:  Your Honor, may I be heard briefly?
 6           THE COURT:  Yes.
 7           MR. CRAIG:  Your Honor, as I think the Court is
 8   aware, under the TVPA, there's a somewhat unique provision
 9   about personal jurisdiction that says that the -- because it
10   is often difficult to get personal jurisdiction over foreign
11   actors, that the statute of limitations on the TVPA is
12   expressly tolled until such time as personal jurisdiction
13   could be had over such a defendant.
14           So I believe that because of that provision, to
15   the extent the Court dismisses this case on jurisdictional,
16   it should be without prejudice to -- so if the time in the
17   future comes when Mr. Hifter is subject to jurisdiction of a
18   U.S. court, this case could be rebrought.
19           THE COURT:  Do you want to respond to that?
20           MR. COX:  If it's all right, Your Honor,
21   Ms. Beatty is going to respond.
22           THE COURT:  Yes.  Ms. Beatty.
23           MS. BEATTY:  Your Honor, these cases have been
24   pending for over four years, and they've had over four years
25   to disclose discovery, to work on these issues, to establish
```

```
 1  personal jurisdiction and to go through all of the evidence
 2  of the simple questions that it would take at a deposition
 3  to even establish jurisdiction.  Therefore, we would contend
 4  that this case be dismissed with prejudice.
 5          The difference in the TVPA extraterritorial
 6  personal jurisdiction application doesn't change the fact
 7  that they've exhausted their case for over four years and
 8  exhausted the Court's resources and just wasted judicial
 9  economy, Your Honor.
10          THE COURT:  I think under the facts of this
11  case -- it's been around so long, the issue was clearly
12  raised about jurisdiction, and certainly in the third case
13  when general personal jurisdiction specifically was raised,
14  that with prejudice is appropriate.  It would be a waste of
15  judicial resources to have to go through this all over
16  again, especially with a case where, having looked at the
17  rest of the issues you all raised in your summary judgment
18  motions, they are so fact-specific, and the factual issues
19  are so complex, I'm going to do it with prejudice.  And of
20  course the plaintiffs have a right to appeal.  All right.
21          MS. BEATTY:  Thank you, Your Honor.
22          THE COURT:  Thank you.  We'll call the next case.
23              (Proceedings adjourned at 10:18 a.m.)
24
25
```

1                    ----------------------------------

2     I certify that the foregoing is a true and accurate

3     transcription of my stenographic notes.

4

5                    _____

6                         Stephanie M. Austin, RPR, CRR

15