UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

---------------------------x

AIDA ELZAGALLY, et al.,        :        Civil Action No.:
                               :        1:19-cv-853
        Plaintiffs,            :
    versus                     :        Friday, September 5, 2025
                               :        Alexandria, Virginia
KHALIFA HIFTER,                :
                               :        Pages 1-13
        Defendant.            :

---------------------------x

MUNA AL-SUYID, et al.,         :        Civil Action No.:
                               :        1:20-cv-170
        Plaintiffs,            :
    versus                     :
                               :
KHALIFA HIFTER,                :
                               :
        Defendant.            :

---------------------------x

        The above-entitled status hearing was heard before the Honorable Leonie M. Brinkema, United States District Judge.  This proceeding commenced at 10:00 a.m.

A P P E A R A N C E S:

FOR THE PLAINTIFFS:    ABDEL-RAHMAN HAMED, ESQUIRE
                       HAMED LAW
                       P.O. Box 25085
                       Washington, D.C.  20027
                       (202) 888-8846

FOR THE DEFENDANT:     ROBERT COX, ESQUIRE
                       BRIGLIAHUNDLEY, P.C.
                       1921 Gallows Road
                       Suite 750
                       Tysons Corner, Virginia  22182
                       (703) 883-9103

COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       401 Courthouse Square
                       Alexandria, Virginia  22314
                       (607) 743-1894
                       S.AustinReporting@gmail.com
        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1

                    P R O C E E D I N G S

THE DEPUTY CLERK:  Civil Action Number 1:19-cv-853, Elzagally, et al. versus Hifter.  And Civil Action Number 1:20-cv-170, al-Suyid, et al. versus Hifter, et al.

Will counsel please note their appearance for the record, first for the plaintiffs.

MR. HAMED:  Good morning, Judge.  Counsel Abdel-Rahman Hamed for the plaintiffs.

THE COURT:  Good morning.

MR. COX:  Good morning, Your Honor.  Bob Cox for Defendant Hifter.

THE COURT:  Now, Counsel, whenever you're speaking, you should be right at the lectern.  That's where the microphone is.  All right.

This is on for a status conference, so I'm hoping you all have had a chance to meet and discuss how you want to propose this case go forward.  As I said, it's a very strange posture that we're in because, as you know, there was a third case against Mr. Hifter represented by different counsel.  In that case, counsel did make a timely motion to dismiss based on a lack of personal jurisdiction.  The Court granted that motion, and then also when ahead, since the same facts would apply, and reading very generously the motions to dismiss that had been filed by previous defense

                                                              2

counsel, I dismissed these two cases as well because, I mean, there is no personal jurisdiction over this defendant. However, the Fourth Circuit found that there was not technical compliance with the timing for filing that type of motion, and that had been waived, and you can waive personal jurisdiction.

So we're left with this sort of anomaly that we have these two cases for which, as I said, the Court does not have personal jurisdiction, but it's essentially been deemed as waived.

So what I want to know is how you all want proceed in this case. I assume you've had a discussion; correct, Counsel?

MR. HAMED: We have not.

THE COURT: At the lectern.

MR. HAMED: We have not, Judge.

THE COURT: Well, why would you not when you know that you're coming to court for a status conference?

MR. HAMED: We have had a discussion to the extent that it's our understanding that the defendant is going to renew a motion today.

THE COURT: To dismiss?

MR. HAMED: The defendant would renew a motion to -- I mean, would counsel like to present his motion himself?

3

THE COURT:  All right.  Let me understand.  All right.

MR. HAMED:  Yes, Judge.

THE COURT:  Mr. Cox.

MR. COX:  Thank you, Your Honor.

I mean, I just want to inform the Court, there were discussions before the joint status report was filed, so I do believe we are in agreement.  There was discussions before it was filed that discovery is completed --

THE COURT:  Right.

MR. COX:  -- and that both sides intended to file dispositive motions or renew dispositive motions for motions for summary judgment that's noted in the joint status report.

The one thing I did raise with opposing counsel where there's not agreement on is, in October of 2023, we made a motion for late designation of expert witnesses. Judge Anderson considered that motion and denied it.  It was for two experts, one is a rebuttal expert on geopolitical events in Libya, and the second expert for Defendant Hifter was a Libyan legal expert.

Your Honor, just because the case is now in a different procedural posture, I was just intending to renew that motion.  The Court may not change its position on the issue, but I do feel that Defendant Hifter would -- it would

4

be important to have these two experts testify ultimately at a trial.  And I think that the prejudice here is substantially less because the case now has been remanded, has not been yet set for dispositive motions and for trial.

And then there was one final issue on my list, Your Honor, and it was really to posit a question to the Court that during the pendency largely of this case, it was under the Biden Administration, there's now a new administration.

When I was -- it's before I came in as counsel, but I understand the Court had reached out to the State Department with a letter regarding their position.  I did not -- I'm just raising it as an issue.  It's up totally to the Court, of course, whether the Court, with the change of administrations, would find it either useful for the Court or for me to send another letter.  And that was it, Your Honor.

And I guess my one submission, too, was I think for efficient judicial economy, because at least I think there are substantial legal issues here that support potentially a summary judgment motion, rather than setting this on for trial at this time, I would propose a bifurcation where we would have summary judgment briefing first, and once the Court has resolved those, then set it for trial, because these are two trials, and I imagine that

5

they'll be time-consuming.

Thank you, Your Honor.

THE COURT:  All right.  This case -- the first case was filed in 2019, which would I think have been in the previous Trump Administration.

MR. COX:  It was, Your Honor.

THE COURT:  Yeah.  And I think that -- I'm sorry.

I think there are two letters to the State Department.  I think we sent one -- because I think the letter to the Biden State Department was the second time we queried the State Department.

So, at this point -- for a while there we were tracking the Libyan news in chambers when these cases were active.  We haven't, obviously, for some time.

Has there been any significant change that you're aware of in Libya in terms of the political situation?

MR. COX:  No, Your Honor.  I mean, I think it has been -- as the Court has been following I know for a number of years, there's been ongoing discussions with the UN about setting elections, but, to my knowledge, there's been no date set for elections in Libya.  And, right now, Libya continues to be bifurcated in terms of, you know, political -- I think there's been a resolution between the western side and the eastern side in terms of some joint administration of the country, but I don't think there's

6

been a resolution of the political situation.

THE COURT:  From your knowledge, what is your client's position right now, if any, in any coalition government?

MR. COX:  My understanding is he's head of the Libyan National Army, and there's actually a -- it's called the Libyan House of Representatives, which is the political government for the eastern side of Libya, and my client is I guess the supreme military commander, but there is a civilian government that he reports to.

THE COURT:  And is that, the eastern side, still considered to be aligned with the Soviet Union, with Russia?

MR. COX:  Your Honor, I don't want to speculate. I don't think it's aligned with the Soviet -- I mean with Russia.

THE COURT:  But I thought Russia was backing one side over the other.

MR. COX:  I know there's been allegations and things in the press that Russia was -- and I believe Italy as well was supporting the eastern side government, but I have not seen any developments in the last year or two along those lines, Your Honor.

THE COURT:  All right.  Why don't you switch positions with opposing counsel.

All right.  First of all, can you fill me in?  Are

7

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

we pretty accurate in our understanding of Mr. Hifter's current situation?

MR. HAMED:  Nothing has changed, Judge.  Libya is nowhere closer to having an elected government or having elections.  The only update since the appeal, Judge, has been that the international criminal court has issued six warrants for generals that are operating under the defendant in the Libyan National Army.

THE COURT:  Have they issued one for him?

MR. HAMED:  They have not issued one for him, but they have issued to six senior generals that are under his command.  Other than that, nothing has changed.

As for the defendant's motion, I mean, the posture of the case is established.  We've had a joint status conference and report that was submitted to the Court where there was an agreement that discovery has concluded, where either -- I mean, the plaintiff's position is that we're ready for trial.  If defendant wants to proceed with dispositive motions with a summary judgment motion, we're ready for that as well.  But that door for discovery is far closed, and I believe that defendant's attempt to renew this motion right now, which was briefed extensively in 2023, that Judge Anderson decided in November of 2023, no facts have changed.  The standard is very clear about good cause. I didn't hear any argument from defendant in terms of good

8

cause other than this case went on appeal and then now is back here in district court.

So the standard is clear. There hasn't been an argument as to any good cause. This was already litigated once before. Trying to get a different decision from a different judge I don't believe serves judicial economy or the finality of decisions.

THE COURT: I assume we'll have cross motions for summary judgment, is that what you all are anticipating?

MR. HAMED: That is if -- that is my understanding. But we are ready for trial, Judge.

MR. COX: Yes, Your Honor.

THE COURT: Well, maybe it's not cross motions then. The defense wants --

MR. COX: We will be making a motion for summary judgment.

THE COURT: All right. How much time do you feel you need to prepare one? You're definitely moving for summary judgment?

MR. COX: Yes.

THE COURT: All right.

MR. COX: Yeah. I will be moving for summary judgment. I mean, I would like 60 days, Your Honor, but ...

THE COURT: All right. Because of my calendar, I think that's not unreasonable. And give the plaintiff

9

30 days to respond.  And then if you're going to file an affirmative motion, you've got 60 days to file an affirmative motion as well.

MR. HAMED:  Noted, Judge.

THE COURT:  All right.  So, at this point I am going to deny the request to open discovery.  If there were dissatisfaction with Judge Anderson's decision, it should have been noted back then.  I mean, you could have taken an appeal that we would have heard back then.  But I think at this point there's been enough discovery in this case, we'll just go ahead and see what the record shows right now.  All right.

I won't start to discuss with you the logistics for this type of a trial because I don't know whether summary judgment will or will not be successful, but I just want to make sure the plaintiff understands that you're going to have some logistical difficulties, I suspect, in getting most of your plaintiffs here.

Are any of them living outside of Libya right now, or are they all in Libya?

MR. HAMED:  Some of them are outside of Libya. And, to my understanding, all of them are outside of Libya.

THE COURT:  All right.  Then it may or may not be as difficult.  When I did my Abu Ghraib trial, I had -- the plaintiffs were all in Iraq, and none of them were able

10

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

to -- none of the Iraqi plaintiffs were able to get visas into the United States.

Have you started looking into, or it may be premature, but the visa situation for your clients?

MR. HAMED:  We have, Judge.  But part of the visa application you have to provide a reason as to why you're seeking the visa, so we just needed to get clarity in terms of when do we suspect the trial to be so that we can make our representation to the immigration agency accordingly.

THE COURT:  All right.  Well, today is September 5.  So if by November 5 we have the affirmative motions -- and if they come in sooner than 60 days, then, you know, you've got 30 days, each side, to respond, and then I'll give you 14 days for reply briefs.  So it looks as though the full briefing would not be finished until really the end of the year.  We'll probably have oral argument early in January.  I often rule from the bench, so I would like to avoid having to do an opinion simply because we can get this case moving.

So, realistically, I would think March, all right, for a time frame.

MR. HAMED:  Lead counsel does have a trial in March in Connecticut.  I just wanted to -- that's my understanding.

THE COURT:  All right.  March or April.  But, I

11

mean, spring.

MR. HAMED:  Understood.

THE COURT:  There's no exact day I can give you at this point.

But, again, you're going to have to -- if you're unable to get your clients here, and given the new approach to visas, and I suspect they could have -- some of them may have problems getting visas, then the alternative is to do things the way we did, again, from Iraq with video testimony, which is not ideal, especially if you need interpreters, which I suspect we do need in this case.

MR. HAMED:  Yes, Judge.

THE COURT:  So there are a lot of logistical issues.

And, you know, the last thing I will just suggest the plaintiffs do need to think about is that this could be a -- assuming you were to prevail on summary judgment and prevail at trial, it could be nothing more than a symbolic victory in terms of achieving any kind of damage.  Because, again, there does not appear to be much property in the United States based upon what we've got on the personal jurisdiction issue.  And, you know, how easy it would be to collect in Libya is an interesting question.  So hopefully, you know, you've thought through some of those logistical considerations; okay?

12

MR. HAMED:  Yes, Judge.

THE COURT:  All right.  So you've got the schedule then.  All right.  Opening briefs for summary judgment due within 60 days.  Oppositions within 30 days.  Reply briefs within 14.  And then we'll figure out a time for argument.

MR. COX:  Understood, Your Honor.

THE COURT:  Anything further on this case?  No?

MR. HAMED:  No, Judge.

MR. COX:  No, Your Honor.

THE COURT:  Thank you.  You're free to go.

MR. COX:  Thank you.

(Proceedings adjourned at 10:14 a.m.)

----------------------------------

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

*Stephanie Austin*
_____
Stephanie M. Austin, RPR, CRR

13

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894