IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| MUNA AL-SUYID, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No.:  1:20-cv-170 |
| | : | |
| | : | |
| KHALIFA HIFTER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S UN-REDACTED MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Dated: November 13, 2025

Robert H. Cox (VSB No. 33118)
WHITEFORD, TAYLOR & PRESTON L.L.P.
3190 Fairview Park Drive, Suite 800
Tysons Corner, Virginia 22042
Tel: (703) 573-1037
rcox@whitefordlaw.com

*Counsel for Defendant Khalifa Hifter*

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  PROCEDURAL HISTORY ....................................................................................... 2

III. STATEMENT OF UNDISPUTED FACTS ............................................................. 4

IV.  STANDARD OF REVIEW ....................................................................................... 6

V.   ARGUMENT ............................................................................................................. 6

   A.  Plaintiffs Lack Standing to Bring a Suit in the Eastern District of Virginia ...................... 8

      1.  Plaintiffs Must be a Legal Representative to Bring an Action for Wrongful Death. ....... 8

      2.  Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings ...................................... 11

      3.  The Extrajudicial Killing Must be Committed by an Individual Acting Under Actual or Apparent Authority, or Color of Law, of Any Foreign Nation. ........................................... 13

   B.  The Court Must Dismiss this Claim Because It Lacks Jurisdiction .................................. 16

   C.  Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya .................... 21

      1.  Defendant Has Proven that Plaintiffs Did Not Exhaust Their Administrative Remedies. 22

      2.  Plaintiffs Have Not Proven that Local Remedies are Ineffective, Unduly Prolonged, Inadequate, or Obviously Futile. .......................................................................................... 23

   D.  Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability. 26

      1.  There is No Evidence that the Libyan National Army was Involved in the Alleged Incidents. ............................................................................................................................... 27

VI.  CONCLUSION ........................................................................................................ 30

i

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008) ............................................... 14
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................... 6
*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) ................................................................. 13
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 30
*Baloco v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011) ................................................ 8
*Boniface v. Viliena*, 338 F. Supp. 3d 50 (D. Mass. 2018) ................................................ 25
*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) .............................................................. 21
*Buratai*, 318 F.Supp. 3d at 233 ....................................................................................... 20
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 6
*Celotex Corp.*, 477 U.S. at 322 ........................................................................................ 6
*Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009) ......................................................... 26
*Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002) ............................ 29
*Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42 (2d. Cir. 2014) ................... 14
*Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019 (W.D. Wash. 2005) ........................... 24
*De Lima v. Bidwell*, 182 U.S. 1 (1901) ............................................................................ 14
*Doe I v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) ................................................ 25
*Doe v. Buratai*, 318 F.Supp. 3d 218 (D.C. 2018) ........................................................... 17
*Doe v. Drummond*, 782 F.3d 576 (11th Cir. 2015) .......................................................... 12
*Doe v. Qi*, 349 F. Supp. 2d 12583 (N.D. Cal. 2004) ........................................................ 9
*Does v. Obiano*, NO. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247 (S.D. Tex. Jan. 1, 2024) ..... 17
*Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019) ............................................................... 20
*Enohoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) ....................................................... 22
*Fugate v. Moore*, 86 Va. 1045 (1890) .............................................................................. 10
*Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998 (N.D. Ala. Jan. 6, 2011) .................................................................................................. 9
*Gleich v. Wachovia Sec., LLC*, No. 3:04CV422, 2005 U.S. Dist. LEXIS 16748 (E.D. Va. Mar. 28, 2005) ...................................................................................................... 6
*Harmon v. Sadjadi*, 273 Va. 184 (2007) .......................................................................... 10
*Harmon*, 273 Va. at 193 .................................................................................................. 10
*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ................................................ 29
*Jane W. v. Thomas*, 560 F. Supp. 3d 855 (E.D. Pa. 2021) .............................................. 28
*Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724 (S.D. Fla. Sep. 28, 2021) .................................................................................................. 22
*Jaramillo*, 2021 U.S. Dist. LEXIS 184724 at *27 ........................................................... 24
*Jean v. Dorelien*, 431 F.3d 776 (11th Cir. 2005) ............................................................ 21
*Jean,* 431 F.3d at 781 ....................................................................................................... 22
*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ............................................................... 13
*Kadic*, 70 F.3d at 245 ....................................................................................................... 13

*Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) ............................................ 14

*Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016) ...................................................... 15

*Kirschenbaum v. Assa Corp.*, 934 F.3d 191 (2d Cir. 2019) ............................................................ 15

*Mamani I*, 654 F.3d at 1155 ............................................................................................................ 11

*Mamani v. Berzaín*, 533 F. Supp. 3d 1252, 1267 (S.D. Fla. 2021) ................................................ 29

*Mamani v. Berzain*, 636 F. Supp. 2d 1326 (S.D. Fla. 2009) .......................................................... 24

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) .................................................................... 11

*Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216 (11th Cir. 2020) ............... 11

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) ................................................................................. 20

*Matar*, 563 F.3d at 14; *Buratai*, 318 F. Supp. 3d at 235 ............................................................ 21

*McDaniel v. North Carolina Pulp Co.*, 198 Va. 612 (1956) ......................................................... 10

*Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001) .................................................................. 13

*Moore v. Smith*, 177 Va. 621 (1941) .............................................................................................. 10

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237 (2d Cir. 1991) .................... 15

*Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004) ....................................... 8

*Murphy Brothers, Inc. v. Michetti Pipe Srringing*, 526 U.S. 344, 350 (1999) ............................. 16

*Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7 ............................................................................. 18, 19

*Pierson v. Ray*, 386 U.S. 547 (1967) ............................................................................................. 21

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ........................................................................ 24

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ..................................................................................... 21

*Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1239 ........................................................ 12

*Sikhs for Just. v. Singh*, 64 F. Supp. 3d 190 (D.D.C. 2014) ......................................................... 17

*Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322 (E.D.N.Y. June 9, 2014) ...................................................................................................................................... 9

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ...................................... 22

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) ................................................................. 9

*Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004) ................................................................................... 20

*Yoshida v. Capital Props. Mgmt.*, 68 Va. Cir. 279 (2005) ........................................................... 10

*Young v. Carter*, 61 Va. Cir. 682 (2002) ...................................................................................... 10

*Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) ...................................................................... 20

## Statutes

28 U.S.C. § 1350 ............................................................................................................................. 11

28 U.S.C. § 1350, note §2(a) ............................................................................................................ 7

42 U.S.C. § 1997 ............................................................................................................................. 21

Va. Code Ann. § 8.01-50 ................................................................................................................... 9

Va. Code. Ann. § 8.01-50 .................................................................................................................. 9

## Other Authorities

Article 51 of the Additional Protocol I .......................................................................................... 13

Article 57 of Additional Protocol I. ............................................................................................... 13

*Exhaustion of Local Remedies*, 29 FORDHAM INT'L L. J. ......................................................... 24

H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991) .......................................................................... 9

H.R. Rep. No. 102-367 (1991) ........................................................................................ 7

*Prosecutor v. Delalic* (Appeals Chamber ICTY, Feb. 20, 2001) ................................. 27

Pub. L. No. 102-256, 106 Stat. 73 (1992) .................................................................... 6

S. Rep. No. 102-249 (1991) ........................................................................................ 7

**Rules**

FED. R. CIV. P. 55(c) .................................................................................................... 1

**Treatises**

*Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l
L. 1 (2021) .................................................................................................................. 21

Defendant Khalifa Hifter ("Defendant" or "Field Marshal Hifter"), by and through the undersigned counsel, submits this Memorandum in Support of Motion for Summary Judgment pursuant to FED. R. CIV. P. 56, and avers as follows:

## I.    INTRODUCTION

In 2011, a civil war began in the State of Libya ("Libya") which resulted in hundreds of militias and neighborhood groups clashing. Field Marshal Hifter was appointed as the Field Marshal of the Libyan National Army ("LNA"), which is also known as the Libyan Arabic Armed Forces, in March of 2015.  To date, Libya remains in an intrastate conflict involving numerous militias, tribes, and citizens.

Plaintiffs filed suit against Field Marshal Hifter for acts that occurred in the midst of civil war which he did not commit.  His goal since the overthrow of Muammar Gaddafi's regime has been to reunify Libya and prevent further harm to his country and its people.  Field Marshal Hifter fully opposes the types of violent acts of which the Plaintiffs have accused him.  His efforts to unify Libya and defeat terrorism exemplify this.  As Plaintiffs' counsel acknowledged at the September 5, 2025 status conference, Field Marshal Hifter has not been charged or issued a warrant by the international criminal court or any other body for alleged torture or extrajudicial killings of Plaintiffs' relatives or any other persons.[1]

Plaintiffs appear to be pursuing this suit solely for ideological and/or political reasons.[2] Previously in hearings and in orders, the Court has mentioned its concerns about Plaintiffs' efforts to draw press attention to this case in both the U.S. and Libya, efforts to try the cases in the press for political advantage in Libya, and misstatements in the press about the rulings of this Court.

---

[1] Transcript of Status Conference, at p. 8, September 5, 2025, *Al-Suyid*, ECF No. 320.
[2] Ex. K, John Rossomondo, *Libyan Leader faces terrorist-supporter smear campaign in US courts*, American Thinker, October 7, 2025.

For those reasons, the Court stated that it was tracking the U.S. and Libyan news for references to these cases and statements by counsel and others claiming to represent Plaintiffs in the press about these cases. An October 7, 2025 article in the American Thinker regarding the cases against Hifter in this Court, explained how Plaintiffs are engaged in international lawfare against Field Marshal Hifter, a Libyan presidential candidate, weaponizing the U.S. judiciary to support the Muslim Brotherhood and other political opponents of Field Marshal Hifter.[3]

As the Court noted at the September 5, 2025 status conference, even if Plaintiffs "prevail on summary judgment and prevail at trial, it could be nothing more than a symbolic victory in terms of achieving any kind of damage. Because, again, there does not appear to be much property in the United States based upon what we've got on the personal jurisdiction issue."[4]

Plaintiffs do not have a cognizable claim for relief against Field Marshal Hifter. Through discovery, it has been established that he was not responsible for any of the allegations raised against him in this case. He did not order, or have knowledge of, any attacks on civilians, nor did he hold any official position in furtherance of any such attacks. Accordingly, Field Marshal Hifter has filed this summary judgment motion under FED. R. CIV. P. 56 and asks this Court to enter judgment in his favor.

## II.    PROCEDURAL HISTORY

On April 12, 2024, this Court dismissed this case, *Elzagally, et al. v. Hifter*, and *Hamza, et al. v. Hifter*, with prejudice, for lack of personal jurisdiction. The three cases were previously consolidated by the Court. The Court denied in full the Plaintiffs' Motions for Summary Judgment

---

[3] *Id.* ("In essence, Haftar faces a siege from individuals with deep ties to the Muslim Brotherhood and al-Qaeda, all because he seeks to dismantle their destructive influence in Libya" i.e., Plaintiffs are attempting to weaponize this case by engaging in lawfare against their political enemy in Libya, who is an ally of the United States in its war against jihadi terrorists).

[4] Transcript of Status Conference, at p. 12, *Al-Suyid*, ECF No. 320.

and denied all grounds for summary judgment asserted by Field Marshal Hifter except for lack of personal jurisdiction. Finding that the Plaintiffs had failed to develop sufficient facts in the record to establish personal jurisdiction over Field Marshal Hifter, the Court dismissed the Plaintiffs' cases with prejudice. Plaintiffs appealed the Court's order to the Fourth Circuit Court of Appeals.

The Court of Appeals reversed the Court's judgments in *Al-Suyid* and *Elzagally* on the basis that Field Marshal Hifter waived a personal jurisdiction defense in those cases and remanded those cases for further proceedings.[5] The Fourth Circuit noted that the fact that he is a United States citizen, that he owns property in Virginia and that one of his sons lives in Virginia "is not enough to establish personal jurisdiction over Hifter in Virginia."[6] While the Fourth Circuit held that Field Marshal Hifter had waived a personal jurisdiction defense in the *Al-Suyid* and *Elzagally* cases, he had not waived insufficient service of process and head of state immunity defenses.[7] Field Marshal Hifter has preserved is objections to insufficient service of process and head of state immunity because they were both cited in his prior motions to dismiss under Rule 12(b)(1), (5), and (6).[8]

Following a September 5, 2025, status conference, the Court issued an order directing that any motions for summary judgment be filed within 60 days of the order.[9] Field Marshal Hifter submits this memorandum in support of his motion for summary judgment on the grounds that (1) Plaintiffs lack standing to bring this suit, (2) lack of jurisdiction due to insufficiency of service of

---

[5] *Al-Suyid v. Hifter*, 139 F.4th 368 (4th Cir. 2025). The Court of Appeals also vacated this Court's order in the *Hamza* case and remanded with instructions to modify the dismissal to be without prejudice.

[6] *Al-Suyid v. Hifter*, 139 F.4th 368, 376 (4th Cir. 2025).

[7] *Id.*

[8] *Id.*

[9] September 5, 2025, Order, *Al-Suyid*, ECF No. 319; *Elzagally* ECF No. 305.

process and Field Marshal Hifter has head-of-state immunity; (3) Plaintiffs have failed to exhaust their administrative remedies in Libya; and (4) Plaintiffs have provided no evidence of command responsibility to support liability.

### III.    STATEMENT OF UNDISPUTED FACTS

1.  In 2011, civil war broke out in Libya.

2.  Field Marshal Hifter is a Libyan citizen.

3.  Field Marshal Hifter lived in Virginia from 1990 until 2011, when he moved to Libya and became a full-time Libyan resident.[10]

4.  Field Marshal Hifter held the position of Lieutenant General for 25 years, which was the highest rank Field Marshal Hifter reached in the Gaddafi army.[11]

5.  Field Marshal Hifter still owns property in Virginia; however, he no longer resides there and rarely visits. Instead, Field Marshal Hifter merely holds the properties as assets.[12]

6.  Field Marshal Hifter does not vote in Virginia, nor does he conduct any business in Virginia.[13]

7.  In October 2014, Libyans were working together to rid the country of terrorists and criminals under an operation titled "Operation Dignity."[14]

8.  During this time period, there were many militias fighting in Benghazi, including ISIS, al-Qaeda, and the Islamic Fighters Movement.[15]

---

[10] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 29:21-30:1, 39:2-4.
[11] *Id.* at 153:1-5.
[12] *Id.* at 39:6-14.
[13] *Id.* at 39:21-40:3.
[14] *Id.* at 82:11-16.
[15] *Id.* at 78:18-79:4.

9.  During this time period, many individuals wore army uniforms, and it was commonplace to see people in such uniforms in Libya.[16]

10. At the time, wearing an army uniform did not necessarily indicate that the wearer was part of an official army.[17]

11. Weapons of all kinds were being dispersed rampantly through the streets.[18]

12. On March 2, 2015, Field Marshal Hifter was appointed as Field Marshal of the LNA by the Libyan House of Representatives.[19]

13. Prior to 2015, Field Marshal Hifter did not hold a military position as there was no army established at that time.[20]

14. Field Marshal Hifter has no personal knowledge of the gun fight that took place in or around the al-Suyid home on or about October 15, 2014.[21]

15. Field Marshal Hifter was not present at the gun fight that took place in or around the al-Suyid home on or about October 15, 2014. [22]

16. Field Marshal Hifter did not order any individuals to be involved in the gun fight that took place in or around the al-Suyid home on or about October 15, 2014.[23]

17. Field Marshal Hifter has no personal knowledge of the gun fight that took place in or around the al-Krshiny home on or about October 17, 2014.[24]

---

[16] *See* Ex. B – Ahmad al- Krshiny Dep. at 32:22-33:16.
[17] *Id.* at 33:17-33:21.
[18] *See* Ex. C – Abdalla al- Krshiny Dep. at 27:6-7.
[19] *See* Ex. D – Order Appointing K. Hifter.
[20] *See* Ex. E – Hifter Dep., June 26, 2023, at 209:11-14.
[21] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[22] *Id.*
[23] *Id.*
[24] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 155:1-5.

18. Field Marshal Hifter has never ordered the torture of any prisoners.[25]

19. Field Marshal Hifter is unaware of any prisoners being tortured in LNA custody.[26]

## IV.    STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[27]  In determining if summary judgment is appropriate, the Court will only concern itself with disputes "that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted."[28]  Facts are material if they have the ability to affect the outcome of the case under the governing law.[29]  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."[30]  Once the moving party meets his or her burden that there are no genuine issues of material fact, the burden then shifts to the opposing party to respond.[31]

## V.    ARGUMENT

Congress enacted the Torture Victim Protection Act of 1991 ("TVPA") in 1992 to "establish[] a civil action for recovery of damages from an individual who engages in torture or extrajudicial killing."[32]  "[T]he Torture Victim Protection Act (TVPA) is designed to respond to

---

[25] *See* Ex. E – Hifter Dep., June 26, 2023, at 268:19-21.

[26] *Id.* at 268:22-269:6.

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[28] *Gleich v. Wachovia Sec., LLC*, No. 3:04CV422, 2005 U.S. Dist. LEXIS 16748, at *3 (E.D. Va. Mar. 28, 2005) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[29] *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

[30] *Id.*

[31] *Celotex Corp.*, 477 U.S. at 322.

[32] Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note); *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 (2012).

this situation by providing a civil cause of action in U.S. courts for torture committed abroad."[33] The TVPA states:

> An individual who, under actual or apparent authority, or color of law, of any foreign nation – (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.[34]

Further, the TVPA defines extrajudicial killing and torture within the meaning of the act.[35] The TVPA ultimately provides a cause of action for aliens and U.S. citizens to sue in U.S. federal courts if all elements of the TVPA are met.[36]

Here, Field Marshal Hifter cannot be found to have violated the TVPA. First, Plaintiffs lack standing to bring a TVPA suit in the Eastern District of Virginia because select Plaintiffs are not the proper individuals to bring forth such a claim, the alleged acts do not qualify as extrajudicial killings, nor were they committed by Field Marshal Hifter under the color of law of a foreign nation. Second, this Court lacks jurisdiction over Field Marshal Hifter, due to insufficiency of service of process, and he has head-of-state immunity. Third, Plaintiffs have provided no evidence Field Marshal Hifter is liable for the alleged acts because there is no evidence that (a) the LNA committed the acts, (b) Field Marshal Hifter knew or reasonably should have known soldiers were committing extrajudicial killings or torture, and/or (c) Field Marshal Hifter failed to prevent the acts from being committed. Therefore, Field Marshal Hifter's Motion for Summary Judgment should be granted.

---

[33] S. Rep. No. 102-249, p. 3-4 (1991).
[34] 28 U.S.C. § 1350, note §2(a).
[35] *Id.* at note § 3(a)-(b).
[36] *See* S. Rep. No. 102-249, p. 4 (1991); H.R. Rep. No. 102-367, p. 86 (1991).

**A. Plaintiffs Lack Standing to Bring a Suit in the Eastern District of Virginia.**

Plaintiffs lack standing to sue Field Marshal Hifter under the TVPA because they are improper legal representatives claiming damages on behalf of themselves. A defendant may raise a defense for lack of standing at any time during proceedings if it appears the Court lacks subject matter jurisdiction over the plaintiff's claims.[37]  To obtain relief under the TVPA, plaintiffs must be: (1) a legal representative or any person who may be a claimant in an action for wrongful death; (2) of a victim of an extrajudicial killing; and (3) such extrajudicial killing must have been committed by an individual acting under actual or apparent authority, or color of law, of a foreign nation.[38]

Here, Plaintiffs fail to satisfy all three elements of the TVPA standing requirement. Plaintiffs are also incorrectly claiming damages on behalf of themselves when there is no evidence that they were tortured. Therefore, Plaintiffs' claims must be denied.

1. <u>Plaintiffs Must be a Legal Representative to Bring an Action for Wrongful Death.</u>

The named Plaintiffs in this case are unable to recover for a wrongful death action. Here, (1) Muna al-Suyid filed claims under the TVPA individually and on behalf of the estates of Abdel Salam al-Suyid, Ibrahim al-Suyid, Khalid al-Suyid, and Mustafa al-Suyid; (2) Abdalla al-Krshiny, Ahmad al-Krshiny, and Mahmud al-Krshiny filed individual claims under the TVPA; and (3) Ibrahim al-Krshiny filed claims under the TVPA individually and on behalf of the estates of Ali al-Krshiny and Mustafa al-Krshiny.[39]

---

[37] *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 480 (M.D.N.C. 2004).
[38] *Baloco v. Drummond Co.*, 640 F.3d 1338, 1346 (11th Cir. 2011).
[39] Al-Suyid Complaint ("Compl.") ¶¶ 9-11, *Al-Suyid* ECF No. 1.

Plaintiff Muna al-Suyid individually is barred from recovering for a wrongful death action.[40]  The plain language and the legislative history of the TVPA demonstrates that standing is limited to the victim or an individual bringing a claim on behalf of the victim.[41]  Plaintiffs who fail to act in a representative capacity for the decedents' estates are "due to be dismissed from this action."[42]  "[C]ourts may look to state law for guidance as to which parties would be proper wrongful death claimants."[43]  In Virginia, a wrongful death claim must be "brought by and in the name of the personal representative of such deceased person."[44]  However, no language under Virginia law allows a claimant to file a wrongful death claim in their individual capacity.[45]  Further, there are no allegations that Muna al-Suyid was tortured. Consequently, Muna al-Suyid is barred from bringing individual claims under the TVPA.

Muna al-Suyid states she is the personal representative of Abdel Salam's, Ibrahim's, Khalid's, and Mustafa's estates pursuant to Libyan law and custom, and Ibrahim al-Krshiny states he is the personal representative of the estates of Ali and Mustafa.[46]  However, Muna al-Suyid and Ibrahim al- Krshiny have provided no evidence that they have been appointed and/or qualified in Virginia to serve as personal representative the estates of Abdel Salam al-Suyid, Ibrahim al-Suyid,

---

[40] Va. Code Ann. § 8.01-50.

[41] *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1313 (N.D. Cal. 2004) (reviewing the history and concluding that TVPA only allows for suits by or on behalf of a victim); *Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998, at *11 (N.D. Ala. Jan. 6, 2011) (holding that "to have standing under the TVPA . . . Plaintiffs *must* be seeking damages on behalf of the victim").

[42] *Giraldo*, 2011 U.S. Dist. LEXIS 160998 at *12; *Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322, at *9 (E.D.N.Y. June 9, 2014) (holding because a plaintiff was not tortured, he could only state a claim under the TVPA based on his father's execution).

[43] *Xuncax v. Gramajo*, 886 F. Supp. 162, 191 (D. Mass. 1995) (*quoting* H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991)).

[44] Va. Code Ann. § 8.01-50(C).

[45] *Id.*

[46] Compl. ¶¶ 9-10.

9

Khalid al-Suyid, Mustafa al-Suyid, Ali al-Krshiny or Mustafa al-Krshiny. In fact, Muna al-Suyid and Ibrahim al- Krshiny have not provided any evidence that they are acting as personal representatives in any jurisdiction, nor have they cited to any Libyan law or custom that appoints them as personal representative. Even if they had, it would be insufficient. "[I]t has been established in this jurisdiction that a foreign administrator, who has acquired no status in Virginia, is without authority to institute in his official capacity any action or suit in the courts of this State."[47]  In sum, Plaintiffs have provided no evidence that they have standing to bring claims for wrongful death pursuant to Virginia law.

Virginia law is clear that wrongful death actions must be brought by and in the name of the personal representative of the decedent, and the failure to do so is fatal to such a claim.[48]  The Supreme Court of Virginia has consistently held that wrongful death suits are deemed a legal nullity if they are not brought by personal representatives who are appointed/qualified in Virginia.[49]  It is not enough to look to the law of the foreign state because Virginia has an affirmative requirement that a personal representative must be appointed/qualified in Virginia for standing to exist under the Virginia wrongful death statute.[50]  Therefore, the claims brought by Muna al-Suyid individually and as a personal representative and the claims brought by Ibrahim al-Krshiny as a personal representative are improper and must be dismissed due to lack of standing.

---

[47] *Harmon v. Sadjadi*, 273 Va. 184, 193 (2007) (*citing McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 615 (1956) (*citing Moore v. Smith*, 177 Va. 621, 624 (1941) and *Fugate v. Moore*, 86 Va. 1045, 1047 (1890))).
[48] *Young v. Carter*, 61 Va. Cir. 682, 683 (2002).
[49] *Harmon*, 273 Va. at 193.
[50] *Yoshida v. Capital Props. Mgmt.*, 68 Va. Cir. 279, 287 (2005).

2. <u>Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings.</u>

The TVPA authorizes claims against individuals who, under actual or apparent authority or color of law, of any foreign nation subjects an individual to torture or to extrajudicial killing.[51] Under the TVPA, an extrajudicial killing "does not include any such killing that, under international law is law-fully carried out under the authority of a foreign nation."[52]  To have standing under the TVPA, Plaintiffs must present some evidence that their relatives' deaths were the result of a purposeful act to take another's life and that the deaths were not caused by "accidental or negligent" behavior, other external circumstances, or the result of just provocation or sudden passion.[53]  The minimal requirement for an extrajudicial killing is that the killing must be "deliberate," which is defined as being "undertaken with studied consideration and purpose."[54]

Here, Plaintiffs do not present any evidence that the LNA was involved in the killings in October of 2014, much less any evidence that LNA or Field Marshal Hifter undertook the killings with consideration and purpose. Plaintiffs unsuccessfully attempt to utilize the status of Field Marshal Hifter, Abdulrazaq al-Naduri, and the LNA in 2021 to retroactively apply command responsibility to the gunfight that occurred seven years prior.[55]  No relevant evidence exists tying any circumstances in 2021 to the gunfights in 2014. As such, Plaintiffs fail to bring forward any evidence that creates a causal link between the alleged acts in 2014 and Field Marshal Hifter.

Further, determining that Plaintiffs' relatives were deliberately killed does not alone satisfy the TVPA requirement because, "not all deliberated killings are extrajudicial killings."[56]

---

[51] 28 U.S.C. § 1350.
[52] *Id.*
[53] *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1234-1235 (11th Cir. 2020).
[54] *Mamani v. Berzain ("Mamani I")*, 654 F.3d 1148 1155, (11th Cir. 2011).
[55] *See* Ex. F – Photograph of K. Hifter and al-Naduri in 2021.
[56] *Mamani I*, 654 F.3d at 1155 .

"Extrajudicial killing" "does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation."[57]  To determine whether these deliberated killings are extrajudicial, the Court must look to international law.[58]

Unlike in *Mamani v. Bustamante*, where the Court found sufficient "evidence that the decedents were killed by soldiers acting under orders to shoot or kill civilians and evidence that Defendants were connected to those orders,"[59] Plaintiffs allege that on or about October 15, 2014, LNA units surrounded the family home of the al-Suyids in Benghazi.[60]  Furthermore, the al-Suyid Plaintiffs allege that "a gunfight ensued" in which additional persons were "kidnapped," resulting in the deaths of Kahlid, Abdel Salam, and Ibrahim al-Suyid. Plaintiffs have presented no evidence that LNA soldiers were acting under official orders from Field Marshal Hifter. Plaintiffs concede that no Libyan army existed in 2014, many factions were in violent conflict and wearing military uniforms, and carrying firearms was widespread among the in Libyan people.[61]  Plaintiffs themselves have admitted to being armed and involved in the gunfights that occurred in 2014, supporting the conclusion that the deaths were caused by just provocation existed.[62]  As explained in *Manami*, the perpetrators of the alleged offenses could have been influenced by personal motivations and acted without the direction of their leaders.

---

[57] *Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1236-1237 (*citing* Pub. L. No. 102-256, § 3(a).

[58] *Id.* at 1236-1237 (*citing Doe v. Drummond*, 782 F.3d 576, 606 (11th Cir. 2015) ("[O]n the rare occasions when we do look to general principles of international law for guidance as to what a theory of liability or statutory definition requires, we do so only because the TVPA itself implicitly or explicitly incorporated those principles from international law.")).

[59] *Sánchez de Lozada Sánchez Bustamante*, 968 F.3d at 1239 .

[60] *See* Compl., at p. 7, ECF No. 1.

[61] *See* Ex. B – Ahmad al- Krshiny Dep. at 32:22-33:16.

[62] *See* Ex. G – Pltf's Supplemental Responses to Def.'s First Set of Interrogatories, at p. 15.

Similarly, the facts alleged regarding the al-Krshiny Plaintiffs also give rise to alternative explanation for the alleged deaths other than a deliberate extrajudicial killing. Those Plaintiffs allege that during another gunfight, several individuals were taken prisoner by another LNA unit, that Ibrahim and Mustafa al-Krshiny were beaten, and that Mustafa and Ali al-Krshiny were later killed. Plaintiffs have not alleged any facts showing how these events were deliberate under the TVPA or how Field Marshal Hifter is connected to these claims.

In the midst of civil war with dozens of armed groups engaged in violent conflict, the laws of armed conflict recognize the principle of proportionality.[63] International law permits a killing in the midst of a non-international conflict involving multiple militias.[64] Given this undisputed evidence, Plaintiffs cannot legally establish a deliberate, extrajudicial killing under the TVPA. Therefore, their claim is barred.

3.  The Extrajudicial Killing Must be Committed by an Individual Acting Under Actual or Apparent Authority, or Color of Law, of Any Foreign Nation.

Plaintiffs fail to demonstrate that Field Marshal Hifter was acting under authority or color of law of any foreign nation. The state-action or color-of-law requirement of the TVPA limits "the reach of federal law," and excludes "merely private conduct" from liability "no matter how . . . wrongful."[65] The TVPA only applies to individuals who act "under actual or apparent authority, or color of law, of any foreign nation."[66] To determine whether a defendant acted under color of foreign law, courts turn to "principles of agency law and to jurisprudence under 42 U.S.C. § 1983."[67] "[F]or purposes of the TVPA, an individual acts under color of law . . . when he acts

---

[63] *See* Art. 51(5)(b), 57(2)(a)(iii) and (b) Additional Protocol I.
[64] *Id.*
[65] *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (quotations omitted).
[66] *See* § 1350 note § 2(a); *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009); *Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995).
[67] *Kadic*, 70 F.3d at 245.

together with state officials or with significant state aid."[68]  A plaintiff "must adequately allege that the [defendant] possessed power under [foreign] law, and that the offending actions . . . derived from an exercise of that power, or that defendants could not have undertaken their culpable actions absent such power."[69]

Here, the Court has ruled that the "whole political structure of Libya is still certainly in flux"[70] and that the state secrets privilege is not applicable to the conduct alleged by Plaintiffs. As such, this Court cannot rule that Field Marshal Hifter is not protected by the Libyan state secrets privilege while simultaneously ruling that he is acting under actual or apparent authority of a foreign nation. To fail to recognize that Hifter lacked official authority in 2014 yet simultaneously rule that the LNA military operations in 2016 through 2019 are not protected as a Libyan state secret, would be so conflicting as to cause a manifest injustice. Even if this Court finds that Field Marshal Hifter is acting under the color of law of a foreign nation today, Plaintiffs have failed to provide any evidence that he held any actual or apparent authority under a foreign nation in 2014. "A foreign country was defined by Mr. Chief Justice Marshall and Mr. Justice Story to be one exclusively within the sovereignty of a foreign nation, and without the sovereignty of the United States."[71]

---

[68] *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 52-53 (2d. Cir. 2014) (citations omitted); *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam) (internal quotation marks omitted), *a'ff'd for want of a quorum sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008); *Kadic*, 70 F.3d at 245 (same).
[69] *Arar*, 585 F.3d at 567-568.
[70] Tr. Sept. 8, 2023, ECF No. 253, at p. 5.
[71] *De Lima v. Bidwell*, 182 U.S. 1, 180 (1901) (*citing The Boat Eliza*, 2 Gall. 4; *Taber v. United States*, 1 Story, 1; The Ship Adventure, 1 Brock. 235, 241.)

To date, the Libyan House of Representatives has not been recognized as a foreign government by the United States or the international community.[72] The Second Circuit has found that a foreign state is "an entity bearing the 'attributes of statehood,' which include a defined territory and population, self-governance and foreign relations, and the capacity to wage war and enter into international agreements."[73] In 2014, Field Marshal Hifter held no official position in Libya, therefore he did not have a position of power over a population, the ability to enter into international agreements, wage war, or govern the Libyan people.[74]

In addition, Field Marshal Hifter could not have acted under the color of Libyan law during the time of Plaintiffs' claims. Field Marshal Hifter was appointed as Commander-in-chief of the LNA on March 2, 2015.[75] Plaintiffs' claims arose in October 2014, several months prior to Field Marshal Hifter's appointment. [76] It was not possible for Field Marshal Hifter to act "together with state officials or with significant state aid" prior to his appointment as Commander-in-Chief.[77] Thus, Plaintiffs have failed to establish sufficient facts to show that Field Marshal Hifter possessed power under Libyan law and that extrajudicial killings or torture stemmed from this power.

As such, the individuals that committed the alleged extrajudicial killings could not have been official agents of Field Marshal Hifter, thus he is not liable for their actions. Because Field Marshal Hifter is not an individual acting under actual or apparent authority, or color of law, of

---

[72] *See* Ex. H – Adopting Resolution 2273 (2016), Security Council Extends Mandate of United Nations Support Mission in Libya until 15 June.

[73] *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019) (*citing Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 123 (2d Cir. 2016) (*quoting Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237, 1243-44 (2d Cir. 1991))).

[74] *See* Ex. E – Hifter Dep., June 26, 2023, at 209:11-14.

[75] *See* Ex. D – Order Appointing K. Hifter.

[76] Compl. ¶¶ 25, 26, 29, 32, 34, 44, 45.

[77] *Chowdhury*, 746 F.3d at 52-53 (citations omitted); *Khulumani*, 504 F.3d at 260 (internal quotation marks omitted); *Kadic*, 70 F.3d at 245 (same).

[77] *Arar*, 585 F.3d at 567-568.

any foreign nation, a claim under the TVPA cannot be brought, and summary judgment in favor of Field Marshal Hifter is appropriate.

**B. The Court Must Dismiss this Claim Because It Lacks Jurisdiction.**

The Court must grant summary judgment in favor of Field Marshal Hifter because it lacks jurisdiction for two reasons: (1) Plaintiffs did not properly serve him, and (2) he has head-of-state immunity.

### 1. Plaintiffs' Purported Service is Invalid.

Absent valid "service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."[78]  While the Court previously denied Defendant's motion to dismiss on this basis, Defendant believes that similar considerations that led the Court to grant his motion for summary judgment on personal jurisdiction grounds weigh in favor of the grant of summary judgment for insufficiency of service of process. Plaintiffs' attempts at serving Defendant did not adequately apprise him of the pending lawsuit and were deficient. Plaintiffs purported to serve Defendant by having a private process server post the alias summons and complaint at a condominium in Fairfax County, Virginia owned by Field Marshal Hifter merely as an asset. Field Marshal Hifter testified that he has not resided in the United States since 2011.[79]  Plaintiffs concede that Field Marshal Hifter left for Libya in 2011.[80]

As the Court of Appeals noted, the fact that Field Marshal Hifter may own property in Virginia and is a United States citizen is not enough to establish personal jurisdiction over him.[81]

---

[78] *Murphy Brothers, Inc. v. Michetti Pipe Sringing*, 526 U.S. 344, 350 (1999).
[79] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 29:21-30:1, 39:2-4.
[80] *See* Compl., pages 4-5, ECF No. 1.
[81] *See Al-Suyid v. Hifter*, 139 F.4th at 376-77.

Similarly, ownership of property does not mean that someone resides at that property for purposes of effectuating service. As a consequence of improper service, "a court is without jurisdiction to render a personal judgment against a defendant."[82]  Summary judgment should be entered in favor of Field Marshal Hifter due to insufficiency of service of process.

> 2.  Defendant is Entitled to Head-of-State Immunity.

The Court should grant summary judgment in favor of Field Marshal Hifter because Field Marshal Hifter's head-of-state immunity precludes this Court from exercising jurisdiction over Field Marshal Hifter. "[T]he TVPA does not abrogate foreign official immunity.[83]  If the Court finds that Field Marshal Hifter was acting under the color of law of a foreign nation, then it must find that head-of-state immunity is applicable. Under the common law, foreign officials may be entitled to either status-based immunity or conduct-based immunity.[84]  "Status-based immunity is available to diplomats and heads of state and shields them from legal proceedings by virtue of [their] current official position, regardless of the substance of the claim."[85]  "Conduct-based immunity. . . is available to any public minister, official, or agent of the foreign state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."[86]  In other words, "conduct-based immunities shield individuals from legal consequences for acts performed on behalf of the state during their tenure in office."[87]

---

[82] *Joe Hand Promotions, Inc. v. Citibars, Inc.*, 2012 U.S. Dist. LEXIS 18500, at *4 (E.D. Va. 2012).
[83] *Does v. Obiano*, 138 F.4th 955, 960 (5th Cir. 2025).
[84] *Doe v. Buratai*, 318 F. Supp. 3d 218, 230 (D.C. 2018); *Obiano*, 138 F.4th at 958 (5th Cir. 2025).
[85] *Id.*
[86] *Id.*
[87] *Sikhs for Just. v. Singh*, 64 F. Supp. 3d 190, 193 (D.D.C. 2014) .

Determination of foreign official immunity is a two-step process.[88] "First, the foreign-official defendant may request a suggestion of immunity from the State Department. If the request is granted, the district court surrenders its jurisdiction."[89] "In the absence of recognition of the immunity by the [State Department], the district court moves to the second step, in which a district court has authority to decide for itself whether all the requisites for such immunity existed."[90] "In making that decision, the court inquires whether the ground of immunity is one which it is the established policy of the State Department to recognize."[91] Immunity may be found if (1) the defendant was a "public minister, official, or agent" of the state, (2) "he acted in his official capacity," and (3) "exercising jurisdiction would 'enforce a rule of law against the state.'"[92]

First, if the Court determines that Field Marshal Hifter was acting under the color of law of a foreign nation, then it must also find that Field Marshal Hifter was a public official at the time of the events of this Complaint, which would satisfy the first prong for judicial determination of head-of-state immunity. It is undisputed that on March 2, 2015, Field Marshal Hifter was appointed as Commander-in-chief of the LNA,[93] but the LNA is not recognized as a legitimate government in the international community. However, if the Court determines that Field Marshal Hifter was in power at the time of these events in 2014, then the first prong for head-of-state immunity is satisfied. Plaintiffs themselves allege that Field Marshal Hifter was "appointed as a field marshal and head of the Libya National Army" and that he "act[ed] on the authority of the government of Libya."[94] Plaintiffs further allege in their Complaint that seeking personal damages against Field

---

[88] *Buratai*, 318 F.Supp. 3d at 230.
[89] *Id*.
[90] *Id*.
[91] *Id*.
[92] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7 .
[93] *See* Ex. D – Order Appointing K. Hifter.
[94] Compl. ¶¶ 24, 26.

Marshal Hifter in Libya would be hard because he is "the field marshal of the LNA who controls the government in much of Libya, including Plaintiffs' home jurisdiction."[95]

Second, if the Court finds that Field Marshal Hifter was a head-of-state official at the time of the allegations of this Complaint, then Field Marshal Hifter was acting in his official capacity. Plaintiffs allege that "[i]n October 2014 Defendant Khalifa Hifter's LNA, acting on authority of the government of Libya, launched what they inaptly called 'Operation Dignity…'"[96] Both the al-Suyid and al-Krshiny allegations state that the alleged actions were taken in furtherance of Operation Dignity, a military operation that Plaintiffs claim was authorized by the government of Libya.[97]

Third, while Plaintiffs claim to be suing Field Marshal Hifter in his individual capacity, the Complaint repeatedly connects his alleged actions to his official capacity and the LNA's years-long campaign to remove terrorists from Libya . Plaintiffs claim that Field Marshal Hifter was "acting on the authority of the government of Libya" when he launched "Operation Dignity."[98] Plaintiffs further allege that Field Marshal Hifter was "appointed as field marshal, as head of the Libyan National Army" due to the outbreak of civil war in 2011.[99]

While Plaintiffs claim that Field Marshal Hifter is unable to receive head-of-state immunity because he is subordinate to Libya's legislature and head-of-state, Field Marshal Hifter must merely be a "public minister, official, or agent" of the state to qualify for head-of-state immunity.[100]  By interfering with the Libyan government, a decision here would "effectively

---

[95] *Id.* at ¶ 51.
[96] *Id.* at ¶ 26.
[97] *Id.* at ¶¶ 26, 29, 34.
[98] *Id.* at ¶¶ 26, 61.
[99] *Id.* at ¶ 24.
[100] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *7.

enforce a rule of law" against Libya.[101]  If the Court finds that Field Marshal Hifter was acting under the color of law of a foreign nation, then it must also recognize Field Marshal Hifter was acting as a head-of-state, and apply such immunity.

Lastly, while Plaintiffs claim that Field Marshal Hifter has no right to any conduct-based or foreign-official immunity because his alleged acts violated international human rights *jus cogens* norms,[102] the majority of circuit courts have repeatedly held that conduct-based immunity may still be granted under the circumstances alleged.[103]  In *Yousuf v. Samantar*, the Fourth Circuit held that there was *jus cogens* exception to foreign official immunity, which is binding precedent on this Court.[104]  Despite the ruling in *Yousuf*, Field Marshal Hifter contends that that Fourth Circuit decision is an outlier and the remaining jurisdictions including the Second, Seventh, and Ninth Circuits have rejected the existence of that exception.[105]  As such, there is a circuit split among the courts, and Field Marshal Hifter contends that the ruling in *Yousuf* is incorrect, and

---

[101] *Buratai*, 318 F.Supp. 3d at 233.

[102] Compl. ¶ 52.

[103] *See Dogan v. Barak*, 932 F.3d 888, 896 (9th Cir. 2019) (declining "to hold that foreign officials are not immune from suit for violations of jus cogens norms"); *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009) ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *see also Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004) ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity."); *Buratai*, 318 F. Supp. 3d at 234 ("Although the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law.").

[104] *Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).

[105] *Obiano*, 2024 U.S. Dist. LEXIS 8247 at *11; *see Dogan*, 932 F.3d at 896 (declining "to hold that foreign officials are not immune from suit for violations of jus cogens norms"); *Matar*, 563 F.3d at 15 ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *see also Ye*, 383 F.3d at 627 ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity."); *Buratai*, 318 F. Supp. 3d at 234 ("Although the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law.").

there is not a *jus cogens* exception to foreign official immunity. "The text of the TVPA does not mention immunity, and statutes are normally assumed not to displace the common law by implication."[106]    Also, the Executive Branch has not recognized a *jus cogens* exception to immunity.[107]

Thus, if the Court finds that Field Marshal Hifter was acting under the color of law of a foreign nation, then it must also find that Field Marshal Hifter was a public official of Libya acting in his official capacity as Commander-in-chief of the LNA. Thus, exercising jurisdiction here would improperly enforce a rule of law against the State of Libya, so Field Marshal Hifter is entitled to head-of-state immunity.

### C. Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya.

Plaintiffs have not exhausted their administrative remedies in Libya, thus their claims under the TVPA must fail. The TVPA exhaustion requirement "is an affirmative defense" where the defendant bears the initial burden of proof.[108]    The court must decline a claim brought under the TVPA if the claimant has not exhausted all adequate and available remedies "in the place in which the conduct giving rise to the claim occurred."[109]    If evidence submitted by the parties conflicts, the court may "act[] as a fact finder in resolving [a] factual dispute" concerning exhaustion of remedies.[110]    Because adequate legal remedies exist in Libya and Plaintiffs have not sufficiently

---

[106] *Id.* at *10 (*quoting* Curtis A. Bradley, *Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l L. 1, 17 (2021)); *see also Samantar v. Yousuf*, 560 U.S. 305, 320 (2010) ("The canon of construction that statutes should be interpreted consistently with the common law helps us interpret a statute that clearly covers a field formerly governed by common law."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (holding that Congress must give "clear indication that [it] meant to abolish wholesale all common-law immunities" in a statute).

[107] *Matar*, 563 F.3d at 14; *Buratai*, 318 F. Supp. 3d at 235.

[108] *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005).

[109] 28 U.S.C. § 1350 Note, § 2(b).

[110] *See Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (adopting this exhaustion of administrative remedies rule from the PRLA, 42 U.S.C. § 1997e(a)).

proven that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile, Plaintiffs' claims fail under the TVPA exhaustion requirement.

    1.   <u>Defendant Has Proven that Plaintiffs Did Not Exhaust Their Administrative Remedies.</u>

Exhaustion is an affirmative defense initially requiring the defendant to establish that plaintiffs did not exhaust their administrative remedies.[111]  A defendant "must prove the existence of specific domestic remedies that should have been utilized."[112] "Plaintiffs . . . are entitled to a presumption that local remedies have been exhausted, which Defendants must overcome before Plaintiffs are required to prove exhaustion or, presumably, the futility of exhausting local remedies."[113]  Ultimately, to succeed with an exhaustion defense, "a defendant must demonstrate that a plaintiff failed to exhaust all 'adequate and available' remedies."[114]

Here, the undisputed evidence establishes that Plaintiffs have not exhausted their local remedies. Plaintiffs lived in Benghazi at the time the alleged events occurred.[115]  Local remedies exist in Libya and specifically exist in both Benghazi and Tripoli. Judicial proceedings in Benghazi were operating (1) all of 2018, (2) all of 2019, except from April to June, (3) all of 2020, except from April to June, (4) all of 2021, except from April to June, (4) all of 2022, and (5) all of 2023.[116] Judicial proceedings in Tripoli were operating (1) from January to May and November to December in 2014, (2) all of 2015, (3) all of 2016, (4) all of 2017, (5) all of 2018, (6) all of 2019,

---

[111] *Jean,* 431 F.3d at 781.

[112] *Enohoro v. Abubakar*, 408 F.3d 877, 892 (7th Cir. 2005).

[113] *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1357 (S.D. Fla. 2003).

[114] *Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724, at *26 (S.D. Fla. Sep. 28, 2021).

[115] Compl. ¶¶ 29, 34.

[116] *See* Ex. I – Declaration of Fathi Younis Toomi, p. 9.

except from January to March, (7) all of 2021, except from September to December, (8) all of 2022, and (9) all of 2023.[117]

Since the overthrow of the Gaddafi regime in 2011, the primary source of law in Libya has been the Constitutional Declaration of the National Transitional Council which states that the foundation for all law in Libya is the Shari'a.[118]  The Libyan courts are divided into civil courts, criminal courts, and administrative courts.[119]  All matters are heard before judges, because there are no jury trials in Libya.[120]  As of 2022, all major Libyan city courts have been fully functional on a full-time basis.[121] Because the Libyan court system is alive and well, Plaintiffs must pursue their claims in Libya. They have not exhausted their local remedies.

2.  <u>Plaintiffs Have Not Proven that Local Remedies are Ineffective, Unduly Prolonged, Inadequate, or Obviously Futile.</u>

Plaintiffs have not proven that local remedies are ineffective. Here, Field Marshal Hifter has proven that specific domestic remedies do exist and should be utilized. Once a defendant meets their burden of proof, the burden shifts to the plaintiff to demonstrate that local remedies were "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."[122]  The most common way for a plaintiff to establish their exhaustion of local remedies is by filing suit in that country.[123]  Although the amount of money obtainable in a foreign court may not be as much as a

---

[117] *Id.*

[118] *Id.* at ¶ 11.

[119] *Id.* at ¶ 14.

[120] *Id.*

[121] *Id.* at p. 9.

[122] *Jean,* 431 F.3d at 782; S. Rep. No. 102-249, at 10, 102nd Cong. 1st Sess. 1991, *reprinted in* 1991 WL 258662 (Leg. Hist.) (Nov. 26, 1991).

[123] *See e.g.*, *Xuncax*, 866 F. Supp. at 178 (holding that a plaintiff has properly exhausted their remedies available in the country where the conduct giving rise to their claim occurred where the plaintiff (1) provided 12 hours of testimony to the original court, (2) the criminal case against the defendant had made no progress for several years, and (3) under Guatemalan law, a civil action could not be brought until there was final judgment in the criminal proceeding).

plaintiff might be able to recover in an American court, that does not mean the remedy is so inadequate to excuse exhaustion.[124]  Application of § 2(b) of the TVPA here would "encourage the development of meaningful remedies" in Libya.[125]

Courts have interpreted the TVPA exhaustion requirement in many cases. In *Jaramillo v. Naranjo*, the Southern District of Florida held that plaintiffs exhausted their local remedies because (1) they sought relief through Colombia's criminal justice system and the Columbia Justice and Peace Process, (2) the Colombian court had not acted on the case in the 20 years after the murder, and (3) defendants offered no evidence that plaintiffs did not exhaust their remedies.[126]

In *Mamani v. Berzain*, the Southern District of Florida held that the plaintiffs had not exhausted their remedies in Bolivia because (1) they had not attempted to obtain compensation for the alleged extrajudicial killing from the government, (2) Bolivian law provided compensation, (3) the total monetary compensation was 14-15 times the Bolivian per capita income at the time, and (4) the plaintiffs had already received compensation from the Bolivian government.[127]

In *Boniface v. Viliena*, the Massachusetts District Court held that plaintiffs exhausted their local remedies because (1) the complaint contained detailed descriptions of events where

---

[124] *See Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1025-26 (W.D. Wash. 2005) (holding that plaintiffs filing under the TVPA had to exhaust available remedies in Israel: "A foreign remedy is adequate even if not identical to remedies available in the United States. Courts usually find a foreign remedy adequate unless it is 'no remedy at all.'") (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).

[125] 28 U.S.C.S. § 1350 Note, § 2(b); *see* H.R. Rep. 102-367, at 5, 102nd Cong. 1st Sess. 1991, 1992 U.S.C.C.A.N. 84, 88, *reprinted in* 1991 WL 255964 (Leg. Hist.) (Nov. 25, 1991); *see also* E. Duruigbo, *Exhaustion of Local Remedies*, 29 FORDHAM INT'L L. J. at 1284 ("[W]e should not lose sight of the fact that the requirement of exhaustion of local remedies provides a window of opportunity to beam the search light on the existing state of affairs in developing countries and let such discovery inform and form the basis for meaningful social, economic, political, and legal reforms in those countries.").

[126] *Jaramillo*, 2021 U.S. Dist. LEXIS 184724 at *27.

[127] *Mamani v. Berzain*, 636 F. Supp. 2d 1326, 1331-1332 (S.D. Fla. 2009).

individuals were targeted with threats, violence, and death for reporting a crime or participating in court proceedings, (2) the defendant fled to Massachusetts to avoid prosecution, and (3) the defendant used his political influence in Haiti to avoid accountability for his actions.[128]

In *Doe I v. Liu Qi*, the Northern District of California held that plaintiffs had exhausted their remedies in China because (1) the Chinese government had issued an ordinance prohibiting attorneys from engaging in legal advocacy on behalf of petitioners and that those making allegations against the government could suffer serious reprisals, (2) the plaintiffs were arrested after they tried to appeal to the Beijing government on behalf of practitioners who had been arrested, detained, and tortured, and (3) the plaintiffs fled China to escape further persecution.[129]

Here, Plaintiffs are unable to show that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile. The al-Suyid Plaintiffs filed a complaint with the Office of the Attorney General of Libya on July 17, 2016.[130] The al-Krshiny Plaintiffs also filed a complaint with the Office of the Attorney General of Libya on November 19, 2014.[131] In those cases, the office of the Attorney General appointed a prosecutor to the case.[132] The public prosecutor then interrogated the complainants.[133]  At no point have Plaintiffs attempted to file civil remedies in Libya.

Plaintiffs have also not been persecuted for bringing these complaints in Libya. Plaintiffs have not had to flee the country, rather they still live in Libya even after filing criminal complaints against Field Marshal Hifter in Libya and this suit in the United States with no repercussions.

---

[128] *Boniface v. Viliena*, 338 F. Supp. 3d 50, 66-67 (D. Mass. 2018).
[129] *Liu Qi*, 349 F. Supp. at 1319-1320.
[130] *See* Ex. J – SUYID-000001-000002.
[131] *Id.* at SUYID-000001.
[132] *Id.*
[133] *Id.*

Lastly, unlike in *Jaramillo* where the defendant offered no evidence that plaintiffs did not exhaust their remedies, Field Marshal Hifter has produced evidence that the Libyan court system is operational, and that Plaintiffs have not exhausted their remedies in Libya. Thus, because domestic remedies exist and Plaintiffs have not sufficiently proven that local remedies are ineffective, unduly prolonged, inadequate, or obviously futile, Plaintiffs' claim must fail under the TVPA exhaustion requirement.

### D. Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability.

Even if the Court finds this suit is proper in the Eastern District of Virginia, Plaintiffs' TVPA claim still fails to provide any evidence of intent or liability by the Defendant. Plaintiffs have provided no evidence to establish that Field Marshal Hifter is responsible for the alleged events on October 14, 2014, and October 17, 2014. From 2011 to the alleged events of October of 2014, Libya was in a civil war involving dozens of militias engaging in combat throughout the region.[134]

Plaintiffs must establish three elements for command responsibility to apply:

> (1) superior-subordinate relationship between the defendant/military commander and the person or persons who committed human rights abuses; (2) the defendant/military commander knew, or should have known, in light of the circumstances at the time, that subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant/military commander failed to take all necessary and reasonable measures to prevent human rights abuses and punish human rights abusers.[135]

For the reasons set out below, the Plaintiffs have failed to satisfy these elements.

---

[134] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 78:18-79:6.
[135] *Chavez v. Carranza*, 559 F.3d 486, 499 (6th Cir. 2009) (*citing Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)).

1.  <u>There is No Evidence that the Libyan National Army was Involved in the Alleged Incidents.</u>

First, Plaintiffs must establish a superior-subordinate relationship between Field Marshal Hifter and those behind the alleged conduct. Plaintiffs must allege facts showing that Field Marshal Hifter had "effective control" over the soldiers' actions.[136]  The Eleventh Circuit has explained that "[t]he concept of effective *control* over a subordinate [is] the sense of a material ability to prevent or punish criminal conduct, however that control is exercised."[137]  "[A] showing of the defendant's actual ability to control the guilty troops is required as part of the plaintiff's burden under the superior-subordinate prong of command responsibility, whether the plaintiff attempts to assert liability under a theory of *de facto* or *de jure* authority."[138]

Plaintiffs' Complaint alleges that various majors, colonels, and other LNA officials led units that carried out certain operations that allegedly killed or tortured Plaintiffs. Those allegations, however, do not connect any decisions by Field Marshal Hifter as commander of the LNA with the offenses alleged to have occurred during military operations. Here, the Plaintiffs have provided no evidence to establish that those responsible for the alleged conduct reported to Field Marshal Hifter or that Field Marshal Hifter directed or had knowledge of such offenses.[139] Their allegations tying these events to Field Marshal Hifter are based solely on mere speculation. Plaintiffs do not even assert that members of the LNA committed the alleged extrajudicial killings. The al-Suyid Plaintiffs claim that "Neighborhood Youths" led by Major General Abdulrazaq al-Baduri and Wanis Bukamada attacked the al-Suyid home.[140]  The al-Krshiny Plaintiffs claim that

---

[136] *Mamani v. Berzain*, 21 F.Supp.3d 1353, 1376 (S.D. Fla. 2014).
[137] *Ford*, 289 F.3d at 1290 (*quoting Prosecutor v. Delalic* (Appeals Chamber ICTY, Feb. 20, 2001) ¶ 256).
[138] *Id.* at 1291.
[139] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[140] Compl. ¶¶ 29-33.

units led by Major General Jamal al-Zahawi and Colonel Almadi al-Bargathi attacked the al-Krshiny home.[141]

While the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, Plaintiffs have failed to identify any causal link between the alleged events and the Libyan National Army. Unlike the defendant in *Jane W. v. Thomas*, Field Marshal Hifter was not part of the missions, was not present at the extrajudicial killings or tortures, and did not give any orders instructing the killings or torture.[142]   Further, Plaintiffs have provided no evidence that uniformed LNA members were present at either site. As noted above, during this time period, many individuals wore army uniforms in Libya, even those not affiliated with the army. In fact, Plaintiffs concede that an individual wearing a uniform might not be an official member of an army.[143]   Absent a causal link to the alleged acts, Field Marshal Hifter cannot be said to have had control over the "Neighborhood Youth" or other individuals involved in the alleged extrajudicial killing and torture of Plaintiffs. Nor can he be said to have control over a person by virtue of them wearing an army uniform.

2.   There is No Evidence that Field Marshal Hifter Knew or Reasonably Should have Known that Soldiers Were Committing Extrajudicial Killings

Plaintiffs must show that Field Marshal Hifter "knew or should have known, owing to the circumstances at the time," that soldiers "had committed, were committing, or planned to commit" extrajudicial killings.[144]   In *Mamani*, the plaintiffs showed this element by presenting evidence of meetings where the defendant explicitly agreed to kill thousands of people.[145]   Here, no such evidence has been presented by Plaintiffs. Undisputed evidence establishes that Field Marshal

---

[141] *Id.* at ¶¶ 34-46.

[142] *Jane W. v. Thomas*, 560 F. Supp. 3d 855, 880 (E.D. Pa. 2021).

[143] *See* Ex. B – Ahmad al- Krshiny Dep. at 33:17-33:21.

[144] *Jaramillo*, 2021 U.S. Dist. LEXIS 184724 at *23-24 (*citing Ford*, 289 F.3d at 1288.)

[145] *Berzain*, 21 F.Supp.3d at 1377 (*quoting Ford*, 289 F.3d at 1288).

Hifter had no knowledge of the alleged conduct, did not order it, and does not know when, why, or how it happened.[146]  In 2014, Field Marshal Hifter launched Operation Dignity in an effort "to get rid of [] criminals that are killing people."[147]  At the time, ISIS, al-Qaeda, and the Islamic Fighters Movement were all active in Benghazi.[148]  As the conflicts developed, "Neighborhood Youths" were increasingly involved in disputes, and "a people's revolution" ignited in the region.[149]  Plaintiffs have failed to provide any evidence that Field Marshal Hifter exercised control of these various warring groups.

3. <u>There is No Evidence that Field Marshal Hifter Failed to Prevent any Extrajudicial Killings.</u>

Plaintiffs are required to establish that Field Marshal Hifter "failed to take all necessary and reasonable measures" within his power to prevent or punish the extrajudicial killings.[150]  Here, as already established, Field Marshal Hifter did not order these alleged attacks and lacked all knowledge of them.[151]  Generally, knowledge is proven by showing actual endorsement.[152]  Plaintiffs have presented no evidence that Field Marshal Hifter ordered, endorsed, or failed to take necessary measures to prevent the alleged killings. On the contrary, Field Marshal Hifter has adamantly stated that he always aims to protect civilians during operations that he oversees.[153]  Prior to 2014, Field Marshal Hifter was not in a position to take any necessary measures. Once the LNA was formed in 2015, military prosecutions were overseen by a separate entity, the Attorney

---

[146] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[147] *Id.* at 82:11-16.
[148] *Id.* at 78:18-79:4.
[149] *See* Ex. E – Hifter Dep., June 26, 2023, at 222:3-8.
[150] *Mamani v. Berzaín*, 533 F. Supp. 3d 1252, 1267, 1293 (S.D. Fla. 2021).
[151] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 154:12-15.
[152] *See, e.g., Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002); *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996).
[153] *See* Ex. E – Hifter Dep., June 26, 2023, at 236:12-22.

General's Office, which established a system to ensure soldiers were not committing extrajudicial killings or torture against international and Libyan law.[154]  This would have been the proper process for Plaintiffs to address their concerns and seek justice, a process Field Marshal Hifter supports.[155]

The events alleged by Plaintiffs took place prior to Hifter exercising any control over the LNA. Plaintiffs have failed to provide any evidence sufficient to tie Field Marshal Hifter to their allegations.[156]  Plaintiffs have not met any of the prongs of the command responsibility doctrine. They have presented nothing more than mere speculation about Field Marshal Hifter's involvement in their allegations.[157]  Plaintiffs' inability to establish any element of command responsibility results in a failure to demonstrate Field Marshal Hifter's liability for these claims. The failure to establish a causal link between the alleged events that took place in October of 2014 and Field Marshal Hifter is fatal to Plaintiffs' claims, and summary judgment should be granted.[158]

## VI.    CONCLUSION

Defendant has established that there are no genuine issues as to any material fact, and that, as the facts stand, Plaintiffs do not have a viable legal claim against him. As such, summary judgment should be entered in Field Marshal Hifter's favor and the case against him dismissed with prejudice.

---

[154] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 111:21-112:3.; *see also* Ex. E – Hifter Dep., June 26, 2023, at 239:10-18.

[155] *Id.*

[156] *See* Ex. F – Photograph of K. Hifter and al-Naduri in 2021.

[157] As the court explained in *Mamani*, such broad accusations are "easy to say about leaders of nations, but without adequate factual support of more specific acts by these defendants, these 'bare assertions' are 'not entitled to be assumed true.'" *Mamani I*, 654 F.3d at 1154.

[158] *See Qi*, 349 F. Supp. 2d at 1331-32 (finding that a superior subordinate relationship was established where one defendant had supervisory authority over perpetrators, and another defendant "played a major policy-making and supervisory role in the policies and practices that were carried out") (internal quotation marks omitted).

Dated:  November 13, 2025                    Respectfully submitted,

                                             KHALIFA HIFTER

                                             By Counsel


                                             /s/ *Robert H. Cox*
                                             Robert H. Cox (VSB No. 33118)
                                             WHITEFORD, TAYLOR & PRESTON, LLP
                                             3190 Fairview Park Drive, Suite 800
                                             Tysons Corner, Virginia 22042
                                             Tel: (703) 573-1037
                                             rcox@whitefordlaw.com

31

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 13, 2025, a copy of the foregoing was filed with the Clerk of

the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

 /s/ *Robert H. Cox*
Robert H. Cox (VSB No. 33118)

*4926-9703-0010 v.1*

32