**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **MUNA AL-SUYID, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Civil Action No.: 1:20-cv-170** |
| | : | |
| | : | |
| **KHALIFA HIFTER,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN
<u>SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT</u>**

Dated: December 29, 2025

KHALIFA HIFTER

By Counsel

Robert H. Cox (VSB No. 33118)
WHITEFORD, TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Tysons Corner, Virginia 22042
Tel: (703) 573-1037
rcox@whitefordlaw.com

## Table of Contents

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 1

A.  Plaintiffs Cannot Dispute Defendant's Statement of Undisputed Facts with Inadmissible Evidence…………………………………………………………………………………… 1

B.  Plaintiffs Lack Standing to Bring Suit in the Eastern District of Virginia. ......................... 2

    1.  Plaintiffs Are Improper Claimants Under the TVPA. ....................................................... 2

    2.  Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings. ........................................ 7

    3.  Plaintiffs Fail to Establish Field Marshal Hifter Acted Under Actual or Apparent Authority, or Color of Law, of Any Foreign Nation. ............................................................. 8

C.  The Court Must Dismiss this Claim Because It Lacks Jurisdiction. ................................... 9

    1.  Plaintiffs' Service is Invalid. ............................................................................................ 9

D.  Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya. .................... 14

E.  Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability. 15

    1.  Plaintiffs Fail to Establish Defendant Had Effective Control Over the Alleged Events. 15

    2.  Plaintiffs Fail to Establish that Defendant Knew or Reasonably Should Have Known the LNA was Involved in the Alleged Events. ........................................................................... 16

    3.  Plaintiffs Fail to Establish That Defendant Failed to Take All Necessary and Reasonable Measures to Prevent Torture or Extrajudicial Killings ...................................... 16

F.  Plaintiffs Conceded There Is No Evidence in the Record of Torture. ............................... 17

III.  CONCLUSION ............................................................................................................ 18

## Table of Authorities

**Cases**

*Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008) .......................................... 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................... 15

*AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812 (NRB), 2014 U.S. Dist. LEXIS 125256, 2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014) ............................................. 17

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) ...................................................... 14

*Castle v. Lester*, 272 Va. 591 (2006) ................................................................. 6

*Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42 (2d. Cir. 2014) ..................... 8

*Doe v. Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) ................................................... 2

*Does v. Obiano*, NO. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247 (S.D. Tex. Jan. 1, 2024) ..... 13

*Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019) ...................................................... 13

*Fugate v. Moore*, 86 Va. 1045 (1890) ............................................................... 3

*Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998 (N.D. Ala. Jan. 6, 2011) ............................................................................... 2

*Harmon v. Sadjadi*, 273 Va. 184 (2007) ............................................................. 3

*Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442 (1871) ....................................... 15

*In re Grand Jury Proceedings*, 817 F.2d 1108 (4th Cir. 1987) .................................... 12

*Jean v. Dorelien*, 431 F.3d 776 (11th Cir. 2005) .................................................. 14

*Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) ............................... 8

*Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016) ..................................... 8

*Kirschenbaum v. Assa Corp.*, 934 F.3d 191 (2d Cir. 2019) ........................................ 8

*Lawrence v. Craven Tire Co.*, 210 Va. 138 (1969) .................................................. 6

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007) ................................. 16

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) ................................................ 7

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) ....................................................... 13

*Matthews v. Hicks*, 197 Va. 112 (1955) ............................................................. 6

*McDaniel v. North Carolina Pulp Co.*, 198 Va. 612 (1956) ......................................... 3

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310 (4th Cir. 1993) ....................................... 2

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310 (4th Cir. 1993). ...................................... 2

*Moore v. Smith*, 177 Va. 621 (1941) ................................................................ 3

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237 (2d Cir. 1991) .............. 8

*Murphy Brothers, Inc. v. Michetti Pipe Sringing*, 526 U.S. 344, 350 (1999) ..................... 9

*Pulliam v. Coastal Emergency Servs.*, Inc., 257 Va. 1 (1999) ..................................... 6

*Ramirez v. Temin & Co.*, 2021 U.S. Dist. LEXIS 183760, fn. 2 (S.D.N.Y. Sep. 24, 2021) ......... 17

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ........................................................... 13

*Selected Risks Ins. Co. v. Dean*, 233 Va. 260 (1987) .............................................. 6

*Sherley v. Lotz, Adm'r*, 200 Va. 173 (1958) ....................................................... 6

*Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322 (E.D.N.Y. June 9, 2014) ......................................................................................... 2

*Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230 (D.C. Cir. 2003) ........... 17

*Wimberly v. Clark Controller Co.*, 364 F.2d 225 (6th Cir. 1966) ................................. 2

i

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) .................................................................. 2, 3
*Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004)......................................................................... 13, 14
*Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) ...................................................................... 13

**Statutes**

28 U.S.C. § 1350 ........................................................................................................................ 8
Torture Victim Protection Act of 1991, 28 U.S.C.S. § 1350 note ................................................ 3
Va. Code § 64.2-454 .................................................................................................................... 4
Va. Code § 8.01-50 ...................................................................................................................... 4
Va. Code § 8.01-50(C) ................................................................................................................. 4
Va. Code. Ann. § 8.01-50 ............................................................................................................ 3
Virginia Code § 64.2-454 ......................................................................................................... 4, 5
Virginia Code § 8.01-53 ............................................................................................................... 5

**Other Authorities**

H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991) ............................................................... 2, 3, 6

**Rules**

Fed. R. Civ. P. 55(c) ................................................................................................................... 1

Defendant Khalifa Hifter ("Defendant" or "Field Marshal Hifter"), by and through the undersigned counsel, submits this Reply Memorandum in Support of Motion for Summary Judgment pursuant to FED. R. CIV. P. 56, and states as follows:

## I.    INTRODUCTION

Plaintiffs appear to be pursuing this suit solely for ideological and/or political reasons.[1] Plaintiffs' claim under the Torture Victim Protection Act ("TVPA") is improperly brought because they lack standing, lack jurisdiction, and do not provide evidence connecting the Libyan National Army ("LNA") or Field Marshal Hifter to the alleged events. Plaintiffs lack standing because they are improper claimants, have not brought forth evidence of an extrajudicial killing, and cannot establish that Field Marshal Hifter acted under actual or apparent authority, or color of law, of a foreign nation. Further, this Court lacks jurisdiction over Plaintiffs' claims as Field Marshal Hifter qualifies for head-of-state immunity and was improperly served. Lastly, Plaintiffs cannot rely on inadmissible evidence to hold Defendant liable. No admissible evidence establishes that Field Marshal Hifter ordered, had knowledge of, or failed to prevent the unlawful acts alleged. Plaintiffs have brought forth nothing more than speculative conclusions and inadmissible, unreliable hearsay to support their claims. As such, Plaintiffs do not have a cognizable claim for relief against Field Marshal Hifter. Accordingly, Defendant's motion for summary judgment should be granted.

## II.    ARGUMENT

### A. Plaintiffs Cannot Dispute Defendant's Statement of Undisputed Facts with Inadmissible Evidence

---

[1] Defendant's Motion for Summary Judgment, Ex. K, John Rossomondo, *Libyan Leader faces terrorist-supporter smear campaign in US courts*, American Thinker, October 7, 2025. (Unless, otherwise noted, all citations henceforth to "Ex. __" are to the exhibits filed in support of Defendant's Motion.

The summary judgment inquiry scrutinizes a plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry their burden of proof at trial.[2] Here, Plaintiffs rely on inadmissible evidence, including news articles from other countries, and other forms of inadmissible hearsay, in their failed effort to establish undisputed material facts regarding liability. This is unacceptable. The Court should disregard alleged facts based on inadmissible evidence and rely only on facts which are established with competent evidence.[3] Plaintiffs must bring forward admissible evidence of Field Marshal Hifter's liability. They have not done so; therefore, their claims must be dismissed on summary judgment.

## B.  Plaintiffs Lack Standing to Bring Suit in the Eastern District of Virginia.

### 1.  Plaintiffs Are Improper Claimants Under the TVPA.

The named Plaintiffs here are unable to recover for a wrongful death action in this Court because they either are an improper beneficiary under Virginia's wrongful death statute, they improperly brought a claim in their individual capacity, and/or they are improper personal representatives. The plain language and the legislative history of the TVPA states that standing is limited to the victim or an individual bringing a claim on behalf of the victim.[4] Contrary to Plaintiffs' arguments, the legislative history of the TVPA states that "courts may look to state law for guidance as to which parties would be proper wrongful death claimants."[5] Standing to recover

---

[2] *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

[3] *See Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966).

[4] *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1313 (N.D. Cal. 2004) (reviewing the history and concluding that TVPA only allows for suits by or on behalf of a victim); *Giraldo v. Drummond Co.*, No.: 2:09-CV-1041-RDP, 2011 U.S. Dist. LEXIS 160998, at *11 (N.D. Ala. Jan. 6, 2011) (holding that "to have standing under the TVPA . . . Plaintiffs ***must*** be seeking damages on behalf of the victim") (emphasis added).

[5] *Xuncax v. Gramajo*, 886 F. Supp. 162, 191 (D. Mass. 1995) (quoting H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991)).

under the TVPA is an absolute requirement, and plaintiffs who fail to act in a representative capacity for the decedents' estates are "due to be dismissed from this action."[6]

> *a.  Plaintiffs Are Not the Proper Parties to Bring Suit.*

In a claim for extrajudicial killing, a defendant is liable to "the individual's legal representative, or to any person who may be a claimant in an action for wrongful death."[7] The Court must look to state law to determine who may be a claimant in an action for wrongful death.[8] In Virginia, a wrongful death claim must be "brought by and in the name of the personal representative of such deceased person."[9] The purpose of the statute was to give a right of action to a family of a deceased, but not to allow two actions against the same defendant for the same injury.[10] Plaintiffs may not supersede Virginia's requirement that a wrongful death claimant must be a personal representative/administrator of an estate.[11] Further, Plaintiffs cannot circumvent the longstanding requirement in Virginia that a personal representative must be appointed/qualified in Virginia.[12] The Supreme Court of Virginia has consistently held that wrongful death suits are deemed a legal nullity if they are not brought by personal representatives who are appointed/qualified in Virginia.[13]

---

[6] *Giraldo*, 2011 U.S. Dist. LEXIS 160998 at *12; *Sikhs for Justice v. Gandhi*, 13 Civ. 4920 (BMC), 2014 U.S. Dist. LEXIS 78322, at *9 (E.D.N.Y. June 9, 2014) (holding because a plaintiff was not tortured, he could only state a claim under the TVPA based on his father's execution).

[7] Torture Victim Protection Act of 1991, 28 U.S.C.S. § 1350 note.

[8] *See Xuncax*, 886 F. Supp. at 191 (quoting H. Rep. No. 256, 102d Cong., 1st Sess. 87 (1991)).

[9] Va. Code. Ann. § 8.01-50(C).

[10] *Brammer's Adm'r v. Norfolk & W. Ry.*, 107 Va. 206 (1907).

[11] *See Harmon v. Sadjadi*, 273 Va. 184, 193 (2007) (*citing McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 615 (1956) (*citing Moore v. Smith*, 177 Va. 621, 624 (1941) and *Fugate v. Moore*, 86 Va. 1045, 1047 (1890))).

[12] *Id.*

[13] *Id.*

Plaintiffs have failed to follow Virginia state law as they have not qualified as an administrator to bring forward a claim. Plaintiffs prematurely attempt to apply Virginia Code § 8.01-53(A) which calls for the distribution of damages after a personal representative has collected on a judgment. Because we are not yet at that stage of the proceeding, § 8.01-53(A) is inapplicable. To allow multiple beneficiaries to attempt to collect on the same injury is a manifest injustice. Instead, the Court should require the Plaintiffs to follow the proper procedures under Virginia law, which requires fiduciaries of a foreign jurisdiction to qualify as an administrator.[14] This necessary step has not been taken by Plaintiffs. Therefore, Plaintiffs lack standing, and Field Marshal Hifter's motion must be granted.

### b. *Plaintiffs Cannot Recover in Their Individual Capacity.*

All Plaintiffs lack standing to be claimants in their individual capacity. Not one Plaintiff distinguishes whether they are bringing a torture claim on behalf of themselves or an extrajudicial killing claim on behalf of their relative.[15] In their Opposition, Plaintiffs cite to Va. Code § 64.2-454 which provides for the appointment of an administrator to bring a civil action on behalf of an estate or its beneficiaries.[16] However, they fail to explain how it resolves the Plaintiffs' lack of standing. This lack of explanation is understandable given that the Plaintiffs have not obtained the necessary appointment as administrators under Va. Code § 64.2-454.

Virginia law clearly states that a wrongful death action ". . .  shall be brought by and in the name of the personal representative of such deceased person." Va. Code § 8.01-50(C). Nothing in Va. Code § 64.2-454 changes this notion. Indeed, Va. Code § 64.2-454 cites Va. Code § 8.01-50 in setting forth who may be appointed to maintain a wrongful death action. The key point is

---

[14] Va. Code Ann. § 64.2-454.
[15] Compl. at ¶¶ 9, 10, 11, 12.
[16] Opp. at pp. 5-6.

that both statutes require an appointment by the court. The purpose of Va. Code § 8.01-50 is to give a right of action to a family of a deceased, but not to allow two actions against the same defendant for the same injury.[17]

Plaintiffs may not supersede Virginia's requirement that a wrongful death claimant must be a personal representative/administrator of an estate.[18] The Supreme Court of Virginia has consistently held that wrongful death suits are deemed a legal nullity if they are not brought by personal representatives who are appointed/qualified in Virginia.[19] To date, an administrator has not been qualified under Virginia law to represent Plaintiffs' decedents or their estates. Therefore, Plaintiffs lack standing, and their TVPA claim should be dismissed.

      c.   *Plaintiffs Are Improper Beneficiaries Under Virginia's Wrongful Death Statute.*

Even if the Court finds Virginia Code § 64.2-454 applicable to the Plaintiffs (it should not), no evidence has been provided that each of the parties qualify as beneficiaries. Virginia Code § 8.01-53 states in relevant part that damages awarded in a wrongful death action shall be distributed to:

> (i) the surviving spouse, children of the deceased and children of any deceased child of the deceased, and, only if there is a surviving spouse, children of the deceased, or children of any deceased child of the deceased, the parents of the decedent if any of such parents, within 12 months prior to the decedent's death, regularly received support or regularly received services from the decedent for necessaries, including living expenses, food, shelter, health care expenses, or in-home assistance or care, or (ii) if there is no surviving spouse, children of the deceased, or children of any deceased child of the deceased, then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the

---

[17] *See Brammer's Adm'r v. Norfolk & W. Ry.*, 107 Va. 206, 213-14 (1907).

[18] *See Harmon v. Sadjadi*, 273 Va. 184, 193 (2007) (citing *McDaniel v. North Carolina Pulp Co.*, 198 Va. 612, 615 (1956) (citing *Moore v. Smith*, 177 Va. 621, 624 (1941) and *Fugate v. Moore*, 86 Va. 1045, 1047 (1890)).

[19] *Id.*

decedent for support or services and is also a member of the same household as the decedent. . . .[20]

In interpreting the Virginia wrongful death beneficiary statute, the Virginia Supreme Court has stated that:

> Any recovery in an action for wrongful death can be distributed only in accordance with the express terms of Code §§ 8-636 and 8-638 [now §§ 8.01-52 and 8.01-53], which provide for two classes of beneficiaries. The preferred class includes the wife, husband, children, and grandchildren, while the deferred class includes the parents, brothers, and sisters of decedent. Between members of the same class the jury has absolute discretion as to who shall receive the whole or any part of the recovery and **the members of the deferred class cannot take unless there are no members of the preferred class**.[21]

Further, the Virginia Supreme Court has stated that "[t]he [wrongful death] statute does not create a new cause of action in the decedent's personal representative, rather 'it continues, transmits or substitutes the right to bring the action which the decedent had at the time of his death.'"[22] The record does not reflect that any of the named Plaintiffs are the proper beneficiaries in this proceeding, therefore, their claim cannot stand.

---

[20] Va. Code Ann. § 8.01-53(A).

[21] *Matthews v. Hicks*, 197 Va. 112, 120 (1955) (emphasis added). While the case is old, the principles stand true because "[i]n Virginia, the doctrine of stare decisis is more than a mere cliche. . . . And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake." *Castle v. Lester*, 272 Va. 591, 601-02 (2006) (quoting *Pulliam v. Coastal Emergency Servs.*, Inc., 257 Va. 1, 10 (1999) (quoting *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265 (1987)).

[22] *Lawrence v. Craven Tire Co.*, 210 Va. 138, 140 (1969) (quoting *Sherley v. Lotz, Adm'r*, 200 Va. 173, 176 (1958)); *Cassady v. Martin*, 220 Va. 1093, 1101 (1980) ("[T]he intent of the statute is . . . to compensate for a loss suffered by those entitled to recover.").

2.  <u>Plaintiffs Fail to Identify Deliberate or Extrajudicial Killings.</u>

Plaintiffs' Opposition devotes several pages to summarizing the law governing who can be held liable under the TVPA for extrajudicial killings.[23] While Plaintiffs attempt to recite applicable law, they fail to present any evidence which could establish Field Marshal Hifter's liability under the TVPA for the alleged acts. Plaintiffs present nothing more than mere speculation that the LNA was involved in these alleged events. Claims based on speculation are insufficient to prove an extrajudicial killing. Plaintiffs must cite evidence that directly identifies the LNA as being involved in the planning or execution of the alleged events.[24]

Decedents in this matter were allegedly killed in October 2014.[25] In 2014, it has been well established that many warring factions were involved in the civil war.  By Plaintiffs own admission, during this time period, many individuals wore army uniforms, and it was commonplace to see people in such uniforms in Libya.[26]  At the time, wearing an army uniform did not necessarily indicate that the wearer was part of an official army.[27]  Weapons of all kinds were being dispersed rampantly through the streets.[28]  No witness brought forward can identify that the LNA was responsible for the events alleged to have killed the decedents.  The LNA's mere presence in the region alone does not meet this standard.  The LNA was not the only armed faction present in the region in 2014.

---

[23] Opp. at pp.6-9.
[24] *See Mamani v. Berzain*, 654 F.3d 1148 1155, (11th Cir. 2011) ("*Mamani I*").
[25] Opp. at p. 7.
[26] *See* Ex. B – Ahmad al- Krshiny Dep. at 32:22-33:16.
[27] *Id.* at 33:17-33:21.
[28] *See* Ex. C – Abdalla al- Krshiny Dep. at 27:6-7.

At no point have Plaintiffs provided evidence that the alleged events were "undertaken [by the LNA] with studied consideration and purpose."[29]  This element must be established to prevail. The Plaintiffs have offered nothing more than hearsay from third-party sources to establish this element. Such evidence is inadmissible because it lacks foundation or known credibility.  As the Plaintiffs have failed to present evidence that the Defendant was involved in the alleged extrajudicial killings, their claims must be dismissed.

3. <u>Plaintiffs Fail to Establish Field Marshal Hifter Acted Under Actual or Apparent Authority, or Color of Law, of Any Foreign Nation.</u>

The TVPA requires that an individual must be acting "under actual or apparent authority, or color of law, of any foreign nation."[30]  Field Marshal Hifter does not meet this requirement. The record is undisputed that Field Marshal Hifter was not a state actor in 2014.  The plain language of the TVPA indicates that if a claim is brought against a party who is not acting through a foreign nation, then it must be dismissed. In addition, "an individual acts under color of law . . . when he acts together with state officials or with significant state aid."[31]  The Second Circuit has found that a foreign state is "an entity bearing the 'attributes of statehood,' which include a defined territory and population, self-governance and foreign relations, and the capacity to wage war and enter into international agreements."[32]

---

[29] *See id.*
[30] Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 (note).
[31] *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 52-53 (2d. Cir. 2014) (citations omitted); *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007) (per curiam) (internal quotation marks omitted), *aff'd for want of a quorum sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008); *Kadic*, 70 F.3d at 245 (same).
[32] *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019) (*citing Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107, 123 (2d Cir. 2016) (*quoting Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 924 F.2d 1237, 1243-44 (2d Cir. 1991))).

It is undisputed that in 2014, Field Marshal Hifter did not hold an official position in Libya. The undisputed evidence is that Hifter was not appointed a Field Marshal of the LNA by the Libyan House of Representatives until March 2, 2015.[33]  Prior to 2015, Field Marshal Hifter did not hold a military position as there was no army established at that time.[34]  In any case, the GNA was the only party who could potentially have acted with state aid as they are the recognized sovereignty by the United Nations.  According to the Plaintiffs themselves, Field Marshal Hifter does not hold an official position in Libya.  Therefore, he did not have a position of power over a population, the ability to enter into international agreements, wage war, or govern the Libyan people in 2014.  At no point has Field Marshal Hifter conceded this argument.  The only concession Field Marshal Hifter has made is that he was appointed as Field Marshal by the Libyan House of Representatives in March 2015, which has no relation to this case (except to the extent that Field Marshall Hifter is now claiming head-of-state immunity, as explained previously).  A claim under the TVPA cannot be brought against Field Marshal Hifter, an individual who at the time of the alleged deaths was not acting on behalf of a foreign nation; therefore, the Plaintiffs' claim must be dismissed.

### C.  The Court Must Dismiss this Claim Because It Lacks Jurisdiction.

The Court must grant summary judgment in favor of Field Marshal Hifter because it lacks jurisdiction for two reasons: (1) Plaintiffs did not properly serve him, and (2) he has head-of-state immunity.

#### 1.  Plaintiffs' Service is Invalid.

Field Marshal Hifter previously asserted his objections to this Court's jurisdiction in a motion filed under 12(b)(5).  Absent valid "service of process (or waiver of service by the

---

[33] *See* Ex. D to MSJ - Order Appointing K. Hifter.
[34] *See* Ex. E – Hifter Dep., June 26, 2023, at 209:11-14.

defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."[35]  Plaintiffs' attempts at serving Defendant did not adequately apprise him of the pending lawsuit and were deficient.  Plaintiffs purported to serve Defendant by having a private process server post the alias summons and complaint at a condominium in Fairfax County, Virginia, owned by Field Marshal Hifter merely as an asset as opposed to a residence.  Field Marshal Hifter testified that he has not resided in the United States since 2011.[36] Plaintiffs concede that Field Marshal Hifter left for Libya in 2011.[37]

Plaintiffs' Opposition offers no facts in dispute or argument as to why service was proper on Defendant's asset in Virginia.  Instead, Plaintiffs argue that the "law of the case doctrine" prevents the Court from revisiting its decision denying Defendant's motion to dismiss.[38]  The law-of-the-case doctrine is discretionary and "does not and cannot limit the power of a court to reconsider an earlier ruling."[39]  Further, the law of the case doctrine allows a trial court to reconsider a ruling on a Rule 12(b)(5) motion for insufficiency of service of process.[40]  The law-of-the-case doctrine "poses no bar to the assessment of past holdings based on a different procedural posture, when, as is the case in the progression from review of a motion to dismiss to a motion for summary judgment, that later review expands the court's inquiry based on development of actual facts underlying a plaintiff's claims."[41]

---

[35] *Murphy Brothers, Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999).
[36] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 29:21-30:1, 39:2-4.
[37] *See* Compl., pages 4-5, ECF No. 1.
[38] Opp. at pp. 10-11.
[39] *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *Giacomo-Tano v. Levine*, 199 F.3d 1327, 1999 WL 976481, at *2 (4th Cir. Oct. 27, 19999) (per curiam) (unpublished).
[40] *See Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *McCloud v. Rice*, No. 4:20cv4, 2022 WL 18146043, at *7 (E.D. Va. Dec. 21, 2022).
[41] *Id.*

As the court correctly noted at the April 12, 2024, hearing on the parties' prior motions for summary judgment,

> It is uncontested, as I understand this record, that in 2011, [Field Marshal Hifter] left the United States. In particular, he left Virginia. And, according to the record that's before this Court, even though there were different representations made earlier on in the case before discovery was complete, there is no evidence in this record that at any point after he left in 2011 did he ever physically return to this district . . . It is also uncontested that he has never voted in any election, and, at most, the only property he has admitted owning in this district is a condominium, one condominium, in which he has apparently not lived since 2011.[42]

"A district court unquestionably has the power to revisit an issue where the underlying factual basis for a prior ruling has changed."[43]  In *Aikens*, the defendants submitted declarations which unequivocally showed that proper service was not made.[44] Similarly, since the Court's ruling on his motion to dismiss for insufficiency of service of process, Field Marshal Hifter sat for two depositions in which he testified that he moved to Libya in 2011, has not resided in Virginia since 2011, does not vote in Virginia, and only owns a condominium in Virginia, at which he has not resided since at least 2011.[45] These undisputed facts are set forth in his 2025 memorandum in support of Defendant's motion for summary judgment.  Under these facts that were developed in discovery, the Court may revisit its discretionary ruling and find that service of process was insufficient.

As outlined in his memorandum in support of his motion for summary judgment, Plaintiffs attempted to serve Field Marshal Hifter on March 14, 2020, by a private process server posting the alias summons and complaint at a condominium owned by Hifter at 5505

---

[42] Transcript of Cross Motions for Summary Judgment Hearing, at pp. 6-7, April 12, 2024, *Al-Suyid*, ECF No. 298; *Elzagally*. ECF No. 282.
[43] *Aikens v. Ingram*, 513 F. Supp.2d 586, 593 (E.D.N.C. 2007).
[44] *Id.*
[45] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 29:21-30:1, 39:2-4, 6-14, 21, 40:3.

Seminary Road, Unit 2310N, in Falls Church, Virginia. The undisputed facts, and Plaintiffs admissions in their Complaint, are that Field Marshal Hifter left for Libya in 2011, and did not reside at the condominium in 2020.[46] As the U.S. Supreme Court has explained, "the house much be [defendant's] usual place of abode, so that, when he returns home, the copy of the process posted on the front-door will operate as notice."[47] Notably, "[o]wnership of property does not indicate that an individual resides at the property."[48] Based on the undisputed facts, service on Defendant was improper, and the "court is without jurisdiction to render a personal judgment against a defendant."[49] Accordingly, considering the undisputed facts, it is clear that a condominium in Virginia is not Defendant's usual place of abode, and this case should be dismissed for insufficient service of process.

        2.   <u>Defendant is Entitled to Head-of-State Immunity.</u>

If the Court finds that Field Marshal Hifter was acting under the color of law of a foreign nation in 2014 (it should not), then it must also find that Field Marshal Hifter is entitled to head-of-state immunity. The Court should grant summary judgment in favor of Field Marshal Hifter because Field Marshal Hifter's head-of-state immunity precludes this Court from exercising jurisdiction over Field Marshal Hifter.

"Head of state immunity is a doctrine of customary international law" where an incumbent "head of state is immune from the jurisdiction of a foreign state's courts."[50] If Field Marshal Hifter was acting under Libyan color of law, then he must be granted head-of-state immunity. At that

---

[46] *Id. See also* Compl., ECF No. 1, pages 4, 5.
[47] *Earle v. McVeigh*, 91 U.S. 503, 508 (1875). *See Painter v. Blue Ridge Reg'l Jail Auth.*, No. 6:17-cv-00034, at *5 (W.D. Va. Jan. 23, 2019).
[48] *Malibu Media, LLC v. Bondoc*, No. 1:18=cv-052, at *4 (TSE/IDD) (E.D. Va. Nov. 14, 2018).
[49] *Id.*
[50] *In re Grand Jury Proceedings*, 817 F.2d 1108, 1110 (4th Cir. 1987).

point, the Court should adopt the majority circuit view and hold that there is no *jus cogens* exception to foreign official immunity. Thus, exercising jurisdiction in 2025 (or 2026) would improperly enforce a U.S. law against the State of Libya.

Immunity may be found if (1) the defendant was a "public minister, official, or agent" of the state, (2) "he acted in his official capacity," and (3) "exercising jurisdiction would 'enforce a rule of law against the state.'"[51] As Plaintiffs have noted, Field Marshal Hifter has sought head of state immunity in this litigation before.[52] With that in mind, this Court now has the "authority to decide for itself whether all the requisites for [head-of-state] immunity exist."[53] If Field Marshal Hifter is found to be acting under the color of law of a foreign nation, then each of Plaintiffs' allegations arose when Field Marshal Hifter (1) was a public official—both before and after he became the Field Marshal of the LNA—appointed by the House of Representatives, (2) acting in his official capacity both before and after he became Field Marshal of the LNA, and (3) exercising jurisdiction would result in this Court improperly enforcing a rule of law against Libya.[54]

Along with the majority of the federal circuits, this Court should rule that there is no *jus cogens* exception to foreign official immunity. While the Fourth Circuit has ruled that there is a *jus cogens* exception to foreign official immunity,[55] a majority of the circuits, including the Ninth, Second, Seventh, and Second Circuits have rejected its existence.[56] More specifically, the Ninth

---

[51] *Does v. Obiano*, NO. 4:23-cv-00813, 2024 U.S. Dist. LEXIS 8247, at *7 (S.D. Tex. Jan. 1, 2024).

[52] *Id.*; ECF 37.

[53] *Samantar v. Yousuf*, 560 U.S. 305, 312 (2010) (citations omitted).

[54] *Buratai*, 318 F. Supp. at 233.

[55] *Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012). Counsel for Field Marshal Hifter concedes that this case is binding precedent on the Court at this time. The issue is raised here to preserve it in the record.

[56] *See e.g., Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019); *Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009); *see also Ye v. Zemin*, 383 F.3d 620, 627 (7th Cir. 2004); *Buratai*, 318 F. Supp. 3d at 232.

Circuit declined "to hold that foreign officials are not immune from suit for violations of jus cogens norms."[57] The Second Circuit has ruled that "[a] claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."[58] Further, the Seventh Circuit has stated that "[t]he Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity."[59] Lastly, the D.C. Circuit has stated "[a]lthough the D.C. Circuit has not directly addressed the issue, the circuit's caselaw indicates that jus cogens allegations do not defeat foreign-official immunity under the common law."[60] Thus, this Court should grant Field Marshal Hifter foreign official immunity and/or head-of-state immunity, and dismiss Plaintiffs' claims.

### D. Plaintiffs Have Failed to Exhaust Their Administrative Remedies in Libya.

Although the Defendant bears the initial burden to show the TVPA exhaustion requirement has not been met, once the Defendant sufficiently challenges the exhaustion requirement, the burden of proof shifts to Plaintiffs.[61] If evidence submitted by the parties conflicts, the Court may "act[] as a fact finder in resolving [a] factual dispute" concerning exhaustion of remedies.[62]

Declarations submitted "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[63] As such Fathi Younis Toomi ("Mr. Toomi") submitted a declaration in support of Defendant's Motion for Summary Judgment as a fact witness with personal knowledge of the facts

---

[57] *See Dogan*, 932 F.3d at 896.
[58] *Matar*, 563 F.3d at 15.
[59] *See Ye*, 383 F.3d at 627.
[60] *Buratai*, 318 F. Supp. 3d at 234.
[61] *See Jean v. Dorelien*, 431 F.3d 776, 782 (11th Cir. 2005)).
[62] *See Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (adopting this exhaustion of administrative remedies rule from the PRLA, 42 U.S.C. § 1997e(a)).
[63] USCS Fed Rules Civ Proc R 56(c)

contained therein. Mr. Toomi is an attorney in Libya and informed the Court of his personal experience in the Libyan Court system over the past several years. The declaration was not offered as expert testimony as that would defeat the purposes of a declaration. Because Mr. Toomi's declaration is based on personal knowledge, the Court may weigh the credibility of the evidence and determine that Field Marshal Hifter has sufficiently established Plaintiffs have local remedies they must pursue to exhaustion.

**E.  Plaintiffs Have Provided No Evidence of Command Responsibility to Support Liability.**

Before Plaintiffs can assert command responsibility for the alleged events, they must first establish the LNA's involvement. Plaintiffs rely on inadmissible evidence regarding events unrelated to this proceeding to establish Field Marshal Hifter's liability. This is unacceptable. Plaintiffs have failed to establish facts supporting any prong of the command responsibility analysis. Thus, Defendant's Summary Judgment Motion should be granted.

1.  <u>Plaintiffs Fail to Establish Defendant Had Effective Control Over the Alleged Events.</u>

Plaintiffs have failed to provide any evidence that the LNA was directly involved in the alleged events. Instead, they rely on mere speculation. To prevail on a claim in a U.S. Court, Plaintiffs must allege sufficient facts supported by admissible evidence. Here, Plaintiffs need to present firsthand knowledge of the alleged events coupled with admissible evidence of the LNA's involvement. No such evidence has been presented. A mere scintilla of evidence will not preclude summary judgment.[64] "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict

---

[64] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1871)).

for the party . . . upon whom the onus of proof is imposed."[65] The news articles, writings from international organizations, and other third-party sources Plaintiffs utilize are insufficient to establish liability. It is undisputed that in 2014 there were many different, heavily armed factions operating in Benghazi. Thus, it cannot simply be assumed that the LNA was responsible for each of the alleged events. Admissible proof tying the LNA to the events is required. News articles and other third-party sources are unreliable hearsay, lacking the indicia of reliability necessary to be admitted in court.

2. Plaintiffs Fail to Establish that Defendant Knew or Reasonably Should Have Known the LNA was Involved in the Alleged Events.

Plaintiffs also rely solely on hearsay evidence to establish that Field Marshal Hifter knew or should have known that his subordinates were involved in the events underlying Plaintiffs' claims. The Court acts as a gatekeeper for evidence so the factfinder can make a proper assessment of its credibility.[66] Plaintiffs' news articles and other third-party sources cannot get past the Court's gatekeeping. On the other hand, Field Marshal Hifter presents admissible evidence providing firsthand knowledge of ISIS, al-Qaeda, and other factions engaging violently in the region at that time.[67] No LNA members have been identified as committing the acts Plaintiff allege; therefore, Plaintiffs cannot claim that Field Marshal Hifter knew or reasonably should have known that the LNA committed those acts (assuming *arguendo* they were committed by someone).

3. Plaintiffs Fail to Establish That Defendant Failed to Take All Necessary and Reasonable Measures to Prevent Torture or Extrajudicial Killings

To establish that Defendant failed to take all necessary measures, once again Plaintiffs have failed to provide any admissible evidence. Plaintiffs' reliance on selective media reports to

---

[65] *Id.* (quoting *Munson*, 81 U.S. at 448).
[66] *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 563 (D. Md. 2007).
[67] *See* Ex. A – Hifter Dep., Nov. 6, 2022, at 78:18-79:4.

establish liability is insufficient. Based on the foregoing, Plaintiffs have not met any of the prongs of the command responsibility doctrine. Plaintiffs' inability to establish any element of command responsibility results in a failure to demonstrate Field Marshal Hifter's liability for these claims. The failure to establish a causal link between the alleged events and Field Marshal Hifter is fatal to Plaintiffs' claims, and summary judgment should be granted.[68]

### F.  Plaintiffs Conceded There Is No Evidence in the Record of Torture.

If Plaintiffs are bringing a claim of torture under the TVPA, it has been waived. A torture claim under the TVPA can only be brought by a victim of torture. In their Opposition, Plaintiffs offer no evidence that any of them are victims of torture. In fact, Plaintiffs do not address this issue in their Opposition. "Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument."[69] Field Marshal Hifter alleged in his Motion for Summary Judgment that there was no evidence of torture under the TVPA as, "[t]he severity requirement is crucial in determining whether conduct is torture" and "an act must be a deliberate and calculated act of an extremely cruel and inhuman nature specifically intended to inflict excruciating and agonizing physical or mental pain or suffering" to constitute torture.[70]

---

[68] *See Qi*, 349 F. Supp. 2d at 1331-32 (finding that a superior subordinate relationship was established where one defendant had supervisory authority over perpetrators, and another defendant "played a major policy-making and supervisory role in the policies and practices that were carried out") (internal quotation marks omitted).

[69] *Ramirez v. Temin & Co.*, 2021 U.S. Dist. LEXIS 183760, fn. 2 (S.D.N.Y. Sep. 24, 2021) (citing *AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812 (NRB), 2014 U.S. Dist. LEXIS 125256, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014)).  At the appellate level, the Fourth Circuit has held that, "It is well-established that '[a] party's failure to raise or discuss an issue in [its appellate] brief is to be deemed an abandonment of that issue.' 'Even appellees waive arguments by failing to brief them'." *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (bracketed text in original; internal citations omitted), cert. denied, 144 S. Ct. 377 (2023).

[70] *Chowdhury*, 746 F.3d at 52.

In their Opposition, Plaintiffs fail to identify the extreme, deliberate, and unusually cruel practices that the TVPA requires.[71] In fact, Plaintiffs have identified no specific allegations of torture predicated on admissible evidence. Thus, the failure to address or identify any evidence of torture in their Opposition is either a concession of its absence and/or a failure to present evidence of a genuine issue, and summary judgment should be granted.

## III.    CONCLUSION

Defendant has established that there are no genuine issues as to any material fact, and that, as the facts stand, Plaintiffs do not have a viable legal claim against him. As such, summary judgment should be entered in Defendant's favor and the case against him dismissed with prejudice.

Dated: December 29, 2025                    Respectfully submitted,

                                            KHALIFA HIFTER

                                            By Counsel


                                            /s/ *Robert H. Cox*
                                            Robert H. Cox (VSB No. 33118)
                                            WHITEFORD, TAYLOR & PRESTON, LLP
                                            3190 Fairview Park Drive, Suite 800
                                            Tysons Corner, Virginia 22042
                                            Tel: (703) 573-1037
                                            rcox@whitefordlaw.com

---

[71] *See Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 234 (D.C. Cir. 2003) (internal quotations omitted).

## **CERTIFICATE OF SERVICE**

        I certify that on December 29, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.


                      /s/ *Robert H. Cox*

                      Robert H. Cox (VSB No. 33118)